Todd Logan (SBN 305912)
EDELSON PC
150 California St, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300
Fax: 415.373.9435
tlogan@edelson.com

Matthew S. Tripolitsiotis (*pro hac vice*)
BURNS CHAREST LLP
757 Third Ave, 20th Floor
New York, NY 10017
Tel:  469.895.5269
mtripolitsiotis@burnscharest.com

Spencer Cox (*pro hac vice*)
BURNS CHAREST LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, D.C. 20016
Tel.: 202.577.3977
Fax: 469.444.5002
scox@burnscharest.com

*(Additional counsel on signature page.)*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW PANDOLFI and MANDI SHAWCROFT, individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>AVIAGAMES, INC.; VICKIE YANJUAN CHEN; PING WANG; ACME, LLC; GALAXY DIGITAL CAPITAL MANAGEMENT, L.P.; and OTHER UNNAMED CO-CONSPIRATORS;<br><br>Defendants. | Case No. 3:23-cv-05971-EMC<br><br>CLASS ACTION<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO THE AVIA DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Date:  March 28, 2024<br>Time: 1:30 p.m.<br>Dept:  Courtroom 5 – 17th Floor<br>Judge: Honorable Edward M. Chen<br><br>Date filed:  November 17, 2023<br>Trial Date: None Set |

## INTRODUCTION

On March 28, 2024, this Court heard argument on the Avia Defendants' motion to compel arbitration. The Court invited supplemental submissions on (a) whether the evaluation of the arbitration bellwether provision "should turn on the number of clients, the number of potential clients, or the size of the putative class;" and (b) the number of clients or potential clients impacted by the clause. *See* Doc. No. 93.

As detailed below, the proper way to evaluate such a provision is "as of the time the contract is made—it is a prospective analysis which does not require proof that a particular plaintiff has already been adversely affected." *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1041 (N.D. Cal. 2022) (Chen, J.). The wisdom of that holding is bolstered by the instant facts. Plaintiffs' counsel now have signed engagement letters with 35 clients (including Plaintiffs) regarding this matter, a number that grows each week, and seek to represent a potential class of over 20 million people affected by the clause.[1] At the hearing on Avia's motion to compel, Avia represented that "there's **no reason** to think here that the supplementary rules for multiple case filings would indeed apply."[2] However, as detailed below, Plaintiffs have learned that another firm has already provided Avia notice of more than 1,600 arbitrations on these topics.[3] Moreover, that firm was previously in contact with the same counsel who argued at the hearing regarding the 1,600+ arbitrations.[4]

These facts underscore why it makes sense to evaluate the bellwether provision on its face rather than requiring evidence of the number of actual or likely claimants. At the time of the hearing,

[1] *See* April 4, 2024 Declaration of Matthew S. Tripolitsiotis in Opposition to the Avia Defendants' Motion to Compel Arbitration ("Tripolitsiotis Decl.") ¶¶ 3-7. Discussions are ongoing with 103 putative class members. *Id*.

[2] Tripolitsiotis Decl. Ex. B (March 28, 2024 Hearing Tr.) at 14:1-3 (emphasis added).

[3] April 2, 2024 Declaration of Michael Kind ("Kind Decl.") ¶ 4.

[4] *See* Kind Decl. ¶ 5.

Plaintiffs—unlike Avia—were unaware that 1,600 additional arbitrations were already initiated. Here, Plaintiffs were able to uncover their existence. But it is unusual for potential claimants to be aware of each other's existence in large numbers as they are in this case. By nature, arbitrations are confidential and, in other cases, those other arbitrations are likely to remain hidden and the putative class members' rights impacted. Furthermore, putative class members have little incentive to pursue arbitrations while a class case is pending. Accordingly, a Court should evaluate the clause at the time it is made as a facial challenge. In any event, whether evaluated here facially or "as applied," the bellwether provision fails to measure up.

## ARGUMENT

**I.     The proper way to evaluate a bellwether provision is at the time of contract formation—not as it is applied.**

This Court held in *MacClelland*, 609 F. Supp. 3d at 1041, that arbitration terms should be reviewed from the standpoint of those individuals to whom the terms would apply but that are not currently plaintiffs. The Court explained that "in assessing unconscionability, the Court must examine the validity of a contractual provision as of the time of the contract is made." *Id.* (citing *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 875 (9th Cir. 1979) ("[W]hether a contract is fair or works an unconscionable hardship is determined with reference to the time when the contract was made and cannot be resolved by hindsight."); *Yerkovich v. MCA, Inc.*, 11 F. Supp. 2d 1167, 1173 (C.D. Cal. 1997), *aff'd*, 211 F.3d 1276 (9th Cir. 2000) ("An unconscionability claim accrues at the moment when the allegedly unconscionable contract is formed ... [the] unconscionability of a contract or a contract clause is determined based on the law and facts at the time of the agreement."). In so doing, the Court does not only look at whether a particular plaintiff has been affected. Rather, "it is a prospective analysis which does not require proof that a particular plaintiff has already been adversely affected." *Id*.

