# EXHIBIT B

1        UNITED STATES DISTRICT COURT

2      NORTHERN DISTRICT OF CALIFORNIA

3         SAN FRANCISCO DIVISION

4

5   ANDREW PANDOLFI AND MANDI        )  C-23-05971 EMC
    SHAWCROFT, INDIVIDUALLY AND ON   )
6   BEHALF OF ALL OTHERS SIMILARLY   )  SAN FRANCISCO, CALIFORNIA
    SITUATED,                        )
7                                    )  MARCH 28, 2024
                PLAINTIFFS,          )
8                                    )  PAGES 1-46
            VS.                      )
9                                    )
    AVIAGAMES, INC.; VICKIE YANJUAN  )
10  CHEN; PING WANG; ACME, LLC;      )
    GALAXY DIGITAL CAPITAL           )
11  MANAGEMENT, L.P.; AND OTHER      )
    UNNAMED CO-CONSPIRATORS,         )
12                                   )
                DEFENDANTS.          )
13  _____  )

14

15        TRANSCRIPT OF ZOOM PROCEEDINGS
        BEFORE THE HONORABLE EDWARD M. CHEN
16          UNITED STATES DISTRICT JUDGE

17  A P P E A R A N C E S:

18  FOR THE PLAINTIFFS:    BURNS CHAREST LLP
                          BY:  MATTHEW S. TRIPOLITSIOTIS
19                        757 THIRD AVENUE, 20TH FLOOR
                          NEW YORK, NEW YORK  10017
20

21        APPEARANCES CONTINUED ON THE NEXT PAGE

22

23  OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24

25      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
          TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2        APPEARANCES (CONTINUED)

 3

 4        FOR THE PLAINTIFFS:    BURNS CHAREST LLP
                                 BY:  CLAYTON R. MAHAFFEY
 5                               900 JACKSON STREET, SUITE 500
                                 DALLAS, TEXAS  75202
 6

 7        FOR DEFENDANTS         KEKER, VAN NEST & PETERS LLP
          AVIAGAMES, CHEN,       BY:  MICHELLE S. YBARRA
 8        AND WANG:                   STEVEN K. TAYLOR
                                 633 BATTERY STREET
 9                               SAN FRANCISCO, CALIFORNIA  94111

10        FOR DEFENDANTS         KWUN BHANSALI LAZARUS
          CHEN AND WANG:         BY:  KATE E. LAZARUS
11                               555 MONTGOMERY STREET, SUITE 750
                                 SAN FRANCISCO, CALIFORNIA  94111
12

13        FOR DEFENDANT          KRAMER LEVIN NAFTALIS & FRANKEL LLP
          ACME:                  BY:  RALPH C. MAYRELL
14                               2000 K STREET NW, 4TH FLOOR
                                 WASHINGTON, D.C.  20006
15

16        FOR DEFENDANT          MORRISON COHEN, LLP
          GALAXY:                BY:  DANIEL C. ISAACS
17                                    WILLIAM ROTH
                                 909 THIRD AVENUE, 27TH FLOOR
18                               NEW YORK, NEW YORK  10022

19

20

21

22

23

24

25
```

```
1    SAN FRANCISCO, CALIFORNIA                    MARCH 28, 2024

2                    P R O C E E D I N G S

3         (ZOOM PROCEEDINGS CONVENED AT 2:34)

4              THE CLERK:  NEXT CASE THE COURT WILL BE HEARING IS

5    PANDOLFI VERSUS AVIAGAMES.  THOSE ATTENDEES PARTICIPATING IN

6    THE HEARING, PLEASE RAISE YOUR HAND AND I'LL PROMOTE YOU AS A

7    PANELIST.

8         (PAUSE IN PROCEEDINGS.)

