Kristopher Kastens (CA SBN 254797)
KRAMER LEVIN NAFTALIS
   & FRANKEL LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
Email: kkastens@kramerlevin.com

[Additional counsel on signature page.]

*Counsel for Defendant ACME, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW PANDOLFI and MANDI SHAWCROFT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AVIAGAMES, INC., VICKIE YANJUAN CHEN, PING WANG, ACME, LLC, GALAXY DIGITAL CAPITAL MANAGEMENT, L.P., and OTHER UNNAMED CO-CONSPIRATORS,<br><br>Defendants. | Case No. 3:23-CV-05971-EMC<br><br>**DEFENDANT ACME, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT WITH PREJUDICE**<br><br>Date:      June 24, 2024<br>Time:      2:30 p.m.<br>Judge:     Edward M. Chen<br>Ct. Room: 5, 17th Floor |

DEFENDANT ACME'S MTD
3:23-CV-05971-EMC

KL3 3695409.14

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ....................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.  INTRODUCTION ...................................................................................... 1

II.  FACTUAL BACKGROUND ....................................................................... 3

    A.  ACME Is A Small Avia Creditor .................................................. 3

    B.  Avia Matched Players To Recorded Games Of Other Players, Not "Bots" ............ 4

    C.  ACME Played No Role In The Alleged Use Of Bots By Avia ............................ 5

III.  ARGUMENT ......................................................................................... 7

    A.  Plaintiffs Fail To Plead The Elements Of 18 U.S.C. § 1962(c) As To ACME ....... 9

        1.  Plaintiffs Fail To Plead A RICO Enterprise Distinct From Avia Or That ACME Joined Or Shared A Common Purpose With That Enterprise ......... 9

        2.  Plaintiffs Fail To Allege Facts Demonstrating That ACME Directed The Alleged "Robot Player Enterprise" ............................................. 15

        3.  Plaintiffs Fail To Plead That ACME Engaged In A Pattern Of Racketeering Activity ............................................................ 17

            a.  Plaintiffs Do Not Plead Wire Fraud, 18 U.S.C. § 1343 ................. 18

            b.  Plaintiffs Do Not Plead Illegal Gambling, 18 U.S.C. § 1955 ........ 20

        4.  Plaintiffs Have Not Pled An Injury Suffered By Reason Of A § 1962(c) Violation ..................................................................... 22

    B.  Plaintiffs Fail To State A RICO Conspiracy Claim Pursuant To § 1962(d) .......... 24

    C.  ACME Joins In The Arguments Of The Other Defendants ................................ 25

IV.  CONCLUSION ...................................................................................... 25

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*In re Allen*,
  377 P.2d 280 (Cal. 1962) ............................................................................................... 21

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ........................................................................................... 22, 23, 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................... 7

*Ayers v. Lee*,
  No. 14-cv-00542, 2020 WL 6825589 (S.D. Cal. Nov. 20, 2020) ......................................... 14

*Baumer v. Pachl*,
  8 F.3d 1341 (9th Cir. 1993) ............................................................................................. 16

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) ................................................................................................... 22, 23

*Brown v. Moll*,
  No. 09-cv-05881, 2010 WL 4704372 (N.D. Cal. Nov. 12, 2010) ................................... 13, 20

*Byrd v. Bank of Am.*,
  No. 14-cv-03646, 2015 WL 13919187 (C.D. Cal. Apr. 22, 2015) ......................................... 6

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008) ........................................................................................... 22

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001) ....................................................................................................... 10

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ........................................................................................... 8

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) ........................................................................ *passim*

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ........................................................................................ 8, 20

*Diaz v. Gates*,
  420 F.3d 897 (9th Cir. 2005) (en banc) ........................................................................... 22

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ............................................................................. 8, 9, 19, 20

*In re EthereumMax Inv. Litig.*,
  No. 22-cv-00163, 2022 WL 20804358 (C.D. Cal. Dec. 6, 2022) ......................................... 11

*Gardner v. Starkist Co.*,
  418 F. Supp. 3d 443 (N.D. Cal. 2019) ............................................................................... 11

*Gomez v. Guthy-Renker, LLC*,
  No. 14-cv-1425, 2015 WL 4270042 (C.D. Cal. July 13, 2015) ........................................... 14

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
   492 U.S. 229 (1989) ..................................................................................................... 18

*Hemi Grp., LLC v. City of N.Y.*,
   559 U.S. 1 (2010) .................................................................................................... 22, 23

*High v. Choice Mfg. Co.*,
   No. 11-cv-5478, 2012 WL 3025922 (N.D. Cal. July 24, 2012) ........................... 15, 16, 17, 25

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992) ............................................................................................ 9, 22, 23

*Howard v. Am. Online, Inc.*,
   208 F.3d 741 (9th Cir. 2000) ................................................................................... 24, 25

*Huey v. Honeywell, Inc.*,
   82 F.3d 327 (9th Cir. 1996) .......................................................................................... 6

*In re Jamster Mktg. Litig.*,
   No. 05-cv-0819, 2009 WL 1456632 (S.D. Cal. May 22, 2009) ................................... *passim*

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020) ...................................................................... *passim*

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   533 F. Supp. 3d 858 (N.D. Cal. 2021) ............................................................................ 12

*Kerrigan v. ViSalus, Inc.*,
   112 F. Supp. 3d 580 (E.D. Mich. 2015) .......................................................................... 15

*Kyung Cho v. UCBH Holdings, Inc.*,
   890 F. Supp. 2d 1190 (N.D. Cal. 2012) .......................................................................... 14

*Lewis v. Rodan & Fields, LLC*,
   No. 18-cv-02248, 2019 WL 978768 (N.D. Cal. Feb. 28, 2019) ............................................ 11

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*,
   431 F.3d 353 (9th Cir. 2005) ........................................................................................ 10

*Loomer v. Zuckerberg*,
   No. 22-cv-02646, 2023 WL 6464133 (N.D. Cal. Sept. 30, 2023) ......................................... 11

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) .................................................................................................... 15

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
   630 F.3d 866 (9th Cir. 2010) ........................................................................................ 22

*Schmidt v. Fleet Bank*,
   16 F.Supp.2d 340 (S.D.N.Y. 1998) ................................................................................ 16

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ................................................................................................. 18, 19

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*Shaw v. Nissan N. Am., Inc.*,
  220 F. Supp. 3d 1046 (C.D. Cal. 2016)........................................................................ 11, 14, 25

*Simon v. Value Behav. Health, Inc.*,
  208 F.3d 1073 (9th Cir. 2000), *opinion amended*, 234 F.3d 428 (9th Cir. 2000),
  *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th
  Cir. 2007) ............................................................................................................................ 24

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007)................................................................................................. 9

*Tan v. Quick Box, LLC*,
  No. 20-cv-01082, 2020 WL 7226440 (S.D. Cal. Dec. 8, 2020) ............................................ 19

*United States v. Jinian*,
  725 F.3d 954 (9th Cir. 2013)................................................................................................. 18

*United States v. McKeon*,
  738 F.2d 26 (2d Cir. 1984)................................................................................................ 6, 13

*United States v. Miller*,
  953 F.3d 1095 (9th Cir. 2020)............................................................................................... 19

*United States v. O'Brien*,
  131 F.3d 1428 (10th Cir. 1997)............................................................................................. 21

*United States v. Stapleton*,
  293 F.3d 1111 (9th Cir. 2002)............................................................................................... 20

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)................................................................................................. 8

*White v. Cuomo*,
  192 N.E.3d 300 (N.Y. 2022) ................................................................................................. 21

*Whitten v. Clarke*,
  41 F.4th 1340 (11th Cir. 2022)......................................................................................... 13, 19

*Yetter v. Ford Motor Co.*,
  428 F. Supp. 3d 210 (N.D. Cal. 2019) ............................................................................. 18, 19

**Statutes & Rules**

18 U.S.C. § 1343 ........................................................................................................................ 18

18 U.S.C. § 1955 ................................................................................................................... *passim*

18 U.S.C. § 1961 .............................................................................................................. 17, 18, 21

18 U.S.C. § 1962 ................................................................................................................... *passim*

18 U.S.C. § 1964 ................................................................................................................ 2, 9, 22

Fed. R. Civ. P. 8 ........................................................................................................................ 17

Fed. R. Civ. P. 9 ................................................................................................................... *passim*

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

## <u>TABLE OF AUTHORITIES—Continued</u>

**Page(s)**

Fed. R. Civ. P. 12 ................................................................................................................. 1, 7

**Other Authorities**

*AviaGames Raises $40 Million to Diversify Gaming*, BusinessWire (Aug. 11,
2021), https://www.businesswire.com/news/home/20210811005038/en/............................... 3

*Highlighted Portfolio*, ACME, https://www.acme.vc/our-portfolio/ (last visited
Apr. 22, 2024) ....................................................................................................................... 3

Walter T. Champion, Jr. & I. Nelson Rose, Gaming Law in a Nutshell 287 (2012) .................... 21

DEFENDANT ACME'S MTD
3:23-CV-05971-EMC

KL3 3695409.14

**NOTICE OF MOTION AND MOTION TO DISMISS**

**PLEASE TAKE NOTICE** that on June 24, 2024, at 2:30 p.m., or at such other date and time as the Court may order, Defendant ACME, LLC ("ACME") will move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 9(b) for an order dismissing with prejudice the claim asserted against ACME in Plaintiffs' First Amended Class Action Complaint ("FAC"). The motion is based on this Notice and the Memorandum of Points and Authorities below, the accompanying Request for Judicial Notice and attached exhibits, the papers filed in the action, argument of counsel at the hearing, and other such matters as may be judicially noticed or come before the Court.

