Jason Gottlieb (NY Bar No. 4056008) *(pro hac vice)*
Daniel Isaacs (NY Bar No. 4875902) *(pro hac vice)*
William Roth (NY Bar No. 5492848) *(pro hac vice)*
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
Tel: (212) 735-8600; Fax: (212) 735-8708
jgottlieb@morrisoncohen.com
disaacs@morrisoncohen.com
wroth@morrisoncohen.com

Ellen London (SBN 325580)
LONDON & STOUT P.C.
1999 Harrison Street, Suite 2010
Oakland, CA 94612
Tel: (415) 862-8494; Fax: (415) 573-0995
elondon@londonstoutlaw.com

*Attorneys for Galaxy Digital*
*Capital Management L.P.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW PANDOLFI and MANDI SHAWCROFT, individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>AVIAGAMES, INC.; VICKIE YANJUAN CHEN; PING WANG; ACME, LLC; GALAXY DIGITAL CAPITAL MANAGEMENT, L.P.; and OTHER UNNAMED CO-CONSPIRATORS;<br><br>Defendants. | Case No. 3:23-cv-05971-EMC<br><br>**DEFENDANT GALAXY DIGITAL CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS OF AUTHORITY IN SUPPORT THEREOF**<br><br>Date: June 24, 2024<br>Time: 2:30 p.m.<br>Dept: Courtroom 5 – 17th Floor<br>Judge: Hon. Edward M. Chen<br><br>Date Filed: November 17, 2023<br>Trial Date: None set |

**PLEASE TAKE NOTICE** that on June 24, 2024 at 2:30 p.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at San Francisco Courthouse, Courtroom 5 – 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, in the courtroom of the Honorable Edward M. Chen, defendant Galaxy Digital Capital Management, L.P. ("Galaxy") will and hereby does move this Court for an order dismissing Plaintiffs Andrew Pandolfi's and Mandi Shawcroft's first amended complaint with prejudice because any further amendment of the complaint would be futile.

This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and 9(b), on the grounds that: (1) Plaintiffs have failed to state a claim upon which relief can be granted under 18 U.S.C. § 1962(c) or (d); and (2) Plaintiffs have failed to establish that the Court has personal jurisdiction over Galaxy. This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Proposed Order, the pleadings, records, and papers already on file in this action, and such other evidence as may be presented to the Court in connection with this motion.

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................................................iii

STATEMENT OF ISSUES TO BE DECIDED ......................................................................................1

PRELIMINARY STATEMENT ..............................................................................................................1

STATEMENT OF FACTUAL ALLEGATIONS ...................................................................................3

    A.    The Parties.......................................................................................................................3

    B.    The Threadbare Factual Allegations Concerning Galaxy ..............................................3

    C.    Plaintiffs' Extensive Reliance On Speculation, Conclusions, And Misleading Group Pleading.................................................................................................................5

    D.    The Dearth of Specific Jurisdictional Allegations Against Galaxy ...............................6

APPLICABLE LEGAL STANDARDS ...................................................................................................6

ARGUMENT ............................................................................................................................................8

I.      PLAINTIFFS' RICO CLAIM UNDER § 1962(C) IS INCURABLY DEFICIENT ................8

    A.    Applicable Law ...............................................................................................................8

    B.    Plaintiffs Do Not Allege A Cognizable RICO Enterprise, Let Alone A RICO Enterprise That Galaxy Joined .....................................................................................8

        1.    The So-Called "Robot Player Enterprise" Is Not Plausibly Distinct from Avia Itself; Galaxy Did Not Join Any RICO Enterprise.....................................8

        2.    Regardless, The Complaint Does Not Allege That Galaxy Directed The Conduct Of A Theoretical RICO Enterprise ......................................................12

    C.    Plaintiffs Also Fail to Allege Racketeering By Galaxy ................................................14

        1.    Galaxy Did Not Knowingly Participate in Wire Fraud or Illegal Gambling .....................................................................................................................14

        2.    As An Independent And Additional Legal Deficiency, The Alleged Predicate Acts Cover the Exact Same Alleged Conduct And Do Not Constitute a Pattern ..............................................................................................18

    D.    Plaintiffs Fail to Allege Galaxy's Investment Caused Their Alleged Injuries...............19

II.     THE RICO CONSPIRACY CLAIM MUST BE DISMISSED.................................................21

III.    THE AMENDED COMPLAINT SHOULD ALSO BE DISMISSED WITH PREJUDICE FOR LACK OF PERSONAL JURISDICTION OVER GALAXY ...................21

    A.    The Exercise of Personal Jurisdiction Over Galaxy Would Not Comport with Due Process .................................................................................................................22

B.    Plaintiffs Cannot Rely on RICO's "Ends of Justice" Provision..................................24

IV.    GALAXY JOINS IN THE OTHER DEFENDANTS' APPLICABLE ARGUMENTS..........25

CONCLUSION......................................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Abcarian v. Levine*,
  972 F.3d 1019 (9th Cir. 2020) .................................................................................... 11

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) .................................................................................................... 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................... 6, 16, 18

*Attia v. Google LLC*,
  No. 17-cv-06037-BLF, 2018 WL 2971049 (N.D. Cal. June 13, 2018) ...................... 21

*Baumer v. Pachl*,
  8 F.3d 1341 (9th Cir. 1993) ........................................................................................ 24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 6, 7, 12, 21

*Bible v. United Student Aid Funds, Inc.*,
  799 F.3d 633 (7th Cir. 2015) ...................................................................................... 12

*Boyle v. United States*,
  556 U.S. 938 (2009) ............................................................................................ 8, 9, 11

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) .................................................................................................... 20

*Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*,
  788 F.2d 535 (9th Cir. 1986) ................................................................................ 24, 25

*Carrico v. City & Cnty. of S.F.*,
  656 F.3d 1002 (9th Cir. 2011) ...................................................................................... 7

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001) ...................................................................................................... 8

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) .................................................................. 15, 16

*In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig.*, Nos. 2:11–ML–02265–
  MRP (MANx), 2:11–cv–07166–MRP (MANx), 2:11–cv–09889–MRP (MANx),
  2012 WL 10731957 (C.D. Cal. June 29, 2012) ............................................................ 9

*County of Marin v. Deloitte Consulting LLP*,
    836 F. Supp. 2d 1030 (N.D. Cal. 2011)...................................................................... 18, 19

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) ................................................................................................ 10

*Doan v. Singh*,
    617 F. App'x 684 (9th Cir. 2015)......................................................................................... 9

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003) .............................................................................................................. 13

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014)........................................................................................ 8, 16, 18

*In re Ethereummax Inv.*,
    No. CV 22-00163-MWF, 2022 WL 20804358 (C.D. Cal. Dec. 6, 2022).................................. 9

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989) ..................................................................................................... 2, 14, 19

*Hemi Grp., LLC v. City of N.Y.*,
    559 U.S. 1 (2010) ................................................................................................................. 20

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
    72 F.4th 1085 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024) ...................................... 22

*High v. Choice Mfg. Co.*,
    No. C-11-5478 EMC, 2012 WL 3025922 (N.D. Cal. July 24, 2012) .............................. 13, 25

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) ............................................................................................................. 20

*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000)............................................................................................... 14

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020)......................................................................... 9, 12, 14

*In re Jamster Mktg. Litig.*,
    No. 05cv0819 JM(CAB), 2009 WL 1456632 (S.D. Cal. May 22, 2009) .............................. 11

*Lak v. California*,
    No. 18-cv-160, 2018 WL 4378703 (C.D. Cal. July 17, 2018)............................................... 20

*Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*,
    940 F.2d 397 (9th Cir. 1991).................................................................................................. 7

*Linquet Techs., Inc. v. Tile, Inc.*,
    559 F. Supp. 3d 1101 (N.D. Cal. 2021)................................................................23

*Miller v. Rykoff-Sexton, Inc.*,
    845 F.2d 209 (9th Cir. 1988).....................................................................................7

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989).....................................................................................7

*Moss v. United States Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009).....................................................................................7

*Nordberg v. Trilegiant Corp.*,
    445 F. Supp. 2d 1082 (N.D. Cal. 2006)...................................................................10

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007)............................................................................ 11, 15

