KEKER, VAN NEST & PETERS LLP
STEVEN K. TAYLOR - #204668
staylor@keker.com
AJAY S. KRISHNAN - #222476
akrishnan@keker.com
MICHELLE YBARRA - #260697
mybarra@keker.com
W. HAMILTON JORDAN - #295004
wjordan@keker.com
MAILE YEATS-ROWE - #321513
myeatsrowe@keker.com
CATHERINE C. PORTO – #331168
cporto@keker.com
JACQUELINE CONCILLA - #335733
jconcilla@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
AVIAGAMES INC.

KWUN BHANSALI LAZARUS LLP
ASIM M. BHANSALI - #194925
abhansali@kblfirm.com
KATE E. LAZARUS - #268242
klazarus@kblfirm.com
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

Attorneys for Defendants
VICKIE YANJUAN CHEN and PING
WANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW PANDOLFI and MANDI SHAWCROFT, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>AVIAGAMES INC.; VICKIE YANJUAN CHEN; PING WANG; ACME, LLC; GALAXY DIGITAL CAPITAL MANAGEMENT, L.P.; and OTHER UNNAMED CO-CONSPIRATORS,<br><br>                    Defendants. | Case No. 3:23-cv-05971-EMC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT BY DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          June 24, 2024<br>Time:         2:30 PM<br>Dept:         Courtroom 5 – 17th Floor<br>Judge:       Hon. Edward M. Chen<br><br>Date Filed: November 17, 2023<br>Trial Date:  None set |

2632917

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................2

II.     ISSUES TO BE DECIDED ...........................................................................................4

III.    PLAINTIFFS' ALLEGATIONS ....................................................................................4

IV.     ARGUMENT..................................................................................................................6

      A.    The Court should disregard allegations about the unrelated patent litigation. ........6

      B.    California public policy bars claims alleging losses related to gambling...............8

      C.    The Court should dismiss Plaintiffs' UCL and CLRA claims (Counts 1 and 2). ........................................................................................................................10

            1.    Plaintiffs' UCL and CLRA claims are barred because Plaintiffs cannot show they lack an adequate remedy at law. ...................................10

            2.    Plaintiffs' UCL and CLRA claims also fail because Plaintiffs have not alleged they saw or were injured by any specific misrepresentation. .............................................................................12

            3.    The CLRA does not apply to transactions involving virtual currencies or software. ..............................................................14

      D.    The Court should dismiss Plaintiffs' one remaining RICO count (Count 3).........16

            1.    Plaintiffs have not pleaded an enterprise. ...................................................17

             2.    Plaintiffs have not pleaded fraud with the required specificity. ................19

             3.    Plaintiffs have not pleaded a compensable RICO injury. .........................21

V.      CONCLUSION.............................................................................................................22

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT BY DEFENDANT
AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG
Case No. 3:23-cv-05971-EMC

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Apple Processor Litig.*,
2023 WL 5950622 (9th Cir. Sept. 13, 2023) ...........................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................6, 11, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 .........................................................................................................................6, 14

*Blaine v. Benefis Health Sys.*,
2023 WL 5842313 (9th Cir. Sept. 11, 2023) ...........................................................................11

*Boyle v. United States*,
556 U.S. 938 (2009).....................................................................................................................17

*Brill v. Postle*,
2020 WL 2936688 (E.D. Cal. June 3, 2020) .........................................................15, 16, 17, 21

*BSA Framing, Inc. v. Applied Underwriters, Inc.*,
2018 WL 11462083 (C.D. Cal. Feb. 27, 2018)...................................................................17, 18

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*,
2021 WL 1176645 (N.D. Cal. 2021) ........................................................................................11

*Canadian-Am. Oil Co. v. Delgado*,
108 F.3d 1384 (9th Cir. 1997) ..................................................................................................18

*Chaset v. Fleer/Skybox Int'l, LP*,
300 F.3d 1083 (9th Cir. 2002) ..................................................................................................21

*Coffee v. Google, LLC*,
2022 WL 94986 (N.D. Cal. Jan. 10, 2022)..............................................................................15

*Colvin v. Roblox Corp.*,
2024 WL 1268420 (N.D. Cal. Mar. 26, 2024)..........................................................................18

*Copple v. Astrella & Rice, P.C.*,
442 F. Supp. 2d 829 (N.D. Cal. 2006) ........................................................................................6

*Doan v. Singh*,
617 F. App'x 684 (9th Cir. 2015) ..............................................................................................21

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT BY DEFENDANT
AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG
Case No. 3:23-cv-05971-EMC

*dotStrategy v. Facebook Inc.*,
   482 F. Supp. 3d 994 (N.D. Cal. 2020) ...............................................................................12

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) ..........................................................................................19

*Escalante v. San Francisco Cnty. Coll. Dist.*,
   2019 WL 4751907 (N.D. Cal. Sept. 30, 2019) .............................................................19, 20

*In re Ethereummax Inv.*,
   2022 WL 20804358 (C.D. Cal. Dec. 6, 2022) ...................................................................21

*Ferrington v. McAfee, Inc.*,
   2010 WL 3910169 (N.D. Cal. Oct. 5, 2010).......................................................................15

*Focus 15, LLC v. NICO Corp.*,
   2022 WL 2355537 (N.D. Cal. June 30, 2022) ....................................................................19

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) .................................................................................13

*In re: Gen. Motors LLC Ignition Switch Litig.*,
   2016 WL 3920353 (S.D.N.Y. July 15, 2016) ......................................................................19

*In re German Auto. Manufacturers Antitrust Litig.*,
   612 F. Supp. 3d 967 (N.D. Cal. 2020) ...............................................................................10

*In re Grand Jury Proc.*,
   87 F.3d 377 (9th Cir. 1996) ................................................................................................7

*Guzman v. Polaris Indus. Inc.*,
   49 F.4th 1308 (9th Cir. 2022) ............................................................................................11

*Hadley v. Kellogg Sales Co.*,
   243, F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................................13

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................................................................12

*Hang Ngoc Lam v. Hawaiian Gardens Casino*,
   2020 WL 806655 (C.D. Cal. Jan. 8, 2020) ..........................................................................9

*Inge v. McClelland*,
   725 F. App'x 634 (10th Cir. 2018) .....................................................................................21

*In re iPhone App. Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................................................15

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT BY DEFENDANT
AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG
Case No. 3:23-cv-05971-EMC

*Jamgotchian v. Sci. Games Corp.*,
   371 F. App'x 812 (9th Cir. 2010) ...................................................................................................8

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
   609 F. Supp. 3d 942 (N.D. Cal. 2022) .........................................................................................21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...............................................................................................6, 12

*Lazy Y Ranch Ltd. v. Behrens*,
   546 F.3d 580 (9th Cir. 2008) .......................................................................................................7

*Letizia v. Facebook Inc.*,
   267 F. Supp. 3d 1235 (N.D. Cal. 2017) .....................................................................................13

*In re MacBook Keyboard Litig.*,
   2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)............................................................................12

*Mai v. Supercell Oy*,
   648 F. Supp. 3d 1130 ......................................................................................................13, 15, 16

*Mason v. Mach. Zone, Inc.*,
   140 F. Supp. 3d 457 (D. Md. 2015) .............................................................................................9