It makes sense to evaluate terms at the time of purported agreement because a court must consider the "the chilling effect on non-parties who may yet seek to vindicate their rights." *Id*. In the employment context, for example, courts consider the chilling effect that an arbitration agreement would exert on employees seeking to file workplace discrimination claims.[5]

Applying these principles in *MacClelland*, the Court found a similar mass-arbitration provision unconscionable. *MacClelland* involved 27 named plaintiffs, and another 2,685 individuals who Plaintiffs' counsel represented but were not Plaintiffs in the case. The *MacClelland* defendants argued that the Court should only consider the delay that the mass arbitration provision would have on the 27 represented plaintiffs. This Court rejected the argument. Instead, it opted to consider the unconscionability of the mass arbitration provision more broadly. *MacClelland*, 609 F. Supp. 3d at 1041–42. This Court reasoned that courts may "consider the chilling effect of an arbitration clause on individuals to whom it would apply but are not currently plaintiffs." *Id*. at 1041. When the Court widened the aperture to consider those other than the plaintiffs in the lawsuit, it found the mass-arbitration provision unconscionable. Specifically, the Court found that the delay that the mass arbitration provision would cause to be "unreasonably unfavorable" to the defendants. *Id*. at 1042 ("Requiring the consumers who retain counsel willing to represent them in cases such as this to wait

---

[5] *C.f. Pereyra v. Guaranteed Rate, Inc.*, No. 18-cv-06669-EMC, 2019 WL 2716519, at *8 (N.D. Cal. June 28, 2019) (finding substantive unconscionability where "[t]he existence of the fee provision may well have a chilling effect on employees seeking to vindicate their rights" and noting that "[t]he conscionability of the provision is to be judged at the time the agreement is made"); *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 485 F. Supp. 3d 1168, 1188 (N.D. Cal. 2020) (A mandatory fee- and cost-shifting provision "can have a substantial chilling effect on plaintiffs seeking to vindicate their rights [and] is substantively unconscionable."); *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 117 (Cal. App. 2004) (rejecting arbitration provision because "[t]he mere inclusion of the costs provision in the arbitration agreement produces an unacceptable chilling effect"); *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1009 (N.D. Cal. 2015), *aff'd*, 699 F. App'x 620 (9th Cir. 2017) (rejecting company's offer to waive unconscionable provisions in arbitration agreement because "the mere inclusion of these unconscionable provisions has an improper chilling effect").

months, more likely years before they can even submit a demand for arbitration is 'unreasonably favorable' to Verizon."). "Delaying the ability of one to vindicate a legal claim by years … 'conflict[s] with one of the basic principles of our legal system—justice delayed is justice denied.'" *Id*. (quoting *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021)).

Defendants may attempt to liken the mass-arbitration provision in this case to the one the Court upheld in *McGrath v. DoorDash, Inc.*, No. 19-cv-05279-EMC, 2020 WL 6526129, at *4 (N.D. Cal. Nov. 5, 2020). But, *DoorDash* is distinguishable. Under the mass-arbitration provision in *DoorDash*, the bellwether cases would be resolved "within 120 days of the initial pre-hearing conference." *Id.* After the parties resolved those cases, the remaining cases were to go to a mediator "who will try to resolve" them. *Id.* And after a mediation period of 90 days, "the parties may choose to opt out of the arbitration process and proceed in court with the remaining claims." *Id.* Accordingly, the Court found that there was "little concrete evidence to support Plaintiffs' argument that the [mass-arbitration protocol] would result in significant delay in resolution of the [plaintiffs'] claims." *Id.* at *10.

None of those protections exist in this case. As in *MacClelland*, here (a) there is no opt-out of the bellwether protocol; (b) the arbitrations must proceed in tranches; and (c) the bellwethers are one-directional and act as a stay of the arbitration proceedings. *Compare MacClelland*, 609 F. Supp. 3d at 1043-44, *with* Feb. 4, 2024 Declaration of Jianging Qu, Doc. No. 73-1, Ex. 1 at ¶ 15. There is no arbitration protocol that will resolve claims within 120 days of the initial pre-hearing conference like the one in *DoorDash*, 2020 WL 6526129, at *4, and there certainly is no ability for a claimant here to opt-out of the arbitration process at any point and return to court. Thus, unlike in *DoorDash* where there was "no evidence at this point that those choosing to arbitrate will face inordinate delays," *id.*, there is "the possibility of significant delay that is facially present" here. *MacClelland*, 609 F. Supp. 3d at 1043.

A facial evaluation, as opposed to looking at filed claims, is further appropriate when one considers that where there is a putative class case on file, as here, there is less incentive for individuals to initiate arbitrations or independently engage counsel. Putative class members and their interests are represented by putative class counsel from the time the complaint is filed. *See Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (citing *In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 801 (3d Cir.1995)) ("Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed."). As the Supreme Court explained, a "federal class action is no longer 'an invitation to joinder' but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions. *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 550 (1974) (applying that principle to toll statute of limitations for unnamed class members with the filing of a class suit). To hold that putative class members must have engaged representation by the same class counsel and either filed suit or joined as additional named plaintiffs in order to find the clause unconscionable would encourage such "unnecessary filing or repetitious papers." Thus, the Court should look at how the terms affect all putative class members, whether they have engaged the same counsel or not.