9              THE CLERK:  THE COURT WILL NOW BE HEARING THE CASE

10   PANDOLFI, ET AL. VERSUS AVIAGAMES GAMES, INC. ET AL., CASE

11   NUMBER 23-5971.

12        COUNSEL, PLEASE STATE YOUR APPEARANCE FOR THE RECORD,

13   BEGINNING WITH THE PLAINTIFF.

14             MR. TRIPOLITSIOTIS:  GOOD MORNING, YOUR HONOR.

15        MATT TRIPOLITSIOTIS ON BEHALF OF PLAINTIFFS.  I'LL BE

16   HANDLING THE CMC PORTION OF TODAY, AND THEN MY COLLEAGUE,

17   CLAY MAHAFFEY, WILL BE HANDLING THE MOTION TO COMPEL

18   ARBITRATION.

19             THE COURT:  ALL RIGHT.  THANK YOU.

20             MS. YBARRA:  GOOD AFTERNOON, YOUR HONOR.

21        MICHELLE YBARRA FROM KEKER, VAN NEST & PETERS ON BEHALF OF

22   DEFENDANT AVIAGAMES AND ITS OFFICERS VICKIE CHEN AND PING WANG.

23   I'LL BE HANDLING THE MOTION TO COMPEL ARBITRATION, AND MY

24   PARTNER, STEVE TAYLOR, WILL BE HANDLING THE CMC PORTION.

25             THE COURT:  ALL RIGHT.  THANK YOU, MS. YBARRA.
```

1          MR. MAYRELL:  GOOD AFTERNOON, YOUR HONOR.

2          RALPH MAYRELL FROM KRAMER LEVIN.  I REPRESENT ACME LLC,

3     AND I'M HERE TO ADDRESS ANY ASPECT OF THE CASE MANAGEMENT

4     CONFERENCE RELATED TO THE PROPOSED SCHEDULE.

5          THE COURT:  OKAY.  THANK YOU.

6          MR. ISAACS:  HELLO.  DANIEL ISAACS, ALONG WITH MY

7     COLLEAGUE, WILL ROTH, ON BEHALF OF GALAXY DIGITAL CAPITAL

8     MANAGEMENT FROM THE LAW FIRM OF MORRISON COHEN, AND WE'LL BE

9     PREPARED TO ADDRESS CASE MANAGEMENT ISSUES.

10          THE COURT:  ALL RIGHT.  THANK YOU.

11          MS. LAZARUS:  GOOD AFTERNOON, YOUR HONOR.

12          KATE LAZARUS, KWUN BHANSALI LAZARUS, FOR DEFENDANTS

13     VICKIE CHEN AND PING WANG.

14          THE COURT:  ALL RIGHT.  GOOD AFTERNOON MS. LAZARUS.

15          ANYBODY ELSE NEED TO MAKE AN APPEARANCE?

16          MR. TRIPOLITSIOTIS:  THAT SHOULD BE EVERYONE, YOUR

17     HONOR.

18          THE COURT:  OKAY, GOOD.

19          WELL, LET'S ADDRESS THE MOTION TO COMPEL.

20          OF COURSE THE FIRST ISSUE IS WHETHER THERE'S VALID ASSENT

21     TO THE TERMS OF USE, THE TERMS OF USE WHICH, OF COURSE,

22     CONTAINS THE ARBITRATION AGREEMENT AT ISSUE HERE.

23          AND THIS IS BETWEEN THE SPECTRUM BETWEEN CLICKWRAP AND

24     BROWSEWRAP, THIS IS MORE OF A CLICKWRAP TYPE SITUATION, AND

25     ALTHOUGH ONE COULD ARGUE WHETHER THE TERMS OF ARBITRATION OR

1    NOT WERE WELL ENOUGH PROMINENT WITHIN THE TERMS AND CONDITIONS,

2    I THINK THE WEBSITE MAKES IT PRETTY CLEAR THAT ONCE YOU CLICK

3    TO GO ON, YOU ARE ASSENTING TO THE TERMS OF USE.

4         AND SO IT DOES SEEM TO ME THAT -- I DON'T SEE MUCH OF AN

5    ISSUE IN TERMS OF THAT VERY FIRST THRESHOLD ISSUE, BUT IF

6    THERE'S A COMMENT ON THAT, I'LL TAKE IT NOW.

7         BUT THERE IS A BIG "AGREE" BUTTON, AND IT DOES SAY YOU

8    AGREE TO THE UPDATED TERMS OF SERVICE.

9         NOW, THAT'S JUST THE FIRST STEP, BUT I'LL -- IF THERE'S

10   SOMETHING THAT YOU WANT TO SAY THAT SUGGESTS THAT I'M WRONG,

11   I'LL HEAR IT.  NOTE NOTE MR. MAHAFFEY.

12        MR. MAHAFFEY:  YOUR HONOR, JUST BRIEFLY,

13    UNDERSTANDING YOUR COMMENTS THERE, I WOULD LIKE TO ADDRESS

14    THAT.

15        OF COURSE DEFENDANTS ARGUE THAT THE PLAINTIFFS ASSENTED TO

16   THESE TERMS OF SERVICE IN VARIOUS MANNERS OVER THE COURSE OF

17   TIME, INCLUDING WHEN THEY FIRST LOGGED INTO THE SITE, AND LATER

18   WHEN THEY CONFIRMED THAT THEY WERE, YOU KNOW, OVER THE AGE OF

19   18.

20        AND THEN AFTER THAT, ON TWO OCCASIONS, THEY ALLEGE THAT --

21   OR ASSERT THAT BOTH MR. PANDOLFI AND MS. SHAWCROFT ACCEPTED,

22   AND WHAT I BELIEVE YOU WERE REFERRING TO ARE THESE ATTEMPTS TO

23   IMPLEMENT CHANGES TO THE TERMS OF SERVICE THROUGH POP-UPS THAT

24   OCCURRED IN BOTH JANUARY AND LATER IN JULY OF 2023.

25        AND SO CERTAINLY THOSE EARLIER WINDOWS WE WOULD SUGGEST IF

1    YOU WOULD -- AND I'M SURE YOU'VE LOOKED AT THESE, BUT THEY'RE

2    ACTUALLY CONTAINED IN MR. QU'S DECLARATION IN RESPONSE TO THE

3    TRO, WHICH I BELIEVE IS DOCKET NUMBER 44-1.  AND JUST TO REFER

4    YOU TO THOSE, THE INITIAL LOG-IN SCREEN, OR THE ACCOUNT SETUP I

5    BELIEVE IS REFLECTED AT PARAGRAPH 22 OF THAT DOCUMENT, WHICH IS

6    ON PAGE 9.

7         THE AGE VERIFICATION IS ON PARAGRAPH -- AT PARAGRAPH 22.

8    I BELIEVE IT'S AT PAGE 11 OF THAT DOCUMENT.

9         AND THEN THE OTHER -- THE OTHER POP-UPS, OF COURSE, ARE

10   CONTAINED NOT ONLY THEREIN AT PAGE 23, BUT ALSO IN THE

11   DEFENDANTS' PLEADINGS HERE.

12        AND SO CERTAINLY THOSE OTHER -- THE AGE VERIFICATION

13   SCREEN AND THE INITIAL LOG-IN SCREEN ARE VERY NOTABLY DEFICIENT

14   AND FOR ALL THE REASONS --

15        THE COURT:  BUT THEN YOU HAVE THE UPDATE ONE, WHICH

16   IS LESS DEFICIENT, IT SEEMS TO ME.

17        MR. MAHAFFEY:  THE BUTTONS CERTAINLY -- IF YOU LOOK

18   AT THE CASE LAW AND YOU LOOK AT THE CRITERIA IN TERMS OF, YOU

19   KNOW, DIFFERENTIATION BETWEEN FONT SIZE AND COLOR AND

20   PROMINENCE OF THE BUTTONS AND THOSE THINGS, YOU KNOW, I AGREE,

21   YOUR HONOR, THAT THE TWO POP-UPS ARE A CLOSER CALL.

22        BUT STILL WE MAINTAIN THEY ARE, IN FACT, INSUFFICIENT TO

23   GIVE NOTICE TO THE PLAINTIFFS, AND PARTICULARLY, UNLIKE THE

24   OTHER, THE OTHER TWO -- YOU KNOW, THE PREVIOUS TWO, THE AGE

25   VERIFICATION AND THE LOG-IN NOTIFICATION, THEY DON'T REFERENCE

1    THE ARBITRATION PROVISION, OF COURSE, AT ALL, NOR DO THEY

2    SPECIFY ANY OF THE VERY SIGNIFICANT WAYS THAT THE TERMS OF

3    SERVICE WERE BEING AMENDED.

4         IT MAKES IT APPEAR AS THOUGH THEY WERE JUST SORT OF PRO

5    FORMA CHANGES TO THOSE TERMS AND WOULD NOT MEANINGFULLY, YOU

6    KNOW, NOTIFY A USER OF THE APPLICATION THAT THEY SHOULD, YOU

7    KNOW, TAKE THE TIME AND ENERGY TO GO AND CLICK ON THOSE TERMS

8    AND SEE WHAT EXACTLY IS CHANGING.

9         THE COURT:  WELL, SO THAT RAISES -- I WONDERED

10   WHETHER YOU ARE -- WELL, THAT RAISES A QUESTION.  EVEN IF ONE

11   WERE TO ASSUME THAT THE, THAT THE UPDATED TERMS OF SERVICE AND

12   PRIVACY POLICY WOULD BE CONSENTED TO, AT LEAST IN A GENERAL

13   SENSE, IF THERE'S SUFFICIENT NOTICE, CLICK AND ALL THIS SORT OF

14   STUFF, IS THERE AN ARGUMENT THAT THAT DOESN'T MEAN ALL OF IT

15   IS, IS IN THE AGREEMENT?

16        I'M PUTTING ASIDE CONSCIONABILITY, ENFORCEABILITY, ALL

17   THAT SORT OF STUFF.  IS THERE AN ARGUMENT HERE THAT YOU CAN

18   ASSENT TO AN AGREEMENT, BUT NOT ASSENT TO PARTICULAR PROVISIONS

19   OF THE AGREEMENT?

20        MR. MAHAFFEY:  WELL, WITHOUT GETTING INTO SOME OF THE

21   ARGUMENTS THAT WE MAKE, INCLUDING THE UNCONSCIONABILITY

22   ARGUMENT, YOUR HONOR, I THINK THE BASE POSITION THAT WE ARE

23   TAKING, AND CERTAINLY WE THINK THE DEFENDANTS HAVE NOT MET

24   THEIR BURDEN TO SHOW THAT THERE WAS, THAT THERE WAS CLEARLY AN

25   ASSENT TO THE TERMS OF SERVICE BY THE PLAINTIFFS.

1      THE COURT:  MAINLY BECAUSE -- NOT BECAUSE OF THE

2   WARNING THAT THIS, YOU ARE CONSENTING TO AN UPDATED TERMS OF

3   SERVICE, BUT THERE WAS NOTHING IN THERE THAT SUGGESTS THAT, IN

4   AN EASY WAY, WHAT THAT MIGHT ENTAIL?

5      MR. MAHAFFEY:  CORRECT, YOUR HONOR.

6      THE COURT:  IS THERE CASE LAW THAT SAYS -- I MEAN,

7   BECAUSE NORMALLY -- AND THIS IS WHY THE INTERNET STUFF TAKES

8   CONTRACT LAW KIND OF TO THE EXTREME, BECAUSE IN THE OLD DAYS,

9   YOU SIGN A CONTRACT, YOU KNOW, YOU MAY HAVE KNOWN YOU SIGNED

10  SOME KIND OF INSURANCE CONTRACT OR A CONTRACT TO BUY A HOUSE OR

11  SOMETHING, BUT YOU'RE BOUND BY EVERYTHING IN THERE.  EVEN ON,

12  YOU KNOW, PARAGRAPH 356 IF YOU DIDN'T LOOK AT IT, YOU'RE DEEMED

13  TO HAVE READ EVERYTHING.

14     IT SEEMS LIKE INTERNET LAW KIND OF GOES THAT WAY, TAKES IT

15  TO ANOTHER EXTREME, WHERE NOW YOU HAVE TO CLICK ON, SOMETIMES

16  YOU HAVE TO CLICK TWO TIMES AND GO THROUGH A SCREEN IN A GREY

17  FONT WITH MANY, MANY.

18     BUT IF WE GET TO THE POINT WHERE ONE SAYS, YEAH, YOU'VE

19  CONSENTED TO THE AGREEMENT, YOU'RE NOT SAYING, WELL, OKAY, I

20  MAY HAVE CONSENTED TO THE AGREEMENT, BUT I WASN'T CONSENTING TO

21  THIS PROVISION OVER HERE.  THIS WAS -- YOU KNOW, THE MATTER OF

22  SURPRISE GOES TO CONSCIONABILITY AND NOT ACCEPTANCE?

23     MR. MAHAFFEY:  I BELIEVE THAT'S CORRECT, AND THE CASE

24  LAW THAT IS CITED, YOUR HONOR, IS THAT THE SURPRISE IS

25  ESPECIALLY PERTINENT IN THE CONTEXT OF DETERMINING WHETHER

1      THERE WAS A PROCEDURAL UNCONSCIONABILITY.

2              THE COURT:  RIGHT.  WELL, LET'S -- OKAY.  SO LET'S

3      TALK ABOUT THAT, BECAUSE I THINK THAT'S WHAT THE CORE OF THIS

4      MATTER IS.

5              SO THE FIRST QUESTION, OF COURSE, IS THE DELEGATION

6      CLAUSE, THE AGREEMENT TO ARBITRATE ARBITRABILITY, AND THERE IS

7      AN ARGUMENT THAT THAT'S NOT ENFORCEABLE BECAUSE OF

8      UNCONSCIONABILITY.

9              AND I THINK WE ALL KNOW THE PROCEDURAL UNCONSCIONABILITY

10     PART, AND THAT IS WHAT WE JUST TALKED ABOUT.  THAT'S WHAT IT

11     INFORMS, APPARENTLY, THAT, YOU KNOW, ALL RIGHT, NUMBER ONE,

12     THERE WAS NO WARNING, WHEN YOU CLICKED "I AGREE," THERE WAS NO

13     FOREWARNING THAT, HEY, YOU BETTER LOOK AT THE ARBITRATION

14     CLAUSE OR ANYTHING LIKE THAT;

15             NUMBER TWO, WHEN YOU DO CLICK, YOU GET THIS THING, AND I

16     DON'T KNOW WHY IT'S IN THIS GREY FONT.  IS THAT THE ORIGINAL --

17     INSTEAD OF A SHARP BLACK, IT'S LIKE IN A -- I'VE SEEN IT NOW IN

18     A COUPLE DIFFERENT VARIATIONS.  I ASSUME MY COMPUTER IS NOT

19     PLAYING TRICKS ON ME.  BUT IT LOOKS LIKE IT COMES UP IN A

20     FAIRLY LIGHT FONT.

21             BUT IN ANY EVENT, THE TERMS OF SERVICE IS LONG, IT'S IN

22     FINE PRINT, AND THE PROVISION THAT DEALS WITH ARBITRATION, AND

23     IN PARTICULAR THE DUTY TO -- THE DELEGATION TO THE ARBITRATOR

24     TO DECIDE ARBITRABILITY IS PRETTY HIDDEN IN THERE.

25             AND SO THERE'S A FAIR ELEMENT -- THERE'S A FAIR ARGUMENT

1    THAT THERE'S AT LEAST SOME ELEMENT OF PROCEDURAL

2    UNCONSCIONABILITY.  THAT'S AT LEAST MY ANALYSIS.

3         CERTAINLY THEY COULD HAVE DONE A BETTER JOB.  YOU COULD

4    HIGHLIGHT, BOLD CERTAIN THINGS.  YOU COULD SUMMARIZE, PUT A

5    SUMMARY AT THE FRONT.  THERE'S MANY WAYS TO AVERT UNFAIR

6    SURPRISE, NONE OF WHICH WERE EXERCISED HERE.

7         SO THEN THE QUESTION IS WHAT ABOUT PROCEDURALLY -- I MEAN,

8    WHAT ABOUT SUBSTANTIVE UNCONSCIONABILITY?

9         SO IT IS NOT INHERENTLY UNCONSCIONABLE TO HAVE A

10   DELEGATION CLAUSE.  BUT I THINK AS THE CASE LAW, AS IT HAS NOW

11   EVOLVED, INCLUDING THE BIELSKI VS. COINBASE CASE LAST YEAR MADE

12   CLEAR THAT WHEN YOU ASSESS THE CONSCIONABILITY OF A DELEGATION

13   CLAUSE, IT MAY BE APPROPRIATE TO LOOK BEYOND THAT CLAUSE, IN

14   PARTICULAR, TO LOOK AT OTHER CLAUSES TO SEE THE FULL CONTEXT.

15        AND AS I UNDERSTAND IT HERE, ONE OF THE PROBLEMS WITH THE

16   ARBITRATION DELEGATION CLAUSE IS THAT YOU HAVE THIS BELLWETHER

17   SYSTEM, NOT DISSIMILAR TO WHAT I LOOKED AT IN MCLELLAN, AND TO

18   THE EXTENT THAT THAT BELLWETHER SYSTEM, TO SOMEBODY WHO DOESN'T

19   GET INTO THAT TOP 20, FOR INSTANCE, OR TOP 10 OR WHATEVER IT

20   IS, WHO'S NOT IN THE FIRST GROUP, THEY CAN'T EVEN GET A

21   DETERMINATION OF ARBITRABILITY BECAUSE THEY CAN'T EVEN GET TO

22   ARBITRATION.

23        SO IT SEEMS TO ME THAT THERE'S A PRETTY GOOD ARGUMENT THAT

24   THERE'S A PROBLEM HERE.  EVEN THOUGH THERE'S A BIT OF

25   CONFLATION BETWEEN SUBSTANTIVE UNCONSCIONABILITY OF OTHER

1    PROVISIONS AND THE DELEGATION CLAUSE, I THINK THE NINTH CIRCUIT

2    HAS MADE CLEAR THAT TO THE EFFECT THAT THE DELEGATION CLAUSE

3    OPERATION AND ENFORCEMENT IS AFFECTED BY OTHER PROVISIONS, THAT

4    THE COURT SHOULD LOOK AT THOSE OTHER PROVISIONS AND THEN MAKE

5    AN ASSESSMENT, OVERALL ASSESSMENT ABOUT THE FAIRNESS OF THE

6    DELEGATION CLAUSE.

7         SO THAT'S WHERE I SEE IT.  I GUESS I SHOULD LET THE

8    DEFENSE SORT OF RESPOND BECAUSE I'VE KIND OF SIGNALLED MY

9    INITIAL TAKE.  BUT I'LL HEAR WHY YOU THINK I'M WRONG.

10         MS. YBARRA:  THANK YOU, YOUR HONOR.

11         MICHELLE YBARRA FOR DEFENDANTS AVIAGAMES, VICKIE CHEN, AND

12    PING WANG.

13         FIRST, WE AGREE WITH YOUR HONOR THAT THESE ARE CLICKWRAP

14    AGREEMENTS AND FORMATION IS NOT AN ISSUE.

15         ON PROCEDURAL UNCONSCIONABILITY, WE DISAGREE THAT THERE'S

16    PROCEDURAL UNCONSCIONABILITY PRESENT HERE.  THE VERY SECOND

17    SENTENCE OF THE TERMS OF SERVICE NOTIFY USERS IN ALL CAPITAL

18    LETTERS ABOUT THE EXISTENCE OF THE ARBITRATION CLAUSE AND

19    ADVISES THEM TO READ SECTION 15 WHICH OUTLINES THE ARBITRATION

20    CLAUSE IN FULL.

21         HOWEVER, YOUR HONOR IS CORRECT IN STATING THAT, I GUESS

22    THE -- THE REAL DISPUTE HERE MAY BE OVER THE SUBSTANTIVE

23    UNCONSCIONABILITY ARGUMENT, WHICH IS THE ONLY ONE THAT

24    PLAINTIFFS REALLY TARGET AT THE DELEGATION CLAUSE SPECIFICALLY.

25         I THINK THE PROCEDURAL UNCONSCIONABILITY ARGUMENTS RAISED

1    IN PLAINTIFFS' -- I'M SORRY -- IN PLAINTIFFS' OPPOSITION REALLY

2    HAVE TO DO WITH THE TERMS OF SERVICE AS A WHOLE, OR THE

3    ARBITRATION CLAUSE AT LARGE, WHEN THE COURT'S ANALYSIS HERE

4    NEEDS TO BE, SHOULD BE PROPERLY FOCUSSED ON THE DELEGATION

5    CLAUSE SPECIFICALLY, AND WHETHER IT WOULD BE UNFAIR TO DELEGATE

6    TO THE ARBITRATOR GATEWAY ISSUES OF ARBITRABILITY.

7         NOW, TURNING TO THE MASS ARBITRATION RULES THAT ARE

8    DISCUSSED IN PLAINTIFFS' OPPOSITION -- AND I KNOW YOUR HONOR

9    CONSIDERED A VERSION OF THESE RULES IN THE MCLELLAN CASE --

10   THAT CHALLENGE IS REALLY ABOUT A CHALLENGE TO THE FAIRNESS OF

11   THOSE SUPPLEMENTARY RULES FOR MULTIPLE CASE FILINGS THAT THE

12   AAA HAS PUT OUT.

13        I WILL NOTE AT THE OUTSET, THESE AAA NEW SUPPLEMENTARY

14   RULES ARE VERY DIFFERENT FROM THE RULES THAT YOUR HONOR

15   CONSIDERED IN MCLELLAN.  MCLELLAN HAD A BELLWETHER PROCEDURE

16   THAT DIDN'T APPLY MUTUALLY.  HERE THE BELLWETHER PROCEDURE DOES

17   APPLY MUTUALLY.

18        MCLELLAN -- UNDER MCLELLAN, THOSE RULES DIDN'T ALLOW NEW

19   ARBITRATIONS TO EVEN BE FILED UNTIL THE FIRST FIVE ARBITRATIONS

20   WERE ENTIRELY RESOLVED.  AND ALL THE WHILE, VERIZON PURPORTED

21   TO PRESERVE THE RIGHT TO RAISE STATUTE OF LIMITATIONS DEFENSES.

22        AND AS YOUR HONOR NOTED IN THE MCLELLAN DECISION, YOU

23   KNOW, THAT -- THOSE -- DOING THINGS AT SUCH A STAGGERED PACE

24   COULD TAKE A LONG TIME, AND VERIZON SORT OF KEEPING -- WAS

25   PURPORTING TO KEEP TO ITSELF THE ABILITY TO RAISE THESE STATUTE

1    OF LIMITATIONS DEFENSES EVEN WHILE DRAGGING OUT THE

2    ARBITRATIONS.

3         NONE OF THOSE FEATURES ARE PRESENT IN THE SPECIFIC AAA

4    RULES FOR SUPPLEMENTARY -- SUPPLEMENTARY RULES FOR MULTIPLE

5    CASE FILINGS THAT ARE REFERENCED IN AVIA'S TERMS OF SERVICE.

6    THERE'S NO PROHIBITION ON FILING ARBITRATIONS WHILE THE FIRST

7    20 BELLWETHER CASES ARE PENDING, AND IN FACT, THERE'S AN

8    EXPLICIT TOLLING PROVISION INCLUDED THERE.

9         THE OTHER DISTINCTION BETWEEN THIS CASE AND MCLELLAN IS

10   THAT IN MCLELLAN, THE COURT ACKNOWLEDGED THAT THERE WAS NO

11   EXPRESS DELEGATION CLAUSE LIKE THERE IS HERE.  AND THE COURT

12   NOTED THAT IF THERE HAD BEEN AN EXPRESS DELEGATION CLAUSE IN

13   THAT CASE, THE COURT'S ROLE WOULD BE LIMITED TO EVALUATING

14   WHETHER THE ARBITRATION -- THE BELLWETHER ARBITRATION PROCEDURE

15   WAS SO BIASED THAT IT NEGATED THE AGREEMENT TO ARBITRATE.

16        THAT, THAT LIMITED INQUIRY IS THE APPROPRIATE INQUIRY

17   HERE.

18        AND FINALLY, I'LL POINT OUT THAT AVIA'S TERMS PROVIDE FOR

19   THE AAA SUPPLEMENTARY RULES FOR MULTIPLE CASE FILINGS TO APPLY

20   ONLY IF THERE ARE 25 OR MORE SIMILAR CLAIMS ASSERTED IN

21   ARBITRATION BY THE SAME COUNSEL, OR THE CLAIMS ARE OTHERWISE

22   COORDINATED.

23        THERE'S NO -- AND IF YOU DON'T HAVE 25 OR MORE OF THOSE

24   KINDS OF CLAIMS ASSERTED, THEN THE NORMAL AAA CONSUMER RULES

25   APPLY, AND THAT'S MADE CLEAR IN THE TERMS THEMSELVES.

1        THERE'S NO REASON TO THINK HERE THAT THE SUPPLEMENTARY

2   RULES FOR MULTIPLE CASE FILINGS WOULD INDEED APPLY.  WE HAVE

3   TWO NAMED PLAINTIFFS HERE, NOT 25 OR MORE.

4        AND IN THE MCLELLAN CASE, THE PLAINTIFFS' COUNSEL

5   SUBMITTED A DECLARATION TO THE COURT SAYING, WE HAVE 27 NAMED

6   PLAINTIFFS AND OVER 2,000 WAITING IN THE WINGS.

7        AND SO IT WAS -- IT WAS A CLEARLY DIFFERENT SITUATION THAN

8   WHAT WE HAVE HERE.  WE DON'T HAVE ANY SUCH REPRESENTATION FROM

9   PLAINTIFFS' COUNSEL THAT THERE ARE DOZENS OR THOUSANDS OF

10  UNNAMED PLAINTIFFS WAITING IN THE WINGS WITH SIMILAR CLAIMS.

11        THE COURT:  LET ME STOP YOU THERE AND ASK PLAINTIFFS,

12  IS THAT CORRECT?  I DIDN'T SEE ANY EVIDENCE OF THIS CLAUSE

13  APPLYING.  ARE THERE MORE THAN 25 SIMILAR CLAIMS THAT YOUR FIRM

14  OR FIRMS HAVE THAT ARE WAITING FOR SOME KIND OF ARBITRATION OR

15  ADJUDICATION?

16        MR. MAHAFFEY:  WE CERTAINLY HAVE OTHER, OTHER

17  PLAINTIFFS, YOUR HONOR, AND OBVIOUSLY THE ACTION IS ALLEGED AS

18  A CLASS ACTION.

19        I DON'T KNOW IF I CAN CONFIRM WHETHER -- PRECISELY HOW

20  MANY PLAINTIFFS WE HAVE REPRESENTATION AGREEMENTS WITH YET AND

21  WHETHER THAT, THAT PROVISION WOULD BE TRIGGERED.

22        THE COURT:  WELL, DOES THAT MAKE THIS PREMATURE THEN?

23  I MEAN, IF YOUR CHALLENGED USE PROVISION MAY NOT EVEN APPLY --

24  BECAUSE IT'S CORRECT THAT IN MCLELLAN, THERE WAS AN EXPRESS

25  REPRESENTATION THAT THERE WERE 27 NAMED, 2,000 MORE WAITING IN

1    THE WINGS, AND THAT TRIGGERED, YOU KNOW, THE CONTROVERSY

2    BECAUSE THAT DID CALL -- CLEARLY CALL INTO PLAY THE, THE

3    PROVISION, THE MASS FILING PROVISION.

4        IF WE DON'T HAVE THAT HERE, I'M NOT SURE WHY THIS COURT IS

5    IN A POSITION TO, TO ADJUDICATE SOMETHING.  IT SEEMS TO ME IT'S

6    PREMATURE, OR NOT RIPE.

7            MR. MAHAFFEY:  WELL, YOUR HONOR, I THINK TWO THINGS

8    IN RESPONSE TO THAT.  FIRSTLY, THERE ARE MANY OTHER PROVISIONS

9    CONTAINED HEREIN THAT ARE SUBSTANTIVELY UNCONSCIONABLE, SO

10   WE'RE CERTAINLY NOT RESTING OUR UNCONSCIONABILITY ARGUMENT ON

11   THAT PROVISION ALONE.

12       AND THEN I CAN SAY, WHILE I DON'T KNOW IF I CAN

13   NECESSARILY REPRESENT THAT WE HAVE REPRESENTATION AGREEMENTS

14   WITH MORE THAN 25 PEOPLE AT THE MOMENT, MY UNDERSTANDING IS WE

15   HAVE HAD CONTACT WITH, YOU KNOW, NUMEROUS POTENTIAL CLIENTS

16   THAT WOULD FAR EXCEED THAT.  SO WHETHER WE WILL BE IN THE NEAR

17   FUTURE IN A POSITION TO REPRESENT THAT TO THE COURT I THINK IS

18   AN OPEN QUESTION.

19       BUT I DON'T THINK THE DISPUTE IS PREMATURE.

20           THE COURT:  WELL, AT LEAST BASED ON WHAT'S ALLEGED IN

21   THE COMPLAINT, THE FACT THAT YOU ALLEGED A PUTATIVE CLASS, I

22   DON'T KNOW IF THAT'S ENOUGH.  INTERESTING QUESTION.

23       NOW, YOU SAY THERE'S OTHER PROVISIONS.  I UNDERSTAND

24   THERE'S STATUTE OF LIMITATIONS ISSUES, THERE'S A WAIVER OF THE

25   RIGHT TO JURY TRIAL.

1      I WILL SAY, THE WAIVER OF RIGHT TO JURY TRIAL, I MEAN,

2   THAT'S ALMOST INHERENT IN EVERY ARBITRATION CLAUSE.  I DIDN'T

3   SEE ANYTHING SPECIFICALLY UNIQUE ABOUT THAT PROVISION.

4      I WILL SAY THAT THE STATUTE OF LIMITATIONS PROVISION DOES

5   SEEM MORE PROBLEMATIC BECAUSE A PART OF THAT DEPENDS ON HOW

6   MUCH SHORTER THAN THE NORMAL LIMITATIONS PERIOD IT IS, AND

7   THERE'S SOME CASES THAT SUGGEST THAT IF YOU'VE GOT A, YOU KNOW,

8   A CONTRACTUAL AGREEMENT THAT SAYS SIX MONTHS IS THE STATUTE OF

9   LIMITATIONS, WHICH IS QUITE A BIT SHORTER THAN THE ONE YEAR

10  UNDER THE FEHA, OR THREE TO FOUR YEARS UNDER THE LABOR CODE,

11  THAT IS A, QUOTE, SIGNIFICANTLY SHORTENED PERIOD.

12     AND HERE IT APPEARS THAT ABSENT THE ONE YEAR LIMITATIONS

13  CLAUSE IN THE TERMS OF SERVICES, YOU PROBABLY HAVE THREE YEARS

14  UNDER THE CLRA, FOUR YEARS UNDER THE UCL, FOUR YEARS UNDER

15  RICO.

16     SO THERE ARE -- IT'S NOT DOWN TO SIX MONTHS, BUT IT'S DOWN

17  TO ONE YEAR, AND IT'S A SHORTENING OF A MATTER OF A NUMBER OF

18  YEARS, SO IT IS A FAIRLY SIGNIFICANT SHORTENING OF THE

19  LIMITATIONS PERIOD.

20     BUT THAT, THAT IS A -- THE QUESTION IS, WHAT OTHER

21  PROVISIONS, OBJECTIONABLE PROVISIONS OF THE ARBITRATIONS CLAUSE

22  AFFECT THE DELEGATION CLAUSE?

23     NOT EVERYTHING THAT IS UNCONSCIONABLE AFFECTS THE

24  DELEGATION CLAUSE.  SO THE FIRST THING I'VE GOT TO DECIDE IS

25  WHETHER THE DELEGATION CLAUSE IS ENFORCEABLE.