ACME respectfully asks the Court to dismiss with prejudice Plaintiffs' FAC in its entirety as to ACME, on the grounds that Plaintiffs have failed to state a claim for relief pursuant to 18 U.S.C. § 1962(c)-(d), even after having had an opportunity to amend their complaint. Further amendment here would be futile.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the FAC fails to state a claim against ACME under 18 U.S.C. § 1962(c)-(d).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Despite now having had two chances to plead a RICO claim against ACME, Plaintiffs still fall far short of alleging any facts plausibly suggesting that ACME—a venture capital firm that acquired some debt in AviaGames, Inc. ("Avia")—participated in an illegal racketeering enterprise to defraud users of Avia's mobile games by pitting them against "non-human computer robots." Stripped of its litany of unsupported conclusory statements, legal assertions, and impermissible group allegations, the FAC alleges that ACME was engaged in routine investment activity. But it does not come close to plausibly pleading that ACME played *any* role in—or was even aware of— Avia's supposed fraud, or that ACME joined with the other Defendants to somehow "trick" Avia customers into playing Avia games as part of a so-called "Robot Player Enterprise."

Plaintiffs do not allege facts sufficient to plead any element of their substantive RICO claim under 18 U.S.C. § 1962(c) (Count III). *First*, Plaintiffs do not allege facts plausibly indicating that

- 1 -

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

ACME shared a common fraudulent purpose with other Defendants, or that ACME even knew about—let alone directed—the alleged enterprise's fraudulent conduct, especially given Plaintiffs' contrary allegation that Avia's executives hid its purported scheme from others, including Avia's lawyers, financial advisors, banks, and auditors.

*Second*, Plaintiffs have failed to plausibly allege that ACME engaged in two predicate RICO offenses, as required under 18 U.S.C. § 1962(c). Plaintiffs assert that ACME engaged in wire fraud by characterizing Avia as a "real-money mobile skill gaming app" on a single page of ACME's investment portfolio website, but they do not allege facts explaining why this short, generalized statement is actionable as fraud, nor do they allege facts plausibly suggesting that ACME actually knew its description was false or that ACME specifically intended to defraud anyone by posting this comment on a webpage that, in all likelihood, no Avia user even knew existed. Plaintiffs also point to a statement, attributed to an ACME executive, in an August 2021 finance article about an Avia fundraising round, stating that Avia is "in tune with what consumers want," with games that are "fun, competitive[,] and engaging." FAC ¶ 120. This is a classic statement of opinion, and thus it is not capable of being actionable fraud. But it also says *nothing* about whether Avia players are matched against live players or bots (the fraud alleged here), and Plaintiffs fail to allege any facts indicating that this statement was known to be false when made or intended to mislead players. Plaintiffs also allege that ACME was part of an illegal gambling business but, again, plead no facts plausibly suggesting that ACME knew that Avia used bots or that its games were not skill-based.

*Third*, Plaintiffs do not plead that their alleged losses were proximately caused by racketeering conduct, as required to establish statutory standing under § 1964(c). The class that Plaintiffs purport to represent includes *all* persons who lost money in *any* Avia game for *any* reason, regardless of whether that loss had anything to do with the alleged racketeering conduct. Moreover, Plaintiffs do not allege any relationship between *ACME*'s conduct and their decision to play Avia games. In any event, the alleged racketeering conduct is too attenuated from the supposed harm, because there are many reasons players may have lost money in Avia's games that have nothing to do with their allegedly being matched to a bot.

DEFENDANT ACME'S MTD
3:23-CV-05971-EMC

KL3 3695409.14

Finally, Plaintiffs' RICO conspiracy claim under § 1962(d) overlaps entirely with their substantive RICO theory, and thus fails for all of the reasons just discussed.

Plaintiffs wisely chose not to replead two of their earlier alleged RICO theories against ACME, which suffered from obvious legal defects. Their remaining RICO theory fares no better, and the claim against ACME (Count III) should be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

### A.     ACME Is A Small Avia Creditor

ACME is a venture capital firm that commenced operations in 2019.[1] ACME currently holds investments in more than thirty early-stage startups across a variety of sectors, including artificial intelligence, biostatistics and biotechnology, and gaming, among others.[2] Its founders and predecessor fund have experience investing in well-known companies such as SpaceX, Uber, and Airbnb.[3]

One of ACME's portfolio companies is Avia. Avia is a gaming company that was founded in 2017 with investment from several venture capital funds (not including ACME). FAC ¶¶ 30, 102; Dkt. 1 ¶ 92. Avia creates and publishes mobile games that match players against one another to compete based on their skills and allows them to wager on those games. FAC ¶¶ 1, 3-4, 30-35.

ACME first invested in Avia in July 2021, four years after Avia's founding and the start of the alleged "Robot Player Enterprise," which Plaintiffs contend was "established in 2017 at the latest."[4] In its initial investment, ACME purchased $10 million in debt (through convertible

[1] ACME, Part 2A of Form ADV at 1 (filed Apr. 16, 2024). ACME requests that the Court take judicial notice of this publicly available SEC filing, and in particular of the fact that ACME commenced operations in 2019. *See* ACME Request for Judicial Notice at 4-5 (Apr. 22, 2024).

[2] *Highlighted Portfolio*, ACME, https://www.acme.vc/our-portfolio/ (last visited Apr. 22, 2024). This page of ACME's website is referred to and quoted in the FAC. *See, e.g.*, FAC ¶¶ 40 n.49, 103 n.106. It is therefore incorporated by reference in the FAC, and this Court may assume its contents are true for purposes of this Motion to Dismiss. *See* ACME Request for Judicial Notice at 2-3.

[3] *Highlighted Portfolio*, ACME, https://www.acme.vc/our-portfolio/ (last visited Apr. 22, 2024).

[4] *See* FAC ¶ 102; *AviaGames Raises $40 Million to Diversify Gaming*, BusinessWire (Aug. 11, 2021), https://www.businesswire.com/news/home/20210811005038/en/ (ACME not listed among "[p]revious investors"). This article, which is cited repeatedly in the FAC, *see* ¶¶ 120 nn. 110-11, 134 n.132; 173 n.134, is likewise incorporated by reference, and this Court may assume its contents (including the fact that ACME first invested in Avia in 2021) are true for purposes of this Motion to Dismiss. *See* ACME Request for Judicial Notice at 2-3.

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

promissory notes), as part of a $40 million fundraising round by Avia. Then, in December 2021, ACME purchased another $2.5 million out of $30 million in additional notes issued. ACME has never held any equity stake in Avia. ACME's debt has not converted to equity, and ACME has not received any payments on its notes. If ever converted to equity, ACME's notes would represent only a single-digit percentage of Avia's equity, and an even smaller percentage of Avia's overall capital stack. Accordingly, Plaintiffs' allegation—made solely based upon "Plaintiffs' knowledge" and without any supporting facts—that ACME was a "primar[y]" investor in Avia (FAC ¶ 102) is factually incorrect and should not be credited.