*Poulos v. Caesars World, Inc.*,
    379 F.3d 654 (9th Cir. 2004)....................................................................................19

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ..................................................................................... 12, 13, 14

*Rupert v. Bond*,
    68 F. Supp. 3d 1142 (N.D. Cal. 2014)......................................................................24

*Schmidt v. Fleet Bank*,
    16 F. Supp. 2d 340 (S.D.N.Y. 1998) ........................................................................13

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*,
    806 F.2d 1393 (9th Cir. 1986)....................................................................................7

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)..............................................................................21, 22

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ..................................................................................................19

*Shaw v. Nissan N.A., Inc.*,
    220 F. Supp. 3d 1046 (C.D. Cal. 2016).........................................................9, 18, 21

*Simon v. Value Behav. Health, Inc.*,
    208 F.3d 1073 (9th Cir. 2000), *opinion amended*, 234 F.3d 428 (9th Cir. 2000),
    *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir.
    2007)...........................................................................................................................21

*Strong & Fisher, Ltd. v. Maxima Leather, Inc.*,
   No. 91 Civ. 1779 (JSM), 1993 WL 277205 (S.D.N.Y. July 22, 1993) ................................... 13

*Swarts v. Home Depot, Inc.*,
   No. 23-CV-0995-JST, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) ................................... 23

*Swartz v. KPMG, LLP*,
   476 F.3d 756 (9th Cir. 2007) ................................................................................... 7, 16, 24

*In re Toyota Motor Corp. Unintended Acceleration Mktg.*,
   826 F. Supp. 2d 1180 (C.D. Cal. 2011) .................................................................................. 12

*United States v. Brandao*,
   539 F.3d 44 (1st Cir. 2008) ...................................................................................................... 15

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2016) ................................................................................................... 15

*United States v. Fernandez*,
   388 F.3d 1199 (9th Cir. 2004) ................................................................................................. 21

*United States v. O'Brien*,
   131 F.3d 1428 (10th Cir. 1997) ............................................................................................... 15

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*,
   146 F. Supp. 3d 1122 (N.D. Cal. 2015) ................................................................................... 19

*United Food & Com. Workers Unions & & Emplrs. Midwest Health Benefits Fund v.
   Walgreen Co.*,
   719 F.3d 849 (7th Cir. 2013) .............................................................................................. 13, 25

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................................... 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
   467 F. Supp. 3d 849 (N.D. Cal. 2020) ..................................................................................... 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
   No. 2672 CRB (JSC), 2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) ............................... 14, 16

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) ................................................................................................. 13

*Yamashita v. LG Chem, Ltd.*,
   62 F.4th 496 (9th Cir. 2023) .................................................................................................... 23

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
   601 F. Supp. 3d 625 (C.D. Cal. 2022) ................................................................................. 7, 22

**STATUTES & RULES**

Fed R. Civ. P. 8 ...................................................................................................................... 2, 5

Fed R. Civ. P. 9(b) .................................................................................................................. *passim*

Fed R. Civ. P. 12(b)(6) ............................................................................................................ 6, 7

18 U.S.C. § 1955 ...................................................................................................................... 15

18 U.S.C. § 1962(c) ................................................................................................................ *passim*

18 U.S.C. § 1964(c) .................................................................................................................. 19

18 U.S.C. § 1965(b) .................................................................................................................. 24

Cal. Code Civ. Proc. § 410.10 ................................................................................................. 22

Local Rule 7-4(a)(3) .................................................................................................................. 1

Defendant Galaxy Digital Capital Management, L.P. ("Galaxy") respectfully submits this memorandum of points and authorities in support of its motion, under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice the First Amended Complaint (ECF 92; "FAC") filed by Plaintiffs Andrew Pandolfi and Mandi Shawcroft on behalf of a putative class.

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Local Rule 7-4(a)(3), this motion raises the following issues: (1) have Plaintiffs stated a claim upon which relief can be granted against Galaxy under 18 U.S.C. § 1962(c) or (d); (2) have Plaintiffs plausibly alleged a basis for the Court to exercise personal jurisdiction over Galaxy; and (3) whether the claim against Galaxy should be dismissed with prejudice because any further amendment of the complaint would be futile.

## PRELIMINARY STATEMENT

The amended complaint does not plead a single required element of a RICO claim against Galaxy. Plaintiffs are required to plausibly allege, among other factors, a cognizable and distinct RICO enterprise; a defendant's managerial role in such an enterprise; a defendant's knowing participation in a pattern of racketeering; and a causal connection between the supposed RICO violation and the plaintiff's injury. On each of these elements, Plaintiffs come up empty.

The gravamen of Plaintiffs' complaint is that AviaGames, Inc. ("Avia") marketed its games to users on the promise that players were matched with one another in games of skill, when in fact, according to Plaintiffs, Avia pitted players against computer programs. Unsatisfied by whatever traditional remedies they would have if those facts were true, Plaintiffs try to recast the concededly legitimate relationship between Avia, on the one hand, and two of its early venture capital investors (Galaxy and ACME, LLC ("Acme")), on the other hand, into an organized crime ring. This pleading gimmick should be rejected. Plaintiffs' tactical RICO claim should be dismissed—and with prejudice now that Plaintiffs have demonstrated their inability to cure the fatal flaws in their theory against Galaxy.

The factual underpinnings of Plaintiffs' claim against Galaxy are only the allegations that: Galaxy was an early investor in Avia, listed that investment on its website (along with 125 other investments), and had a representative who observed Avia's Board of Directors. These allegations do not give rise to a

plausible inference of wrongdoing. Plaintiffs do not otherwise allege with particularity any of the elements of a RICO claim. This is precisely the type of pleading, based on unfounded speculation and insinuation, that Rules 8 and 9(b) prohibit.

First, Plaintiffs' claim should be dismissed because Plaintiffs fail to allege with the requisite particularity the existence of a distinct racketeering enterprise sharing a common purpose, let alone one that Galaxy managed or operated. Plaintiffs assert the existence of a so-called "Robot Player Enterprise," an "association-in-fact" enterprise comprised of Avia, Avia's two co-founders, Galaxy, and Acme. But the supposed "Robot Player Enterprise" is just Avia, with its early investors tacked on for the sake of contriving a RICO claim. Further, Plaintiffs allege only that Galaxy was a passive investor in Avia— without managerial control, or knowledge of wrongdoing. Courts uniformly reject attempts to recharacterize such business relationships as participation in a RICO enterprise.

Second, the RICO claim fails because Plaintiffs do not sufficiently plead that Galaxy participated in a pattern of racketeering. The FAC contains no factual allegations from which it can be inferred that Galaxy knowingly participated in the supposed predicate acts of wire fraud or illegal gambling—which, in any event, do constitute "related" and "continuous" acts as required under RICO. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232 (1989).

Third, Plaintiffs' claim against Galaxy should be dismissed because Plaintiffs do not plausibly allege that they have been injured by Galaxy in any way. Rather, Plaintiffs claim they have been injured in some other way, such as by Avia's alleged misrepresentations. Plaintiffs' failure to plead how Galaxy's supposed wrongful acts were the proximate cause of Plaintiffs' harm, or that Galaxy was responsible for any of the relevant misstatements upon which Plaintiffs supposedly relied, is independently fatal.

Finally, Plaintiffs have not alleged a basis for this Court's personal jurisdiction over Galaxy. The FAC omits any factual content suggesting that Galaxy, alleged to be based in New York, directed relevant activity to California, or that Plaintiffs' claim plausibly relate to any connection Galaxy may have to California sufficient to establish long-arm jurisdiction. For similar reasons, Plaintiffs may not avail themselves of RICO's "ends of justice" provision.

**STATEMENT OF FACTUAL ALLEGATIONS**

A.     **The Parties**

Plaintiffs Andrew Pandolfi and Mandi Shawcroft are residents of Texas and Idaho, respectively. They allege that they lost money playing Avia's mobile games, and were harmed by "Avia's misleading statements," including Avia's supposed concealment that its games were "populated or controlled with bots instead of human competitors." FAC ¶¶ 9–12.

Avia markets, sells, and distributes mobile games, as well as mobile gaming applications throughout the United States. FAC ¶ 13. Vickie Yanjuan Chen and Ping Wang co-founded Avia; they are also its CEO and VP of Strategy & Business Development, respectively. FAC ¶¶ 14–15.