*Mostowfi v. i2 Telecom Int'l, Inc.*,
   269 F. App'x 621 (9th Cir. 2008) ..............................................................................17, 19, 21

*Ochoa v. Zeroo Gravity Games LLC*,
   2023 WL 4291650 (C.D. Cal. May 24, 2023) .............................................................................9

*Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*,
   437 F.3d 1145 (11th Cir. 2006) .................................................................................................21

*Prepaid Teleconnect, Inc. v. City of Murrieta*,
   2016 WL 1622609 (C.D. Cal. Apr. 21, 2016) .............................................................................8

*Reeves v. Niantic, Inc.*,
   2022 WL 1769119 (N.D. Cal. May 31, 2022) ...........................................................................15

*Republic of Iraq v. ABB AG*,
   768 F.3d 145 (2d Cir. 2014)........................................................................................................21

*Rogers v. McDorman*,
   521 F.3d 381 (5th Cir. 2008) .....................................................................................................21

*Sedima S.P.R.L. v. Imrex Co., Inc.*,
   473 U.S. 479 (1985).....................................................................................................................17

*Shaw v. Nissan N. Am., Inc.*,
   220 F. Supp. 3d 1046 (C.D. Cal. 2016) .........................................................................17, 18, 19

*Sonner v. Premier*,
   971 F.3d 834 (9th Cir. 2020) .......................................................................3, 10, 11, 12

*In re Toyota Motor Corp.*,
   826 F. Supp. 2d at 1202–03 ..................................................................................................19

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod.*
   *Liab. Litig.*,
   826 F. Supp. 2d 1180 (C.D. Cal. 2011) ................................................................................16

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2015) ...............................................................................................19

*Williams v. Apple*,
   2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) .....................................................................12

*Williams v. Apple, Inc.*,
   449 F. Supp. 3d 892 (N.D. Cal. 2020) ..................................................................................12

**State Cases**

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ...............................................................................12, 13, 14

*People ex rel. Green v. Grewal*,
   61 Cal. 4th 544 (2015) .............................................................................................................8

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008) ...............................................................................................14

*Hannosh v. Segal*,
   328 P.3d 1049 (Ariz. Ct. App. 2014)....................................................................................21

*Kelly v. First Astri*,
   72 Cal. App. 4th 462 (1999) ........................................................................................ *passim*

*Strickland v. Bicycle Casino, Inc.*,
   2012 WL 3756980 (Cal. Ct. App. Aug. 30, 2012)..................................................................9

*Tak Chun Gaming Promotion Co. Ltd. v. Long*,
   96 Cal. App. 5th 1027 (2023) ..................................................................................................8

**Federal Statutes**

18 U.S.C. § 1961.................................................................................................................... *passim*

**State Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ...............................................................................4, 13

Cal. Bus. & Prof. Code § 17539.1 .............................................................................................8

Cal. Civ. Code §§ 1750, *et seq.*..........................................................................................4, 15

**Rules**

Fed. R. Civ. P. 8.................................................................................................................2, 4, 14

Fed. R. Civ. P. 9............................................................................................................... *passim*

Fed. R. Civ. P. 12.......................................................................................................................6

Fed. R. Civ. P. 23.......................................................................................................................6

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT BY DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG
Case No. 3:23-cv-05971-EMC

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 24, 2024, at 2:30 p.m., or as soon thereafter as this matter can be heard, remotely via Zoom from the courtroom of the Honorable Edward M. Chen, located at the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 5 – 17th Floor, 450 Golden Gate Avenue, San Francisco, California, defendants AviaGames Inc. ("Avia"), Vickie Yanjuan Chen, and Ping Wang will move this Court for an order under Federal Rule of Civil Procedure 12(b)(6) dismissing Plaintiffs' First Amended Class Action Complaint, in whole or in part, as against them, for failure to state a claim as to which relief can be granted.

Dated: April 22, 2024

KEKER, VAN NEST & PETERS LLP

By: /s/ *Steven K. Taylor*
STEVEN K. TAYLOR
AJAY S. KRISHNAN
MICHELLE YBARRA
W. HAMILTON JORDAN
MAILE YEATS-ROWE
CATHERINE C. PORTO
JACQUELINE CONCILLA

Attorneys for Defendant
AVIAGAMES INC.

Dated: April 22, 2024

KWUN BHANSALI LAZARUS LLP

By: /s/ *Kate E. Lazarus*
ASIM M. BHANSALI
KATE E. LAZARUS

Attorneys for Defendants
VICKIE YANJUAN CHEN and PING WANG

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

### I.  INTRODUCTION

Despite having another bite at the apple, Plaintiffs have again failed to adequately plead their claims. Defendants AviaGames, Inc. ("Avia"), Vickie Chen, and Ping Wang (collectively, the "Avia Defendants") previously moved to dismiss Plaintiffs' prior complaint based on several fatal flaws, including: (1) Plaintiffs requested recovery from activities they allege amount to gambling, which is squarely barred by longstanding California law; (2) Plaintiffs failed to allege an inadequate remedy at law as required for claims under California's Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA"); (3) Plaintiffs failed to allege reliance and causation under the UCL and CLRA, as required by Rule 8(a) and Rule 9(b); (4) Plaintiffs based their CLRA claim on software transactions, which are beyond the scope of the CLRA; and (5) Plaintiffs failed to adequately allege an enterprise, fraud, or compensable injury under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

Now, despite taking the opportunity to attempt to cure these deficiencies, Plaintiffs' First Amended Complaint ("FAC") instead contains these *exact same flaws*, based primarily on the same allegations. Indeed, Plaintiffs' additional allegations largely appear directed at smearing the Avia Defendants with improper, incorrect, and mischaracterized allegations purportedly drawn from separate litigation. Plaintiffs have thus demonstrated that they cannot adequately plead their claims, which should be dismissed with prejudice.

Like Plaintiffs' original complaint, the FAC repeats, and is based on, a fiction. The gravamen of the FAC is again that Avia's undisclosed use of "bots" in its online gaming platform fraudulently transformed its games of skill into games of chance that amount to illegal gambling,

---

[1] Throughout this Memorandum, unless otherwise indicated, emphases were added to quotations while internal quotation marks, citations, footnotes, ellipses, brackets, and the like were omitted from them. Numbers preceded only by a paragraph sign (¶) refer to paragraphs of the FAC. Numbers preceded only by a section sign (§) refer to sections of Title 18 of the United States Code. References to "Rule 8(a)" or "Rule 9(b)" refer to the Federal Rules of Civil Procedure. All capitalized terms (such as "Rico Defendants" and "Robot Player Enterprise") have the same meaning as given in the FAC.

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT BY DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG
Case No. 3:23-cv-05971-EMC

allegedly pitting "real players" against computer "bots" in a losing proposition, thus defrauding Plaintiffs and causing them to lose money.

That fiction is far from reality. Avia players do not compete against computer-controlled "bots," and nothing was rigged. As with similar gaming platforms, some matches were played asynchronously, *i.e.*, not at the same time. For certain games involving players of the same skill level playing at different times, Avia matched players against previous games played by other human players. Avia's use of these previously played games, also called "historical playthroughs," is neither unlawful nor unfair.