**II.      Even when judged as applied, the bellwether provision is unconscionable.**

The number of people impacted here demonstrates both why a facial determination is appropriate and why an "as applied" evaluation also succeeds. As detailed in the Tripolitsiotis Declaration and referenced at argument, putative class counsel now have signed engagement letters with 35 putative class members, including the named Plaintiffs, to represent them in connection with their Avia claims. Tripolitsiotis Decl. ¶¶ 3-4. Counsel is in ongoing discussions with more than 103 putative class members about representation and the number of formal engagements continues to

increase. *Id*. New putative class members continue to contact counsel. *Id*. ¶ 5. Moreover, the potential class here numbers in the millions.[6]

At the time of the hearing, Plaintiffs—and thus the Court—did not have a complete understanding of the number of people impacted by the arbitration provision. Avia argued that "there's **no reason** to think here that the supplementary rules for multiple case filings would indeed apply," and that "we don't have any such representation from plaintiffs' counsel that there are dozens or thousands of unnamed plaintiffs waiting in the wings with similar claims."[7] However, Avia in fact was aware that there was "reason to think here that the supplementary rules for multiple case would indeed apply." As detailed in the separate declaration of Michael Kind, more than 1,600 individuals have engaged the Kind Law Firm to pursue arbitrations and have provided notice of their intention to arbitrate to Avia. Kind Decl. ¶¶ 3-4. Moreover, Mr. Kind states that Avia's counsel—who is the same counsel that argued for Avia here—was in contact with his firm about the 1,600+ arbitrations prior to the argument on this motion. *Id*. ¶ 5-6. This information was not disclosed at the hearing and was only discovered by Plaintiffs' counsel upon further investigation. As applied to these 1600+ claimants, Avia's "10+10" bellwether process would require over 80 rounds of bellwether arbitrations for each individual to have their claims presented to an arbitrator.

The existence of these additional arbitration demands shows both the problems with the clause as applied and why the clause must be examined facially. The Court and named Plaintiffs cannot know the number of arbitrations that are in process or waiting to be filed. This includes the claims of

---

[6] The apps at issue are among the most heavily downloaded on the App Store. First Amended Complaint ¶ 32. As Defendant Chen wrote on LinkedIn in a December 22, 2022 article, "The AviaGames player community grew two-fold this year, surpassing an install base of **more than 23 million users**." Tripolitsiotis Decl. Ex. A (LinkedIn Article) (emphasis added).

[7] Tripolitsiotis Decl. Ex. B (March 28, 2024 Hearing Tr.) at 14:1-3, 8-10 (emphasis added).

individuals who believe their rights are currently protected as putative class members but who would file an arbitration if the class does not proceed. As a result, relying on the current number of actual named plaintiffs or engaged clients risks denying many others their rights and will create a bottleneck that will delay even the question of arbitrability—or getting to the arbitrator at all. Assessing the bellwether provision "as applied" would further make the question of unconscionability depend on whether the individuals are represented by the Plaintiffs' counsel or the Kind Law Firm. But that makes no sense because the bellwether provision cannot be unconscionable for one group of plaintiffs, i.e. represented by the Kind Law Firm, but conscionable for another group, i.e. represented by named Plaintiffs' counsel. The unconscionability should not depend on whether the Kind Law Firm and Plaintiffs' counsel coordinate, or with which of those representatives an individual chooses to pursue her claims.

This case is unusual in that counsel for the putative class discovered the existence of counsel for other prospective individual arbitrants. And there may be other claimants or counsel representing such claimants that Plaintiffs here do not know of. Indeed, of all the parties, the defendant is best placed to know the true number of likely claimants should arbitration be compelled. But as this case shows, it is not in a defendant's interest to be forthcoming with facts (like the number of likely arbitration claimants) that show the unconscionability of the defendant's arbitration clause.

## CONCLUSION

For the foregoing reasons, the arbitration provision at issue is unenforceable whether the Court evaluates it facially or as applied, and the Avia Defendants' motion to compel arbitration should be denied.

Dated: April 4, 2024

Respectfully submitted,

/s/ *Matthew S. Tripolitsiotis*

Matthew S. Tripolitsiotis (*pro hac vice*)
BURNS CHAREST LLP
757 Third Ave, 20th Floor
New York, NY 10017
Tel:  469.895.5269
mtripolitsiotis@burnscharest.com

Amanda K. Klevorn (*pro hac vice*)
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Tel: 504.799.2847
aklevorn@burnscharest.com

Spencer Cox (*pro hac vice*)
BURNS CHAREST LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Tel: 202.577.3977
scox@burnscharest.com

Todd Logan (SBN 305912)
EDELSON PC
150 California St, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300
Fax: 415.373.9435
tlogan@edelson.com

*Counsel for Plaintiffs and the Proposed Class*

## CERFICATE OF SERVICE

I hereby certify that on April 4, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

/s/ *Matthew S. Tripolitsiotis*
Matthew S. Tripolitsiotis