```
1          AND IF YOU HAVE A PROVISION THAT IS -- THAT INTERRELATES

2     OR INTEROPERATES IN SOME WAY WITH THE DELEGATION CLAUSE, I

3     THINK YOU CAN CONSIDER THAT.

4          IN THE HECKMAN VERSUS LIVE NATION CASE, THERE WAS AN ISSUE

5     THERE ABOUT, YOU KNOW, HOW DELEGATION DETERMINATION WOULD THEN

6     BE BINDING ON EVERYBODY ELSE, SO IT HAD TO DO WITH THE

7     OPERATION OF THE ADJUDICATION AND ENFORCEMENT OF THE DELEGATION

8     CLAUSE; AND IF THE DELEGATION CLAUSE WERE SUBJECT TO A

9     BELLWETHER PROCESS -- AND I THINK THE OBJECTIONABLE THING ABOUT

10    THE BELLWETHER PROCESS IS NOT JUST BECAUSE IT, IN MCLELLAN IT

11    FORCED PEOPLE INTO RISKING STATUTE OF LIMITATIONS PROBLEMS, IT

12    WAS FACIALLY, YOU KNOW, ONE DIRECTIONAL.

13         BUT THE FACT THAT YOU BOTTLENECKED EVERYTHING, THAT YOU

14    CAN'T JUST PROCEED -- YOU ONLY CAN PROCEED SO MANY AT A TIME,

15    AND THAT FORCES PEOPLE TO WAIT, WHEN NORMALLY, ESPECIALLY IF

16    YOU IMPOSE A LIMITATIONS PERIOD, THAT SUGGESTS YOU WANT TO DO

17    THINGS QUICKLY, AND THE WHOLE POINT OF ARBITRATION IS TO GET

18    THINGS DONE QUICKLY.

19         AND SO IT SEEMS COUNTER TO THE WHOLE PURPOSE OF

20    ARBITRATION TO SAY, WELL, YOU'VE GOT TO WAIT IN LINE, ET

21    CETERA, ET CETERA.  I THINK THAT'S THE VISE THAT STILL EXISTS.

22         BUT -- AND THAT CAN AFFECT THE ABILITY TO GET AN

23    ADJUDICATION ON THE DELEGATION CLAUSE.

24         SO THAT'S HOW THERE'S AN INTERRELATIONSHIP HERE.  JUST

25    LIKE IF YOU SAY, IF YOU WANT TO ARGUE ABOUT THE DELEGATION
```

```
1    CLAUSE, YOU'VE GOT TO GO TO THE MIDDLE OF SOUTH DAKOTA AND
2    PHYSICALLY APPEAR THERE AND ARGUE YOUR MOTION, SOMETHING LIKE
3    THAT.  THAT WOULD BE SOMETHING THAT'S PART OF THE AGREEMENT
4    THAT THEN GETS BROUGHT INTO BY CONTEXT INTO THE DELEGATION
5    CLAUSE TO SEE WHETHER THE DELEGATION CLAUSE IS UNCONSCIONABLE.
6         BUT THE STATUTE OF LIMITATIONS DOESN'T -- THAT SEEMS
7    SEPARATE TO ME.  I DON'T KNOW WHY THAT WOULD RENDER -- EVEN IF
8    IT WERE UNCONSCIONABLE ON ITS OWN, I'M NOT SURE WHY THAT WOULD
9    RENDER THE DELEGATION CLAUSE UNCONSCIONABLE.
10             MR. MAHAFFEY:  IF I MIGHT, YOUR HONOR?
11        I DON'T KNOW THAT THE QUESTION IS SO MUCH THE
12   ENFORCEABILITY OF THE DELEGATION CLAUSE, AND I THINK THERE ARE
13   SOME FUNDAMENTAL MISTAKES IN PLAINTIFFS' -- OR IN DEFENDANTS'
14   DRAFTING ON THIS.
15        AND IF I WOULD -- IF I MIGHT, I POINT YOU TO -- THEY RELY
16   EXTENSIVELY ON THE RENT-A-CENTER CASE OUT OF THE SUPREME COURT,
17   OF COURSE, FOR THEIR PROPOSITION THAT, YOU KNOW, CLEAR LANGUAGE
18   THAT THERE'S BEEN DELEGATION IS KIND OF -- I HATE TO USE THESE
19   LATIN PHRASES -- BUT IPSO FACTO ESTABLISHES THAT THERE'S BEEN
20   AN UNMISTAKABLE -- CLEAR AND UNMISTAKABLE MANIFESTATION OF
21   ASSENT.
22        BUT WHEN YOU LOOK AT RENT-A-CENTER -- AND OF COURSE THEIR
23   FIRST CITATION TO IT IN THEIR OPENING BRIEF ON PAGE 11 I
24   BELIEVE OF THEIR MOTION IS ACTUALLY TO THE DISSENT IN THE CASE,
25   AND I DON'T KNOW PRECISELY WHAT LANGUAGE THEY'RE CITING THERE.
```