In connection with its July 2021 debt purchase, ACME obtained a seat on Avia's board for ACME co-founder Hany Nada, as well as the right to have ACME partner Alex Fayette serve as a non-voting board observer. FAC ¶ 16. ACME had *no* role in or connection to Avia prior to its debt purchase. Plaintiffs have not alleged any facts plausibly suggesting that as a result of ACME's debt purchase, Nada, Fayette, or anyone else at ACME was involved in designing Avia's games, soliciting or communicating with users regarding Avia's games, or making representations regarding either how the games work or Avia's financial interest in the outcome of the games, including with respect to the alleged use of so-called "bots."

### B.    Avia Matched Players To Recorded Games Of Other Players, Not "Bots"

Named plaintiffs are two individuals who claim to have lost money playing Avia's games. They allege that "[b]ased on Avia's advertising and messaging, Plaintiffs spent money to play Avia's games believing that they were truly skill based and without the knowledge that the games were skewed in Avia's favor." FAC ¶ 7. Plaintiffs purport to represent a class of "[a]ll persons who have lost money playing any Avia game from at least 2017" to the present. FAC ¶ 90.

Relying almost completely on court filings from a separate patent dispute brought by Avia's competitor, *Skillz Platform, Inc. v. AviaGames, Inc.*, No. 5:21-cv-2436 (N.D. Cal.) (the "*Skillz* Litigation"), Plaintiffs allege that Avia told players that they were wagering money in games of skill against other real-time human players, but that in reality Avia matched players against "non-human computer robots" that can "impact or control the outcome of the games." FAC ¶¶ 1, 49. In

- 4 -

KL3 3695409.14

actuality, the "robot players" Plaintiffs complain of are not some sort of artificial intelligence, but rather video recordings of prior human playthroughs.  FAC ¶¶ 53, 56.  Plaintiffs also allege that Avia told players that when they lost, the winnings went to the winning player, not to Avia, and that Avia had no financial interest in the outcome of the games (other than a fee), when in fact Avia took the winnings for itself when players lost to the alleged "bots."  FAC ¶¶ 67-71.

Plaintiffs contend that the alleged use of bots to win games transformed the games of skill into games of chance controlled by the "house," *i.e.*, Avia, and that this constituted illegal gambling under California law, and thus under federal law.  FAC ¶¶ 105-115.  They also contend that ACME, together with the other Defendants, committed wire fraud by misrepresenting the nature of Avia's games and by transferring funds to and from Avia.  FAC ¶ 134.  Based on these alleged predicate acts, Plaintiffs contend that ACME and Defendants participated in a RICO enterprise and conspiracy that injured Plaintiffs.  FAC at Count III.[5]

### C.      ACME Played No Role In The Alleged Use Of Bots By Avia

Plaintiffs do not allege any particularized facts regarding ACME's conduct in support of the purported enterprise.  ACME did not even begin operations until 2019, and it first invested in Avia in 2021 (*supra* at 3), well after the alleged fraud supposedly began.  Plaintiffs concede that ACME's "provision of capital or financial support is arguably part of [its] routine business activity."  FAC ¶ 127.  Nonetheless, Plaintiffs attempt to cobble together a handful of innocuous facts regarding ACME's board presence, Nada and ACME's "experience" in gaming,[6] and the fact that Nada attended the *Skillz* trial and was listed as a possible witness (but not called to testify), insisting that such allegations "support[] the view that [ACME was] aware of Avia's fraudulent activities."  FAC ¶¶ 77-80.  But these allegations do not plausibly support an inference that ACME had knowledge of bots, much less that ACME knowingly joined the supposed Robot Player Enterprise or directed any aspect of Avia's alleged fraud.

---

[5] Plaintiffs separately bring California consumer protection claims against Avia, but not against ACME or the other Defendants.  FAC at Counts I – II.

[6] The FAC alleges that four of ACME's 31 portfolio companies are in the gaming industry, and that Nada has investment experience in "internet software and infrastructure."  FAC ¶ 78.

KL3 3695409.14

Indeed, Plaintiffs allege facts *inconsistent* with their supposition that ACME must have known about Avia's alleged bot scheme. The FAC alleges that Avia "made concerted efforts to hide its bot use through the use of . . . code names." FAC ¶ 84. Plaintiffs have also alleged that Avia affirmatively misled its auditors (FAC ¶ 61), as well as its lawyers, banks, and financial advisors (Dkt. 1 ¶¶ 54-55), about its alleged use of bots.[7] Indeed, Skillz, which had the benefit of extensive discovery from Avia in the patent case, alleged that Avia "took steps to hide its infringing use of bots within the company itself, including by withholding this information from its own employees and, on information and belief, *from members of its board of directors and investors*." Sec. Am. Compl. ¶ 90, *Skillz* Litigation, Dkt. 483 (emphasis added).

The paucity of Plaintiffs' factual allegations against ACME is underscored by their blatant mischaracterization of the *Skillz* Litigation record in an attempt to suggest that the Avia board (and Nada in particular) knew about and "likely took an active role in concealing" Avia's bot use. FAC ¶¶ 80, 122, 124. Plaintiffs allege that ACME's supposed "close connection" with Avia and its knowledge and concealment of the bot scheme should be inferred from the fact that Avia's CEO, Vickie Chen, initially invoked her Fifth Amendment right not to testify during a deposition in the *Skillz* Litigation when asked if the Avia board or Nada were aware of Avia's alleged bots. *Id*. But as the transcript cited by Plaintiffs makes clear, Chen asserted her Fifth Amendment rights more than 100 times during that deposition (at the instruction of her counsel) in response to questioning on numerous topics, not just questioning relating to the Avia board or Nada. *See Skillz* Litigation, Dkt. 642-12. In any event, Plaintiffs fail to mention that Chen later *withdrew* her Fifth Amendment

---

[7] Plaintiffs omit from the FAC their prior allegations regarding Avia's efforts to mislead lawyers, banks, and financial advisors regarding the purported bot use. However, the superseded portion of an amended complaint "remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated," *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996) (cleaned up), and it may be considered in motions to dismiss subsequent complaints. *See, e.g.*, *Byrd v. Bank of Am.*, No. 14-cv-03646, 2015 WL 13919187, at *2 n.3 (C.D. Cal. Apr. 22, 2015); *see also United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984). Alternatively, the FAC incorporates by reference opinions from the *Skillz* Litigation, in which the court required Avia to disclose, pursuant to the crime-fraud exception, evidence of misrepresentations by Avia to its outside counsel in connection with opinion letters that were shared with financial institutions. *See* FAC ¶ 118 n.108 (citing Order Granting in Part and Denying in Part Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge, *Skillz* Litigation, Dkt. 509, and Order Following In-Camera Review of AviaGames Documents, *Skillz* Litigation, Dkt. 435).

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

assertions, was re-deposed for a full day, and provided substantive testimony.[8]  Plaintiffs obviously knew these critical facts, because the FAC cites to Chen's later deposition.  FAC ¶¶ 53, 64.  Importantly, Plaintiffs do *not* allege that Chen's later deposition testimony supports any "inference" that ACME and Nada "must have known" about Avia's alleged bot use.[9]

Plaintiffs also allege in conclusory fashion that ACME "disseminated fraudulent statements regarding the skill-based character of Avia's games presented by Avia and its co-founders."  FAC ¶ 77.  But they identify only two actual statements in support of this theory, and neither addresses the supposed fraudulent conduct.  Plaintiffs identify a six-word comment on ACME's website listing its portfolio companies, in which ACME describes Avia as "A real-money mobile skill gaming app."  FAC ¶ 40.  Plaintiffs also point to a quote attributed to Nada in an August 2021 *BusinessWire* article announcing Avia's July 2021 fundraising round (which included ACME's initial $10 million debt purchase), in which Nada allegedly praised Avia executives' "gaming experience," expressed his opinion that Avia's games were "compelling" and "interactive," and referenced Avia's efforts to make gaming "fun, competitive[,] engaging," and "inclusive."  FAC ¶ 120.  Neither of these alleged statements addresses the operation of Avia's games or whether players compete in real-time.  And Plaintiffs do not (because they cannot) plausibly allege that either statement was directed at Avia gamers.

### III.   **ARGUMENT**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[8] *See* Order Granting in Part and Deferring in Part AviaGames' Motion in Limine to Permit Vickie Chen to Testify in Full and for Related Relief at 2-3, *Skillz* Litigation, Dkt. 586.