Acme is a venture capital firm, which Plaintiffs allege invested in Avia. Plaintiffs also allege that one Acme partner is a member of Avia's Board, and that another Acme partner is a Board observer. FAC ¶¶ 16, 27.

Finally, Plaintiffs allege that Galaxy is a "venture capital firm" with a "principal place of business" in New York City. They also assert that Galaxy invested in Avia. FAC ¶ 17. Plaintiffs allege that a Galaxy partner, Ryan You, is an Avia Board observer. FAC ¶ 27. Plaintiffs do not allege that Galaxy has ever held a voting seat on Avia's Board of Directors, or that Galaxy otherwise had any measures of control or influence over Avia. *See id.*

B.     **The Threadbare Factual Allegations Concerning Galaxy**

At base level, Plaintiffs allege that Avia told "players that they were playing against other, real people in games of skill," yet instead secretly pitted players against "non-human computer robots." *See, e.g.*, FAC ¶¶ 5, 46–48. As a consequence, Plaintiffs assert, Avia's communications about its games were false. *See* FAC ¶¶ 49–60. Critically, Plaintiffs concede that "Avia's fraudulent enterprise" was "secretive," even kept from financial advisors. FAC ¶ 61; *see also* FAC ¶ 84.

Seemingly unsatisfied by whatever traditional remedies would be available should that assertion be true, Plaintiffs go on to allege that Avia and the other defendants "operated as an association-in-fact enterprise formed for the purpose of tricking consumers into believing that they are playing against real players to increase the attractiveness of Avia's games, broaden the user base, and hence, extract more

money, to ultimately 'go public or be acquired as soon as possible.'" FAC ¶ 101; FAC ¶¶ 102–105.

As against Galaxy specifically, Plaintiffs allege only three facts. First, that Galaxy was an investor in Avia. FAC ¶ 102. Second, that Galaxy made a passing reference to Avia on its website, alongside references to 125 other companies in which it invested. FAC ¶ 41. And third, that a Galaxy representative is a non-voting observer on Avia's board of directors. FAC ¶¶ 27, 78.

First, Plaintiffs assert that Chen and Wang "co-founded Avia [in 2017] and relied on the investment from several venture capital investment funds to support the company. To Plaintiffs' knowledge, the investment came primarily from ACME and Galaxy . . . ." FAC ¶ 102. Notwithstanding that Plaintiffs allege the RICO enterprise was "established in 2017 at the latest," they concede that Galaxy did not invest until 2020. FAC ¶ 102. Plaintiffs do not allege how much Galaxy invested, nor tie Galaxy's alleged investment to any of Avia's alleged misrepresentations. Plaintiffs concede that "Acme's and Galaxy's provision of capital or financial support is arguably part of their routine business activity . . . ." FAC ¶ 127.

Second, Plaintiffs point to a short blurb on a Galaxy webpage, entitled "Our Portfolio" and which lists ~126 Galaxy portfolio companies, as the sole basis to allege that "Galaxy portrays Avia as a platform that 'guarantees players a fair, high-quality gaming experience' and that 'uses a complex algorithm to assess and match each player's ability in order to create a fair gaming environment.'" FAC ¶ 41, n.50. Plaintiffs do not allege that they (or any users of Avia) had any reason to visit the Galaxy webpage. Nor do Plaintiffs allege that they relied upon, let alone ever saw, the Galaxy webpage before electing to play Avia's games. Nor do Plaintiffs allege any facts from which it can be plausibly inferred that Galaxy had reason to doubt the veracity of the referenced statement about Avia. *See id*.

Third, Plaintiffs allege that a Galaxy partner, Ryan You, "serves as an observer on Avia's Board of Directors." FAC ¶ 78. Plaintiffs concede that Mr. You is a "non-voting observer" and do not otherwise allege that any personnel from Galaxy had a voting seat on Avia's Board of Directors, served as officers of Avia, controlled Avia, or even could control Avia. *See* FAC ¶¶ 17, 136. Nor do Plaintiffs allege that Galaxy had any ability to influence Avia's or Avia's Board of Directors' decisions.

### C.    Plaintiffs' Extensive Reliance On Speculation, Conclusions, And Misleading Group Pleading

In the span of Plaintiffs' 179-paragraph FAC, and other than the three innocuous factual allegations stated above, the FAC barely mentions Galaxy by name.[12] And with good reason—Galaxy is merely alleged to be one investor in Avia, is not plausibly alleged to have been privy to knowledge of any alleged fraud, and is not alleged to have had control over the company's conduct. *See* FAC ¶¶ 49–66 (relying primarily on internal Avia documents of which Galaxy had no alleged reason to be aware).

In place of proper factual allegations that could satisfy Rules 8 and 9(b), Plaintiffs resort to tortured speculation and present inferences as facts to attempt to tie Galaxy to Avia's alleged wrongdoing. Namely, Plaintiffs speculate that "[t]he fact that the deployment of bots makes Avia's games chance-based rather than skill-based also <u>implies</u> that RICO Investors have knowingly and intentionally supported [sic] illegal gambling scheme." FAC ¶ 77 (emphasis added). They further speculate that because Galaxy has invested in some other gaming companies from time, it "<u>must have been</u> aware that games of chance are strictly regulated." FAC ¶¶ 78–79, 129–130. They further speculate that simply because a Galaxy representative was a board observer, Galaxy was "aware of Avia's fraudulent activities" (FAC ¶ 80) or "<u>must have known</u>" that Avia's statements were not true (FAC ¶ 136). But none of these are factual allegations. They are invitations to speculate, and conclusions in search of facts. They should be disregarded.

To make matters worse, Plaintiffs repeatedly conflate Galaxy with other defendants who are not similarly situated, relying on non-particularized allegations concerning the so-called RICO Investors, and even more generally, the RICO Defendants. *See, e.g.*, FAC ¶ 7 ("Avia, its co-founders. . . , and the RICO Investors duped Plaintiffs"); ¶ 77 ("RICO Investors disseminated fraudulent statements . . . [and] RICO Investors are interested in attracting more players . . ."); ¶ 98 ("Avia and the RICO Defendants have been fraudulently misleading and deceiving consumers as to the true nature of Avia's games"); ¶ 125 ("Avia

---

[1] The FAC's Appendix A, which purports to outline a "Description of Avia's games," does not even mention Galaxy or Galaxy's role in developing or marketing the games. *See* FAC at pp. 62–91.

[2] For the avoidance of doubt, the Samsung Galaxy Store, an app store, has no affiliation whatsoever with defendant Galaxy. *See, e.g.*, FAC ¶ 44.

and the RICO Defendants shared information on a regular basis"). With respect to these allegations, Plaintiffs in no instance come close to alleging that <u>Galaxy itself</u> participated in the alleged (mis)conduct, or how.

To be sure, Plaintiffs' reliance on group pleading invites the erroneous conclusion that Defendants' conduct was more coordinated—and Galaxy more involved in such conduct—than it was. For example, Plaintiffs assert that "the involvement of the <u>RICO Investors</u> in the business is apparent from <u>their</u> presence at—and participation in—the trial against Skillz"; this assertion is based on the fact that an <u>Acme partner</u> (and only an Acme partner) "was disclosed by Avia as a witness" in that case. FAC ¶ 80 (emphasis added). Plaintiffs do not—because they cannot—allege that <u>anyone from Galaxy</u> was present at, let alone participated in, the Skillz trial, rendering their allegation against the "RICO Investors" misleading. *See id*.

**D.      The Dearth of Specific Jurisdictional Allegations Against Galaxy**

Plaintiffs assert only a minimal (and deficient) jurisdictional predicate against Galaxy. Plaintiffs allege that Galaxy has a "principal place of business at 300 Vesey Street, New York, New York . . . ." FAC ¶ 17. Plaintiffs further allege that the Galaxy partner, Mr. You, who was a non-voting Avia board observer, is "based in San Francisco, California." FAC ¶ 27. The only other jurisdictional allegations applicable to Galaxy are the group plead allegations that the Court has personal jurisdiction over any "RICO Investors" because "RICO Investors are amenable to service of process, are co-conspirators, and each has minimum contacts with this District and has purposefully availed itself of the privilege of conducting business in this state[,]" namely "RICO Investors' contacts are connected with the operation of, or investment, in Avia" and "RICO Investors benefit or profit from Avia's presence in the District." FAC ¶ 27.