And while these are the facts that Avia will ultimately present to the factfinder, this case should not proceed to that ultimate dénouement, because the erroneous allegations of the FAC—like those of Plaintiffs' prior complaint—are fatally defective in the following five ways.

*First*, to the extent Plaintiffs purport to seek recovery from activities they allege amount to gambling, those claims are barred by California public policy. The California Supreme Court has issued a long line of unbroken decisions on this point, declaring the courts off limits when it comes to recovery of gambling losses. Clearly, Avia disputes that its games allow for illegal gambling. But taking Plaintiffs' allegations to be true for the purposes of this Motion, as it must, the Court should dismiss all causes of action premised on alleged illegal gambling.

*Second*, Plaintiffs' UCL and CLRA claims (Counts 1 and 2, respectively) fail because they neglect to plead lack of an adequate remedy at law as required by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).

*Third*, Plaintiffs' UCL and CLRA claims fail for the additional reason that the FAC fails to allege that Plaintiffs ever saw—much less relied on or were injured by—any misrepresentation by the Avia Defendants.

*Fourth*, the CLRA claim fails for still another reason: the law does not apply to software or to transactions involving virtual currencies.

*Finally*, Plaintiffs' RICO claim (Count 3) is riddled with defects: Plaintiffs do not plausibly and specifically allege a RICO "enterprise"; Plaintiffs do not plausibly and specifically

allege the predicate acts of racketeering; and Plaintiffs allege only gambling losses, which are not compensable under RICO.

For these reasons, explained in more detail below, the Court should dismiss Plaintiffs' claims against the Avia Defendants.

## II.   ISSUES TO BE DECIDED

1.    Whether California public policy bars Plaintiffs from pursuing claims under the UCL, Bus. & Prof. Code §§ 17200 *et seq.*, CLRA, Cal. Civ. Code §§ 1750, *et seq.*, and RICO, 18 U.S.C. §§ 1961 *et seq.*, that are premised on gambling losses (Counts 1–3).

2.    Whether Plaintiffs fail to state claims for relief under the UCL and CLRA because the FAC fails to plead lack of an adequate remedy at law (Counts 1 and 2).

3.    Whether Plaintiffs fail to plausibly and specifically allege reliance and causation for their UCL and CLRA claims as required by Federal Rules of Civil Procedure 8(a) and 9(b) (Counts 1 and 2).

4.    Whether Plaintiffs fail to state a claim under the CLRA because the law does not apply to software transactions involving virtual currencies (Count 2).

5.    Whether Plaintiffs fail to state a claim under RICO because the FAC has not adequately alleged an "enterprise," a predicate act of racketeering, or a compensable injury (Count 3).

## III.   PLAINTIFFS' ALLEGATIONS[2]

Plaintiffs Andrew Pandolfi and Mandi Shawcroft filed this putative class-action against (1) Avia, a leading provider of online games of skill; (2) Avia co-founders and officers Vickie Chen and Ping Wang; and (3) two venture-capital firms that invested in Avia.[3] ¶¶ 13–18. According to the FAC, Avia represents that its games are ones of skill played against other humans and that its platform uses an algorithm to match players of similar skill. ¶¶ 1, 3–5,

---

[2] The FAC's allegations are taken as true for purposes of this motion only. Many of them, however, are in fact false or inaccurate.

[3] "Acme" refers to Defendant Acme, LLC and "Galaxy" refers to Defendant Galaxy Digital Capital Management, L.P.

4

34–37. The skills at issue are physical and strategic; players compete to execute a series of actions, faster, more accurately, and/or more strategically than a competitor; and the players play to win either cash or tickets redeemable for prizes. ¶ 67. For example, the FAC alleges that in Avia's Bingo Clash, the objective is to "daub" the called numbers faster and more accurately than the competitor and thereby complete more "bingos" during a three-minute game period to win a prize. *See* App. A ¶¶ 30–31. The FAC's Appendix further discloses that reflex speed, eye-hand coordination, and/or accuracy are likewise critical elements of Avia's Solitaire! (App. A ¶ 4), 21 Gold (*id.*, ¶¶ 7–8), Pool Clash (*id.*, ¶¶ 10–11), Tile Blitz (*id.*, ¶ 13), Dunk Shot (*id.*, ¶ 17), Dominoes (*id.*, ¶ 19), Fruit Frenzy (*id.*, ¶ 21), Explodocube (*id.*, ¶ 23), Blitz (*id.*, ¶ 25), and Word Search games (*id.*, ¶ 27), at a minimum. Against this backdrop, the FAC alleges Avia uses "bots," which the FAC claims defrauds players and gives rise to two forms of unlawful conduct.

*First*, Plaintiffs contend that "Avia's computers populate and/or control the games with computer 'bots' that can impact or control the outcome of the games," turning them into "manipulated games of chance that amount to an unapproved gambling enterprise." ¶ 1. Under Plaintiffs' theory, Avia matches players with a "bot" that controls the outcome of the game, such that players are really competing against Avia as the "house," which Plaintiffs claim amounts to illegal gambling. ¶¶ 71, 147. On this basis, Plaintiffs assert claims against Avia under the unlawful and unfair prongs of the UCL. Plaintiffs' prior complaint also asserted claims against all Defendants under RICO predicated on violation of California's anti-gambling laws. ECF No. 1, ¶ 114. Following Defendants' Motions to Dismiss, however, Plaintiffs amended their complaint to drop their RICO claims against Avia. Plaintiffs' RICO claim is now asserted against only Chen, Wang, Acme, and Galaxy (collectively, the "RICO Defendants"). ¶¶ 165–178.

*Second*, Plaintiffs allege that Avia fraudulently advertises its games as fair and skill-based competitions against real people, while the games are actually controlled by "bots." ¶ 113. Likewise, Plaintiffs allege that Avia misrepresents that it does not have any financial interest in the outcome of games, when in reality, Plaintiffs claim, "bots" control the outcome. ¶ 64. Plaintiffs allege that they lost money playing Avia games that they wouldn't have played had they

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT BY DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG
Case No. 3:23-cv-05971-EMC

known that Avia uses bots, ¶¶ 10, 12, and assert claims against Avia under the UCL's fraudulent and unfair prongs and the CLRA on that basis. ¶¶ 144–145, 155. Plaintiffs also assert that the same conduct gives rise to a RICO claim against the RICO Defendants predicated on wire fraud. ¶ 132. Plaintiffs purport to bring these claims on behalf of themselves and a Rule 23(b)(3) class, which is broadly defined as "[a]ll persons who have lost money playing any Avia game from at least 2017 until Defendants' unlawful conduct and its harmful effects stop." ¶ 90. Plaintiffs seek trebled damages and injunctive relief. *See generally*, FAC, "Request For Relief."

## IV.   ARGUMENT

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At a minimum, Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Id.* "A formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Where a complaint sounds in fraud, it must state the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009).