```
1          BUT THEN IF YOU LOOK AT THEIR REPLY BRIEF, AT PAGES 6

2     THROUGH 8, THEY RELY EXTENSIVELY ON RENT-A-CENTER AGAIN AND DO

3     TRY TO SUPPORT THIS ARGUMENT THAT JUST BECAUSE THERE'S A CLEAR

4     DELEGATION CLAUSE, THAT'S THE END OF THE MATTER.

5          WELL, IN FACT, IN RENT-A-CENTER, AS I'M SURE YOU ARE

6     FAMILIAR, THE ISSUE WAS -- THE CONTRACT AT ISSUE THERE WAS AN

7     ARBITRATION CLAUSE ITSELF; RIGHT?  IT WAS AN ARBITRATION CLAUSE

8     BETWEEN THE EMPLOYEE TO ARBITRATE VARIOUS ASPECTS OF HIS

9     EMPLOYMENT DISPUTE WITH HIS EMPLOYER.

10         AND THE COURT IN THAT CASE SPENT AN EXTENSIVE PERIOD OF

11    TIME, IN FACT, THE ENTIRETY OF SECTION B STARTING ON PAGE 70 OF

12    THAT OPINION IS DEDICATED TO A DISCUSSION OF HOW IT WAS NOT THE

13    COURT'S INTENTION TO OVERRULE OTHER VERY KEY, YOU KNOW, KEY

14    CASES IN THIS SUBJECT MATTER AREA, INCLUDING PRIMA PAINT, THE

15    BUCKEYE CHECK CASHING CASE, AND PRESTON VS. FERRER.

16         AND THE COURT THERE WAS VERY CAREFUL TO DELINEATE BETWEEN

17    THOSE CONTRACTS WHICH INVOLVED CONTRACTS FOR OTHER SERVICES IN

18    WHICH YOU COULD CHALLENGE THE ARBITRATION PROVISION MORE

19    BROADLY, IT'S NOT JUST THE DELEGATION PROVISION, BUT THE

20    ARBITRATION PROVISION ON GROUNDS OF UNCONSCIONABILITY.

21         AND IN PRIMA PAINT, OF COURSE, THE CONTRACT THERE I

22    BELIEVE WAS FOR CONSULTING SERVICES; THE CONTRACT IN

23    BUCKEYE CHECK CASHING, NOT SURPRISINGLY, WAS FOR CHECK CASHING

24    SERVICES; AND IN PRESTON VS. FERRER, IT WAS FOR PERSONAL

25    MANAGEMENT OR TALENT AGENCY SERVICES.
```

1          AND SO IT'S PRETTY CLEAR FROM THAT PRECEDENT THAT THERE

2    WAS NO BROAD INTENTION TO, TO MAKE THE ISSUE OF DELEGATION --

3    THE DELEGATION CLAUSE -- SO THERE THE ISSUE, OF COURSE, BECAME

4    WITHIN AN ARBITRATION CONTRACT, WE NEED TO FOCUS ON THE

5    UNCONSCIONABILITY OF THE DELEGATION PROVISION, WHEREAS HERE WE

6    HAVE A MUCH BROADER CONTRACT THAT IS NOT EXCLUSIVELY DEDICATED

7    TO DEALING WITH ARBITRATION.  IT'S FOR, YOU KNOW, A CONTRACT

8    BETWEEN A USER OF AN APP TO PLAY ONLINE GAMES WHICH THEY WERE

9    LED TO BELIEVE WERE GAMES OF SKILL AND IT TURNS OUT, IN FACT,

10   THEY WERE NOT.

11        SO THE CONTEXT REALLY DOES MATTER.

12        AND I MIGHT ADD THAT JUST IN TERMS OF THE WAY THE

13   DELEGATION CLAUSE WAS INCORPORATED IN THE TERMS OF SERVICE,

14   THERE WAS NO DELEGATION CLAUSE -- IF YOU HAVE -- IF YOU ACCEPT

15   DEFENDANTS' CONTENTION, OUR CLIENTS WERE BOUND WHEN THEY

16   ACCEPTED THE TERMS OF SERVICE WHEN THEY FIRST SIGNED IN TO THE

17   WEBSITE, AND I BELIEVE FOR MR. PANDOLFI THAT WAS SOMETIME IN

18   SEPTEMBER OF 2022, AND THEN MS. SHAWCROFT WAS JUST SLIGHTLY

19   LATER.

20        THERE WAS NO DELEGATION CLAUSE AT THAT TIME.  THE

21   DELEGATION CLAUSE WAS INCORPORATED DURING THESE ROLLOUTS OF

22   THESE POP-UPS.

23        AND BY --

24             THE COURT:  OKAY.  BUT I'VE ALREADY MADE A

25    DETERMINATION THAT WHATEVER IT WAS EARLY ON, THERE WAS AN