[9] Judge Freeman, who presided over the *Skillz* Litigation, found that Chen's assertion of her Fifth Amendment rights was not tactical or abusive, and precluded Skillz from mentioning Chen's Fifth Amendment assertions at trial.  Dkt. 586 at 2; Order Granting AviaGames Inc.'s Motion in Limine to Exclude Vickie Chen's Prior Assertions of Her Fifth Amendment Privilege at 2, *Skillz* Litigation, Dkt. 603.  To prevent Plaintiffs from "selecting only portions of [the *Skillz* Litigation docket] that support their claims," ACME requests that the Court treat these documents as incorporated by reference.  ACME Request for Judicial Notice at 3-4 (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)).  Alternatively, the Court may take judicial notice of these documents, because they are publicly available court filings.  *Id*. at 4-5.

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

Pleadings must therefore include factual allegations that "raise a right to relief above a speculative level." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). RICO pleadings that allege a scheme to defraud based on defendants' "routine participat[ion] in American commerce" must plead "a significant level of factual specificity." *Id.* at 997-98.

Facts that are "merely consistent with a defendant's liability" or subject to an "obvious alternative explanation" for the defendant's behavior are insufficient to state a claim. *Id.* at 996 (quoting *Iqbal*, 556 U.S. at 678, 682). "When faced with two possible explanations . . . plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (cleaned up). The Court also need not accept as true allegations that contradict documents referenced in the complaint or matters subject to judicial notice, nor must it accept conclusory allegations or unreasonable inferences. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Furthermore, because Plaintiffs' RICO claims are based on a "unified course of fraudulent conduct"—namely, Avia's alleged use of "bots," despite advertising its games as games of skill—those claims are "grounded in fraud" and "the pleading of [those claims] as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (cleaned up); *see also In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 603 (N.D. Cal. 2020) (applying Rule 9(b) to require plaintiffs to plead RICO elements with particularity). "[T]he policies underlying Rule 9(b) are 'especially important in RICO cases because of the harm to a person's reputation that allegations of 'racketeering' may do.'" *In re Jamster Mktg. Litig.*, No. 05-cv-0819, 2009 WL 1456632, at *4 (S.D. Cal. May 22, 2009) (quoting *In re Crazy Eddie Sec. Litig.*, 714 F. Supp. 1285, 1292-93 (E.D.N.Y. 1989)). In considering whether a plaintiff has satisfied Rule 9(b), the Court should disregard allegations that

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

lump defendants together and consider only those allegations directed at specific parties. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (per curiam).

Here, the FAC serves up a grab-bag of RICO theories stemming from Avia's alleged use of bots. But despite having had two attempts to plead their claims, Plaintiffs fail to allege facts plausibly supporting ACME's role in any fraud. Rather, as to ACME, the FAC most plausibly describes routine business conduct that countless investors engage in every day. The Court should reject Plaintiffs' efforts to transform ACME's ordinary, good-faith investor activity into the grist for a civil RICO claim. The Complaint should be dismissed with prejudice as to ACME.

### A.     Plaintiffs Fail To Plead The Elements Of 18 U.S.C. § 1962(c) As To ACME

To plead a RICO claim under § 1962(c), Plaintiffs must allege facts plausibly suggesting that ACME (i) participated in the conduct of (ii) an enterprise that affects interstate commerce (iii) through a pattern of (iv) racketeering activity. *Eclectic Props.*, 751 F.3d at 997. Plaintiffs also must allege an injury to business or property that was caused by reason of the § 1962(c) violation. 18 U.S.C. § 1964(c); *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (requiring both but-for and proximate causation). Plaintiffs do not plead any of these required elements as to ACME.

### 1.     Plaintiffs Fail To Plead A RICO Enterprise Distinct From Avia Or That ACME Joined Or Shared A Common Purpose With That Enterprise

Plaintiffs allege that ACME, along with other Defendants, participated in an association-in-fact "Robot Player Enterprise," which Plaintiffs claim was "formed for the purpose of tricking consumers into believing that they are playing against real players to increase the attractiveness of Avia's games, broaden the user base, and hence, extract more money, to ultimately 'go public or be acquired as soon as possible.'" FAC ¶ 101.[10] To plead an association-in-fact enterprise, Plaintiffs must allege (among other things) "particularized facts supporting the inference that [ACME and Defendants] had a common purpose to engage in a fraudulent scheme." *Jamster*, 2009 WL 1456632, at \*6; *see also Eclectic Props.*, 751 F.3d at 997 (association-in-fact enterprise

---

[10] The "go public or be acquired" quote is attributed to an Avia employee in an internal Avia communication. FAC ¶ 101 n.103. It is telling that even the FAC's alleged "common" enterprise purpose is based on statements made by *Avia* employees, rather than conduct or communications attributable to ACME or any other outside party.

KL3 3695409.14

requires "[1] a common purpose, [2] a structure or organization, and [3] longevity necessary to accomplish the purpose").  Moreover, that enterprise cannot simply be a RICO defendant "referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) (liability under § 1962(c) requires a plaintiff to "allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise'").

No doubt aware that they may not plead a distinct, association-in-fact enterprise consisting solely of Avia and its officers, *e.g.*, *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005), Plaintiffs attempt to concoct a separate RICO enterprise by tossing in two of Avia's investors.  But Plaintiffs fall far short of plausibly pleading an enterprise distinct from Avia itself, let alone that ACME joined the purported Robot Player Enterprise and shared its common fraudulent purpose.

*First*, Plaintiffs' enterprise allegations address conduct by Avia and its employees for Avia's own benefit, not for a separate enterprise.  Per the FAC, it was *Avia*—not any enterprise or investor—that allegedly "fills its games with computer robots for its own advantage and profits." FAC at p. 19; *see also id.* ¶ 7 ("Based on *Avia's* advertising and messaging, Plaintiffs spent money to play *Avia's* games believing that they were truly skill based . . . ."); *id.* ¶ 61 (referring to "the 'secretive' nature of *Avia's* fraudulent enterprise"); *id.* ¶ 76 ("*Avia* promises users skill-based games against real people and delivered chance-based games populated and/or controlled by its bots."). Plaintiffs allege no facts supporting an inference that ACME played any part in designing Avia's games, including the alleged use of bots, or that ACME controlled (or even knew about) the details of Avia's player matching algorithm.  The "enterprise," such as it is, is simply Avia.  Plaintiffs cannot transform Avia's alleged misconduct into a multi-party enterprise by alleging merely that it was in ACME's and Avia's "mutual benefit" for Avia to perform well, *JUUL*, 497 F. Supp. 3d at 602-03, or by claiming that ACME and Avia acted in parallel rather than "actively work[ing] together in an indispensable and integrated manner," *Jamster*, 2009 WL 1456632, at *6.[11]

---

[11] In any event, Plaintiffs' allegation that ACME and the other investors were motivated to attract more players to Avia games to "boost[] the value of their equity" (FAC ¶ 77) is misguided as to ACME.  ACME does not hold any equity in Avia, only debt.

- 10 -

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

*Second*, Plaintiffs fail to allege facts plausibly showing that ACME and the other Defendants shared a common purpose independent of their own business interests, as is required to plead an association-in-fact enterprise.  Plaintiffs' conclusory allegations of an "enterprise" with a common purpose to trick consumers, FAC ¶ 101, are not sufficient; Plaintiffs must plead particularized facts plausibly showing that ACME shared a common purpose to advance "*the 'enterprise's affairs*,'" not just [its] own affairs." *JUUL*, 497 F. Supp. 3d at 598 (emphasis added) (quoting *Cedric Kushner*, 533 U.S. at 161); *see also Jamster*, 2009 WL 1456632, at *6 (dismissing RICO claims where plaintiffs "allege[d] an overarching common purpose to engage in fraudulent conduct, but fail[ed] to identify specific allegations in support of the common purpose").  Critically, courts in the Ninth Circuit "overwhelmingly reject[]" RICO claims that "attempt[] to characterize routine commercial relationships as RICO enterprises." *Lewis v. Rodan & Fields, LLC*, No. 18-cv-02248, 2019 WL 978768, at *3 (N.D. Cal. Feb. 28, 2019) (quoting *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016)).[12]

Applying these principles, courts have dismissed RICO claims against investors, like ACME, that are alleged to have merely engaged in routine investment activity.  For example, in *JUUL*, plaintiffs alleged that an investor in e-cigarette company JUUL shared a common purpose with JUUL and its officers and directors of "maintaining and expanding the number of nicotine-addicted e-cigarette users." *See JUUL*, 497 F. Supp. 3d at 596-97.  But the court found that the

---

[12] *See also Shaw*, 220 F. Supp. 3d at 1057 (no common fraudulent purpose between car manufacturer and parts supplier buying and selling defective part, where complaint merely alleged the parties were "associated in a manner directly related to their own primary business activities" (cleaned up)); *Loomer v. Zuckerberg*, No. 22-cv-02646, 2023 WL 6464133, at *15 (N.D. Cal. Sept. 30, 2023) (no common purpose where Facebook's advertiser sought to advance its own economic interests by encouraging Facebook to kick a controversial political candidate off the platform); *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461-62 (N.D. Cal. 2019) (no common purpose where plaintiffs merely "describe[d] the business interactions" between seller of tuna fish and their suppliers, importers, and canners, "and then assert[ed] that these business interactions were done fraudulently and that the co-conspirators knew that StarKist was fraudulently advertising its tuna as dolphin-safe"); *In re EthereumMax Inv. Litig.*, No. 22-cv-00163, 2022 WL 20804358, at *14-16 (C.D. Cal. Dec. 6, 2022) (no common purpose where the complaint merely alleged that cryptocurrency company executives and celebrity spokespeople each acted for their own benefit in promoting cryptocurrency); *Lewis*, 2019 WL 978768, at *3-4 (no common fraudulent purpose between manufacturer of dangerous product and contract salespeople engaged in an "ordinary business relationship" and unaware of the danger).