## APPLICABLE LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This requires

"more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory [allegations] do not suffice." *Id*. The specificity in pleading is required under Rule 12(b)(6) so that "district court[s] . . . retain the power" to ensure that a claim is plausible, not merely possible, "before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558. The court need not accept as true conclusory allegations or unwarranted deductions of fact. *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) (dismissing complaint that did not allow the court to reasonably draw an inference of wrongdoing).

Where a claim "sound[s] in fraud," including RICO claims that allege wire fraud, Plaintiffs must meet the requirement under Rule 9(b) and plead the claim with "particularity." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); Fed. R . Civ. P. 9(b); *Lancaster Comm. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("[w]e have applied the particularity requirements of rule 9(b) to RICO claims"). The particularity requirement applies to both allegations of the common purpose of the alleged RICO enterprise and the alleged predicate acts, discussed below. *See, e.g.*, *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (applying Rule 9(b) to fraud-based RICO claims).

Rule 9(b) also bars group pleading. Plaintiffs may not "lump multiple defendants together" and instead must "differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his participation in the fraud.'" *Swartz v. KPMG, LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007); *see also In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 743 (C.D. Cal. 2022) (allegations of fraud under RICO must identify "the role of each defendant in each scheme").

Finally, dismissal without leave to amend is appropriate if "amendment would be futile." *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011). An amendment is futile when "no set of facts can be proved . . . that would constitute a valid and sufficient claim." *Miller v. Rykoff-Sexton, Inc.*, 845 F.3d 209, 214 (9th Cir. 1988).

**ARGUMENT**

**I.      PLAINTIFFS' RICO CLAIM UNDER § 1962(C) IS INCURABLY DEFICIENT**

Plaintiffs' RICO claim against Galaxy suffers from multiple incurable fatal defects, and the Court should dismiss them for several independent reasons.

**A.      Applicable Law**

To state a claim under § 1962(c), Plaintiffs must plead facts sufficient to show that Galaxy was associated with an unlawful enterprise and "conduct[ed] or participate[d] . . . in the conduct of such enterprise's affairs through a pattern" of crimes defined as "racketeering activity." 18 U.S.C. § 1962(c). More specifically, the Ninth Circuit requires Plaintiffs to allege how Galaxy: (1) participated in the conduct (2) of an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt, (5) that was the proximate cause of Plaintiffs' injuries. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). As discussed below, Plaintiffs fail to adequately plead any of these elements.

**B.      Plaintiffs Do Not Allege A Cognizable RICO Enterprise, Let Alone A RICO Enterprise That Galaxy Joined**

**1.      The So-Called "Robot Player Enterprise" Is Not Plausibly Distinct from Avia Itself; Galaxy Did Not Join Any RICO Enterprise**

An unlawful association-in-fact RICO enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (citation omitted). A RICO enterprise must be distinct from a named RICO defendant. Accordingly, "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) (citing every Circuit Court of Appeal in support of the "distinctiveness" requirement).

To show the existence of an enterprise, Plaintiffs must plead that the enterprise has (1) a common purpose, (2) a structure or organization, and (3) longevity necessary to accomplish the purpose. *Boyle*,

556 U.S. at 946. Conversely, individual entities acting "independently and without coordination" do not comprise a RICO enterprise. *Boyle*, 556 U.S. at 947 n.4; *Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015) (no enterprise where plaintiff fails to allege "what exactly each individual did, when they did it, or how they functioned together as a continuing unit").

Plaintiffs do not clear these threshold hurdles. Plaintiffs allege that Galaxy, together with Avia, Acme, and the Individual Defendants, comprised an association-in-fact, coined the "Robot Player Enterprise." FAC ¶ 101. But the FAC repeatedly emphasizes that it was (allegedly) Avia, and Avia alone, that lied to its customers, causing the alleged harm in this case. FAC ¶¶ 10, 12, 30–76. No allegations suggest that the parties functioned as a distinct enterprise, or otherwise inculpate Galaxy in any distinct enterprise's common purpose.

First, Plaintiffs do not allege that the defendants shared a common purpose or structure <u>separate and apart</u> from their own legitimate business interests, so as to form a distinct RICO enterprise. Courts in the Ninth Circuit uniformly recognize that where "the individual constituents of an asserted enterprise are alleged only to have conducted the 'regular business' of the corporate entity or business in their own interests, those allegations are insufficient to support a RICO enterprise." *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 599 (N.D. Cal. 2020); *see also In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig.*, Nos. 2:11–ML–02265–MRP (MANx), 2:11–cv–07166–MRP (MANx), 2:11–cv–09889–MRP (MANx), 2012 WL 10731957, at *8 (C.D. Cal. June 29, 2012) ("Parties that enter commercial relationships 'for their own gain or benefit' do not constitute an enterprise.'") (collecting cases); *Shaw v. Nissan N.A., Inc.*, 220 F. Supp. 3d 1046, 1054 (C.D. Cal. 2016) (recognizing that courts "have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises") (internal quotation omitted).

Here, the FAC "only demonstrate[s] that the parties are associated in a manner directly related to their own primary business activities." *In re Ethereummax Inv.*, No. CV 22-00163-MWF (SKx), 2022 WL 20804358, at *15 (C.D. Cal. Dec. 6, 2022) (finding no common purpose or enterprise) (citations and internal quotation marks omitted). Plaintiffs even admit as much, conceding that "Acme's and Galaxy's provision of capital or financial support is arguably part of their routine business activity . . . ." FAC ¶

127.

Plaintiffs' attempts to recast defendants' ordinary commercial activity and motivations as membership in a nefarious and illegal gambling enterprise are unfounded. For instance, Plaintiffs' allegation that Galaxy shared a common purpose to "trick[] consumers into believing that they are playing against real players to increase the attractiveness of Avia's games, broaden the user base, and hence, extra more money, to ultimately 'go public or be acquired as soon as possible' is contradicted by their concession that such supposed purpose was "Avia's goal"—not Galaxy's. FAC ¶ 101, n. 103 (emphasis added). Plaintiffs also allege that "Avia and each RICO Defendant shared in the common purpose of tricking customers into believing that they are playing against real players to increase the attractiveness of the games," leading to "higher sales and profits." FAC ¶ 119. These assertions are conclusions, not facts, and do not infer a distinct structure or a "common purpose" beyond Avia's performance. Likewise, Plaintiffs allege that the "RICO Investors are interested in attracting more players to Avia's games because a larger player base boosts the value of their equity" (FAC ¶ 77); this assertion is mere generalized speculation applicable to any investor that hopes their investment performs well. It also concedes the absence of a distinct organization other than Avia. The existence of independent economic incentives aligned with any investment, by any person, in any company, and in any industry is not factual content, let alone allegations that satisfy Rule 9(b).

Second, the complaint is devoid of any particularized allegations that Galaxy was aware of Avia's alleged "deceptive practices" or "share[d] a common purpose to engage'" in Avia's alleged misrepresentation or scheme, so as to plausibly infer that Galaxy joined a racketeering enterprise. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (excluding parties from an alleged enterprise where plaintiffs failed to allege those parties were aware of any wrongdoing); *see also Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1092 (N.D. Cal. 2006) ("In the present action, plaintiffs do not allege any wrongdoing on the part of the third-party contractors nor do they allege that these entities were aware of the allegedly fraudulent activities. Rather, plaintiffs' enterprise theory is based squarely upon the existence of routine contractual relationships . . . .").