### A.   The Court should disregard allegations about the unrelated patent litigation.

As detailed in Avia's prior Motion to Dismiss, Plaintiffs' prior complaint contained only threadbare allegations in support of the actual elements of their claims. Purportedly attempting to cure those deficiencies, Plaintiffs added in the FAC new allegations regarding a now-settled, unrelated patent litigation brought by Avia's competitor, Skillz Platform Inc. ("Skillz"). *See Skillz* Doc. No. 670, Doc No. 668.[4] Like the *Skillz* allegations contained in Plaintiffs' prior complaint, these entirely improper additional allegations have no bearing on the issues before this Court and

[4] "*Skillz* Doc." refers to documents filed on the docket of *Skillz Platform Inc. v. AviaGames, et al.*, No. 21-cv-02436-BLF (N.D. Cal. Apr. 5, 2021). The Court may consider the *Skillz* documents when evaluating the FAC, because they are court records and thus subject to judicial notice, and because they are incorporated by reference into the FAC. *See, e.g.*, *Copple v. Astrella & Rice, P.C*., 442 F. Supp. 2d 829, 834 (N.D. Cal. 2006).

6

fail to support any proper claim for relief. The Court should disregard them.

*First*, as in their prior complaint, Plaintiffs repeatedly allege that, during Avia's patent litigation against Skillz, "Ms. Chen asserted her Fifth Amendment right not to testify." ¶¶ 80, 122, 124. These allegations appear to have no purpose other than to attempt to prejudice and tarnish Ms. Chen and Avia. Ms. Chen's invocation of the Fifth Amendment in the *Skillz* patent case is irrelevant here, as it was there. Indeed, the *Skillz* court unequivocally held that "whether Chen previously asserted her Fifth Amendment privilege *does not have anything to do with the substantive patent issues in this case.*" *Skillz* Doc. No. 603 at 2; *see also Skillz* Doc. No. 586 at 4 (same). More fundamentally, that Plaintiffs continue to assert these allegations in their FAC is particularly troubling, because Chen withdrew her invocation in the *Skillz* patent case and sat for an eight-hour deposition in which she answered all questions posed. *See Skillz* Doc. No. 603 at 2. Plaintiffs were fully aware of this fact, citing to portions of Chen's deposition testimony in the FAC. *See* ¶¶ 53, 64. Plaintiffs' attempt to cast aspersions on Ms. Chen and the Avia Defendants by referencing Ms. Chen's invocation, while also relying on her subsequent testimony after withdrawing that invocation, is entirely inappropriate and should be rejected.

*Second*, Plaintiffs repeatedly misrepresent the record in *Skillz* in a further attempt to discredit Avia. For example, Plaintiffs claim that the *Skillz* Court found that Avia made misrepresentations to consumers or committed fraud, citing to two court orders regarding the crime-fraud exception to the attorney-client privilege. ¶ 118 & n.108 (citing *Skillz* Doc. 435, Doc. 509). That is not the case. The *Skillz* litigation did not adjudicate Avia's representations to consumers. And court orders regarding disclosure of documents based on the application of crime-fraud to the assertion of privilege over those documents is not a finding of fraud, which the *Skillz* Court recognized. *See Skillz* Doc. 435 at 10 ("whether . . . the illegal purpose or whether the scheme was ultimately successful" is "irrelevant" to the crime-fraud analysis); *see also In re Grand Jury Proc.*, 87 F.3d 377, 381 (9th Cir. 1996) ("the crime-fraud exception does not require a completed crime or fraud"). Thus, Plaintiffs' assertions that a court has "already found" Avia made misrepresentations or committed fraud are erroneous and should be rejected. *See Lazy Y*

*Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (courts "need not accept as true allegations contradicting documents that are referenced in the complaint").

Plaintiffs' allegations regarding the *Skillz* litigation are inappropriate and misleading, and they should be disregarded.

### B.    California public policy bars claims alleging losses related to gambling.

As in Plaintiffs' prior complaint, each of Plaintiffs' claims in the FAC rests on averments that Avia's undisclosed use of "bots" transformed its games into gambling operations.[5] These allegations run afoul of California's longstanding prohibition on attempts to enlist the judiciary in the recovery of gambling losses. The Court should therefore dismiss Counts 1, 2, and 3 as claims that impermissibly arise from alleged gambling transactions.

California has a "strong, long-standing public policy . . . against judicial resolution of civil claims arising out of lawful or unlawful gambling contracts or transactions." *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462, 471 (1999). Absent "a statutory right to bring such claims, this policy applies both to actions for recovery of gambling losses and actions to enforce gambling debts." *Id.* The prohibition "applies to all forms of gambling, whether legal or illegal." *Id.*; *see also Jamgotchian v. Sci. Games Corp.*, 371 F. App'x 812, 813 (9th Cir. 2010) (holding that plaintiff's action to unwind certain betting transactions and recover related losses violated public policy). Indeed, the policy persists despite California's legalization of some forms of gambling. *See Tak Chun Gaming Promotion Co. Ltd. v. Long*, 96 Cal. App. 5th 1027, 1033–37 (2023).

What Plaintiffs seek here is precisely the "judicial resolution of civil claims arising out of gambling contracts or transactions" that California public policy prohibits. *Kelly*, 72 Cal. App. 4th at 471; *see* ¶ 9 (alleging that Pandolfi "estimates that he lost thousands of dollars playing those

---

[5] Count 1 relies on violations of various anti-gambling statutes, *see* ¶ 147, and also on violations of California Business and Professions Code § 17539.1, *see* ¶¶ 145–146. Among other things, that statute "makes it illegal for a business to offer any games that simulate gambling." *Prepaid Teleconnect, Inc. v. City of Murrieta*, 2016 WL 1622609, at *4 (C.D. Cal. Apr. 21, 2016); *see also People ex rel. Green v. Grewal*, 61 Cal. 4th 544, 567 n.4 (2015). Likewise, Count 2 relies on an allegation that Plaintiffs were misled about "their chances of winning real money." ¶ 157. And Count 3 is built around an alleged "Robot Player Enterprise," ¶¶ 101–131, which the FAC defines as Avia's "illegal games of chance provided in contravention of California illegal gambling statutes." ¶ 98.

8

games"); ¶ 11 (alleging that Shawcroft "has lost hundreds of dollars playing those games"). Under Plaintiffs' theory of the case—*i.e.*, that Avia's alleged use of bots transforms its games of skill into illegal gambling operations and that Plaintiffs lost money by participating in those games—they are "barred from recovering as a matter of California public policy." *Mason v. Mach. Zone, Inc.*, 140 F. Supp. 3d 457, 466 (D. Md. 2015), *aff'd*, 851 F.3d 315 (4th Cir. 2017) (applying California law); *Strickland v. Bicycle Casino, Inc.*, 2012 WL 3756980, at *3 (Cal. Ct. App. Aug. 30, 2012) (plaintiffs' claim for unfair business practices and fraud barred by California's prohibition on adjudicating gambling transactions). Plaintiffs have not cited any statutory authority that allows them to circumvent that policy; nor are the Avia Defendants aware of any such authority. Indeed, California voters in 2022 rejected Proposition 26, which would have allowed any person or entity to sue over violation of California's gambling laws and recover civil penalties.[6] Absent a statutory right to proceed, Plaintiffs' claims are barred. *See Hang Ngoc Lam v. Hawaiian Gardens Casino*, 2020 WL 806655, at *2 (C.D. Cal. Jan. 8, 2020).