```
1     ACCEPTANCE BECAUSE THIS WAS A PRETTY CLEAR CLICKWRAP -- AND YOU

2     MAY DISAGREE WITH THE ANALYSIS OF CLICKWRAP AND BROWSEWRAP AND

3     ALL THAT, AND I CAN SEE ARGUMENTS AS TO WHY, BUT THAT DOESN'T

4     TAKE INTO ACCOUNT THE REALITY OF THE WAY THE INTERNET WORKS

5     THESE DAYS.  AND TO TAKE THE FORMALITY OF CONTRACT ASSENT TO AN

6     EXTREME, MAYBE ONE SHOULD READ ZAMANAT.

7          BUT IT IS WHAT IT IS, SO I THINK THAT THE CONTRACT IS IN

8     PLAY IN THE FIRST INSTANCE.

9          THE QUESTION IS, HOW ENFORCEABLE -- BEFORE WE GET TO THE

10    ACTUAL SUBSTANTIVE QUESTION OF UNCONSCIONABILITY, WHO DECIDES

11    THAT QUESTION?

12         AND I THINK RENT-A-CENTER IS PRETTY CLEAR.  IT DOES SAY

13    THAT THE PRESUMPTION IS NOT IN FAVOR OF ARBITRATION.  UNLIKE

14    THE SCOPE OF AN ARBITRATION CLAUSE, YOU ASSUME THAT IT'S --

15    YOU'RE ALWAYS GOING TO ASSUME FOR THE MOST PART THAT THAT'S THE

16    COURT'S JOB TO DETERMINE ENFORCEABILITY, ARBITRABILITY.  BUT

17    THE PARTIES CAN REVERSE THAT BURDEN, BUT THEY HAVE TO DO SO

18    PRETTY CLEARLY.  THAT'S ONE THING THAT RENT-A-CENTER SAYS.  YOU

19    HAVE TO HAVE PRETTY CLEAR LANGUAGE.  IF IT'S AMBIGUOUS AND

20    MUCKY, THEN THE PROPONENT OF ARBITRATION MAY NOT GET THE

21    BENEFIT OF THAT DELEGATION CLAUSE.

22         AND THE NINTH CIRCUIT HAS SAID, IF YOU'RE THEN ALSO

23    LOOKING AT -- EVEN IF IT IS CLEAR, IT MAY BE UNCONSCIONABLE,

24    AND YOU CAN LOOK TO OTHER RELATED PROVISIONS IN THE ARBITRATION

25    CONTRACT OR THE TERMS OF SERVICE THAT MIGHT RENDER THAT
```

1    UNCONSCIONABLE, WHICH I JUST SPENT THE LAST 20 MINUTES TALKING

2    ABOUT.

3         IF WHAT YOU'RE SUGGESTING IS LANGUAGE IN PARAGRAPH 15 IS

4    NOT A CLEAR ENOUGH DELEGATION, I DON'T KNOW IF YOU'RE MAKING

5    THAT ARGUMENT, THAT IT DOESN'T MEET THE STANDARD OF

6    RENT-A-CENTER, I DON'T KNOW, ARE YOU MAKING THAT ARGUMENT?

7              MR. MAHAFFEY:  SORRY, THAT IT DOESN'T MEET THE

8    STANDARD OF RENT-A-CENTER, YOUR HONOR?

9              THE COURT:  YEAH, THAT THERE'S NOT SUFFICIENTLY CLEAR

10   DELEGATION TO THE ARBITRATOR OF ARBITRABILITY.

11             MR. MAHAFFEY:  I THINK THE LANGUAGE THAT WAS, THAT

12   WAS CONTAINED IN THE -- OF COURSE THE CONTRACT, WHEN THEY

13   ALLEGE OUR PLAINTIFFS ACCEPTED IT, DID NOT CONTAIN A DELEGATION

14   CLAUSE AT ALL.

15        THE --

16             THE COURT:  THE UPDATED ONE, THOUGH.

17             MR. MAHAFFEY:  THE UPDATED SEPTEMBER 2020, I DO

18   BELIEVE THAT LANGUAGE MEETS THE BASELINE CLARITY, YOU KNOW,

19   THAT'S DISCUSSED AT LEAST IN, IN RENT-A-CENTER.

20             THE COURT:  OKAY.  WELL, THEN THE QUESTION IS ITS

21   CONSCIONABILITY, AND I THINK THERE ARE SERIOUS QUESTIONS ABOUT

22   UNCONSCIONABILITY IF -- TO GET TO THIS DETERMINATION OF

23   ARBITRABILITY, YOU STILL HAVE TO GET TO AN ARBITRATOR,

24   ARGUABLY, OR SOMEBODY HAS GOT TO, YOU KNOW -- IF YOU -- IF THIS

25   IS TO PREVAIL, YOU'VE GOT TO GET THE ARBITRATOR TO DETERMINE

1     ARBITRABILITY; BUT YOU CAN'T GET TO AN ARBITRATOR, ARGUABLY, IF

2     THE BELLWETHER PROCESS IS TOO MUCH OF A BOTTLENECK.

3          BUT THEN THE PROBLEM IS, UNLIKE MCLELLAN, IT'S A POTENTIAL

4     BOTTLENECK.  BUT I HAVEN'T SEEN FACTS THAT ALLEGE THAT IT'S A

5     REAL BOTTLENECK AT THIS POINT, BECAUSE IF YOU DON'T HAVE 25 OR

6     MORE PEOPLE, YOU'RE NOT BOUND BY THIS.  YOU CAN GO STRAIGHT

7     AND, YOU KNOW, I MEAN, ARBITRATE UNLESS THERE'S OTHER

8     PROVISIONS THAT ARE UNCONSCIONABLE, AND MAYBE THE STATUTE OF

9     LIMITATIONS IS A PROBLEM BECAUSE THAT DOES APPLY TO EVERYONE.

10          NOW, I DON'T KNOW IF THAT IS AN IMPEDIMENT IN YOUR CASE

11    WHERE YOU'VE GOT SOME CLIENTS WHO ARE OUTSIDE THAT ONE YEAR

12    LIMIT AND, THEREFORE, THEY'RE NOW CAUGHT BETWEEN THE TOC AND

13    THE ACTUAL STATUTORY TERM AND THEY MIGHT GET RELIEF FROM THAT.

14          BUT THAT'S SORT OF WHERE IT'S AT.

15          AND I THINK THE JURY WAIVER, THAT'S A HARD SELL TO SAY

16    THAT'S UNCONSCIONABLE.  THAT'S INHERENT IN ARBITRATION.

17          MR. MAHAFFEY:  IF I MIGHT, YOUR HONOR, THROUGH THE

18    BENEFIT OF MODERN TECHNOLOGY, I'VE GOT SOME CONFIRMATION, I'LL

19    REPRESENT TO YOU WE'VE BEEN CONTACTED BY IN EXCESS OF 100, 102

20    PEOPLE SINCE THE TIME OF FILING, AND WE HAVE 26 CLIENTS

21    ENGAGED, I'M TOLD.  SO I DO BELIEVE WE MEET THAT THRESHOLD.

22          NOW, I ACKNOWLEDGE AS PART OF THE PLEADING, WE DON'T HAVE

23    THAT EVIDENCE IN FRONT OF YOU.  I'M JUST REPRESENTING THAT TO

24    YOU AS AN OFFICER OF THE COURT.

25          THE COURT:  OKAY.  WELL, WE'LL HAVE TO THINK ABOUT

1      PROCEDURALLY WHAT DO WE DO ABOUT THAT.

2          BUT LET'S SAY WE GET TO A POINT, WHETHER IT'S THROUGH AN

3      AMENDED, AN AMENDED -- EITHER A SUPPLEMENTAL OR AMENDED

4      PLEADING OR SOMETHING, MS. YBARRA.  LET'S TALK ABOUT THE MERITS

5      OF THIS QUESTION.

6          I UNDERSTAND THIS IS NOT AS EGREGIOUS IN YOUR VIEW BECAUSE

7      IT DOESN'T HAVE THAT PROBLEM THAT WAS INHERENT I THINK WITH THE

8      STATUTE OF LIMITATIONS RUNNING WHILE PEOPLE WERE WAITING.

9      THAT'S PROBABLY THE MOST EGREGIOUS.

10         BUT YOU STILL HAVE THE POTENTIAL BOTTLENECK PROBLEM, AND

11     THE DISTINCTION I DREW BETWEEN A TRUE BELLWETHER, WHICH IS

12     SUPPOSED TO BE AN INDICATOR, AND THEN, YOU KNOW, YOU USE THAT

13     TO TRY TO SETTLE A CASE, AND IF IT DOESN'T SETTLE THESE CASES

14     AND THEY DON'T PROVE TO BE REPRESENTATIVE OR WHATEVER, THEN

15     PEOPLE ARE FREE TO GO ABOUT THE LITIGATION.  THERE'S NO QUEUE

16     OR THAT SORT OF THING.  THAT'S WHY THIS IS STILL DIFFERENT IN

17     ITS STRUCTURE.

18         MS. YBARRA:  YES, YOUR HONOR.

19         LET ME, IF I MAY, JUST ADDRESS A COUPLE THINGS YOU

20     DISCUSSED WITH COUNSEL.  BACKING UP TO RENT-A-CENTER,

21     RENT-A-CENTER SAYS THAT THE COURT'S INQUIRY, THE COURT'S JOB IS

22     TO LOOK AT THE SPECIFIC AGREEMENT THAT IS BEING ASKED -- THE

23     PARTIES ARE ASKING THE COURT TO BE ENFORCED, AND THAT IS THE

24     DELEGATION CLAUSE HERE.

25         THAT'S DISTINGUISHED FROM THE TERMS GENERALLY, THAT'S

1    DISTINGUISHED FROM THE ARBITRATION AGREEMENT AS A WHOLE BECAUSE

2    THE FAA TREATS THE DELEGATION PROVISION, STANDING ALONE, AS AN

3    ENFORCEABLE AGREEMENT TO ARBITRATE.

4         THE COURT:  YEAH, I UNDERSTAND THAT.  THAT'S WHY I

5    CITED BIELSKI VERSUS COINBASE, AND I'VE ALSO CITED HECKMAN

6    VERSUS LIVE NATION, ALL RECENT CASES THAT SAY, YEAH, THE FOCUS

7    IS ON, IF YOU'RE GOING TO CHALLENGE UNCONSCIONABILITY, THE

8    UNCONSCIONABILITY OF THE DELEGATION CLAUSE.

9         HOWEVER, THERE ARE SOME THINGS THAT MAYBE YOU HAVE TO LOOK

10   AT.  YOU DON'T -- IT'S DIRECTLY FROM THOSE COURTS THAT SAID YOU

11   DON'T HAVE TO NECESSARILY, AS A BLANKET CATEGORICAL RULE,

12   CONFINE YOURSELF TO THAT, PARTICULARLY WHEN THE ENFORCEMENT OR

13   THE OPERATION OF THAT DELEGATION CLAUSE IS ITSELF AFFECTED BY

14   OTHER PROVISIONS.

15        MS. YBARRA:  UNDERSTOOD, YOUR HONOR.

16   AND I THINK YOU MENTIONED EARLIER, WELL, WHAT IF THE

17   DELEGATION CLAUSE IS FUNCTIONALLY INTERTWINED WITH CLAUSES

18   OUTSIDE OF THE, YOU KNOW, SPECIFIC LANGUAGE DELEGATING GATEWAY

19   ISSUES TO THE ARBITRATOR?

20        THAT'S CERTAINLY A FAIR CONSIDERATION FOR YOUR HONOR.

21        HOWEVER, THE TEST IS, DOES ENFORCEMENT OF THE DELEGATION

22   CLAUSE, WHEN YOU'RE LOOKING AT UNCONSCIONABILITY, IS IT GOING

23   TO RENDER THIS SO UNFAIR AS TO NEGATE APPLICATION OF THE

24   DELEGATION CLAUSE?

25        AND THE PLAINTIFF CITED A NINTH CIRCUIT CASE,

1    LIM V. TFORCE LOGISTICS, THIS IS FROM 2021, WHERE THE NINTH

2    CIRCUIT GOES THROUGH THIS EXERCISE AND DOES THIS ANALYSIS IN

3    DETAIL.  AND I THINK IT'S USEFUL BECAUSE IT, IT EXEMPLIFIES

4    SITUATIONS IN WHICH THERE'S UNCONSCIONABILITY ARGUABLY IN THE

5    DELEGATION CLAUSE ITSELF THAT RENDERS DELEGATING GATEWAY ISSUES

6    TO THE ARBITRATOR UNFAIR.

7         THOSE ISSUES WERE, FOR EXAMPLE, COST SPLITTING.  THE COST

8    SPLITTING, WHICH WAS -- REQUIRED THE PLAINTIFF, WHO WAS AN

9    EMPLOYEE, TO SPLIT THE COSTS OF ARBITRATION WITH HIS EMPLOYER,

10   THAT MADE DELEGATING GATEWAY ISSUES TO THE ARBITRATOR UNFAIR

11   BECAUSE IT MADE ARBITRATION PROHIBITIVELY COSTLY FOR THE

12   PLAINTIFF EVEN JUST TO GET AN ADJUDICATION ON A GATEWAY ISSUE

13   OF ARBITRABILITY.  IT DEPRIVED HIM OF PROCEEDING TO VINDICATE

14   HIS RIGHTS IF HE COULDN'T AFFORD IT.

15        THE VENUE PROVISION IN THAT CASE, THERE WAS A TEXAS VENUE

16   PROVISION STATING THAT ARBITRATIONS HAD TO OCCUR IN DALLAS, AND

17   THE PLAINTIFF LIVED IN CALIFORNIA.  THAT WAS NOT IN THE

18   DELEGATION CLAUSE ITSELF, BUT THE COURT SAID THAT IS GOING TO

19   MAKE EVEN GETTING AN ARBITRATOR TO DECIDE GATEWAY ISSUES OF

20   ARBITRABILITY TOO UNFAIR SUCH THAT WE'RE NOT GOING TO ENFORCE

21   THE DELEGATION CLAUSE.

22        THOSE ARE THE KINDS OF ISSUES THAT RENDER A DELEGATION

23   CLAUSE UNCONSCIONABLE, AND --

24            THE COURT:  ALL RIGHT.  SO WHAT IF THE CLAUSE SAYS,

25   YOU'VE GOT TO WAIT FIVE YEARS BEFORE YOU CAN -- YOU CAN FILE