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

investor's conduct—which included securing shelf-space for JUUL products and making misleading statements to regulators—even if fraudulent, was taken in support of the investor's own business interests as owner of a 35 percent stake in JUUL, and *not* in support of the alleged enterprise. *Id*. at 602-03. There was "too little to plausibly allege that . . . [the investor] specifically joined [the association-in-fact enterprise], as opposed to going into business with [JUUL] to support the general business of [JUUL] for their mutual benefit." *Id*. at 603.[13]

The FAC does not include well-pled facts suggesting that ACME and the other Defendants shared a common purpose to supposedly "trick[] consumers" into playing Avia's games. FAC ¶ 101. Plaintiffs allege only that (i) ACME was one of multiple companies to invest in Avia (FAC ¶ 102); (ii) ACME included a statement on the "Portfolio" page of its website characterizing Avia as "A real-money mobile skill gaming app" (*id*. ¶ 40); (iii) an ACME partner supposedly "publicly praised Avia . . . for its contribution to the gaming industry" in an article announcing Avia's fundraising round (which included ACME's initial investment) (*id*. ¶¶ 120, 134, 173); and (iv) one ACME partner sits on Avia's Board of Directors, while another is a non-voting board observer (*id*. ¶ 16). That's it. No marketing to consumers or misrepresentations to regulators. No factual allegations of directing, or even being aware of, Avia's alleged use of bots. No examples of coordination with other Defendants. Nothing but a conclusory, implausible suggestion that because ACME made a concededly "routine" investment (FAC ¶ 127), held a board position, and made general statements about a portfolio company (like other investors), it *must have* shared the alleged enterprise's purpose of misleading users about Avia's games. But Rule 9(b) requires *particularized facts*—not vague speculation—supporting ACME's involvement in a common scheme to commit fraud. *Jamster*, 2009 WL 1456632, at *6.

No doubt aware of their failure to plead any facts implicating ACME or establishing a shared purpose separate from ACME's own business interests, Plaintiffs turn cartwheels to try to

---

[13] The *JUUL* court later concluded that an amended complaint overcame this and other shortcomings, but only because plaintiffs added significant details regarding, among other things, the investors' coordination with the other RICO defendants to advance various fraudulent schemes, as well as the investors' ability to control the activities of JUUL's board of directors. *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 533 F. Supp. 3d 858, 870-71, 872-75 (N.D. Cal. 2021). Plaintiffs make no such allegations against ACME; nor could they.

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

transform ACME's ordinary investment conduct into something sinister.  But the FAC's repeated assertions that ACME knew about and joined the alleged bots scheme are wholly conclusory and not supported by any well-pled facts.

For example, Plaintiffs surmise that ACME's presence on the Avia board indicates it *must have* been aware of Avia's supposed fraud.  FAC ¶¶ 79, 136.  But Plaintiffs allege no particularized facts suggesting that Nada, Fayette, or anyone else at ACME was so informed, nor is an unsupported inference of knowledge plausible here.  *Cf. Whitten v. Clarke*, 41 F.4th 1340, 1351 (11th Cir. 2022) ("While it is reasonable to assume managers are privy to the daily operations of a company, the same is not true for Outside Directors."); *Brown v. Moll*, No. 09-cv-05881, 2010 WL 4704372, at *3 (N.D. Cal. Nov. 12, 2010) (declining to impute knowledge of improper revenue recognition scheme to outside directors).[14]  Similarly, Plaintiffs allege that ACME's small number of gaming investments and Nada's "internet software and infrastructure" experience "strongly suggest[]" that Nada's alleged press quote was knowingly false, rather than a statement of opinion, and that ACME was "more likely to have been aware of Avia's activities than supposedly duped by them."  FAC ¶¶ 120, 128, 130.  Here again, the alleged facts do not plausibly support Plaintiffs' preferred inference.  Moreover, this theory is contradicted by Plaintiffs' *own allegations* that Avia hid its bot use from outsiders, including auditors, lawyers, and banks.  FAC ¶ 61; Dkt. 1 ¶¶ 54-55.  Plaintiffs' theory is also contradicted by the *Skillz* plaintiff's allegations that Avia hid its bot use "from members of its board of directors and investors."  Sec. Am. Compl. ¶ 90, *Skillz* Litigation, Dkt. 483.  It is not plausible that Avia misled trusted advisors and auditors, but did not also mislead its investors and outside board members.

Plaintiffs' cynical suggestion that Chen's Fifth Amendment assertions during the *Skillz* Litigation show that Avia's outside board members "were likely informed" of Avia's bot use, and that Nada "likely took an active role in concealing" those bots, FAC ¶¶ 122, 124, is both implausible

---

[14] Plaintiffs surmise that Avia's outside directors must have been aware of its historical playthroughs, because those game features were allegedly Avia's "competitive advantage."  FAC ¶ 123.  But that is inconsistent with Plaintiffs' recognition that asynchronous play is common and permissible in gaming.  *See* Dkt. 1 ¶ 57 ("Some other multiplayer games try to overcome such a high burden by matching players asynchronously, i.e., the players play the same game under the same conditions, but not necessarily at the same time."); *see also McKeon*, 738 F.2d at 31.

- 13 -

KL3 3695409.14

and contrary to law. Chen asserted her Fifth Amendment rights in response to questioning on a number of topics, and she later withdrew these assertions. Tellingly, Plaintiffs do *not* allege that Chen implicated ACME, the Avia outside directors, or Nada in particular in her subsequent testimony. There is simply no basis to draw an inference against *ACME* based on Chen's withdrawn Fifth Amendment invocations, particularly given Judge Freeman's ruling in *Skillz* that introducing evidence regarding such assertions would be "not appropriate" and "unfairly prejudicial." Order at 2, *Skillz* Litigation, Dkt. 603. *See also Ayers v. Lee*, No. 14-cv-00542, 2020 WL 6825589, at *2 (S.D. Cal. Nov. 20, 2020) (adverse inference against third-party permissible only where it "is trustworthy under all of the circumstances and will advance the search for the truth" (quoting *LiButti v. United States*, 107 F.3d 110, 124 (2d Cir. 1997)); *cf. Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012) (declining, at motion to dismiss stage, to draw an adverse inference based on defendants' Fifth Amendment assertions in separate investigation). Similarly, allegations that Nada was disclosed (but not called) to testify regarding Avia's "history" during the *Skillz* trial—and that he allegedly "attended" and "monitored" that trial—do not remotely support any inference that he must have known about Avia's "matching algorithm and use of bots." FAC ¶¶ 80, 124.[15]

In short, the FAC's allegations do not move Plaintiffs' theory that ACME joined the enterprise "from the realm of the possible to the plausible." *Shaw*, 220 F. Supp. 3d at 1057. Plaintiffs' supposed "enterprise" is nothing more than an effort to "circumvent[] reality" by "construct[ing a RICO enterprise] out of a routine commercial relationship" through "creative pleading." *Gomez v. Guthy-Renker, LLC*, No. 14-cv-1425, 2015 WL 4270042, at *5-7, 11 (C.D. Cal. July 13, 2015). The FAC most plausibly suggests that ACME engaged in legitimate business activity as a firm that invests in companies, promotes its investment portfolio, and advances its own financial interests by supporting the business activities of its investees. Countless investors engage in identical conduct every day; such allegations do not plausibly show the requisite "common purpose" to sustain a RICO claim as to ACME.