On this point, Plaintiffs assert only the innocuous facts that Galaxy invested in Avia (more than

three years <u>after</u> the supposed "Robot Player Enterprise" was formed) (FAC ¶ 102), one of its representatives was a non-voting observer of Avia's Board (FAC ¶ 129), and that a Galaxy webpage contained a short description of Avia that is allegedly untrue (FAC ¶ 41). Plaintiffs do not allege facts from which it can be plausibly inferred that Galaxy knew Avia was (supposedly) operating improperly. Nor do Plaintiffs assert that information about Avia's alleged wrongdoing was disseminated or discussed at board meetings in the first place, or any reason why Galaxy should have had that knowledge. Plaintiffs do not allege that Galaxy has ever had a voting Board seat or otherwise exercised control (or even influence) over Avia. The FAC fails to establish, as it must, that Galaxy forged an enterprise with the other defendants to engage in racketeering activity, and that they functioned as a "continuing unit" through "ongoing" rather than "isolated" activity. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007); *see also Boyle*, 556 U.S. at 946 ("An 'enterprise' must have some longevity, since the offense proscribed by that provision demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity.'") (alterations omitted) (quoting 18 U.S.C. § 1962(c)). Plaintiffs' failure to plausibly allege a qualifying "enterprise" including Galaxy requires dismissal. *See Abcarian v. Levine*, 972 F.3d 1019, 1028 (9th Cir. 2020).

In lieu of alleging any facts probative of Galaxy's knowledge about Avia's game technology and statements regarding the same, Plaintiffs attempt (for the first time in the FAC) to turn Galaxy's professional bona fides and against itself and otherwise cast aspersions, arguing that the entity's wholly appropriate investments in <u>some other</u> gaming companies are somehow probative of Galaxy's malfeasance in this case, or prove that Galaxy was aware of Avia's alleged wrongdoing. That is nonsense. No aspect of Galaxy's portfolio or Mr. You's personal resume supports the sheer speculation that Galaxy (or Acme) sought to "circumvent" regulations applicable to games of chance, or that Galaxy had any reason to believe Avia's games were not being designed or advertised properly. *See* FAC ¶¶ 78–79. The FAC does not come close to supporting a plausible inference that Galaxy knowingly joined a distinct racketeering enterprise sharing a common wrongful purpose. *See In re Jamster Mktg. Litig.*, No. 05cv0819 JM(CAB), 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (finding RICO claims not

adequately pleaded because, after plaintiff's legal conclusions were set aside, all that remained was "conduct consistent with ordinary business conduct and an ordinary business purpose.").

Indeed, RICO does not extend to instances where one defendant's "primary business activity" is "conducted fraudulently" and others are alleged to have transacted with that defendant. *In re Toyota Motor Corp. Unintended Acceleration Mktg.*, 826 F. Supp. 2d 1180, 1202–3 (C.D. Cal. 2011). In such cases, "something more" is needed for the requisite common purpose and distinct enterprise, namely facts "tending to exclude the possibility" that the other named defendants did not simply pursue routine business dealings. *Twombly*, 550 U.S at 554–55 (internal quotation omitted). That "something more" is absent here. Stripping away the conclusory group pleading allegations, baseless speculation, and taking Plaintiffs' remaining factual allegations at face value—namely that Galaxy was one of many investors in a company that posted a short blurb about its investment on its webpage—the most plausible inference to draw from the complaint is that Galaxy merely entered "a run-of-the-mill commercial relationship" and "act[ed] in its individual capacity to pursue its individual self-interest." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655-56 (7th Cir. 2015).

### 2. Regardless, The Complaint Does Not Allege That Galaxy Directed The Conduct Of A Theoretical RICO Enterprise

Even were the Court to conclude that Plaintiffs have sufficiently alleged the existence of a cognizable RICO "enterprise" with a purpose distinct from Avia itself, Plaintiffs' substantive RICO claim against Galaxy should nonetheless be dismissed because § 1962(c) is limited to persons who exercise a <u>managerial</u> role in the alleged enterprise's affairs. *See Reves v. Ernst & Young*, 507 U.S. 170, 178–79 (1993); *see also In re Juul Labs*, *Inc.*, 497 F. Supp. 3d at 598 (RICO liability "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs.'"). Plaintiffs allege no such managerial or operational role by Galaxy.

"In the Ninth Circuit, to assess whether a defendant had a sufficient role in operation or management to meet the standard of § 1962(c), courts consider whether the defendant (1) gave or took directions; (2) occupied a position in the "chain of command" through which the affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; or (4) was indispensable to

achievement of the enterprise's goal in that the defendant's position is "vital" to the mission's success. *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (citations omitted). Plaintiffs do not allege any facts under Rule 9(b)'s heightened pleading standard supporting the inference that Galaxy operated or managed a separate enterprise as contemplated under *Reves* and *Walter*.

"[D]irection requires some degree of control," and "even substantial influence by a party through persuasion with respect to an alleged RICO enterprise is not enough to establish control." *High v. Choice Mfg. Co.*, No. C-11-5478 EMC, 2012 WL 3025922, at *8 (N.D. Cal. July 24, 2012) (collecting cases). On the same rationale, courts have consistently held that financial institutions which provide services and assistance to companies, even with knowledge of an alleged fraud, are not liable under RICO, absent the additional showing that those institutions conducted or participated in the affairs of those companies. *See id.* (citing *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340 (S.D.N.Y. 1998); *Strong & Fisher, Ltd. v. Maxima Leather, Inc.*, No. 91 Civ. 1779 (JSM), 1993 WL 277205 (S.D.N.Y. July 22, 1993)). It is not even sufficient that a financial institution "provide[] the 'financial grease'" for an alleged scheme. *High*, 2012 WL 3025922, at *9.

Here, Plaintiffs do not allege any facts, as opposed to conclusory statements, that Galaxy controlled Avia, influenced Avia, or had knowledge of Avia's inner workings. *See* FAC ¶ 17. The closest Plaintiffs come is to allege that three years after the Individual Defendants founded Avia (and three years after the alleged RICO enterprise was formed), and with no alleged connection to any of Avia's alleged misrepresentations, Galaxy invested in Avia and has a representative who observes Avia's Board. FAC ¶¶ 27, 102. Of course, merely making an investment does not provide a plausible basis to infer Galaxy had the requisite degree of control for purposes of *Reves* and its progeny. Putting aside the "basic tenet of American corporate law . . . that the corporation and its shareholders are distinct entities," *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003), the vague allegation that Galaxy was one of <u>multiple</u> early-stage investors in Avia falls far short of establishing that Galaxy "operate[d] or manage[d]" the enterprise in a manner that would support RICO liability. *United Food & Com. Workers Unions & & Emplrs. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853–56 (7th Cir. 2013).

Critically, Plaintiffs do not allege that any Galaxy personnel served as directors or officers of

Avia, or otherwise had any authority to control Avia's operations. *See* FAC ¶ 27 (merely alleging that a Galaxy partner is "an observer on Avia's board of directors"). This is fatal. *Reves*, 507 U.S. at 183 (requiring that defendant "participated in the . . . management of the enterprise itself").

Plaintiffs' allegations are even sparser than other recent cases in this district where the court found insufficient allegations of "operation and control." For example, in *In re Juul Labs, Inc.*, Judge Orrick did not credit plaintiffs' conclusory allegations that multiple Juul officers and directors had "final say" over alleged misrepresentations, since they did not allege "specific acts taken by the Officer and Director Defendants on the Board" or facts demonstrating "the defendants' actual, numerical control of the Board." 497 F. Supp. 3d at 606. Here, as in *In re Juul Labs, Inc.*, Plaintiffs do not allege a single specific instance of a Galaxy representative doing or saying <u>anything</u> in furtherance of Avia's alleged misrepresentations, or even a mechanism by which a Galaxy representative could have done so. Such a bare conclusory pleading should be dismissed.

### C.    Plaintiffs Also Fail to Allege Racketeering By Galaxy

Next, Plaintiffs' RICO claim against Galaxy should be dismissed because Plaintiffs have not sufficiently alleged that Galaxy participated in an alleged pattern of racketeering activity. *See H.J. Inc.*, 492 U.S. at 232 (each RICO subdivision requires establishing a pattern of racketeering activity). Plaintiffs must allege at least two discrete predicate acts, and also that those acts constitute a "pattern"—i.e., that the acts are "related" and "pose a threat of continued criminal activity." *Id.* at 239; *Howard v. Am. Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000). Moreover, Plaintiffs are obligated to meet these pleading requirements with sufficient particularity under Rule 9(b)—i.e., to demonstrate that Galaxy was a knowing participant in a scheme to defraud, participated in the scheme with the intent to defraud, and that a co-schemer's acts of fraud (or illegal gambling) occurred during Galaxy's participation in the scheme and were within the scope of the scheme. *In re Juul Labs, Inc.*, 497 F. Supp. 3d at 616; *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 4890594, at *13 (N.D. Cal. Oct. 30, 2017).