Nor can Plaintiffs state a claim by arguing that their participation in the gambling they allege was unknowing. California's bar on adjudicating gambling disputes applies even where plaintiffs claim to be "victims of [d]efendants' fraud and unknowing participants in illegal gambling." *Ochoa v. Zeroo Gravity Games LLC*, 2023 WL 4291650, at *4 (C.D. Cal. May 24, 2023); *see also Mason*, 140 F. Supp. 3d at 465–66 (California public policy barred UCL claim based on an allegation that plaintiffs were "unknowingly" playing defendant's "illegal game of chance"). And California's public policy does not carve out an exception for fraud or cheating; where "plaintiffs' claims for monetary relief are in essence a claim to recover for gambling losses," they are barred. *Ochoa*, 2023 WL 4291650, at *4; *see also Kelly*, 72 Cal. App. 4th at 490. Regardless, any argument that Plaintiffs were "tricked" into gambling is belied by the allegations in the FAC that games, like 21 Gold, are (according to Plaintiffs) "clearly prohibited by California law." ¶ 107; *see also* ¶ 47 (alleging that users have characterized Avia's games as

---

[6] *See* https://lao.ca.gov/BallotAnalysis/Proposition?number=26&year=2022; https://ballotpedia.org/California_Proposition_26,_Legalize_Sports_Betting_on_American_India n_Lands_Initiative (2022).

9

"obviously faked" and "full of bots").[7] Allegations that are contradicted elsewhere in the FAC are not well-pleaded. *See, e.g.*, *In re German Auto. Manufacturers Antitrust Litig.*, 612 F. Supp. 3d 967, 980 (N.D. Cal. 2020), *aff'd*, 2021 WL 4958987 (9th Cir. Oct. 26, 2021) (court need not accept a plaintiff's factual assertions that are belied by plaintiff's allegations elsewhere in its complaint).

Plaintiffs' allegations at their best assert prohibited claims. The gravamen of Plaintiffs' FAC is that Avia's games amount to gambling. If that is the case, then California's longstanding public policy prohibits Plaintiffs from enlisting this Court to adjudicate what is, according to Plaintiffs, a gambling dispute.

**C.     The Court should dismiss Plaintiffs' UCL and CLRA claims (Counts 1 and 2).**

Beyond this improper effort to transform Avia's games into illegal gambling, and then seek unrecoverable gambling losses, Plaintiffs' UCL and CLRA claims (Counts 1 and 2) fail for the independent reasons that (1) the FAC fails to plead lack of an adequate remedy at law, as required by *Sonner*, 971 F.3d at 838, with respect to state-law equitable claims; (2) the FAC fails to plausibly and specifically allege reliance and causation; and (3) the CLRA does not apply to software or to transactions involving virtual currencies. Avia moved for dismissal on these same grounds in response to Plaintiffs' prior complaint, and Plaintiffs did nothing in their amendments to address these deficiencies. These faulty claims cannot be cured and should therefore be dismissed with prejudice.

**1.     Plaintiffs' UCL and CLRA claims are barred because Plaintiffs cannot show they lack an adequate remedy at law.**

As in the original complaint, the FAC fails to plead an inadequate remedy at law, which requires dismissal.

A plaintiff seeking equitable relief under the UCL and CLRA must "'plead the basic requisites of the issuance of equitable relief' including 'the inadequacy of remedies at law.'" *Sonner*, 971 F.3d at 838 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). *Sonner* held that

---

[7] Although not at issue for purposes of Avia's Motion to Dismiss, Avia disputes that its 21 Gold game is illegal.

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT BY DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG
Case No. 3:23-cv-05971-EMC

a plaintiff invoking the equitable powers of a federal court must adequately plead and prove lack of an adequate remedy at law, even if the plaintiff is suing under a state law that abolishes that requirement.[8] *Id*. at 840. Specifically, a federal court sitting in diversity "must apply traditional equitable principles before awarding restitution under the UCL and CLRA," *id*. at 841, including the rule that a plaintiff seeking equitable relief from a federal court must demonstrate lack of an adequate remedy at law. *Id.* at 840. The Ninth Circuit has since reaffirmed *Sonner*, *see Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022), and applied *Sonner* at the pleading stage, *see In re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) (affirming dismissal of claims under *Sonner*). Thus, a plaintiff seeking equitable relief, including restitution, under the UCL or CLRA must "plead 'the basic requisites of the issuance of equitable relief' including 'the inadequacy of remedies at law.'" *Sonner*, at 844 (quoting *O'Shea*, 414 U.S. at 502).

Here, Plaintiffs do not even attempt to plead that they have inadequate remedies at law. Any such attempt would be futile because Plaintiffs affirmatively plead claims for damages. Plaintiffs seek damages under the CLRA and damages (indeed, trebled damages) under RICO, ¶ 164 (CLRA), ¶ 178 (RICO), and there is no indication that these damages would be "inadequate or incomplete" in remedying their claimed harm. *Sonner*, at 844. Indeed, the only allegation even arguably relating to Plaintiffs' remedies at law is limited to a perfunctory—and wholly conclusory—aside that Plaintiffs "*may* be irreparably harmed and/or denied effective and complete remedy" if they are not granted an injunction under the CLRA. ¶ 156. This conditional, bald assertion says *nothing* about Plaintiffs' claim for restitution and, regardless, such "legal conclusions" are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Nor can "'jurisdiction [] [be] inferred argumentatively from averments in the pleadings," but rather must appear "on the material allegations contained in the complaint." *Blaine v. Benefis Health Sys.*, 2023 WL 5842313, at *1 (9th Cir. Sept. 11, 2023) (quoting *Bender v. Williamsport Area Sch.*

---

[8] *See also In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021) (collecting cases dismissing UCL claims post-*Sonner* and dismissing plaintiffs' UCL claim where they had not alleged that damages they sought were "inadequate or otherwise distinguish[ed] their request for restitution from their request for damages").

11

*Dist.*, 475 U.S. 534, 546–47 (1986)).

The Avia Defendants raised this infirmity in their prior motion to dismiss, and Plaintiffs have now had two opportunities to plead an inadequate remedy at law. They should not be provided a third. Because "the availability of an adequate legal remedy is clear from the face" of the FAC, "further amendment of the complaint would be futile" and dismissal with prejudice is appropriate. *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at \*3 (N.D. Cal. Oct. 13, 2020); *see also Williams v. Apple*, 2020 WL 6743911, at \*10 (N.D. Cal. Nov. 17, 2020) (applying *Sonner* to dismiss UCL claims with prejudice). Accordingly, Plaintiffs' UCL (Count 1) and CLRA (Count 2) claims for equitable relief should be dismissed with prejudice.

### 2. Plaintiffs' UCL and CLRA claims also fail because Plaintiffs have not alleged they saw or were injured by any specific misrepresentation.

The FAC also fails to meet the heightened pleading standards required under Rule 9(b), which applies to the UCL and CLRA. *Kearns*, 567 F.3d at 1122.  Plaintiffs have not pleaded that they saw or relied on any specific misrepresentation that caused them harm, which is an essential element of Plaintiffs' claims under the UCL and CLRA.