```
1        YOUR ARBITRATION, BUT THERE'S A FIVE YEAR WAIT PERIOD JUST TO

2        GET A GATEWAY DETERMINATION.  SO, NO, YOU DON'T HAVE TO GO TO

3        TEXAS, NO, YOU DON'T HAVE TO PAY DOUBLE COSTS, OR COSTS, BUT

4        YOU'VE GOT TO WAIT FIVE YEARS.

5            HOW IS THAT ANY DIFFERENT?

6            MS. YBARRA:  THAT VERY WELL MIGHT BE SUFFICIENTLY

7        UNFAIR TO RENDER THE DELEGATION CLAUSE UNENFORCEABLE.

8            BUT THAT'S NOT THE SITUATION WE HAVE HERE.

9            THE COURT:  IT'S A DEGREE.  IT'S A QUESTION OF

10       DEGREE.  YOU WOULD CONCEDE THAT SOMETHING THAT FORCES PEOPLE TO

11       WAIT, FORCES PEOPLE TO PAY MORE, FORCES PEOPLE TO GO TO TEXAS

12       FROM CALIFORNIA OR WHENEVER THEY ARE, COULD BE PROBLEMATIC,

13       EVEN THOUGH THEY'RE NOT WITHIN THE LANGUAGE OF THE DELEGATION

14       CLAUSE, BUT IN THE WAY THAT THE DELEGATION CLAUSE IS

15       ACCESSIBLE, HOW IT CAN GO INTO OPERATION, THINGS THAT --

16       IMPEDIMENTS TO THE OPERATION OF GETTING A GATEWAY DECISION.

17           SO THAT'S EXACTLY I THINK THE ARGUMENT HERE WITH RESPECT

18       TO THE BELLWETHER.  THAT'S THE PROBLEM WITH THE BELLWETHER IS

19       THAT IF THE NUMBERS ARE THERE, PEOPLE MAY HAVE TO WAIT QUITE A

20       LONG TIME JUST TO GET INTO THE DOOR TO THE ARBITRATOR TO SAY,

21       FIGURE OUT ARBITRABILITY.

22           MS. YBARRA:  I WOULD CONCEDE, YOUR HONOR, THERE ARE

23       CIRCUMSTANCES WHERE -- THAT COULD BE SO EXTREME THEY WOULD

24       DEPRIVE PLAINTIFFS OF A PROCEEDING AT ALL TO VINDICATE THEIR

25       RIGHTS.
```

1      THAT'S NOT THE SITUATION CONTEMPLATED BY --

2           THE COURT:  WELL, IS THAT THE STANDARD?  YOU HAVE TO

3      COMPLETELY DEPRIVE -- I MEAN, YOU HAVE TO SHOW THAT YOU'RE

4      ACTUALLY DESTITUTE AND CANNOT AFFORD TO PAY HALF THE COSTS OF

5      THE ARBITRATION?  DO YOU HAVE TO SHOW THAT THERE'S NO WAY YOU

6      CAN GET TO TEXAS?

7           MS. YBARRA:  THAT'S LANGUAGE USED BY THE NINTH

8      CIRCUIT IN LIM V. TFORCE LOGISTICS.

9           AND I DON'T KNOW THAT THEY CHARACTERIZED IT AS THE

10     STANDARD, BUT I -- AND I DON'T THINK IT'S TIED SPECIFICALLY TO

11     ABILITY TO PAY OR ABILITY TO TRAVEL.

12          BUT THEIR POINT WAS THAT THEY WERE GOING TO -- THESE RULES

13     WERE GOING TO DEPRIVE THE PLAINTIFF OF GETTING INTO ARBITRATION

14     ALTOGETHER.

15          THAT'S NOT THE SITUATION THAT WE HAVE HERE.

16          I UNDERSTAND YOUR HONOR'S CONCERN ABOUT THE BOTTLENECK AND

17     THE TIME TO WAIT.

18          HOWEVER, I WILL SAY, THIS IS NOT LIKE HECKMAN.  HECKMAN

19     WAS PRESENTING DIFFERENT ISSUES.  ONE HUGE ISSUE THERE WAS THAT

20     YOU HAD A BELLWETHER PROCESS WHERE A SMALL NUMBER OF CLAIMS

21     PROCEEDED INITIALLY, AND THAT WAS -- AND THEY PROCEEDED IN

22     SECRET AND THEY WERE CONFIDENTIAL, BUT BINDING PRECEDENT WAS

23     ESTABLISHED THAT BOUND THE ARBITRATOR AS TO THE REMAINING

24     CLAIMS.

25          THAT'S NOT THE CASE HERE.

1        AND THE -- WHAT WE'RE DOING HERE IS REALLY LIKE A

2   PRACTICAL ADJUDICATION OF THE NUMBER OF CLAIMS THAT WE CAN

3   DO -- WE CAN DO, YOU KNOW, A REASONABLE NUMBER OF CLAIMS AT A

4   TIME.

5        WE -- THERE'S ALWAYS GOING TO BE SOME DELAY INHERENT IN

6   LITIGATION, ARBITRATION OR LITIGATION IN THE COURTS.

7        WE'RE LEARNING TODAY FOR THE FIRST TIME THAT PLAINTIFFS

8   HAVE 26 CLIENTS ENGAGED.  I'M GOING TO SET ASIDE THE 100 PEOPLE

9   THEY SAY HAVE CONTACTED THEM BECAUSE THAT DOES NOT FORM AN

10  ATTORNEY-CLIENT RELATIONSHIP, FILLING OUT AN ONLINE FORM OR

11  WHATEVER THE FORM OF CONTACT WOULD BE.

12       BUT 26 CLAIMS, YOU KNOW, UNDER THE SUPPLEMENTAL RULES THAT

13  ARE CONTEMPLATED IN THE TERMS OF SERVICE AND BY AAA, 25 -- OR

14  20 OF THOSE WOULD PROCEED IN THE FIRST INSTANCE.

15       AND ARBITRATION IS SUPPOSED TO BE QUICK AND EFFICIENT.

16  WE'RE NOT TALKING ABOUT YEARS OF BACKLOG HERE.

17            THE COURT:  ALL RIGHT.

18       WHAT'S THE RESPONSE?

19            MR. MAHAFFEY:  WELL, THERE'S A LOT TO UNPACK THERE,

20  YOUR HONOR.

21       BUT IF I MIGHT, FIRST OF ALL, I'M HAPPY THAT COUNSEL SAID

22  THE AAA ARBITRATION RULES THAT ARE CONTEMPLATED BY THE TERMS OF

23  SERVICE, BECAUSE JUST AS THE ISSUE THAT WAS BEFORE YOU IN

24  MCLELLAN, THE AAA RULES ARE NOT INCORPORATED INTO THE TERMS OF

25  SERVICE.  THERE'S A REFERENCE GENERALLY TO THE AAA WEBSITE, AND

1    THAT WOULD LEAVE USERS TO -- YOU KNOW, RESPONSIBLE FOR GOING

2    THROUGH THE VARIOUS SETS OF RULES THAT ARE SET FORTH ON THE

3    WEBSITE AND TRY TO DETERMINE WHICH PRECISE RULES -- AND RECALL

4    WE'RE NOT TALKING ABOUT SOPHISTICATED, YOU KNOW -- THESE ARE

5    CONSUMER CASES.  THESE ARE NOT, YOU KNOW, SOPHISTICATED

6    PARTIES, OR NOT PRESUMED TO BE.

7         AND THE -- THOSE RULES ARE SCATTERED -- YOU KNOW, THERE

8    ARE AT LEAST FOUR, FOUR LOCATIONS FOR THOSE RULES TO TRY AND

9    PIECE TOGETHER TO DETERMINE PRECISELY WHAT THE RULES FOR

10   DELEGATION WOULD BE, WHAT THE RULES FOR ARBITRATION WOULD BE.

11        ADDITIONALLY, IN PLAINTIFFS' -- SORRY -- IN DEFENDANTS'

12   PLEADING, THEY POINT OUT THAT IN THEIR VIEW, THERE ARE TWO

13   DELEGATION CLAUSES.  WELL, THEY'RE BOTH SET FORTH IN I BELIEVE

14   IT'S SECTION 15, OR PARAGRAPH 15 OF THE MORE RECENT TERMS OF

15   SERVICE.

16        AND WHEN I WAS SPEAKING EARLIER, OF COURSE I WAS TALKING

17   ABOUT THE LANGUAGE THAT IS CONTAINED WITHIN PARAGRAPH 15.

18        BUT THEY SEEM TO SUGGEST THAT THERE'S A SEPARATE

19   DELEGATION THAT OCCURS BECAUSE OF THEIR REFERENCE TO THE AAA

20   ARBITRATION RULES.  AND FRANKLY, IT JUST SEEMS LIKE IT'S -- YOU

21   KNOW, IT'S A DIFFERENCE WITHOUT A DISTINCTION, OR WHATEVER THE

22   PHRASE IS.  THEY'RE ALL -- THE AAA RULES ARE NOT INCORPORATED

23   INTO THE DOCUMENT OTHER THAN BY REFERENCE.

24        AND THE DELEGATION LANGUAGE THAT IS THERE IS CERTAINLY

25   PART OF A BROADER ARBITRATION PROVISION.

1          THE COURT:  WELL, WAIT.  ARE YOU NOW SAYING THAT THIS

2   DOES NOT COMPLY WITH RENT-A-CENTER'S REQUIREMENT OF CLARITY?

3          MR. MAHAFFEY:  I DO THINK THE DELEGATION LANGUAGE

4   THAT IS CONTAINED WITHIN THE DOCUMENT IS VERY SIMILAR TO SOME

5   OF THE LANGUAGE THAT WAS CONTEMPLATED -- THAT WAS UNDER

6   CONSIDERATION IN RENT-A-CENTER.

7          THE COURT:  OKAY.  SO -- BUT WITH RESPECT TO THE

8   INCORPORATION OR NOT, I MEAN, THERE ARE SEVERAL REFERENCES THAT

9   SAY, IF YOU ARE A CONSUMER, THE THEN CURRENT VERSION OF AAA'S

10   CONSUMER ARBITRATION RULES WILL APPLY; AND THEN IN PARAGRAPH 6

11   UNDER THAT CHAPTER 15, IT SAYS THE AAA SUPPLEMENTARY RULES FOR

12   MULTIPLE CASE FILINGS AND MULTIPLE CONSUMER FILINGS, A FEE

13   SCHEDULE WILL APPLY IF 25 OR MORE ARE ASSERTED, BLAH, BLAH,

14   BLAH.  IN ADDITION TO THE APPLICATION OF THESE AAA

15   SUPPLEMENTARY RULES, YOU UNDERSTAND, BLAH, BLAH, BLAH, BLAH.

16      I MEAN, ISN'T THAT A FAIRLY CLEAR INCORPORATION?

17          MR. MAHAFFEY:  IT -- ON CERTAIN OF THOSE TERMS, AND I

18   THINK, YOU KNOW, SEPARATING THIS ISSUE FROM THE

19   UNCONSCIONABILITY QUESTION, RIGHT, I THINK, YOU KNOW, SOME OF

20   THESE THINGS CERTAINLY ARE, AND INCLUDING SOME OF THESE

21   PROVISIONS THAT, IN FACT, DIFFER FROM THE PROCEDURES AND THE

22   RULES THAT ARE SET FORTH IN THE AAA, YOU KNOW, CONSUMER RULES,

23   RIGHT?

24      THERE IS CERTAINLY SOME EFFORT TO INCORPORATE THOSE BY

25   REFERENCE.  I DON'T -- I DON'T CONTEST THAT.

1        ANOTHER ELEMENT OF UNCONSCIONABILITY THAT I THINK IS

2   IMPORTANT HERE IS, AND PLAINTIFFS -- OR DEFENDANTS MAKE

3   SOMETHING OF THIS IN THEIR REPLY BRIEF -- IS THAT THEY SUGGEST

4   THAT THERE WAS A MEANINGFUL OPT-OUT PROVISION IN WHICH, YOU

5   KNOW, BY SENDING AN EMAIL, USERS COULD, COULD OPT OUT OF

6   ARBITRATION AND, OF COURSE, THE DELEGATION PROVISION AS WELL

7   THROUGH SENDING AN EMAIL.

8        BUT IF YOU LOOK AT IT, THEY ARGUE THAT IT'S PROACTIVE TO

9   THE FIRST DATE OF THE USE OF THE SERVICE, SO IT WOULD BE, IN

10  THEIR VIEW, YOU KNOW, RETROACTIVELY APPLICABLE TO, YOU KNOW,

11  THE TIME OUR CLIENTS SIGNED UP TO USE THE APP AND, THEREFORE,

12  THERE'S REALLY NO, NO OPT-OUT PROVISION, IT'S ONLY ILLUSORY.

13        THE COURT:  I'M SORRY, SAY THAT -- I'M NOT SURE I

14  UNDERSTAND THAT.  IT DOES SAY, IF YOU WISH TO OPT OUT AND

15  ARBITRATE ON AN INDIVIDUAL BASIS, AND THE INSTRUCTION BELOW IS

16  E, YOU CAN OPT OUT WITHIN THE FIRST 30 DAYS THAT YOU ACCEPTED

17  THESE TERMS.

18        SO WHAT'S THE PROBLEM WITH THAT?

19        MR. MAHAFFEY:  IN ONE OF THESE ITERATIONS, I BELIEVE

20  IT IS THAT THERE'S LANGUAGE INDICATING YOU HAVE TO OPT OUT

21  WITHIN 30 DAYS OF YOUR FIRST USE OF THE SERVICE, THE ACTUAL

22  APP.

23        THE COURT:  OH.  IT SAYS, OF THE DATE YOU FIRST

24  ACCEPTED THESE TERMS.  SO YOU'RE SAYING THAT MIGHT BE READ TO

25  SAY THE ORIGINAL TERMS WHEN YOU FIRST SIGNED UP YEARS AGO.

1          MR. MAHAFFEY:  THAT'S CORRECT, YOUR HONOR.

2          THE COURT:  NOT THESE UPDATED TERMS?  IF IT SAID

3     UPDATED TERMS, THAT WOULD BE CLEARER.  IT JUST SAYS THESE

4     TERMS.

5          MR. MAHAFFEY:  CORRECT, YOUR HONOR.

6          THE COURT:  SO THAT'S YOUR ARGUMENT, THAT IT'S TOO

7     LATE.  BY THE TIME YOU SEE THIS, IT'S TOO LATE?

8          MR. MAHAFFEY:  YES, YOUR HONOR.

9          THE COURT:  WELL, HMM.

10         MS. YBARRA:  YOUR HONOR, MAY I RESPOND?

11         THE COURT:  YEAH, WHY DON'T YOU TELL ME ABOUT IT?

12         MS. YBARRA:  FIRST OF ALL, THIS IS NOT AN ARGUMENT

13    RAISED IN PLAINTIFFS' OPPOSITION, SO WE'RE HEARING IT FOR THE

14    FIRST TIME, LIKE YOU.

15         AND, SECOND, I THINK THAT'S AN UNFAIR READING OF THE

16    LANGUAGE OF THE OPT-OUT PROVISION.  THE OPT-OUT PROVISION IS

17    REFERRING TO THESE TERMS, THESE UPDATED TERMS THAT WERE

18    PRESENTED TO MR. PANDOLFI AND MS. SHAWCROFT, WHICH THEY AGREED

19    TO, IN JULY -- JANUARY AND JULY OF 2023.

20         NO ONE IS ARGUING THAT PLAINTIFFS WERE PRECLUDED FROM

21    OPTING OUT BECAUSE THEY DIDN'T OPT OUT 30 DAYS AFTER FIRST

22    USING THE SERVICE.

23         THE COURT:  WELL, IT'S TERMS WITH A CAPITAL T, AND

24    THAT'S DEFINED IN THE FOURTH PARAGRAPH IN THE VERY BEGINNING:

25    THE FOLLOWING TERMS AND CONDITIONS, TOGETHER WITH ANY DOCUMENTS

```
 1        THAT EXPRESSLY ARE INCORPORATED BY REFERENCE, COLLECTIVELY

 2        THESE TERMS, QUOTE-UNQUOTE, FAILURE TO ACCESS, BLAH, BLAH,

 3        BLAH, BLAH.

 4            SO THESE TERMS MEAN THE FOLLOWING TERMS AND CONDITIONS,

 5        WHICH IS EVERYTHING THAT FOLLOWS.  SO IT LITERALLY REFERS TO

 6        THE THEN CURRENT TERMS OF SERVICE, NOT TO A PRIOR TERM OF

 7        SERVICE.

 8                MS. YBARRA:  YOUR HONOR, I THINK THAT THE TERMS OF

 9        SERVICE INDICATE AT THE TOP THERE WHEN THEY ARE LAST UPDATED,

10        WHICH IS DECEMBER 20TH, 2022 IF WE'RE LOOKING AT EXHIBIT 1,

11        WHICH I BELIEVE IS WHAT MR. MAHAFFEY IS REFERRING TO.

12                THE COURT:  YEAH.

13                MS. YBARRA:  YEAH.

14            AND THESE TERMS REFER TO THE TERMS THAT FOLLOW.  WE'RE NOT

15        REFERRING TO HISTORICAL TERMS.  THERE'S NO -- THERE'S NO

16        ARGUMENT HERE THAT ANYBODY IS PRECLUDED BECAUSE THEY -- FROM

17        OPTING OUT BECAUSE THEY DIDN'T SUBMIT AN OPT OUT NOTIFICATION

18        30 DAYS AFTER THEY FIRST SIGNED UP.