---

[15] Notably, Avia disclosed several witnesses to testify about the "operation of" Avia's games, but Nada was not one of them. *See Skillz* Litigation, Dkt. 616-4.

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

**2.    Plaintiffs Fail To Allege Facts Demonstrating That ACME Directed The Alleged "Robot Player Enterprise"**

Plaintiffs also fail to allege facts plausibly suggesting that ACME "conduct[ed] or participate[d], directly or indirectly, in the conduct of" the alleged enterprise. 18 U.S.C. § 1962(c). To satisfy this element, "one must have some part in directing [the enterprise's] affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); *see also id*. at 183 (requiring participation in enterprise's "operation or management"). While "RICO liability is not limited to those with primary responsibility for the enterprise's affairs, . . . *some* part in directing the enterprise's affairs is required." *Id*. at 179. "[D]irection requires some degree of control," and "even substantial influence by a party through persuasion with respect to an alleged RICO enterprise is not enough to establish control." *High v. Choice Mfg. Co.*, No. 11-cv-5478, 2012 WL 3025922, at *8-9 (N.D. Cal. July 24, 2012) (Chen, J.) (collecting cases).

For instance, in *JUUL*, plaintiffs alleged that three directors, by virtue of their board seats, had "final say" over JUUL's allegedly fraudulent marketing and exacted close control over executive management of the business. *JUUL*, 497 F. Supp. 3d at 608. But the court found these allegations insufficient to establish the directors' direction or control over the RICO enterprise, because plaintiffs failed to allege either that (i) any director "personally participated, authorized, or directed specific fraudulent acts," or (ii) the directors used their control of the board to approve the fraudulent conduct. *Id*. at 608-09. General allegations that the directors temporarily acted as the *de facto* CEO of JUUL also failed to suggest that they "directed specific acts of *the distinct [association-in-fact] Enterprise* separate and apart from routine business conducted by the Directors as a consequence of their positions on the Board." *Id.* at 609 (emphasis added).[16]

Plaintiffs' allegations here are far more limited than the rejected director allegations in *JUUL*. As explained above, Plaintiffs fail to plead facts plausibly suggesting that ACME even knew about Avia's allegedly bot use. But even if they could plausibly plead knowledge (which

---

[16] *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580 (E.D. Mich. 2015), reached a similar result. There, plaintiffs alleged that investor entities controlled the conduct of a RICO enterprise that operated a fraudulent retail pyramid scheme, based solely on the fact that two employees of the investors sat on the retail company's board of directors. *Id*. at 604. The court rejected this argument, reasoning that the investors' board presence did not establish their participation in the enterprise. *Id*.

- 15 -

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

they cannot), Plaintiffs' allegations about ACME's presence on the Avia board fail to establish ACME's direction or control of the supposed enterprise. Plaintiffs allege that ACME was "involved in the management of Avia" via its board presence, which "comes with voting power, hence the ability to influence board's [*sic*] decisions." FAC ¶ 174. But mere "influence" is not sufficient to establish direction. *High*, 2012 WL 3025922, at *8-9. Furthermore, Plaintiffs fail to plead that ACME exercised the requisite control over the Avia board or that it "participated, authorized, or directed specific fraudulent acts" by Avia. *JUUL*, 497 F. Supp. 3d at 608-09. In any event, Plaintiffs make no allegations regarding ACME's direction or control of *the Robot Player Enterprise* specifically, as distinct from Avia.[17]

The FAC's remaining allegations likewise fail to establish ACME's direction or control over the enterprise. While Plaintiffs allege, based on Chen's invocations of her Fifth Amendment privilege during her *Skillz* deposition, that Nada "likely . . . conceal[ed]" Avia's bot use, FAC ¶ 124, that allegation is implausible, improper, and entitled to no weight for the reasons explained above. *See supra* at 6-7, 13-14. And even if Plaintiffs could plausibly plead such concealment (again, they cannot), this alone is insufficient to establish ACME's direction or control of the alleged enterprise. *See Baumer v. Pachl*, 8 F.3d 1341, 1342-44 (9th Cir. 1993) (attorney's efforts to cover up fraud did not rise to operation or management of the enterprise); *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 347 (S.D.N.Y. 1998) (allegations against defendant bank, which included efforts to conceal a fraudulent scheme, merely supported the bank's "*assistance* to the alleged RICO enterprise, not direction of it").

Additionally, the FAC's allegation that ACME and Galaxy "provid[ed] the necessary capital" for Avia to operate its games and "develop" its bots, FAC ¶¶ 121, 173, is insufficient to establish direction or control. As this Court has recognized, the simple fact that a third-party provides financial assistance to a company, even with knowledge of that company's fraud (which is not the case here), does *not* establish direction of a RICO scheme. *See High*, 2012 WL 3025922,

---

[17] This is not surprising since, as explained above, the alleged Robot Player Enterprise is simply Avia by a different name. *See supra* at 10.

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

at \*9 (dismissing RICO claims against a third-party financing company that allegedly provided the "financial grease" for a scheme to fraudulently market and sell vehicle service contracts).

Finally, Plaintiffs plead no facts plausibly suggesting that ACME directed any scheme to mislead consumers about the nature of Avia's games. The two ACME statements that Plaintiffs identify—the short website statement and the attributed news article quote—are benign, not targeted to consumers, and reflect ACME's ordinary business efforts to highlight its portfolio. These are exceedingly "thin reeds" from which to argue that ACME directed or controlled "the conduct of the 'enterprise's affairs,' not just [its] own affairs." *JUUL*, 497 F. Supp. 3d. at 610 (quoting *Cedric Kushner*, 533 U.S. at 161). Beyond these two statements, the best Plaintiffs can muster is a promise that "[d]iscovery is likely to reveal that RICO Investors used their expertise in gaming industry to assist Avia, Ms. Chen, and Ms. Wang in disseminating misinformation about Avia's business." FAC ¶ 121. But the mere *possibility* that discovery *might* reveal information supporting Plaintiffs' claims does not come close to satisfying either Rule 8 or Rule 9(b) and, in any event, mere assistance does not satisfy *Reves*'s direction or control requirement. *High*, 2012 WL 3025922, at \*8 ("Simply providing assistance to the enterprise . . . is not enough."). Nor are Plaintiffs' factually unsupported and conclusory group allegations of a "systemic linkage," "coordination of activities," and a "common communication network," FAC ¶¶ 118, 125, sufficient to plead ACME's direction of Avia's communications. Indeed, the only documents Plaintiffs cite as evidence of the alleged "common communication network" are internal Avia chats that do not include ACME. Accordingly, Plaintiffs have also failed to plead the second element of their RICO claim.[18]

### 3. Plaintiffs Fail To Plead That ACME Engaged In A Pattern Of Racketeering Activity

Plaintiffs also do not plausibly plead the third or fourth elements of their § 1962(c) claim: that ACME engaged in a pattern of racketeering activity. Racketeering activity requires certain enumerated predicate acts, *see* 18 U.S.C. § 1961(1), here alleged to be wire fraud and illegal

---

[18] Plaintiffs do not plead that ACME is liable for violating RICO under an aiding and abetting theory, and no such theory is available. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 984-86 (N.D. Cal. 2018).

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

gambling.  FAC ¶ 175 (citing 18 U.S.C. §§ 1343, 1955).  And to satisfy the "pattern" element, Plaintiffs must allege two predicate acts attributable to ACME within a ten-year period.  *See* 18 U.S.C. § 1961(5).  The racketeering predicates must be related and "amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

### a.    Plaintiffs Do Not Plead Wire Fraud, 18 U.S.C. § 1343

The elements of wire fraud are "(1) the existence of a scheme to defraud; (2) the use of wire . . . to further the scheme; and (3) a specific intent to defraud."  *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013).  Rule 9(b) requires that wire fraud "be pled with particularity," including identifying "the who, what, when, where, and how" of the alleged fraud.  *Chrysler-Dodge-Jeep*, 295 F. Supp. 3d at 972  (cleaned up).  Here, Plaintiffs allege ACME committed wire fraud by (i) transferring funds to and from Avia and (ii) transmitting statements "indicating that Avia's games are games of skill where players compete in time [*sic*] against real human players."  FAC ¶ 134.[19]  These allegations are deficient for several reasons.