#### 1.    Galaxy Did Not Knowingly Participate in Wire Fraud or Illegal Gambling

Plaintiffs allege that the supposed enterprise committed two predicate racketeering activities: wire

fraud and illegal gambling. *See* FAC ¶¶ 132–38.

"[A] wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Odom*, 486 F.3d at 554 (quotation omitted).

To make out a claim for illegal gambling under 18 U.S.C. § 1955, meanwhile, a defendant must be shown to have conducted, financed, managed, supervised, directed, or owned all or part of an "illegal gambling business." § 1955(a). That business must: (1) be in violation of state law; (2) "involve five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business"; and (3) remain in "substantially continuous operation" for more than thirty days or have a gross revenue of $2,000 in a single day." *United States v. O'Brien*, 131 F.3d 1428, 1429 (10th Cir. 1997). Although the illegal gambling statute is "not a specific intent statute," it still requires that "the defendant knowingly do[] an act made unlawful by the statute." *O'Brien*, 131 F.3d at 1430 "Any other rule would inappropriately criminalize apparently lawful conduct." *Id*.

Here, Plaintiffs do not allege that Galaxy knowingly participated in any of these activities. Plaintiffs do not even allege facts sufficient to infer Galaxy's knowledge of <u>anyone's</u> wrongdoing.

In this respect, Plaintiffs first assert that after Avia's co-founders created the company, they received an investment, some unspecific portion of which "came primarily from ACME and Galaxy." FAC ¶ 102. This innocuous allegation does not suffice. Except for Galaxy's "facially legitimate" investment, Plaintiffs fail to allege any additional facts supporting an inference that "such [investment] is plausibly part of a fraudulent scheme." *Eclectic Props.*, 751 F.3d at 998. In other words, this is not a case where Galaxy's intent can be inferred "by examining the scheme itself."[3] *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 977 (N.D. Cal. 2018)

---

[3] For the same reasons, Plaintiffs fail to allege Galaxy was "aware of the essential nature and scope of the enterprise and intended to participate in it," dooming their conspiracy theory of liability under § 1962(d). *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2016). "[T]he point of making the [plaintiff] show that the defendants ha[d] some knowledge of the nature of the enterprise[ ] is to avoid an unjust association of the defendant with the crimes of others." *United States v. Brandao*, 539 F.3d 44, 52 (1st Cir. 2008).

(discussing *Eclectic Props.*, 751 F.3d at 998).[4] Speculation or insinuation without any factual underpinning that Galaxy "knew about the scheme" (FAC ¶ 136) is *ipse dixit* that does not satisfy Rule 9(b). And such speculation after the opportunity to amend the complaint warrants dismissal with prejudice.

Plaintiffs also assert that the Galaxy webpage stating its 126 investments contains a short description of Avia that is untrue. FAC ¶ 41. But Plaintiffs do not allege any facts suggesting that Galaxy knew that description was untrue, how Galaxy knew it was untrue, or that Galaxy intended to defraud anyone (let alone Plaintiffs, who are not even alleged to have seen the webpage).

Plaintiffs' efforts to allege specific intent or knowledge of wrongfulness occurs only at the most general and conclusory level. *See, e.g., Iqbal*, 556 U.S. at 678–79. Plaintiffs do not allege facts that show Galaxy's knowledge at any time that Avia was communicating improperly or that its statements were untrue. Worse still, Plaintiffs use group pleading to obfuscate Galaxy's role as a mere passive investor in Avia without any managerial control. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together.").

For example, while Plaintiffs assert that "[t]he fact that Acme's Hany Nada and Alex Fayette and Galaxy's Ryan You are on Avia's Board further supports the view that the RICO Investors were aware of Avia's fraudulent activities" (FAC ¶ 79), this assertion is misleading and apparently designed to obfuscate Galaxy's <u>non-voting observer status</u> on Avia's Board. While Plaintiffs allege that a partner of Acme may have sat on Avia's Board (FAC ¶ 16), Plaintiffs do <u>not</u> allege that any representative of Galaxy held a voting seat on Avia's Board of Directors, or otherwise had any means of control over Avia. *See* FAC ¶¶ 17, 78. Plaintiffs' misleading pleading is no mistake; they make a similarly misleading and

---

[4] In *In re Chrysler*, as in *In re Volkswagen*, plaintiffs specifically alleged that the defendants installed or helped to install emission control devices that allowed the carmakers in question to cheat emissions tests. In both cases, the court reasonably distinguished that inherently suspicious conduct from the "facially legitimate" transactions at issue in *Eclectic Properties*. *See In re Chrysler*, 295 F. Supp. 3d at 977 ("the hidden AECDs plausibly have a deceitful purpose distinguishes this case from *Eclectic Properties*"); *In re Volkswagen*, 2017 WL 4890594, at *15 ("No one to date in this multidistrict litigation has sought to justify, or explain a lawful purpose for, software that effectively turns a vehicle's emission systems on or off depending on whether the vehicle is undergoing emissions testing").

conclusory statement that "Galaxy and Acme must have known that those statements are not true, because their partners were on Avia's Board of Directors, <u>either</u> as voting members, or non-voting observers") (emphasis added). FAC ¶ 136. But regardless, Plaintiffs do not allege any facts from which the plausible inference can be drawn that information about the supposed fraud was actually shared with Avia's Board in the first place, or any facts that underpin an inference that Galaxy's representative who observed the Board would have otherwise received any information suggestive of Avia's supposed wrongdoing.

Perhaps even more egregious is Plaintiffs' conclusory (and false) claim that "the involvement of the <u>RICO Investors</u> in the business is apparent from <u>their</u> presence at—and participation in—the trial against Skillz." FAC ¶ 80. As discussed, Plaintiffs do not allege Galaxy's attendance—let alone participation—in the Skillz trial, and no Galaxy employee or partner was disclosed as a witness to testify to testify about anything at that trial. *See* FAC ¶ 80 (noting that Avia disclosed Mr. Nada, an Acme partner, as a potential witness at trial). Hence, even after an opportunity to amend their pleadings, Plaintiffs provide no basis—none—to plausibly infer that Galaxy "must have been aware of Avia's fraudulent activities."

Plaintiffs' tortured attempt to sustain a claim against Galaxy resting on Galaxy's other investments in gaming companies should be disregarded. Plaintiffs suggest, for instance, that Galaxy's experience investing in the gaming industry means "they must have been aware that games of chance are regulated." FAC ¶ 79. It is not plausible to infer that because Galaxy invested in <u>some other</u> gaming companies, it <u>must</u> have been aware of Avia's supposed wrongdoing here. It also provides no legal basis to infer that Galaxy played any role in any fraudulent activity. Plaintiffs' recognition that Galaxy's partner, Mr. You, "has admirable experience with investing in and doing business in the gaming industry" only underscores Galaxy's legitimate business bona fides, and more strongly supports an inference that Galaxy <u>would not</u> knowingly participate in wrongdoing. It in no way supports the notion that Galaxy believed any of its portfolio companies' games—including Avia's games—were not being conducted properly. There are simply no allegations from which one could infer that Galaxy knowingly participated in a fraud or illegal gambling operation. *See generally* AC. ¶¶ 78–79. And speculation does not satisfy Rule 9(b).

In deciding Galaxy's instant motion to dismiss, the Court must also consider plausible alternative explanations for its conduct. *Iqbal*, 556 U.S. at 682 (courts must consider "obvious alternative explanation[s]'" for alleged conduct); *Eclectic Props.*, 751 F.3d at 996–99 (dismissing complaint where "alternative explanation" came "from plaintiffs' own complaint" and plaintiffs had "not met their burden to do '[s]omething more' to 'render [their] allegations plausible'"). Here, Plaintiffs allege in conclusory fashion that Avia misled players (*see* FAC ¶ 49), and that Avia's alleged scheme was so "secretive" that Avia may have also misled third parties, including the company's financial advisors. FAC ¶ 61; *see also* Complaint (ECF 1) ¶¶ 52-55 (alleging that Avia may have also misled third-parties, including the company's outside counsel and financial advisors). Accordingly, the most plausible inference to draw from Plaintiffs' own allegations is that Galaxy, an alleged experienced investor, did <u>not</u> participate in (or even know about) any supposed deceitful scheme—the FAC effectively concedes this alternative explanation.