"To plausibly allege a CLRA [or] UCL claim, a plaintiff must allege that they relied on a misrepresentation and suffered injury as a result." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1084 (N.D. Cal. 2022) (emphasis in original). Specifically, "a plaintiff must have actually relied on the misrepresentation and suffered economic injury as a result of that reliance." *dotStrategy v. Facebook Inc.,* 482 F. Supp. 3d 994, 1000 (N.D. Cal. 2020) (dismissing UCL claim based on "unspecific and bare allegation about reliance").[9] "[A] mere factual nexus between the business's conduct and the consumer's injury" is not enough. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1355 (2010). Rather, at a minimum, plaintiffs "must allege that they actually read the challenged representations." *Williams v. Apple, Inc*., 449 F. Supp. 3d 892, 913 (N.D. Cal. 2020). As in the prior complaint, and despite the Avia Defendants' prior motion to dismiss on this

---

[9] This actual reliance requirement applies to all three of the fraudulent, unfair, and unlawful prongs of the UCL where, as here, the claims are "grounded in misrepresentation or deception." *Id.* at 1000–01.

12

same basis, the FAC contains no allegation that Plaintiffs even *saw* any of the alleged misrepresentations—much less any plausible allegation that they relied on those representations to their detriment.

Instead, the allegations specific to Plaintiffs are limited to four paragraphs (¶¶ 9–12), which say nothing about any misrepresentation that Plaintiffs saw or that Plaintiffs relied on. Instead, Plaintiffs repeat the cursory allegations from their prior complaint, which merely contend that the Plaintiffs "liked the idea" of skill-based games. ¶ 12. To these threadbare recitations, Plaintiffs have added only two allegations that even arguably relate to the individual Plaintiffs' reliance. *See* ¶¶ 9–12. First, that Mr. Pandolfi "believe[ed]" that he was playing "skill based competitions against other human opponents," ¶ 9; and second, that Ms. Shawcroft "liked the idea of" skill-based games. ¶ 12. Such allegations are simply more of the same, and they are no substitute for Plaintiffs' obligation to "identify which particular . . . representations" they "personally read and relied on." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1014 (N.D. Cal. 2014) (dismissing UCL and False Advertising Law claims); *Letizia v. Facebook Inc*., 267 F. Supp. 3d 1235, 1243–44 (N.D. Cal. 2017) (dismissing UCL claim where complaint failed to allege that plaintiffs saw the misrepresentations at issue). Plaintiffs cannot show they relied on statements that they did not see. Their claims fail for this reason alone.

This defect likewise forecloses Plaintiffs from adequately pleading causation under the UCL or CLRA. The UCL limits private-party standing to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. The same requirements hold for the UCL's "fraud" and "unlawful" prongs, because "[a] consumer's burden of pleading causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes." *Durell*, 183 Cal. App. 4th at 1363.[10] "In a fraud case [under the UCL], justifiable reliance is the same as

[10] Moreover, "courts in this district have held that where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017); *Mai v. Supercell Oy*, 648 F. Supp. 3d 1130, 1138

13

causation," and "specific pleading is necessary to establish a complete causal relationship between the alleged misrepresentations and the harm claimed to have resulted therefrom." *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 n.2 (2008). Likewise, "plaintiffs in a CLRA action must show not only that a defendant's conduct was deceptive but that the deception caused them harm." *Durell*, 183 Cal. App. 4th at 1367. Plaintiffs fail to make this showing.

Like their prior complaint, the FAC is devoid of any specific allegations about Plaintiffs' reliance or resulting injury. At best, the FAC contains precisely the sort of formulaic, recite-the-elements approach that *Iqbal* and *Twombly* condemn, even under ordinary Rule 8 notice-pleading standards. *See* ¶ 10 ("Mr. Pandolfi incurred harm as a result of Avia's misleading statements."); ¶ 12 (same allegation as to Ms. Shawcroft); ¶ 148 (UCL); ¶ 154 (CLRA). Additionally, the FAC alleges that it is "reasonable" to "infer that users likely see" statements on Avia's "FAQ" page. ¶ 38; *see also* ¶ 157 ("Being featured among the frequently asked questions means that people want to know who they are playing against and how that influences their chances of winning real money."). These allegations conspicuously omit any reference to Plaintiffs, and in any event come nowhere close to meeting Rule 9(b)'s particularity requirement. Instead, they amount to mere speculation that someone—at some time—may have read the representations on the FAQ page. That Plaintiffs have resorted to this type of vague allegation underscores their inability to allege that the Plaintiffs themselves viewed any of the alleged representations. This deficiency dooms their claims.

Plaintiffs have again failed to allege the who, what, when, or where of reliance or causation, or the time, place, and specific content of the representations on which these Plaintiffs relied. Their UCL and CLRA claims should therefore be dismissed with prejudice.

### 3. The CLRA does not apply to transactions involving virtual currencies or software.

Plaintiffs' CLRA claim likewise fails because Plaintiffs do not allege that they purchased "goods" or "services" covered by the statute. The CLRA declares as unlawful a list of "unfair methods of competition and unfair or deceptive acts or practices," when "undertaken by any

---

(N.D. Cal. 2023).

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT BY DEFENDANT
AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG
Case No. 3:23-cv-05971-EMC

person in a transaction intended to result or that results in the sale or lease of goods or services." Cal. Civ. Code § 1770(a). Plaintiffs contend that Avia violates the CLRA by "misleading consumers about participating in games of skill against real, live players." ¶ 155 (citing Cal. Civ. Code §§ 1770(a)(5), (a)(9)). As in their prior complaint, Plaintiffs allege that they "engaged in 'transactions' with Avia within the meaning of [the CLRA] when they paid money for in-game cash to enter games." ¶ 153. This allegation fails to state a claim under the CLRA.

Purchasing "in-game cash" (*i.e.*, virtual currency) is not a "good" or "service" covered by the statute. The CLRA defines "goods" as certain types of "tangible chattels," *id.*, § 1761(a), and "services" as "work, labor, and services for other than a commercial or business use," *id.*, § 1761(b). Virtual currency is neither. *See Mai*, 648 F. Supp. 3d at 1136 ("The Court agrees with other courts in this district in holding that virtual currency is not a good or service for purposes of the CLRA"); *Reeves v. Niantic, Inc.*, 2022 WL 1769119, at *2 (N.D. Cal. May 31, 2022) (finding that virtual coins purchased in a virtual world are "intangible goods," not "goods" or "services" under the CLRA); *Coffee v. Google, LLC*, 2022 WL 94986, at *10 (N.D. Cal. Jan. 10, 2022) ("[T]he purchase of virtual currency does not qualify as the purchase of a good or service under the CLRA."). Rather, the purchase of virtual currencies is at best a purchase of intangible goods, which the CLRA does not reach. As Judge Chhabria has explained,

> Perhaps the California Legislature should amend the CLRA to remove the word 'tangible' from the definition of 'goods' so the statute will cover the burgeoning number of transactions in intangible goods. But until that happens, courts should not shoehorn transactions involving the purchase of intangible goods into the definition of 'services'.

*Niantic*, 2022 WL 1769119, at *2.