19            I THINK THIS IS PRETTY CLEAR CONTRACT LANGUAGE THAT THIS

20        APPLIES TO 30 DAYS AFTER USERS ACCEPT THESE TERMS, THE ONES

21        THAT ARE LINKED TO IN THIS DOCUMENT, AND THAT WERE LINKED TO IN

22        THE POP-UP NOTIFICATIONS PRESENTED TO PLAINTIFFS IN JANUARY AND

23        JULY OF 2023.

24                THE COURT:  AND I UNDERSTAND THAT.  THAT'S WHY I

25        ACTUALLY READ FROM THE FOURTH PARAGRAPH FROM THE TOP, THE
```

1    TERM -- THESE TERMS, WITH A CAPITAL T WITH QUOTES AROUND IT, IS

2    DEFINED.  DO YOU SEE THAT RIGHT IN THE MIDDLE OF THE FOURTH

3    PARAGRAPH?  THE FOLLOWING TERMS AND CONDITIONS, TOGETHER WITH

4    THE DOCUMENTS, COLLECTIVELY THESE TERMS, QUOTE-UNQUOTE, GOVERN

5    YOUR ACCESS TO AND USE OF THE FUNCTIONALITIES, ET CETERA.

6         SO IT REFERS TO THE FOLLOWING TERMS AND CONDITIONS, SO

7    THAT'S -- I JUST --

8              MS. YBARRA:  I APOLOGIZE, YOUR HONOR.

9              THE COURT:  I JUST SAID THAT.

10             MS. YBARRA:  I APOLOGIZE.  I THINK WE ARE IN

11   AGREEMENT, YOU AND I.

12             THE COURT:  YEAH.

13        BUT LET ME GO BACK TO MR. MAHAFFEY.

14             MR. MAHAFFEY:  AND I SEE THE POINT.  OBVIOUSLY I SEE

15   THE LANGUAGE.

16        I THINK ONE THING THAT CONTRIBUTED TO OUR CONFUSION ON

17   THIS, YOUR HONOR, WAS IF YOU GO UP TO THE FIRST PARAGRAPH, ONE

18   OF THE ALL CAPS PARAGRAPHS, THERE'S LANGUAGE, I BELIEVE IT'S

19   THE LAST FULL SENTENCE, INDICATING IF YOU DO NOT AGREE TO THESE

20   TERMS, INCLUDING THE MANDATORY ARBITRATION PROVISION AND CLASS

21   ACTION WAIVER IN SECTION 15, DO NOT ACCESS OR USE OUR PRODUCTS

22   OR SERVICES.  THAT ENHANCES THE PERCEPTION AT LEAST THAT

23   THAT -- THAT THEY WOULD -- THAT THEY THOUGHT THAT THESE, THE

24   OPT-OUT LANGUAGE AND OTHER PARTS WERE RETROACTIVE.

25             THE COURT:  WELL, YEAH.  THE PROBLEM WITH THAT IS IT

1   SAYS, IF YOU DON'T WANT TO BE PART OF THIS, JUST DON'T USE OUR

2   SERVICES.

3   IT DOESN'T SAY, YOU CAN OPT OUT, GO DOWN TO PARAGRAPH 15,

4   SUBSECTION E.

5   MR. MAHAFFEY:  AGREED.

6   THE COURT:  SO THERE'S A QUESTION.

7   BUT I STILL FIND, REGARDLESS, THERE'S ENOUGH PROCEDURAL

8   UNCONSCIONABILITY TO REACH THE QUESTION OF SUBSTANTIVE

9   UNCONSCIONABILITY.  YOU DON'T NEED A WHOLE LOT, YOU NEED SOME,

10  AND THERE'S A SLIDING SCALE, ET CETERA, ET CETERA.

11  BUT I GO BACK TO THE BIG PROBLEM, AND THAT IS, AT LEAST AS

12  ALLEGED, THE OBJECTIONABLE BOTTLENECK -- SORRY, THAT'S MY

13  TERM -- THE BELLWETHER SYSTEM.  IT'S NOT CLEARLY IN PLAY.

14  AND IF IT IS IN PLAY, IF WHAT YOU HAVE IS 27, IT BARELY

15  COMES INTO PLAY BECAUSE YOU CAN GET THE FIRST 20 DONE AND, YOU

16  KNOW, IT -- YOU KNOW, YES.  I MEAN, THERE'S NOT THAT MANY

17  WAVES.  IT'S NOT AS CLEARLY UNCONSCIONABLE AS IF YOU HAD A LOT

18  OF FOLKS.

19  I THINK IN THE MCLELLAN CASE, WE CALCULATED IT WOULD TAKE

20  OVER 100 YEARS TO GO THROUGH THAT.

21  IN YOUR CASE, I DON'T KNOW IF WE HAVE ANYTHING APPROACHING

22  THAT, BUT -- AND I DON'T KNOW IF THERE'S SUCH A THING AS A

23  FACIAL CHALLENGE IN THIS AREA.  IT SEEMS LIKE IT'S AN

24  AS-APPLIED KIND OF A SITUATION.  AND SO THAT'S -- THAT'S AN

25  ISSUE.

1        NOW, IF YOU THINK THAT THE -- THAT IN VIEW OF THESE

2    COMMENTS THAT THIS CHALLENGE MAY BE PREMATURE AND YOU WANT TO

3    AMEND, I WOULD CONSIDER, YOU KNOW, GIVING YOU A CHANCE TO FILE

4    A SUPPLEMENTARY PLEADING SO WE CAN FIND OUT WHETHER THIS REALLY

5    IS AT ISSUE OR IF IT'S NOT.  I MEAN, IF IT'S NOT AN ISSUE, AT

6    LEAST AS PLED, THEN I DON'T KNOW IF I HAVE TO ADDRESS THIS

7    QUESTION, UNLESS THERE'S SUCH A THING AS A FACIAL CHALLENGE.

8        IT'S A VERY INTERESTING QUESTION.

9        MR. MAHAFFEY:  THAT IS AN INTERESTING QUESTION, YOUR

10   HONOR, AND CANDIDLY, I HAVE NOT -- I HAD NOT REALLY THOUGHT

11   ABOUT THE DIFFERENCE BETWEEN A FACIAL CHALLENGE VERSUS A

12   FACTUAL CHALLENGE HERE.

13       I DO BELIEVE, IF YOU WILL ALLOW IT, WE CAN OFFER THROUGH,

14   WHETHER THROUGH AN ATTORNEY DECLARATION OR SOME SIMILAR

15   MECHANISM OFFER EVIDENCE, YOU KNOW, MORE THOROUGHLY

16   ESTABLISHING THE NUMBER OF CLIENTS THAT WE HAVE NOW,

17   PROSPECTIVE CLIENTS, AND GIVE YOU SOME, SOME MORE MEANINGFUL

18   INSIGHT INTO THE NUMBER OF POTENTIAL ARBITRATIONS WE WOULD BE

19   TALKING ABOUT.

20       THE COURT:  WELL, WHY DON'T WE DO THIS:  SINCE THIS

21   IS A MAJOR PART OF THIS MOTION, I'D RATHER DO IT ON A FULL

22   RECORD, AND MAYBE SOME SUPPLEMENTAL BRIEFING ON THIS QUESTION.

23   I THINK I'LL LET YOU FILE SUPPLEMENTAL EVIDENCE.  SINCE THIS IS

24   A MOTION TO COMPEL, I THINK IT'S PERMISSIBLE FOR THE COURT TO

25   TAKE EVIDENCE IN THE FORM OF A DECLARATION.

1          AND IF YOU WANT TO UPDATE EXACTLY WHAT, WHAT YOU THINK

2     YOUR FIRM HAS IN TERMS OF CLIENTS WHO WANT TO PURSUE THIS, WHO

3     ARE LIKELY TO PURSUE THIS, ET CETERA, ET CETERA, AND IF THE

4     PARTIES WANT TO BRIEF, YOU KNOW, DEPENDING ON WHETHER THAT'S

5     SUFFICIENT OR NOT AS A FACIAL CHALLENGE, WHETHER THERE'S A

6     FACTUAL CHALLENGE, WHETHER THERE'S SUCH A THING AS A FACIAL

7     CHALLENGE WHERE YOU'RE ASKING THE COURT, EVEN IF YOU DON'T HAVE

8     THE NUMBERS, IS THERE SOMETHING PROBLEMATIC ABOUT THIS THAT

9     WOULD APPLY, FOR INSTANCE, TO AN ALLEGED PUTATIVE CLASS, I

10    DON'T KNOW HOW THAT PLAYS OUT OR NOT.

11         AND IT MAY BE -- MAYBE IT'S NOT JUST A QUESTION OF FACIAL

12    VERSUS FACTUAL, BUT WHAT FACTUAL?  IF YOU ALLEGE A PUTATIVE

13    CLASS AND YOU ALLEGE THERE'S A CERTAIN NUMBER IN THE CLASS, IS

14    THAT ENOUGH, OR DO YOU HAVE TO SHOW THAT YOU'VE ACTUALLY SIGNED

15    UP PEOPLE?  YOU KNOW, THESE ARE ALL QUESTIONS THAT GO TO THE

16    RIPENESS, I THINK, OF THIS QUESTION.

17         SO WHAT I'LL LET YOU DO IS FILE YOUR DECLARATION, FOLLOWED

18    BY WHATEVER BRIEF, SHORT, BUT GETTING TO THIS QUESTION OF, YOU

19    KNOW, WHAT LEVEL OF SHOWING NEED BE DONE TO IMPLICATE THIS

20    PROVISION, AND THEN I'LL -- I'LL GIVE THE DEFENDANT A WEEK

21    AFTER THAT TO FILE A RESPONSE, AND THEN I WILL TAKE IT UNDER

22    SUBMISSION UNLESS I FEEL LIKE ARGUMENT WILL BE HELPFUL, AND

23    THEN I'LL CONTACT YOU AND WE'LL SCHEDULE FURTHER ARGUMENT.

24         BUT I THINK THIS HAS BEEN USEFUL.  I THINK WE'VE ISOLATED

25    SOME OF THE KEY QUESTIONS HERE.

1    BUT I THINK FRONT AND CENTER IS THE, AS EVERYBODY

2    EXPECTED, IS THE BELLWETHER CLAUSE AND WHETHER THAT IS

3    UNCONSCIONABLE, WHETHER THAT UNDULY INTERFERES WITH ACCESS, FOR

4    INSTANCE, TO GETTING THE THRESHOLD QUESTION OF ARBITRABILITY,

5    BEING ABLE TO HAVE ACCESS TO THAT.

6         MR. MAHAFFEY:  AND, YOUR HONOR, MIGHT I ASK ONE POINT

7    OF CLARIFICATION?  IF I'VE UNDERSTOOD YOU, YOU WANT A

8    SUBMISSION, INCLUDING SUPPORTING EVIDENCE THAT WOULD DEAL WITH

9    THE BELLWETHER ISSUE ONLY, NOT NECESSARILY OTHER, OTHER ISSUES

10   OF UNCONSCIONABILITY.

11        THE COURT:  NO.  YEAH, YOU'VE ALREADY BRIEFED THAT.

12        MR. MAHAFFEY:  UNDERSTOOD.  I WANTED TO MAKE SURE.

13        THE COURT:  I DO WANT TO MAKE THAT CLEAR.  IT'S A

14   SINGLE ISSUE.

15        MR. MAHAFFEY:  UNDERSTOOD.

16        THE COURT:  YOU KNOW, IN TERMS OF THE -- I MEAN, IT

17   MAKES SENSE -- I DON'T KNOW HOW MUCH SENSE IT MAKES TO GO -- I

18   DON'T KNOW HOW FAR WE GET INTO THE CMC NOT KNOWING WHERE THIS

19   CASE IS GOING TO GO, WHETHER IT'S GOING TO GO TO ARBITRATION OR

20   NOT.  SO IT DOESN'T MAKE SENSE TO START SETTING TRIAL SCHEDULES

21   AND ALL THAT BECAUSE THAT ASSUMES THAT THIS IS A MATTER THAT'S

22   GOING TO STAY IN THE COURT'S REALM.

23        MR. TRIPOLITSIOTIS:  YOUR HONOR --

24        THE COURT:  MAYBE YOU HAVE OTHER THOUGHTS IN THAT

25   REGARD.

1          MR. TRIPOLITSIOTIS:  YOUR HONOR, ON THAT POINT, THE

2     MOTION TO COMPEL ARBITRATION IS ONLY BROUGHT BY ACME AND THE

3     INDIVIDUAL DEFENDANTS.  THE INVESTOR DEFENDANTS ARE NOT

4     CLAIMING A RIGHT TO ARBITRATION, SO PART OF THIS MATTER WILL

5     CONTINUE IN THIS COURT EITHER WAY.

6          THE COURT:  OKAY.

7          MR. TRIPOLITSIOTIS:  THAT SAID, WHEN WE CREATED THE

8     CMC, WE WORKED TOGETHER TO PUT IT TOGETHER, I THINK THERE'S ONE

9     OPEN ISSUE THAT WE WERE GOING TO DISCUSS WITH YOUR HONOR.

10         THE COURT:  YEAH.

11         MR. TRIPOLITSIOTIS:  BUT BEYOND THAT, I THINK WE'RE

12    IN PLACE, WE HAVE AGREEMENT ON A SCHEDULE, WE HAVE AN

13    AGREEMENT, YOU KNOW, ON VARIOUS DIFFERENT PARTS.

14         THE ONLY OPEN ISSUE THAT I'M AWARE OF IN THE CMC IS CLASS

15    CERT BRIEFING, WHEN THAT WOULD TAKE PLACE.  THAT'S DOWN THE

16    ROAD.  IT DOESN'T NEED TO BE DECIDED CURRENTLY.

17         THE NUB OF THAT DISPUTE -- IT'S NOT EVEN A DISPUTE.  THE

18    NUB OF THAT DISCUSSION IS -- AND STEVE WILL CORRECT ME IF I'M

19    WRONG -- BUT THE DEFENDANTS BELIEVE THAT THE CLASS CERT

20    BRIEFING SHOULD TAKE PLACE SIMULTANEOUS WITH THE DISPOSITIVE

21    MOTION BRIEFING.  WE BELIEVE THE CLASS CERT BRIEFING SHOULD GO

22    FIRST TO AVOID THE ONE-WAY INTERVENTION PROBLEMS THAT SOMETIMES

23    HAPPEN IN CLASS ACTIONS.

24         THE COURT:  ALL RIGHT.

25         MR. TRIPOLITSIOTIS:  AND YOU'LL SEE THOSE PROPOSALS

1    ARE IN --

2           THE COURT:  I DO SEE THAT.  YOU ARE PROPOSING

3    JANUARY 30TH OF NEXT YEAR TO FILE AND TO BE HEARD IN MARCH, AND

4    THEN THE DISPOSITIVE MOTION PROCESS STARTS IN MARCH --

5           MR. TRIPOLITSIOTIS:  YES.

6           THE COURT:  -- AND THEN IS NOT HEARD UNTIL MAY.

7       SO YOU HAVE IT SEQUENCED.  DEFENDANTS HAVE IT SORT OF

8    LINED UP AT THE SAME TIME.

9       SO WHY DON'T WE -- LET ME HEAR DEFENDANTS' THOUGHTS ON

10   THAT.  WHY ISN'T THERE -- WHY DOES IT MAKE SENSE TO HEAR CLASS

11   CERT FIRST TO AVOID THE ONE-WAY INTERVENTION PROBLEM?

12          MR. TAYLOR:  I CAN ADDRESS THAT, YOUR HONOR.

13          THE COURT:  YEAH.

14          MR. TAYLOR:  FIRST, ON THAT PARTICULAR POINT, THE

15   PROBLEM YOU GET IS THAT RUNS RIGHT INTO THE MIDDLE OF EXPERT

16   DISCOVERY, AND THE SCHEDULE AS IT'S LISTED HAS EXPERT DISCOVERY

17   COINCIDENT WITH THE CLASS CERTIFICATION BRIEFING AND THE

18   QUESTIONS OF WHETHER OR NOT YOU HAVE EXPERTS OR NEED EXPERTS

19   AND DO YOU HAVE A SEPARATE TRACK FOR EXPERTS.

20      TO US, HAVING IT ALL DONE AFTER ALL DISCOVERY IS DONE MADE

21   THE MORE SENSE.

22      BUT I GUESS I WOULD PICK UP ON YOUR HONOR'S FIRST

23   INSTINCT, WHICH IS A LOT OF THIS SEEMS PREMATURE UNTIL WE

24   REALLY KNOW WHO'S IN THIS CASE AND WHAT IT'S GOING TO BE ABOUT.

25          AND I TAKE COUNSEL'S POINT THAT THE, THE INVESTOR

1    DEFENDANTS ARE NOT MOVING TO COMPEL ARBITRATION.  BUT THEY ARE

2    MISSING TO DISMISS AND HAVE FILED PAPERS ON THAT, AND IT WOULD

3    SEEM TO ME THAT THE SCHEDULING AND THE CMC AND THAT SIDE OF IT

4    WOULD BE BETTER SERVED AND MORE PRODUCTIVE FOLLOWING THAT TIME.

5                    THE COURT:  WELL, DO WE HAVE A DATE FOR THE MOTION --

6    HAVE YOU SET A DATE FOR THE HEARING ON THE MOTION TO DISMISS?

7                    MR. TAYLOR:  YEAH.  THE HEARING I BELIEVE IS ON

8    MAY 28TH.

9                    MR. TRIPOLITSIOTIS:  YEAH, LET ME UPDATE EVERYBODY ON

10   THAT ONE.

11       WE'RE GOING TO TAKE ADVANTAGE OF THE RIGHT TO AMEND

12   WITHOUT LEAVE OF THE COURT ON MONDAY, 21 DAYS CLICKING FROM

13   WHEN THEY FILED THEIR MOTION TO DISMISS.  NEW FACTS HAVE COME

14   TO LIGHT IN A TRIAL WHERE WE NOW HAVE ACTUAL DOCUMENTS AND

15   TESTIMONY THAT WE CAN USE TO BOLSTER OUR ALLEGATIONS, AND I

16   THINK THAT WILL MAKE THINGS EASIER FOR THE COURT TO UNDERSTAND.

17       SO THAT PLEADING IS MAKING ITS WAY AND WE'LL FILE THAT ON

18   MONDAY.

19       NOW, I DON'T THINK IT'S GOING TO AFFECT THE MOTIONS TO

20   DISMISS MUCH.  THEY MAY DROP SOME ARGUMENTS.  I DON'T THINK

21   THEY'LL BE CREATING NEW ARGUMENTS BECAUSE WE'RE JUST FLUSHING

22   OUT FACTS ON SOME OF THIS STUFF AND MORE NARROWLY TAILORING

23   SOME OTHER PARTS.

24       BUT THAT'S THE UPDATE FROM US AS TO HOW WE'RE PROCEEDING.

25                    THE COURT:  SO THAT'LL PROBABLY MOVE THE HEARING

1    SCHEDULE ON THE MOTION TO DISMISS BACK TO, I DON'T KNOW, JUNE

2    SOMETIME?

3              MR. TRIPOLITSIOTIS:  I'M -- IT MAY BE ABLE TO BE DONE

4    IN MAY.  WE'LL SEE ONCE THEY SEE OUR PAPERS.  WE'RE FILING IT

5    APRIL, 20 DAYS TO RESPOND WOULD PUT US IN APRIL.

6         YEAH, WE COULD DO IT AT THE END OF MAY, I THINK.

7              MR. TAYLOR:  YOUR HONOR, I --

8              MR. TRIPOLITSIOTIS:  I DISCUSSED THAT.

9              MR. TAYLOR:  WITHOUT HAVING SEEN THE AMENDED

10   COMPLAINT, I'D OBJECT TO US GETTING A COMPLAINT ON MONDAY AND

11   THEN HAVING AN ARGUMENT AT THE SAME TIME WE WERE GOING TO HAVE

12   OUR INITIAL MOTIONS TO DISMISS.

13        I'LL LET MY OTHER CO-DEFENDANTS CHIME IN.

14             MR. TRIPOLITSIOTIS:  I'M NOT SUGGESTING THAT WE DO.

15   I'M JUST SAYING LET'S LET YOU SEE IT, LET'S LET YOU GET YOUR

16   OPPOSITION, AND THEN WE CAN AGREE ON A SCHEDULE LIKE WE HAD

17   DONE WITH REGARD TO YOUR FIRST MOTION.

18             THE COURT:  WELL, ALL RIGHT.  YOU ALL WORK THAT OUT.

19        THE MAIN POINT I THINK MR. TAYLOR IS MAKING IS THAT MAYBE

20   WE OUGHT TO WAIT BEFORE WE SET DATES TO SEE WHERE WE'RE AT ON

21   THE MOTION TO DISMISS.

22        IS THAT WHAT YOU'RE SUGGESTING?  LET'S HEAR THE MOTION TO

23   DISMISS, MAYBE COUPLE THAT UP WITH A CMC AT THAT TIME, AND IF

24   I'M READY TO -- IF THERE'S CLEAR DIRECTION, MAYBE WE CAN START

25   SETTING SOME DATES SHORTLY THEREAFTER.

1          MR. TAYLOR:  I THINK THAT'S EXACTLY RIGHT, YOUR

2     HONOR, AND WE'D HAVE AN ANSWER HOPEFULLY ON THE MOTION TO

3     COMPEL ARBITRATION AS WELL AND REALLY KNOW WHAT THIS CASE LOOKS

4     LIKE.

5          MR. TRIPOLITSIOTIS:  YEAH, YOUR HONOR, WE DON'T

6     OBJECT.  THE FIRST DATE IN THE SCHEDULE ISN'T UNTIL

7     JANUARY 15TH OF 2025, THE ONE THAT WE HAD PROPOSED JOINTLY, SO

8     I'M FINE WITH PUTTING THIS OFF.

9          THE COURT:  SO WE'VE GOT SOME BREATHING SPACE.

10    WHATEVER WE DO, THERE'S STILL -- IT SEEMS LIKE THERE'S STILL

11    PLENTY OF TIME FOR DISCOVERY, AND THE TRIAL DATE IS NOW, AS YOU

12    FORECAST IT, IS MORE THAN A YEAR AWAY.  SO WE'VE GOT SOME ROOM,

13    BUT THIS STUFF MOVES PRETTY QUICKLY.  YOU'D BE SURPRISED.

14         MR. TRIPOLITSIOTIS:  YOUR HONOR, WHILE WE'RE TALKING

15    ABOUT DATES, CAN I ASK WHAT DATE BY WHICH YOU WOULD LIKE THE

16    SUPPLEMENTAL SUBMISSION YOU DISCUSSED ON THE MOTION TO COMPEL

17    ARBITRATION?

18         THE COURT:  HOW ABOUT A WEEK?

19         MR. TRIPOLITSIOTIS:  YEAH, WE'LL DO IT IN A WEEK.

20         THE COURT:  WITHIN A WEEK, AND THEN THE DEFENSE

21    RESPONSE IN A WEEK.

22         MR. TRIPOLITSIOTIS:  ABSOLUTELY.

23         THE COURT:  AND I'LL TAKE THE MATTER UNDER SUBMISSION

24    AND TRY TO GET A RULING ON THIS AS QUICKLY AS POSSIBLE.  AGAIN,

25    IF I NEED ARGUMENT, I'LL LET YOU KNOW.