*First*, as to the alleged transfers of funds, Plaintiffs do not particularly identify any such transfers, as required by Rule 9(b).  The closest they arguably come is a vague reference to ACME's July 2021 investment.  FAC ¶ 102.  But even then, the FAC pleads no facts linking that legitimate 2021 investment to later fraud attributable to ACME.  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985) (isolated acts "do not constitute a pattern").  Nor does ACME's 2021 investment "amount to or pose a threat of continued criminal activity."  *H.J., Inc.*, 492 U.S. at 239.

*Second*, Nada's statement that Avia is "in tune with what consumers want" and that its games are "compelling, interactive" and "fun, competitive[,] and engaging" is an opinion that is not actionable as fraud.  FAC ¶ 120.  "An actionable statement must make a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'"  *Yetter v. Ford Motor Co.*, 428 F. Supp. 3d 210, 234 (N.D. Cal. 2019) (quoting *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039 (N.D. Cal. 2014)).  The quote attributed to Nada is quintessential puffery: that is, a "generalized, vague, and unspecified assertion upon which

---

[19] Plaintiffs concede that ACME did *not* "transmit[] Avia games through the Internet or receiv[e] online payment from players."  FAC ¶ 136.

- 18 -

KL3 3695409.14

a reasonable consumer could not rely." *Id*. (quoting *Rasmussen*, 27 F. Supp. 3d at 1039). The statement does not address whether Avia's games are skill-based and therefore is not misleading under the theory of fraud alleged here. Additionally, Plaintiffs do not plausibly allege that this generic quote from August 2021 and the six-word statement posted on ACME's website at some unspecified time constitute a sufficiently related pattern of activity, rather than two "isolated acts." *Sedima*, 473 U.S. at 496 n.14.

*Third*, and more generally, Plaintiffs fail to plead wire fraud because they do not plausibly allege that ACME had specific intent to defraud Avia's customers. Wire fraud requires "the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions." *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020). "The intent to defraud may be inferred from a defendant's statements and conduct" or by "examining the scheme itself." *Eclectic Props.*, 751 F.3d at 997 (cleaned up). But when allegations of fraud are based on "facially legitimate" conduct by defendants who "otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *Chrysler-Dodge-Jeep*, 295 F. Supp. 3d at 978 (quoting *Eclectic Props.*, 751 F.3d at 997-98); *see also Tan v. Quick Box, LLC*, No. 20-cv-01082, 2020 WL 7226440, at *23 (S.D. Cal. Dec. 8, 2020) ("[W]hether a RICO claim survives a motion to dismiss depends in part on if it is supported by specific factual allegations that enable courts to rule out the innocent explanation in favor of plaintiff's fraudulent scheme hypothesis.").

Here, Plaintiffs fail to plausibly allege that ACME was even aware of a scheme to defraud Avia's users, much less plausibly demonstrate that ACME intentionally participated in such a scheme. Again, Plaintiffs have not alleged facts showing ACME knew about Avia's supposed use of bots. Such knowledge cannot be inferred from the two generic statements Plaintiffs cite (which, again, were not addressed to or otherwise intended for Avia users, who are the target of the alleged scheme to defraud). Nor can it be inferred from ACME's board presence, or the fact that ACME holds investments in a small handful of other gaming companies. *Cf. Whitten*, 41 F.4th at 1351;

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

*Brown*, 2010 WL 4704372, at \*3.  Otherwise, any time a business commits fraud, an investor with a board member could be assumed to have known about their investee's fraud and held vicariously liable.  Plaintiffs' speculation about ACME's knowledge is even more farfetched, in light of their allegation that Avia actively concealed the bot scheme from auditors, lawyers, banks, and others.[20]

Moreover, specific intent cannot be inferred from ACME's conduct or the scheme itself because, as in *Eclectic Properties*, and unlike in *Chrysler-Dodge-Jeep*, all of the factual allegations against ACME involve facially legitimate business conduct: namely, ACME's investment in Avia; ACME's inclusion of a brief, generic description of Avia on its website; Nada's general statement in an article about Avia's August 2021 fundraising round; and ACME's presence on Avia's board of directors.  This case does not involve conduct by ACME that "plausibly had only a deceitful and unlawful purpose."  *Chrysler-Dodge-Jeep*, 295 F. Supp. 3d at 978.[21]  To the contrary, Plaintiffs stake their wire fraud on the sort of run-of-mill business conduct that innumerable investors engage in every day.  And as in *Eclectic Properties*, Plaintiffs plead no facts "tend[ing] to exclude a plausible and innocuous alternative explanation"—*i.e.,* that ACME's facially legitimate activities were undertaken to advance ACME's lawful business interests.  751 F.3d at 998 (citing *Century Aluminum*, 729 F.3d at 1108).  Plaintiffs thus fall far short of providing the "significant level of factual specificity" required to plausibly infer that ACME intentionally participated in a scheme to defraud.  *Id*.

**b.      Plaintiffs Do Not Plead Illegal Gambling, 18 U.S.C. § 1955**

Plaintiffs also allege that ACME and the RICO Defendants engaged in the predicate offense of illegal gambling.  *See* 18 U.S.C. § 1955.  That statute prohibits conducting, financing, managing, supervising, directing, or owning all or part of an "illegal gambling business."  *Id*. § 1955(a).  An

---

[20] Plaintiffs' failure to plausibly plead that ACME was a "knowing participant" in a scheme to defraud also means that ACME cannot be held vicariously liable for other Defendants' alleged wire fraud violations.  *See United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002).

[21] Parroting the language of these cases, Plaintiffs allege that the deployment of bots "plausibly had only a deceitful purpose."  FAC ¶ 126.  But besides being a legal conclusion, *see Daniels-Hall*, 629 F.3d at 998, this allegation is unavailing as to ACME because it assumes that ACME knew about and was involved in the alleged bots scheme.  Plaintiffs have failed to plausibly plead ACME's knowledge or involvement.

DEFENDANT ACME'S MTD
3:23-CV-05971-EMC

KL3 3695409.14

illegal gambling business is one that (1) violates the law of the state in which it is conducted; (2) involves five or more people; and (3) "has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day."  *Id*. § 1955(b).

If this Court concludes (as it should) that Plaintiffs have not pled a wire fraud predicate attributable to ACME, then the illegal gambling predicate cannot alone establish that ACME engaged in the requisite "pattern" of two or more racketeering activities.  *See* 18 U.S.C. § 1961(5).  Plaintiffs allege only one "illegal gambling business"—namely, Avia, which the FAC states has existed since 2017.  FAC ¶ 102.  Plaintiffs fail to allege that ACME invested in, owned, or was otherwise involved in any other continuously operated illegal gambling business consisting of five or more people.  Thus, absent a viable wire fraud claim attributable to ACME, the FAC does not allege a pattern of racketeering activity as to ACME sufficient to sustain a RICO claim.

Regardless, the § 1955 allegations against ACME are also deficient because Plaintiffs fail to plausibly allege that ACME "knew that [its] act was one of participation in *gambling*."  *United States v. O'Brien*, 131 F.3d 1428, 1430 (10th Cir. 1997) (emphasis added).  "Any other rule would inappropriately criminalize apparently lawful conduct because § 1955 'proscribes any degree of participation in an illegal gambling business, except participation as a mere bettor.'"  *Id*. (quoting *Sanabria v. United States*, 437 U.S. 54, 70 n.26 (1978)).

Here, Plaintiffs fail to plausibly allege that ACME knew, through its involvement with Avia, that it was involved in gambling.  As alleged in the FAC, Avia advertises itself as a "social game competition platform" that offers "skill-based competitions."  FAC ¶¶ 30, 36.  Skill-based games are not "gambling."  *See* Walter T. Champion, Jr. & I. Nelson Rose, Gaming Law in a Nutshell 287 (2012) ("By definition, skill games are not gambling, even if it is played for money and valuable prizes are awarded."); *White v. Cuomo*, 192 N.E.3d 300, 316 (N.Y. 2022) (prohibition on "gambling" in New York State Constitution does not include "games in which skill predominates over chance"); *cf. In re Allen*, 377 P.2d 280, 281 (Cal. 1962).  Plaintiffs do not plausibly allege that ACME knew these representations were false when it purchased debt in Avia.  Rather, Plaintiffs

- 21 -

KL3 3695409.14

allege that Avia hid its bot use from its advisers, and the FAC pleads no facts plausibly indicating ACME had any greater insight.  Plaintiffs thus fail to allege that ACME knew it was supporting gambling conduct, as required by § 1955.