Because Plaintiffs have not plausibly alleged Galaxy's knowing participation in the two predicate acts with the requisite particularity, Plaintiffs' RICO claims against Galaxy should be dismissed. *See, e.g., Shaw*, 220 F. Supp. 3d at 1057.

    2.    <u>As An Independent And Additional Legal Deficiency, The Alleged Predicate Acts Cover the Exact Same Alleged Conduct And Do Not Constitute a Pattern</u>

Plaintiffs have also failed to plausibly allege that the supposed predicate acts of wire fraud and illegal gambling constitute a "pattern" of related conduct that threatens ongoing criminality. Indeed, Plaintiffs fail to parse the distinction between their wire fraud and illegal gambling allegations at all. *Compare* FAC ¶ 132 (alleging that Defendants' "Illegal Gambling" consisted of "provid[ing] games of chance without complying with the relevant statutory regulation") *with* ¶ 133 (alleging that Defendants' wire fraud consisted of, among other unspecified acts, "the accessibility of the game applications through the Internet and the transmission of the games through such online applications," and "the receipt of the deposits from the players by means of the online transfers and related payment services"). In short, the alleged predicate acts refer to the exact same acts, rather than "related" and "discrete predicate acts." *County of Marin v. Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1043 (N.D. Cal. 2011); *see also*

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 146 F. Supp. 3d 1122, 1140 (N.D. Cal. 2015) (the pattern of racketeering "requirement mandates allegations of at least two *separate yet related* predicate acts") (emphasis added).

Likewise, Plaintiffs' barebones allegation that Galaxy invested in Avia—at some point in time, in some unspecific amount— and published a short blurb about that investment on its website does not satisfy the requirement that a defendant's racketeering acts carry "a threat of repetition." *See H.J.*, *Inc.*, 492 U.S. at 241; *County of Marin*, 836 F. Supp. 2d at 1043 ("In determining whether [a plaintiff] has alleged a pattern of racketeering activity, the Court may only consider predicate acts *attributable* to [a given defendant]"). Indeed, Plaintiffs do not allege any act by Galaxy beyond its single, initial venture capital investment and concomitant reference to that investment on a website, which has no nexus to Avia's alleged wrongdoing. *See* AC. ¶¶ 41, 48, 102–03. Even assuming, for the sake of argument, that Galaxy's investment and website could be construed as "acts," Plaintiffs fail to articulate any connective tissue between Galaxy's investment, on one hand, and Avia's alleged wrongdoing on the other. *See* FAC ¶¶ 132–38. Accordingly, these two "acts" plainly do not constitute a "pattern of racketeering." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 530 n.14 (1985) ("Two isolated acts . . . do not constitute a pattern.").

### D.    Plaintiffs Fail to Allege Galaxy's Investment Caused Their Alleged Injuries

Plaintiffs also fail to "connect the dots" between Galaxy's alleged acts and Plaintiffs' alleged injury. *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 655 (9th Cir. 2004); *see also id.* at 658 ("plaintiffs asserting civil RICO claims, must prove individualized reliance where that proof is otherwise necessary to establish actual or proximate causation").

Reliance and proximate causation are required elements under both the substantive civil racketeering provision, as well as RICO's overarching statutory scheme. 18 U.S.C. § 1964(c). RICO claims are cognizable "only if the defendant's alleged violation proximately caused the plaintiff's injury." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 462 (2006). When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the defendant's alleged violation led directly to the plaintiff's injuries. *Id.* at 461; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 467 F. Supp. 3d 849, 856 (N.D. Cal. 2020) ("For civil RICO claims,

directness is most important").

Here, Plaintiffs' only relevant allegation is that they each "incurred harm as a result of <u>Avia's</u> misleading statements." FAC ¶¶ 10, 12 (emphasis added). Absent from the FAC is any allegation that Plaintiffs—or any member of the putative class—ever visited Galaxy's website at which it describes its investment in Avia. *See generally* FAC. Plaintiffs thus do not allege that Plaintiffs incurred harm as a proximate result of <u>Galaxy's</u> activity, and the FAC is otherwise devoid of any additional non-conclusory allegations plausibly supporting the inference that Galaxy proximately caused Plaintiffs any harm. At bottom, Plaintiffs merely allege that years before they even downloaded Avia's games, Galaxy invested in Avia, but fail to allege any connection between that investment and the alleged misrepresentations upon which Plaintiffs supposedly relied.

Additionally, Plaintiffs speculate that "[w]ithout RICO Investors' money, Avia and its employees would not be able to develop the bots." FAC ¶ 121. Putting aside that this allegation is unfounded and has no factual underpinning, it is insufficient, as a matter of law, to connect Galaxy to Plaintiffs' alleged damages. *See Lak v. California*, No. 18-cv-160, 2018 WL 4378703, at *9 (C.D. Cal. July 17, 2018) (dismissing RICO claim where alleged wire fraud predicate was not the but-for cause of plaintiff's injuries); *see also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657 (2008) (requiring a "sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury"). Plaintiffs' alleged "link" is legally deficient because it is "too remote, purely contingent, [and] indirect." *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010).

Finally, to the extent Plaintiffs argue that Galaxy's (unspecified) investment in 2020 somehow proximately resulted in Plaintiffs losing money while playing Avia's games, there would be no principled method of calculating Plaintiffs' losses <u>attributable</u> to Galaxy as a mere passive investor. *See Holmes v. Sec. Inv. Prot. Corp.,* 503 U.S. 258, 269 (1992) ("the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors"). For this reason, too, Plaintiffs' claims fail. *See Hemi Grp., LLC,* 559 U.S. at 2 ("To establish that an injury came about 'by reason of' a RICO violation, a plaintiff must show that a predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'").

## II.    THE RICO CONSPIRACY CLAIM MUST BE DISMISSED

A failure to plead the requisite elements of § 1962(c) is also fatal to allegations of a conspiracy to violate that section under § 1962(d). *Simon v. Value Behav. Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000), *opinion amended*, 234 F.3d 428 (9th Cir. 2000), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007). Here, Plaintiffs' § 1962(d) claim is based solely on allegations that Galaxy conspired to violate § 1962(c). FAC ¶ 176. As set forth *supra*, Plaintiffs' § 1962(c) is legally deficient. Accordingly, the tag-along conspiracy claim fails. *See Shaw*, 220 F. Supp. 3d at 1058 (dismissing claim under § 1962(d) where plaintiffs failed to state a claim under § 1962(c) and "because there were no independent allegations in support of a conspiracy claim").

In any event, the FAC does not plausibly plead a RICO conspiracy claim. To state such a claim, a plaintiff must show that the defendant knowingly and personally "agreed to facilitate a scheme which includes the operation or management of a RICO enterprise." *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004). There is no plausible allegation in the complaint that Galaxy agreed with the other defendants to commit wire fraud, illegal gambling, or otherwise engage in any RICO violation, or even that Galaxy had any knowledge of the purported illegal RICO enterprise. *See, e.g., Twombly*, 550 U.S. at 557 (complaint must contain "allegations plausibly suggesting (not merely consistent with) agreement" to state a conspiracy claim); *Attia v. Google LLC*, No. 17-cv-06037-BLF, 2018 WL 2971049, at *18 (N.D. Cal. June 13, 2018) (a RICO conspirator must "have been 'aware of the essential nature and scope of the enterprise and intended to participate in it'"; dismissing RICO conspiracy claim for failing to allege any facts showing knowledge or awareness of the alleged RICO scheme). Instead, as explained above, the allegations show only a routine commercial relationship between Galaxy and Avia based on Galaxy's investment in Avia. Plaintiffs' RICO conspiracy claim should thus be dismissed, as well.