Plaintiffs' claim also fails for the additional reason that the CLRA does not cover software downloaded from the internet. *See Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *18–19 (N.D. Cal. Oct. 5, 2010) (finding that downloaded software is neither a good nor a service covered by the CLRA); *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1070 (N.D. Cal. 2012) (holding that "to the extent [p]laintiffs' allegations are based solely on software, [p]laintiffs do not have a claim under the CLRA"). Nor does the CLRA cover the provision of games. *See Brill*

15

*v. Postle*, 2020 WL 2936688, at *5 (E.D. Cal. June 3, 2020) (concluding that provision of a poker game did not constitute a "service" under the CLRA, because "[t]o find what is inherently a game a 'service' requires a strained and unnatural reading of the statute"); *Mai*, 648 F. Supp. 3d at 1136 (concluding that "sale of virtual currency . . . and services in providing [video] games" was not covered by the CLRA). Furthermore, Plaintiffs allege that Avia's games constitute gambling, which also fails to qualify as a "service" under the CLRA because it "is not 'work or labor, nor is it related to the sale or repair of any tangible chattel.'" *Brill*, 2020 WL 2936688, at *5 (quoting *Fairbanks v. Superior Ct.*, 46 Cal. 4th 56, 61 (2009)).

Despite the Avia Defendants' prior motion to dismiss on these grounds, Plaintiffs' FAC introduces virtually no amendments to cure this deficiency. Plaintiffs have thus established that they are unable to plead a claim under the CLRA, and the claim should be dismissed with prejudice.

**D.     The Court should dismiss Plaintiffs' one remaining RICO count (Count 3).**

Plaintiffs' RICO claim fails for three reasons.

***First***, notwithstanding Plaintiffs' colorful re-labelling of a "Robot Player Enterprise," Plaintiffs fail to meet the basic requirement of alleging a RICO enterprise, because they do not and cannot allege that the RICO Defendants did anything other than participate in a business that, according to Plaintiffs, engaged in unlawful activity. To adequately plead a RICO claim, Plaintiffs must do more than allege that a company and its associates were simply going about their business—even if Plaintiffs allege that such business activity was conducted fraudulently. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202–03 (C.D. Cal. 2011) (dismissing RICO claim where plaintiff "alleges no more than that [d]efendants' primary business activity—the design, manufacture, and sale or lease of Toyota vehicles—was conducted fraudulently"). But that is all Plaintiffs do here.

***Second***, Plaintiffs do not meet the Rule 9 pleading standards for a RICO claim that is grounded in fraud. A plaintiff who bases their RICO claims on wire fraud—as Plaintiffs do here—must specifically allege "the who, what, when, where and how" of the misconduct charged,

16

and cannot simply offer "general statements about actions committed by the defendants" that fail to "specify *who* committed the violation, and *when* and *where* it occurred." *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008). Even with a second attempt to do so, Plaintiffs do not come close to meeting this standard.

**Third**, Plaintiffs allege only gambling losses, which are not compensable under RICO.[11] Courts have repeatedly held "that gambling losses are not sufficient injury to business or property for RICO standing because they do not present a tangible injury to property." *Brill*, 2020 WL 2936688, at *9. Without gambling losses, Plaintiffs have no losses and, thus, no RICO claim.[12]

### 1.    Plaintiffs have not pleaded an enterprise.

A RICO plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). RICO defines "enterprise" to mean "any individual, partnership, corporation, association, or other legal entity, and any union or *group of individuals associated in fact although not a legal entity*." 18 U.S.C. § 1961(4). An association-in-fact enterprise—the only type alleged by Plaintiffs—must share certain structural features, including a common purpose, relationships among those associated with the enterprise, and longevity sufficient to permit them to pursue that purpose. *See Boyle v. United States*, 556 U.S. 938, 945 (2009).

Allegations that "only demonstrate that the parties are associated in a manner directly related to their own primary business activities" are insufficient. *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016). Likewise, RICO requires more than simply "alleging that a corporation has violated the [RICO] statute by conducting an enterprise that consists of itself plus all or some of its officers or employees." *BSA Framing, Inc. v. Applied Underwriters, Inc.*, 2018 WL 11462083, at *8 (C.D. Cal. Feb. 27, 2018) (quoting *Cruz v. FXDirectDealer, LLC*,

---

[11] Furthermore, as explained in Section IV.B, *supra*, California public policy bars the recovery of gambling losses.

[12] In addition to alleging a RICO violation under Section 1962(c), Plaintiffs allege, in passing, a violation of Section 1962(d), for conspiracy to commit a RICO violation. Because their core RICO violation is substantively inadequate, Plaintiffs' RICO conspiracy claim under Section 1962(d) fails as well.

17

720 F.3d 115, 121 (2d Cir. 2013)). Otherwise "anytime a corporation is alleged to have engaged in fraudulent activity" a plaintiff would have a RICO claim so long as that plaintiff can also allege "that the corporation has officers, directors, employees, lawyers, accountants, and/or shareholders that, in some manner, participated in or benefitted from the alleged fraudulent activity." *Id.*; *see also Colvin v. Roblox Corp.*, 2024 WL 1268420, at *1 (N.D. Cal. Mar. 26, 2024) (holding that engaging in "routine business dealings" is insufficient to plead the existence of a RICO enterprise).

Plaintiffs have not sufficiently pleaded a RICO enterprise. The RICO Defendants here comprise only Avia executives and investors. And the FAC describes the alleged enterprise's "common purpose" to be providing Avia's games to the public and thereby "increasing Avia's revenues and profits." ¶ 118. But that alleged purpose is no different from the business goals of Avia, the company, itself. *See, e.g.*, ¶ 31 ("Avia makes mobile games playable on its online platform . . . "). Nor is it sufficient for Plaintiffs to allege that Avia uses fraudulent means to further that business purpose. "Pursuit of goals through illegitimate means does not itself, however, beget a RICO enterprise." *Canadian-Am. Oil Co. v. Delgado*, 108 F.3d 1384 (9th Cir. 1997). RICO requires more. Indeed, allowing such a theory of liability "would ensnare almost every corporation facing a run-of-the-mill fraud claim in RICO litigation." *BSA Framing*, 2018 WL 11462083, at *8.

*Shaw v. Nissan* is instructive. There, a purported class of consumers brought RICO claims based on the allegation that Nissan manufactured certain vehicles knowing they contained a faulty component part. *Shaw*, 220 F. Supp. 3d at 1046. The plaintiffs claimed that Nissan and the manufacturer of the allegedly faulty part formed an enterprise "to design, manufacture, distribute, test, and sell Subject Nissan Vehicles equipped with the defective [TCTS] to [p]laintiffs and other members of the Class, and thereby maximize the revenue and profitability." *Id.* The court dismissed the claims, holding that the allegations "fail to demonstrate a common purpose, much less a fraudulent one," separate and apart from the defendants' primary business activities. *Id.* at 1057.

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT BY DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG
Case No. 3:23-cv-05971-EMC

*Shaw* is consistent with other cases that require plaintiffs to plead more than facts showing a company and its associates going about their business—even if plaintiffs allege that business activity was conducted fraudulently. *See In re Toyota Motor Corp.*, 826 F. Supp. 2d at 1202–03 (dismissing RICO Claim where plaintiff "alleges no more than that Defendants' primary business activity—the design, manufacture, and sale or lease of Toyota vehicles—was conducted fraudulently"); *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *16 (S.D.N.Y. July 15, 2016) (finding no RICO enterprise where facts showed GM's outside counsel and claims administrator "acted in concert with New GM to carry out its business, and had no common purpose beyond helping New GM carry on its ordinary affairs"). That is precisely what Plaintiffs allege here.[13] Thus, they have not pleaded an association-in-fact enterprise.