```
 1              MR. TRIPOLITSIOTIS:  PERFECT.

 2              THE COURT:  ALL RIGHT.  SO LET'S DO THAT.

 3         I'LL LEAVE THESE DATES THAT YOU PROPOSED, YOU KNOW, ON THE

 4    TABLE, BUT WE'LL REVISIT THAT WHEN WE HEAR THE MOTION TO

 5    DISMISS.

 6         ADR, I'M ALWAYS INTERESTED IN ADR.  I KNOW WE'RE FAIRLY

 7    EARLY, BUT I'D LIKE TO GET YOUR THOUGHTS ABOUT AT WHAT JUNCTURE

 8    ADR MIGHT BE INITIATED, AND WHAT FORM OF ADR ARE YOU ALL

 9    THINKING ABOUT?

10              MR. TAYLOR:  WELL, I -- I GUESS FROM THE AVIA

11    DEFENDANTS, WHAT I WOULD SAY IS IT'S A LITTLE PREMATURE AT THE

12    MOMENT GIVEN WE'RE NOT SURE ABOUT ARBITRATION OR NOT AND WHERE

13    WE'RE GOING TO BE.

14         WE'RE CERTAINLY OPEN TO IT, AND I IMAGINE IT WOULD BE

15    EITHER A COURT MAGISTRATE SETTLEMENT CONFERENCE OR SOME SORT OF

16    PRIVATE MEDIATION.

17         BUT IT SEEMS A LITTLE EARLY FOR US AT THIS POINT.

18              THE COURT:  ALL RIGHT.

19         FOR PLAINTIFFS?

20              MR. TRIPOLITSIOTIS:  WE'RE OPEN TO ANY FORM, YOUR

21    HONOR.  WE DON'T REALLY HAVE A PREFERENCE.  WHENEVER THE TIME

22    IS RIGHT, WE'RE HAPPY TO DO EITHER.  THE MAGISTRATE OR THE

23    PRIVATE ARBITRATION BOTH SEEM TO MAKE SENSE TO US.

24         I UNDERSTAND MR. TAYLOR'S POINT ABOUT HE DOESN'T WANT TO

25    HAVE THIS DISCUSSION UNTIL WE HAVE A RULING.
```

1        THE COURT: YEAH. LET'S DO THIS: WHEN WE HAVE THE

2    HEARING ON THE MOTION TO DISMISS, BY THAT POINT, WHICH WILL BE

3    MAY, MAYBE EARLY JUNE, I'D LIKE YOU TO BE ABLE TO DISCUSS THE

4    OPTIONS AND HAVE DISCUSSED WITH YOUR CLIENTS AND HAVE SOMETHING

5    IN MIND IN TERMS OF A TIMELINE AND FORM FOR ADR.

6        IF DO YOU OPT FOR A COURT -- FOR A SETTLEMENT CONFERENCE

7    WITH A MAGISTRATE JUDGE, I DO NEED LEAD TIME. WE'RE SETTING

8    THINGS ABOUT 120 DAYS OUT. THEY'RE BUSY.

9        SO THE SOONER YOU LET ME KNOW IF THAT'S THE DIRECTION YOU

10   WANT TO GO -- OF COURSE IF YOU GO PRIVATE MEDIATION, YOU SHOULD

11   START THINKING ABOUT THAT AS WELL, SOON.

12       BUT I'D LIKE TO BE ABLE TO PUT THAT ON THE AGENDA AT OUR

13   CMC/HEARING ON THE MOTION TO DISMISS. OKAY?

14       MR. TRIPOLITSIOTIS: YES, YOUR HONOR.

15       MR. TAYLOR: YES, YOUR HONOR.

16       THE COURT: ALL RIGHT. I'LL SEE YOU THEN. I LOOK

17   FORWARD TO YOUR FILINGS.

18       MR. TAYLOR: THANK YOU VERY MUCH, YOUR HONOR.

19       MR. TRIPOLITSIOTIS: THANK YOU, YOUR HONOR.

20       MS. YBARRA: THANK YOU, YOUR HONOR.

21     (THE PROCEEDINGS WERE CONCLUDED AT 3:40 P.M.)

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   _____
     LEE-ANNE SHORTRIDGE, CSR, CRR
17   CERTIFICATE NUMBER 9595

18         DATED:  APRIL 3, 2024

19

20

21

22

23

24

25