### 4. Plaintiffs Have Not Pled An Injury Suffered By Reason Of A § 1962(c) Violation

Section 1964(c) of the RICO statute requires Plaintiffs to plead an injury to their "business or property" "by reason of a violation of section 1962."  The injury must be to "a specific business or property interest," *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc) (per curiam), and must result in "concrete financial loss," *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008) (cleaned up).  Courts interpret § 1964(c)'s "by reason of" language to require both but-for causation and proximate causation.  *See, e.g.*, *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010); *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010).

Thus, Plaintiffs must plead that the money they purportedly lost while playing Avia games was actually and proximately caused by ACME's alleged RICO conduct.  In evaluating proximate cause under RICO, "the central question . . . is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)); *see also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657 (2008) (requiring a "sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury").  Conversely, a "link that is too remote, purely contingent, or indirect is insufficient."  *Hemi Grp.*, 559 U.S. at 9 (cleaned up).  In analyzing causation, courts consider (i) whether a better suited plaintiff has incentive to sue; (ii) whether it will be difficult to ascertain the amount of damages attributable to the RICO violation; and (iii) whether the court will need to adopt complicated rules apportioning damages to prevent multiple recoveries. *Holmes*, 503 U.S. at 269-70.

Here, Plaintiffs' causation theory is that they were tricked by Defendants into playing Avia's games, which in turn caused them to lose money. *See* FAC ¶¶ 7, 10, 12, 177.  This theory suffers from multiple legal deficiencies.

*First*, as to ACME specifically, Plaintiffs nowhere plead that they viewed ACME's website statement or Nada's quote, or that those communications influenced their decision to play Avia's

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

games.   Rather, they allege only that they were harmed as a result of "*Avia's* misleading statements." FAC ¶¶ 10, 12 (emphasis added); *see also* FAC ¶ 7 ("Based on *Avia's* advertising and messaging, Plaintiffs spent money to play Avia's games." (emphasis added)).  Thus, Plaintiffs fail to plead any relationship between ACME's allegedly wrongful conduct and their decision to play Avia's games.  *See Anza*, 547 U.S. at 462 (RICO requires that "the *defendant's* alleged violation proximately caused the plaintiff's injury." (emphasis added)).

*Second*, the purported class includes "[a]ll persons who have lost money playing any Avia game" for any reason since 2017 (FAC ¶ 90), even if it has nothing to do with the bot allegations or the alleged "Robot Player Enterprise."  Since Plaintiffs do not limit their claims or injuries to those caused by the alleged misconduct, they fail to plead a "sufficiently direct relationship between" Defendants' alleged wrongful conduct and their alleged losses.  *Bridge*, 553 U.S. at 657.

*Third*, the alleged scheme to "trick[] consumers" into playing Avia's games, FAC ¶ 101, is too attenuated from Plaintiffs' actual monetary losses to be considered the proximate cause of those injuries.  Plaintiffs do not allege that *everyone* who decides to play Avia's games loses money.  Thus, it is not the initial choice to play Avia games that directly causes a player's financial loss (or gain), but rather what happens *while playing Avia games*.  Accordingly, Plaintiffs cannot allege that supposed misrepresentations by ACME, or any other RICO Defendant, proximately caused their injuries.  *See Hemi Grp.*, 559 U.S. at 10 ("[T]he general tendency of the law, in regard to damages at least, is not to go beyond the first step." (quoting *Holmes*, 503 U.S. at 271-72)).

*Fourth*, while Plaintiffs allege that Avia and the other Defendants operated an illegal gambling business pursuant to § 1955, any purported losses sustained as a result of that illegal business's games are simply too speculative and remote to satisfy the proximate cause requirement.  Considering the second *Holmes* factor, it is unclear how to determine how much money (if any) Plaintiffs lost *because* they played chance-based games against so-called "bots," rather than skill-based games.  *See Anza*, 547 U.S. at 460 (proximate causation requirement is meant to prevent "intricate, uncertain inquiries from overrunning RICO litigation").  That a user loses to a recorded gameplay of a prior user says nothing about whether that user would have beaten another, live

KL3 3695409.14

player.  Indeed, Plaintiffs do not allege that they always win skill-based mobile games against other live players, or even that they usually win.

Plaintiffs likewise do not allege that Avia's "bots" win every game.  Ascertaining which portion of Plaintiffs' losses is attributable to the actual alleged RICO violation here would be a speculative and complex endeavor.  For example, Plaintiffs' losses in any particular game could be caused by their own poor play.  Conversely, Plaintiffs may have defeated recorded gameplays in games they would have lost against another, live player.  *See id.* at 459 (no proximate cause, despite no risk of duplicative recoveries, where plaintiff's claims "would require a complex assessment to establish what portion of [its] lost sales were the product of" defendant's conduct).  Accordingly, Plaintiffs have not sufficiently pled that the alleged misconduct "led directly" to their injuries, *Chrysler-Dodge-Jeep*, 295 F. Supp. 3d at 965 (quoting *Anza*, 547 U.S. at 461), so their claims fail for this reason also.

### B.       Plaintiffs Fail To State A RICO Conspiracy Claim Pursuant To § 1962(d)

Plaintiffs also allege that ACME and the other RICO Defendants conspired to violate § 1962(c), in violation of § 1962(d).  Section 1962(d) makes it unlawful for any person to conspire to violate another subsection of § 1962 and requires "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses."  *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  "A defendant must also have been 'aware of the essential nature and scope of the enterprise and intended to participate in it.'"  *Id.* (quoting *Baumer*, 8 F.3d at 1346).  A failure to plead the requisite elements of subsections (a), (b), or (c) means that a plaintiff cannot plead a conspiracy to violate any of those sections.  *Id.*; *Simon v. Value Behav. Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000), *opinion amended*, 234 F.3d 428 (9th Cir. 2000), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007).

Here, Plaintiffs' § 1962(d) claim is based solely on allegations that ACME and the other RICO Defendants conspired to violate § 1962(c).  *See* FAC ¶ 176.  But Plaintiffs fail to plead any facts indicating that ACME agreed with Defendants to commit any RICO predicate acts, or that

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

ACME otherwise "intend[ed] to further an endeavor which, if completed, would satisfy all the elements of the substantive criminal offense." *Shaw*, 220 F. Supp. 3d at 1058 (quoting *Howard*, 208 F.3d at 751). Plaintiffs do not even plausibly plead that ACME was *aware* of Avia's alleged bot scheme. Rather, as explained, the only facts alleged as to ACME most plausibly describe independent conduct in support of ACME's own, entirely proper, business interests. *See id.* (dismissing RICO conspiracy claims because plaintiffs alleged routine business conduct and offered "no independent allegations in support of [their] conspiracy claim").

In any event, "[e]ven if Plaintiffs properly claimed that the defendants agreed to be a part of an enterprise, the failure to allege substantive violations precludes their claim that there was a conspiracy to violate RICO." *Howard*, 208 F.3d at 751. As explained above, Plaintiffs fail to plead a § 1962(c) claim against ACME (or any other Defendant). Therefore, Plaintiffs also cannot maintain a RICO conspiracy claim against ACME.

### C. ACME Joins In The Arguments Of The Other Defendants

ACME joins arguments made by co-defendants Avia, Individual Defendants, and Galaxy in their respective motions to dismiss to the extent that those arguments are applicable to ACME.

## IV. CONCLUSION

Plaintiffs' remaining claim against ACME (Count III) fails as a matter of law. The FAC should be dismissed in its entirety as to ACME. Furthermore, such dismissal should be with prejudice, as Plaintiffs have already had the opportunity to amend their claim and have failed to show they can plead additional facts plausibly suggesting ACME's participation in a RICO enterprise. *See High*, 2012 WL 3025922, at *9 (dismissing RICO claim against third-party financing company with prejudice).

DEFENDANT ACME'S MTD
3:23-cv-05971-EMC

KL3 3695409.14

Dated: April 22, 2024

/s/ Jennifer S. Windom

**KRAMER LEVIN NAFTALIS
  & FRANKEL LLP**

Jennifer S. Windom (*pro hac vice*)
Ralph C. Mayrell (*pro hac vice*)
2000 K Street NW, 4th Floor
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: jwindom@kramerlevin.com
Email: rmayrell@kramerlevin.com

Kristopher Kastens (CA SBN 254797)
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
Email: kkastens@kramerlevin.com

*Counsel for Defendant ACME, LLC*

DEFENDANT ACME'S MTD
3:23-CV-05971-EMC

KL3 3695409.14