## III.    THE AMENDED COMPLAINT SHOULD ALSO BE DISMISSED WITH PREJUDICE FOR LACK OF PERSONAL JURISDICTION OVER GALAXY

Even if the Court finds Plaintiffs have adequately stated a claim against Galaxy, the Court should nonetheless dismiss all claims against Galaxy for lack of personal jurisdiction. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th

Cir. 2004). To establish personal jurisdiction, Plaintiffs must show both that California's long-arm statute confers personal jurisdiction over an out-of-state defendant, and that the exercise of jurisdiction would be consistent with federal due process requirements. *In re ZF-TRW*, 601 F. Supp. 3d at 693. Here, Plaintiffs cannot establish personal jurisdiction by reference to either California's long-arm statute or RICO's "ends-of-justice" provision.

### A.   The Exercise of Personal Jurisdiction Over Galaxy Would Not Comport with Due Process

Plaintiffs do not allege that Galaxy is subject to general jurisdiction in California. FAC ¶¶ 27–28. Since California's long-arm jurisdiction statute is coextensive with the Fifth Amendment, Cal. Code Civ. Proc. § 410.10, the jurisdictional analyses under state law tracks the analysis under the Due Process Clause. Thus, "[f]or a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 802.

In the Ninth Circuit, (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *Id*. Although Plaintiffs conclusorily allege that Galaxy "has minimum contacts" with the Northern District of California and "purposefully availed itself of the privilege of conducting business in this state" (FAC ¶ 27), Plaintiffs provide no factual support for this assertion.[5]

Plaintiffs' well-pleaded allegations do not establish that Galaxy purposely directed its activities at California, as is required to establish jurisdiction over Galaxy with respect to Plaintiffs' fraud-based claim sounding in tort. *See Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023),

---

[5] Although the FAC relies on the notion that the RICO Investors "purposefully availed itself [sic] of the privilege of conducting business in this state" (FAC ¶ 27), this Circuit has repeatedly made clear that although that test applies to claims sounding contract, "the purposeful direction" test is the appropriate test for intentional tort claims such as fraud. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024)

*cert. denied*, 144 S. Ct. 693 (2024). *Swarts v. Home Depot, Inc.*, No. 23-CV-0995-JST, 2023 WL 5615453, at *3 (N.D. Cal. Aug. 30, 2023). Rather, Plaintiffs' well-pleaded allegations consist of three innocuous facts which underscore Galaxy's role as a mere passive investor and which do not plausibly show how Galaxy aimed any conduct at California in a manner that would support specific personal jurisdiction. First, Plaintiffs allege that Galaxy, which is based in New York, invested in Avia, a California-based company. *See* FAC ¶¶ 13, 17. Second, Plaintiffs allege that Galaxy has a blurb about Avia on its website. FAC ¶ 41. Third, Plaintiffs allege that Mr. You, a Galaxy representative who is alleged to be a passive non-voting observer for Avia's Board, is—in his individual capacity—"based in California." FAC ¶ 27. None of these allegations confer personal jurisdiction in California for the simple reason that none of them involve any intentional activity in California that caused any harm in California.

Moreover, as shown above (*see supra* at 5–6), beyond Plaintiffs' allegations regarding Galaxy's passive role as a New York-based investor, Plaintiffs allege no facts demonstrating how their RICO claim or injuries arise out of or relate to Galaxy's purported contacts with California. Plaintiffs' conclusory allegation that "RICO Investors were involved in the operations of Avia, i.e., a California-based company, through their board participation and/or observance and spread misinformation regarding the nature of its business to, *inter alia*, California consumers" (*id*.) (emphasis added) is equal parts *ipse dixit* and group pleading, and should be disregarded accordingly. *See Linquet Techs., Inc. v. Tile, Inc.*, 559 F. Supp. 3d 1101, 1109 (N.D. Cal. 2021) (discrediting complaint's conclusory allegation as "purely ipse dixit, and not a statement of fact"). After all, the same "connection" could be said for every minority shareholder in every company, which would be a plainly unworkable standard. And while Plaintiffs allege that Mr. You is "based" in California in his individual capacity, Plaintiffs do not allege that Mr. You (or anyone associated with Galaxy) actively participated in any Avia-related activity in California. In sum, Plaintiffs—Texas and Idaho residents—plead no facts connecting Galaxy's passive investment to Avia's alleged misrepresentations, let alone any injury in California that could undergird personal jurisdiction over Galaxy. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506 (9th Cir. 2023) (reasoning that the district court did not err in dismissing for lack of personal jurisdiction where plaintiffs failed to allege how their injuries "arose out of or related to" defendants' forum contacts).

Plaintiffs' additional group plead and wholly conclusory allegations that "RICO Investors were involved in the operations of Avia," RICO Investors' conduct had effects" in California, "were informed about Avia's fraudulent activities," "were aware of the efforts that Avia went through to conceal its use of bots," and "connected with the forum with the operation of, or investment, in Avia" (FAC ¶ 27) do not legally suffice. These mere "assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations" do not satisfy their pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007); *Butcher's Union*, 788 F.2d at 540 (disregarding "nonspecific conclusory statement" as "not enough to show either minimum contacts giving rise to the RICO claim . . . ."). Accordingly, the Court has no reason to credit Plaintiffs' conclusory allegation that the Court has personal jurisdiction over Galaxy because "liability arises from [Galaxy's] contacts with the forum." FAC ¶ 27.

## B. Plaintiffs Cannot Rely on RICO's "Ends of Justice" Provision

To the extent Plaintiffs may seek to establish the Court's personal jurisdiction under RICO's "ends of justice" provision (*see* FAC ¶ 28), 18 U.S.C. § 1965(b), Plaintiffs have the burden to establish that: (1) Plaintiffs have sufficiently alleged a multidistrict conspiracy encompassing the defendants; (2) the Court has personal jurisdiction over at least one participant in the alleged multidistrict conspiracy; and (3) there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators. *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986); *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1161 (N.D. Cal. 2014) ("A plaintiff seeking to exercise jurisdiction pursuant to RICO's 'ends of justice' provision faces a high hurdle.").

Here, Plaintiffs allege in conclusory fashion that "Defendants are involved in a multidistrict conspiracy" (FAC ¶ 28), but allege no facts that would justify haling a foreign defendant such as Galaxy, or establishing that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators. Plaintiffs also fail to allege that Galaxy was "aware of the essential nature and scope of the [alleged RICO] enterprise and intended to participate in it.'" *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993). More specifically, and as in *Butcher's Union*, Plaintiffs fail to allege that Galaxy intended to join a conspiracy—nationwide or otherwise—with other RICO Defendants residing

in their own districts. *Butcher's Union Loc. No. 498, United Food & Com. Workers*, 788 F.2d at 539.

Even if Plaintiffs had adequately alleged a multidistrict conspiracy (which they have not), the Court would still have to analyze whether Plaintiffs allege facts concerning Galaxy's <u>nationwide</u> contacts support the exercise of personal jurisdiction, which they do not. Plaintiffs do not meet their burden of alleging that Galaxy has any minimum contacts with the United States outside of New York, so as to pass constitutional muster. *See* FAC ¶¶ 17, 27. Accordingly, Plaintiffs' claims against Galaxy should be dismissed for lack of personal jurisdiction.

## IV.    GALAXY JOINS IN THE OTHER DEFENDANTS' APPLICABLE ARGUMENTS

Galaxy joins and incorporates herein the arguments made by Avia, the Individual Defendants, and Acme in their respective motions to dismiss the complaint to the fullest extent applicable to Galaxy.

## CONCLUSION

For the foregoing reasons, Galaxy respectfully requests that the Court dismiss the Complaint in its entirety as against Galaxy, and grant such other and further relief as is just and proper.

Galaxy further respectfully requests that the dismissal be with prejudice, as Plaintiffs have already had the opportunity to buttress their allegations, and still "have not made any demonstration that they would be able to plead additional factual allegations" to cure their complaint. *See High*, 2012 WL 3025922, at *9.

Dated:  April 22, 2024

Respectfully submitted,

/s/ Jason Gottlieb

Jason Gottlieb (NY Bar No. 4056008) *(pro hac vice)*
Daniel Isaacs (NY Bar No. 4875902) *(pro hac vice)*
William Roth (NY Bar No. 5492848) *(pro hac vice)*
**MORRISON COHEN LLP**

Ellen London (SBN 325580)
**LONDON & STOUT P.C.**

*Counsel for Defendant Galaxy Digital
Capital Management, L.P.*