**2.     Plaintiffs have not pleaded fraud with the required specificity.**

Additionally, Plaintiffs' RICO claim is defective because the FAC does not adequately plead predicate acts of racketeering. Rule 9(b)'s particularity requirement applies to civil RICO claims. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004). A plaintiff who bases their RICO claims on wire fraud must specifically allege "the who, what, when, where and how" of the misconduct charged, and cannot simply offer "general statements about actions committed by the defendants" that fail to "specify *who* committed the violation, and *when* and *where* it occurred." *Mostowfi*, 269 F. App'x at 624; *see also Focus 15, LLC v. NICO Corp.*, 2022 WL 2355537, at *3 (N.D. Cal. June 30, 2022) (Chen, J.) ("[P]redicate acts involving fraud for civil RICO claims must be pleaded with particularity as required by Rule 9(b)."). The FAC must provide "the cognitive organization that would allow the district court and the defendant to determine exactly what alleged factual conduct formed the basis of the RICO predicate acts." *Mostowfi*, 269 F. App'x at 625. Moreover, a "plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." *Escalante v. San Francisco Cnty. Coll. Dist.*, 2019 WL 4751907, at *9 (N.D. Cal. Sept. 30, 2019) (quoting *In re*

---

[13] Moreover, the FAC lacks enough detail about each defendant's *knowledge of* the enterprise "to avoid an unjust association of [each] defendant with the crimes of others." *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015).

19

*Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 785 F. Supp. 2d 883, 919 (C.D. Cal. 2011)). Plaintiffs' allegations here fall woefully short.

Importantly, the FAC does not accuse Avia itself of being a part of any RICO enterprise and instead argues only that Ms. Wang, Ms. Chen, and the two investor defendants engaged in a pattern of racketeering activity. Thus, Plaintiffs must plead with specificity how each of the individuals engaged in wire fraud and cannot rely on allegations against Avia that are not attributed to any individual. Plaintiffs, however, do not do so.

The FAC lists only two "use of the wires" that form the basis of Plaintiffs' allegation of wire fraud. *First*, Plaintiffs allege that "the transfers of funds to Avia and from Avia through online wires" was wire fraud. ¶ 134. This allegation does not implicate any of the RICO Defendants, as there is nothing in the FAC about any of the RICO Defendants transferring funds of any sort. And it is not enough to "lump together" allegations against multiple defendants without specifying how each of them supposedly transferred funds. *Escalante*, 2019 WL 4751907, at *9.

*Second*, the FAC alleges "the transmission of marketing and other materials through the internet media indicating that Avia's games are games of skill where players compete in real time against real human players." ¶ 134. Here, there is no allegation that Ms. Wang transmitted anything at all. In fact, the sole allegation against Ms. Wang in the FAC is that she *testified* that Avia does not use bots in its games, ¶ 59, and in addition to general statements about her role at the company, ¶ 15. Similarly, the only specific allegations against Ms. Chen are that she *testified* at a deposition that Avia does not use bots, ¶ 60, and wrote two articles explaining the difference between games of skill and games of luck, ¶ 134. And there is no allegation that Ms. Wang ever made any public statements that Avia did not use bots.

And as for the investor defendants, the FAC alleges only that they participated in board meetings, ¶ 123, gave general praise to Avia's executive team, ¶ 120, invested in other gaming companies, ¶ 128, 129, and described Avia as a "skill gaming app" that "uses a complex algorithm to assess and match each player's ability," ¶¶ 40, 41. There are no allegations that they

20

said anything about bots—or that they even knew anything about whether bots were used in the various Avia apps.

These allegations are a far cry from the who, what, where, and when required by Rule 9(b). *Mostowfi*, 269 F. App'x at 625 ("[O]ur precedent requires more when it comes to allegations of fraud"). Rule 9(b) requires that plaintiffs make "clear *what exactly each individual did*, *when* they did it, or *how* they functioned together as a continuing unit." *Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015). A complaint cannot simply "lump together the defendants without identifying *the particular acts or omissions that each defendant* committed," *Mostowfi*, 269 F. App'x at 624, as Plaintiffs attempt to do here.

Moreover, unless the complaint "detail[s] specifically which factual allegations support each predicate act, none of the defendants [can] determine with any certainty what allegations fell within the RICO claim." *Id.* at 625. The FAC here makes no such effort.

### 3.   Plaintiffs have not pleaded a compensable RICO injury.

Finally, the Ninth Circuit has held that a plaintiff's disappointment at not winning prizes in games in which they competed is not a cognizable RICO injury. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002); *see also In re Ethereummax Inv.*, 2022 WL 20804358, at *12 (C.D. Cal. Dec. 6, 2022) ("a 'mere expectancy interest' is insufficient to confer RICO standing.").[14] Based on that principle, "courts have specifically found that gambling losses are not sufficient injury to business or property for RICO standing because they do not present a tangible injury to property." *Brill*, 2020 WL 2936688, at *9 (collecting cases); *accord Hannosh v. Segal*, 328 P.3d 1049, 1053 (Ariz. Ct. App. 2014) (collecting cases). Put another way, "gambling without a chance to lose is not a legally protected interest." *Id.* at 1054. To the extent Plaintiffs

---

[14] At least four circuits (though not yet the Ninth) have also held that the *in pari delicto* doctrine—which dictates that parties to illegal, fraudulent, or inequitable conduct may not recover from another participant in the conduct—applies to civil RICO actions. *See Republic of Iraq v. ABB AG*, 768 F.3d 145, 162–63 (2d Cir. 2014); *Inge v. McClelland,* 725 F. App'x 634, 639 (10th Cir. 2018); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152–56 (11th Cir. 2006); *Rogers v. McDorman*, 521 F.3d 381, 387–89 (5th Cir. 2008); *but see In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 985 (N.D. Cal. 2022) ("[T]he Ninth Circuit has not adopted the *in pari delicto* doctrine as a defense to RICO claims and district courts in the Ninth Circuit are mixed.").

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT BY DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG
Case No. 3:23-cv-05971-EMC

allege RICO injury resulting from gambling, they lack standing for this reason, as well.

## V.   CONCLUSION

For the reasons described above, the Court should dismiss Counts 1, 2, and 3 with prejudice.

Dated:  April 22, 2024                                         KEKER, VAN NEST & PETERS LLP


By:   /s/ *Steven K. Taylor*
        STEVEN K. TAYLOR
        AJAY S. KRISHNAN
        MICHELLE YBARRA
        W. HAMILTON JORDAN
        MAILE YEATS-ROWE
        CATHERINE C. PORTO
        JACQUELINE CONCILLA

        Attorneys for Defendant
        AVIAGAMES INC.

Dated:  April 22, 2024                                         KWUN BHANSALI LAZARUS LLP


By:   /s/ *Kate E. Lazarus*
        ASIM M. BHANSALI
        KATE E. LAZARUS

        Attorneys for Defendants
        VICKIE YANJUAN CHEN and PING
        WANG

## **ATTESTATION**

In accordance with Civil Local Rule 5-1(i)(3), I attest that each of the signatories have concurred in the filing of this document.

Dated: April 22, 2024

By: *Steven K. Taylor*
Steven K. Taylor

MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT BY DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG
Case No. 3:23-cv-05971-EMC