Kristopher Kastens (CA SBN 254797)
KRAMER LEVIN NAFTALIS
   & FRANKEL LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
Email: kkastens@kramerlevin.com

[Additional counsel on signature page.]

*Counsel for Defendant ACME, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW PANDOLFI and MANDI SHAWCROFT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AVIAGAMES, INC., VICKIE YANJUAN CHEN, PING WANG, ACME, LLC, GALAXY DIGITAL CAPITAL MANAGEMENT, L.P., and OTHER UNNAMED CO-CONSPIRATORS,<br><br>Defendants. | Case No. 3:23-CV-05971-EMC<br><br>**DEFENDANT ACME, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT WITH PREJUDICE**<br><br>Date:        TBD<br>Time:        TBD<br>Judge:       Edward M. Chen<br>Ct. Room: 5, 17th Floor |

KL3 3700222.10

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 2

    A.    Plaintiffs Do Not Plausibly Allege Any Element Of Their 18 U.S.C. § 1962(c) Claim Against ACME ................................................................. 2

        1.    Plaintiffs Fail To Plead An Association-In-Fact Enterprise Separate From Avia, Or That ACME Shared The Enterprise's Common Purpose ................. 2

        2.    Plaintiffs Fail To Plead That ACME Directed The Alleged Enterprise .......... 8

        3.    Plaintiffs Fail To Plead That ACME Engaged In A Pattern Of Racketeering Activity ................................................................................. 10

        4.    Plaintiffs Fail To Plead Proximate Cause ..................................................... 13

    B.    Plaintiffs' RICO Conspiracy Claim Fails Because They Do Not Plausibly Allege That ACME Knew About And Agreed To Participate In A RICO Scheme ............................................................................................. 15

III.  CONCLUSION .............................................................................................. 15

DEFENDANT ACME'S REPLY
3:23-CV-05971-EMC

KL3 3700222.10

## <u>TABLE OF AUTHORITIES</u>

**Case**                                                                                                  **Page(s)**

*Angiulo v. Cnty. of Westchester*,
  No. 11-cv-7823, 2012 WL 5278523 (S.D.N.Y. Oct. 25, 2012)................................................. 7

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ............................................................................................................... 13

*Bridge v. Phoenix Bond & Indemnity Co.*,
  553 U.S. 639 (2008) ......................................................................................................... 13, 14

*Brown v. Moll*,
  No. 09-cv-05881, 2010 WL 4704372 (N.D. Cal. Nov. 12, 2010) ........................................... 5

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001) ................................................................................................................. 3

*In re Century Aluminum Co. Secs. Litig.*,
  729 F.3d 1104 (9th Cir. 2013).............................................................................................. 4, 15

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products
  Liability Litigation*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) ....................................................................... 5, 6, 7, 12

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014)................................................................................................ 4, 12

*Gomez v. Guthy-Renker, LLC*,
  No. 14-cv-01425, 2015 WL 4270042 (C.D. Cal. July 13, 2015)............................................. 3

*High v. Choice Mfg. Co.*,
  No. 11-cv-5478, 2012 WL 3025922 (N.D. Cal. July 24, 2012).......................................... 9, 10

*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992) ............................................................................................................... 14

*Howard v. Am. Online, Inc.*,
  208 F.3d 741 (9th Cir. 2000).................................................................................................. 15

*In re Jamster Mktg. Litig.*,
  No. 05-cv-0819, 2009 WL 1456632 (S.D. Cal. May 22, 2009)........................................... 2, 4

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  497 F. Supp. 3d 552 (N.D. Cal. 2020) ............................................................................. 4, 8, 9

*Ketayi v. Health Enrollment Grp.*,
  No. 20-cv-1198, 2021 WL 2864481 (S.D. Cal. July 8, 2021) ................................................. 9

- ii -

DEFENDANT ACME'S REPLY
3:23-CV-05971-EMC

KL3 3700222.10

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ................................................................................................................ 8

*Shaw v. Nissan N. Am., Inc.*,
   220 F. Supp. 3d 1046 (C.D. Cal. 2016) ........................................................................ 1, 4, 15

*Tan v. Quick Box, LLC*,
   No. 20-cv-01082, 2020 WL 7226440 (S.D. Cal. Dec. 8, 2020) ............................................ 12

*Tovar v. City of San Jose*,
   No. 5:21-cv-02497, 2021 WL 6126931 (N.D. Cal. Dec. 28, 2021) ................................... 7, 11

*United States v. Fernandez*,
   388 F.3d 1199 (9th Cir. 2004) ............................................................................................... 15

*United States v. O'Brien*,
   131 F.3d 1428 (10th Cir. 1997) ............................................................................................. 11

*United States v. Turkette*,
   452 U.S. 576 (1981) ................................................................................................................ 3

*Whitten v. Clarke*,
   41 F.4th 1340 (11th Cir. 2022) ............................................................................................ 5, 6

**Statutes & Rules**

18 U.S.C. § 1955 ............................................................................................................... 2, 11

18 U.S.C. § 1961 .................................................................................................................... 3

18 U.S.C. § 1962 ............................................................................................................. *passim*

18 U.S.C. § 1964 .................................................................................................................. 13

Fed. R. Civ. P. 8 ............................................................................................................. 13, 15

Fed. R. Civ. P. 9 ....................................................................................................... 1, 4, 13, 15

DEFENDANT ACME'S REPLY
3:23-cv-05971-EMC

KL3 3700222.10

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether the First Amended Complaint ("FAC") fails to state a claim against ACME under 18 U.S.C. § 1962(c)-(d) and should be dismissed with prejudice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiffs' Opposition makes clear that their single remaining RICO claim against ACME hinges on nothing more than a hodgepodge of innocuous allegations related to ACME's routine investment in Avia, such as ACME's presence on Avia's board of directors, its alleged "expertise" in gaming, and the unremarkable fact that ACME does "due diligence" on its investments. Opp. 3. Plaintiffs do not allege a *single* instance of ACME controlling Avia's games, misrepresenting those games to consumers, or coordinating with the other defendants to advance the supposed "bots" scheme. Courts "overwhelmingly reject[]" and dismiss RICO claims, like Plaintiffs' claim here, that try to "characterize routine commercial relationships as RICO enterprises" without "[s]omething more" "to exclude the . . . alternative explanation" of lawful conduct. *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1054, 1056 (C.D. Cal. 2016) (internal quotation marks omitted). This Court should do the same.

Plaintiffs have failed to plausibly plead *any* element of their substantive RICO claim against ACME under 18 U.S.C. § 1962(c), even after having the opportunity to amend. To start with, Plaintiffs have not pled the existence of a RICO enterprise independent from Avia. They insist they have written words in the FAC naming an association-in-fact "Robot Player Enterprise," but in every respect and every alleged act of misconduct, that "distinct" enterprise is just Avia. Even setting aside this fatal problem, Plaintiffs fail to muster any particularized facts under Rule 9(b) that plausibly suggest ACME knew about and shared the common enterprise purpose alleged in the FAC. Plaintiffs offer nothing more than their own, preferred (but implausible) interpretation of facts that are most plausibly explained by ACME's routine business objectives.

Plaintiffs' attempts to plead the participation element as to ACME are equally tortured. While Plaintiffs continue to rely on ACME's presence on the Avia board to satisfy this factor, they do not even try to meaningfully rebut caselaw cited in ACME's Motion to Dismiss requiring

- 1 -

*specific allegations* (not present here) of ACME's direction or control over the board. Beyond this, the Opposition can only serve up a smattering of other random facts, mostly relating to a separate patent case brought by an Avia competitor, and insist these somehow support ACME's participation in a RICO enterprise. But none of those facts, alone or together, come close to plausibly pleading that ACME exercised direction over any aspect of Avia's alleged bot scheme.

The FAC likewise fails to plead a pattern of racketeering by ACME. The Opposition's assertion that ACME can be held liable for the wire fraud of its co-defendants is wrong because Plaintiffs have not pled (as they must) that ACME's was a "knowing participant" in a scheme involving Avia's alleged bots. Moreover, the few predicates allegedly committed by ACME are deficiently pled, because the FAC (i) does not, for its wire fraud claims, allege ACME's specific intent to defraud, and (ii) fails to plausibly allege that ACME, at the time of its investments, knew Avia was involved in illegal gambling, as required by 18 U.S.C. § 1955(a).

Plaintiffs also fail to satisfy the final element of their § 1962(c) claim, proximate causation, because they have not pled facts plausibly showing that their monetary injuries (or those of the class members) were in any way caused by enterprise conduct attributable to ACME.

Finally, Plaintiffs' RICO conspiracy claim under 18 U.S.C. § 1962(d) is also a dead end. As the Opposition recognizes, the conspiracy claim requires plausible allegations that ACME knew about and agreed to participate in a RICO scheme. Plaintiffs have pled neither knowledge nor any such agreement on ACME's part, and their conspiracy claim therefore also fails as a matter of law.

For these and other reasons stated in ACME's Motion, Dkt. 107 (the "Motion"), the FAC's claim against ACME should be dismissed, with prejudice.

## II.   ARGUMENT

### A.   Plaintiffs Do Not Plausibly Allege Any Element Of Their 18 U.S.C. § 1962(c) Claim Against ACME

#### 1.   Plaintiffs Fail To Plead An Association-In-Fact Enterprise Separate From Avia, Or That ACME Shared The Enterprise's Common Purpose

To plead a RICO enterprise, Plaintiffs must allege (among other things) that ACME and the RICO Defendants "had a common purpose to engage in a fraudulent scheme." *In re Jamster Mktg.*

DEFENDANT ACME'S REPLY
3:23-cv-05971-EMC

KL3 3700222.10

*Litig.,* No. 05-cv-0819, 2009 WL 1456632, at \*6 (S.D. Cal. May 22, 2009).  As explained in the Motion, the FAC fails to satisfy the common purpose element as to ACME because: (i) the alleged "Robot Player Enterprise" is merely Avia by a different name and therefore lacks any "common purpose" separate from Avia's own business goals; and (ii) Plaintiffs fail to plausibly plead that ACME shared in the alleged enterprise's purpose of tricking consumers into playing Avia's games. *See* Mot. 9-14.  Plaintiffs' responses to both points are unpersuasive.

On the first point, Plaintiffs misapprehend ACME's argument, insisting there is no "distinctness" problem with their alleged enterprise because, as a purely formal matter, the RICO Defendants are legal persons distinct from the enterprise.  Opp. 47-48.  That misses the point.  As explained in the Motion (at 10), Plaintiffs repeatedly allege that *Avia*—not any investor or association-in-fact enterprise—populated its games with bots and misled users.  *See, e.g.*, FAC ¶¶ 61, 76.  While Plaintiffs (in an apparent gambit to avoid a distinctiveness issue) have not pled Avia as a RICO Defendant,[1] this does not mask the fact that their RICO claim "begins and ends with the fraud allegedly committed by" Avia.  *Gomez v. Guthy-Renker, LLC*, No. 14-cv-01425, 2015 WL 4270042, at \*8-9 (C.D. Cal. July 13, 2015) (quoting *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 400 (7th Cir. 2009)) (dismissing RICO claim and noting plaintiffs may not "transform" ordinary fraud claims into multi-party RICO allegations "merely through creative pleading").  There simply is no shared "common purpose" here—just Avia's own business objectives, cynically rebranded (without any plausible factual allegations) as the scheme of a multi-party enterprise.[2]

[1] Plaintiffs' attempt to position Avia as the passive "vehicle" through which the RICO Defendants operated, *see* Opp. 48, 51, does not pass the smell test.  Plaintiffs fail to explain how Avia, the object of their state-law fraud claims, can suddenly transform into a blameless "vehicle" for fraud in the RICO context.  Moreover, Plaintiffs have not pled Avia as the RICO enterprise here.  Rather, the FAC is clear Plaintiffs have plead an *association-in-fact* "Robot Player Enterprise."  FAC ¶ 101; *see also United States v. Turkette*, 452 U.S. 576, 581-82 (1981) (explaining that 18 U.S.C. § 1961(4) describes "two categories" of enterprises: "legal entities" such as corporations, and "any union or group of individuals associated in fact although not a legal entity").

[2] Plaintiffs wrongly accuse ACME of "misread[ing]" the Supreme Court's decision in *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158 (2001).  Opp. 48.  But ACME does not argue, as Plaintiffs contend, that the enterprise is deficient because "some of the RICO Defendants acted as officers of Avia."  *Id*.  Moreover, *Cedric* does not "support[] Plaintiffs' position," as the Opposition insists.  *Id*.  In *Cedric*, the alleged enterprise was a corporation run by the individual RICO defendant.  533 U.S. at 160-61.  Here, in contrast, Plaintiffs' enterprise is an association-in-fact

DEFENDANT ACME'S REPLY
3:23-cv-05971-EMC

KL3 3700222.10

On the second point, Plaintiffs try (and fail) to distinguish this action from the mountain of cases rejecting RICO claims based on facially legitimate business conduct. *See* Mot. 11 n.12. Plaintiffs essentially argue that because they have alleged that Avia used bots, and because that bot use falls outside "ordinary business conduct," one can infer that ACME shared the FAC's proffered common fraudulent purpose. But that logic does not track. *Every* RICO case involves allegations of fraudulent or otherwise illegal conduct. The question is whether Plaintiffs have alleged particularized facts under Rule 9(b) plausibly showing that ACME shared a common purpose to advance "*the 'enterprise's affairs,'* not just [its] own affairs." *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.,* 497 F. Supp. 3d 552, 598 (N.D. Cal. 2020) (emphasis added) (quoting *Cedric Kushner,* 533 U.S. at 161). And where RICO allegations are based on a defendant's facially legitimate business conduct, "'[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible.'" *Shaw*, 220 F. Supp. 3d at 1056 (quoting *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)).[3]

Plaintiffs plead nothing of the sort with respect to ACME. Every allegation about ACME is consistent with the types of routine investment activity that ACME and countless other investors engage in every day. The FAC offers nothing—not one allegation—tending to exclude the possibility of this more innocent and more likely explanation. For example, the FAC does not allege a *single* example of ACME coordinating with another Defendant to implement or support any fraudulent scheme. *See Jamster*, 2009 WL 1456632, at *6 (no common purpose where

"Robot Player Enterprise." And Plaintiffs have not plausibly alleged that this enterprise (which is actually Avia) has a purpose separate from Avia's own business objectives.

[3] Plaintiffs later assert that even if there is an alternative, innocent explanation for ACME's conduct, a "tie goes to the plaintiffs." Opp. 51 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8 (9th Cir. 2014)). But that "tie" occurs only where there are two *plausible* explanations for the defendant's conduct. *Eclectic Props.*, 751 F.3d at 999 n.8. Where there is an obvious alternative explanation for the defendant's conduct, a plaintiff's preferred theory is not "plausible" unless they plead "[s]omething more . . . such as facts tending to exclude the possibility that the alternative explanation is true." *Century*, 729 F.3d at 1108. Even the case Plaintiffs cite for their "tie" proposition, *Eclectic Properties*, affirmed the dismissal of a RICO claim on the grounds that the complaint "allege[d] facts that support—at best—a 'possible' basis to believe that Defendants specifically intended to defraud, not a 'plausible' one." 751 F.3d at 999 n.8 (quoting *Century*, 729 F.3d at 1108).

DEFENDANT ACME'S REPLY
3:23-cv-05971-EMC

KL3 3700222.10

plaintiffs failed to allege defendants "actively worked together in an indispensable and integrated manner to mutually engage in wrongful acts").  The Opposition's statement that the FAC includes "detailed allegations" of a "collaborative scheme to defraud," Opp. 46, is obviously wrong as to ACME.  Moreover, this case is nothing like *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liability Litigation,* 295 F. Supp. 3d 927 (N.D. Cal. 2018) (Chen, J.), the case Plaintiffs lean heaviest upon.  *See* Opp. 45, 46.  There, the plaintiffs alleged that "each Defendant participated in developing or implementing" faulty car emissions components that "plausibly had only a deceitful and unlawful purpose." *Chrysler-Dodge-Jeep*, 295 F. Supp. 3d at 978, 981.  Here, in contrast, there is no allegation that ACME helped develop or implement bots in Avia's games—and indeed, the Opposition concedes that ACME's investment occurred in 2021 "when the scheme was alleged to have already been in full force." Opp. 43.  Even if Avia's alleged bots "only [had] a deceitful and unlawful purpose," that is certainly not true of ACME's legitimate investment conduct.

Without anything supporting ACME's involvement in the alleged bot scheme, the Opposition scrambles together a handful of innocent allegations and asserts that they support the inference that ACME must have known about—and shared in—the alleged enterprise's fraudulent purpose. *See* Opp. 41-44.  But none of those allegations plausibly support ACME's  knowledge of Avia's supposed bot scheme.

*First*, Plaintiffs fail to distinguish cases cited in ACME's Motion that declined to impute knowledge of a company's fraudulent conduct to outside members of a company's board of directors. *See Whitten v. Clarke,* 41 F.4th 1340, 1351 (11th Cir. 2022); *Brown v. Moll,* No. 09-cv-05881, 2010 WL 4704372, at *3 (N.D. Cal. Nov. 12, 2010); Mot. 13.  Plaintiffs claim that ACME's Avia board member, Hany Nada, and board observer, Alex Fayette, are "not like the true outside directors" in *Whitten* and *Brown* because they are stakeholders in Avia. Opp. 42.  But those cases drew no such distinction.  Rather, those cases' "outside" directors were simply directors who were not employees of the company whose board they serve on. *See Whitten,* 41 F.4th at 1344; *Brown*, 2010 WL 4704372, at *1 n.1.  The courts reasoned that "[w]hile it is reasonable to assume *managers*

- 5 -

KL3 3700222.10

are privy to the daily operations of a company, the same is not true for Outside Directors." *Whitten*, 41 F. 4th at 1351 (emphasis added). That principle holds true here, where neither Nada nor Fayette are "managers" of Avia.

*Second*, the Opposition makes the unremarkable allegation (not plead in the FAC) that ACME does due diligence prior to investing in a company, contending this supports ACME's knowledge of the alleged bots scheme. *See* Opp. 42 (citing ACME's Form ADV available at Dkt. 108-1, Ex. 1). But nearly every sophisticated investor does due diligence. Plaintiffs' argument is akin to saying that any time an investor's diligence fails to uncover an investee's fraud, the investor's knowledge of that fraud can be inferred. That cannot be right. Plaintiffs' theory that ACME, through its diligence, must have uncovered Avia's alleged bot use is particularly unfounded, in light of Plaintiffs' allegations that Avia successfully hid its bot use from other sophisticated parties, including outside auditors, lawyers, and banks. FAC ¶ 61; Dkt. 1 ¶¶ 54-55.

*Third*, Plaintiffs insist that the fact that Nada was listed as a possible trial witness in the patent case brought by Avia's competitor supports the inference that ACME and Nada were aware of Avia's "inner workings." Opp. 43. Once again, Plaintiffs stretch to make something out of nothing. Nada was listed to testify for a mere 30 minutes on Avia's "history"—*not* the operation of its games. *See* Dkt. 108-1, Ex. 10 at 2; Mot. 14. Moreover, Nada was *not even called to testify*. The logical leap Plaintiffs seek—that Nada's appearance on a witness list in a patent case indicates he knew about Avia's alleged use of robot players—is simply not plausible.

*Fourth*, the Opposition points to Nada's opinion quote in an article announcing Avia's fundraising round and contends (relying on *Chrysler-Dodge-Jeep*) that Nada's "[p]ublic statements made from a position of purported knowledge support an inference of actual knowledge" of Avia's inner workings. Opp. 43. Wrong again. Initially, the portion of Nada's statement that Plaintiffs quote merely reflects his opinion regarding Avia executives' "gaming experience," their knowledge of "what consumers want," and the "compelling, interactive" nature of Avia's games. *Id.* (quoting FAC ¶ 120). None of these surface-level opinions betray any knowledge about Avia's inner workings, or that Nada was aware of "regulatory challenges" associated with Avia's business. *Id.*

DEFENDANT ACME'S REPLY
3:23-cv-05971-EMC

KL3 3700222.10

Moreover, *Chrysler-Dodge-Jeep* does not come close to supporting Plaintiffs' position. There, this Court concluded that "numerous" public statements by the defendant CEO "concerning the Class Vehicles, their EcoDiesel® engines, and their emissions and performance characteristics," supported the inference that the CEO plausibly knew about and oversaw the fraudulent emissions scheme. 295 F. Supp. 3d at 976. In contrast, here, there is only one public statement that includes no details about Avia's actual games, outside of Nada's opinion that they are "compelling" and "interactive." Moreover, in *Chrysler-Dodge-Jeep*, it was plausible that the defendant CEO—whose car company was the alleged "ringleader" of the emissions scheme—would be aware of the presence of defeat devices in his company's cars. *Id.* at 974-76. There is no similar rationale for inferring knowledge on the part of Nada, an outside board director, about Avia's inner workings.

*Fifth*, Plaintiffs continue to assert that ACME and Nada's knowledge of the bot scheme can be inferred on the basis of Defendant Vickie Chen's (later withdrawn) Fifth Amendment invocations in the separate patent case. Opp. at 43-44. Notably, Plaintiffs do not address the cases cited in ACME's Motion explaining why it is legally improper, even at the motion to dismiss stage, to draw what amounts to an adverse inference against *ACME* based on another party's Fifth Amendment assertions in a different case. *See* Mot. 14. "By failing to respond to [ACME's] arguments [in its motion to dismiss], Plaintiffs have conceded those arguments." *Tovar v. City of San Jose*, No. 5:21-cv-02497, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021). Instead, the Opposition protests that the transcript of Chen's subsequent deposition—where she answered all questions—is "not publicly available." Opp. 44.[4] But the fact Plaintiffs do not have evidence to determine whether Chen was asked these questions again is no basis for inferring ACME or Nada's knowledge of the alleged bots scheme based on Chen's Fifth Amendment assertions. *See Angiulo v. Cnty. of Westchester*, No. 11-cv-7823, 2012 WL 5278523, at *3 n.4 (S.D.N.Y. Oct. 25, 2012) (inability to access evidence "does not allow Plaintiffs to shirk their pleading obligations . . . . [A]s

---

[4] Plaintiffs complain that "no Defendants has [sic] provided" the transcript of Chen's final deposition, and that Defendants are "conspicuously silent as to whether she was asked again about Mr. Nada at all, or, if so, what the actual questions and answers were." Opp. at 43-44. ACME was not a party to the patent case and only has access to the same, publicly available docket materials that Plaintiffs do.

DEFENDANT ACME'S REPLY
3:23-cv-05971-EMC

KL3 3700222.10

*Iqbal* makes clear, a plausible claim must come before discovery, not the other way around."). In any event, the context of Chen's deposition negates the strained inference Plaintiffs seek:  During the deposition, Chen pled the Fifth more than 100 times on dozens of topics, all at the instruction of her newly appointed counsel.  *See* Dkt. 108-1, Ex. 7.  She then withdrew those assertions and was re-deposed.  That Plaintiffs knew these critical facts, failed to disclose them, and continue to cling to Chen's Fifth Amendment assertions as evidence supporting their claim, only underscores the weakness of their RICO theory as to ACME.  *See* Mot. 6-7.

In sum, none of Plaintiffs' allegations plausibly support the inference that ACME knew about the purported bots scheme, much less that it shared the alleged common purpose with RICO Defendants to "trick[] consumers" into playing Avia's games.  FAC ¶ 101.  Plaintiffs plead no particularized facts tending to exclude the far more likely explanation:  that ACME invested in Avia in support of its own, routine business interests.  *See JUUL*, 497 F. Supp. 3d at 603 (dismissing RICO claim where there was "too little to plausibly allege that . . . [the investor] specifically joined [the association-in-fact enterprise], as opposed to going into business with [JUUL] to support the general business of [JUUL] for their mutual benefit").

### 2. Plaintiffs Fail To Plead That ACME Directed The Alleged Enterprise

As stated in ACME's Motion, the FAC also fails to adequately allege that ACME, by virtue of its investment, its board presence, and its two benign statements about Avia, played "some part in directing" the Robot Player Enterprise as required by *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Mot. 15-17.  With respect to ACME's board presence, in particular, Plaintiffs fail to plead facts indicating that ACME or Nada exercised numerical control over the Avia board's decisions or "participated, authorized, or directed specific fraudulent acts" by Avia.  *JUUL,* 497 F. Supp. 3d at 608-09 (dismissing RICO claims against an e-cigarette company's directors).  Plaintiffs' only response to *JUUL* is a vague assertion, buried in a footnote, that this case is different because the RICO Defendants' "business operations" are "intertwined with the enterprise."  Opp. 51 n.19. Exactly how ACME's "business operations" are "intertwined" with the enterprise is left to the imagination.  But what *is* clear is that Plaintiffs fail to plead a single particularized fact showing

DEFENDANT ACME'S REPLY
3:23-CV-05971-EMC

KL3 3700222.10

that ACME authorized or directed, via its board presence, any specific conduct by Avia, the supposed "vehicle" of the enterprise. Opp. 51. Plaintiffs' conclusory allegation of ACME's purported "ability to influence Board's [sic] decisions," Opp. 42, is not sufficient. *JUUL*, 497 F. Supp. 3d at 608; *see also High v. Choice Mfg. Co.,* No. 11-cv-5478, 2012 WL 3025922, at *8-9 (N.D. Cal. July 24, 2012) (Chen, J.) ("[E]ven substantial influence by a party through persuasion with respect to an alleged RICO enterprise is not enough to establish control.").[5]

The rest of the Opposition's participation arguments fall equally flat. Plaintiffs refer to four factors that Ninth Circuit courts have considered in assessing whether a defendant directed the RICO enterprise, and then claim the FAC satisfies "multiple" of these factors with respect to ACME. *See* Opp. 49 (citing *Ketayi v. Health Enrollment Grp.*, No. 20-cv-1198, 2021 WL 2864481, at *12 (S.D. Cal. July 8, 2021)). In reality, none of the three factors arguably addressed by Plaintiffs are satisfied.[6] *First*, Plaintiffs claim that ACME occupied a position in the enterprise's "chain of command." Opp. 49. But the mere fact of ACME's board position cannot support this contention, for the reasons explained above. *Second*, seemingly in support of the "gave or took directions" factor, Plaintiffs assert that Nada "direct[ed] Avia's legal defense" in the patent trial brought by Avia's competitor. Opp. 49-50. This allegation is not pled in the FAC. Regardless, Nada's alleged involvement in an unrelated patent trial, at which the bots allegations were a sideshow, hardly suggests that he or ACME gave or took directions as part of the alleged *Robot Player Enterprise*.[7]

---

[5] Plaintiffs' arguments regarding ACME's board presence are even more speculative than the director arguments in *JUUL*. There, the plaintiffs alleged that JUUL's board had "final say" over marketing materials and specifically decided in October 2015 to target e-cigarette marketing toward teens. *JUUL*, 497 F. Supp. 3d at 608 (finding that these "blanket assertion[s]" were still insufficient, because they did not "establish the requisite individual 'direction or control'" over the enterprise's actions). Plaintiffs here fail to plead *any* decision or action by the Avia board supporting the alleged fraud, much less explain ACME's role in directing such a decision.

[6] Plaintiffs do not argue that ACME "was indispensable to achievement of the enterprise's goal." *See Ketayi*, 2021 WL 2864481, at *12; Opp. 49-50.

[7] While Plaintiffs claim they are "prepared to amend the [FAC] if necessary to state the allegation that Mr. Nada and ACME had a controlling role in the litigation," Opp. 50 n.18, they have had their shot to amend and should not be given another. Further, additional allegations about Nada's role in the patent litigation would not in any way bolster Plaintiffs' RICO theory. Assuming Plaintiffs' allegation were true, it is hardly sinister that Nada, an outside director, would assist a portfolio company in a complex patent trial, especially one where the conduct of Avia's insider directors was under scrutiny. Likewise, and despite Plaintiffs' statements to the contrary, there is nothing

DEFENDANT ACME'S REPLY
3:23-cv-05971-EMC

KL3 3700222.10

*Third*, the Opposition contends that ACME not only "implemented decisions of upper management," but "in many ways [was] upper management." Opp. 49, 50. But the only "example" Plaintiffs can muster of ACME implementing enterprise conduct is ACME's utterly benign website statement referring to Avia as "A real-money mobile skill gaming app." Opp. 50; *see also* Dkt. 108-1, Ex. 2 (the statement as displayed on the portfolio page of ACME's website). As ACME's Motion explains, that statement cannot plausibly support ACME's involvement or direction of the RICO enterprise. Mot. 7, 17. In short, even under Plaintiffs' preferred framework, they do not come close to plausibly pleading ACME's direction of the Robot Player Enterprise.

Finally, Plaintiffs attempt to brush aside this Court's decision in *High*, claiming this case is different because ACME provided business support to Avia, in addition to "financial grease." Opp. 51 n.19. Again, Plaintiffs miss the point. Nothing in the Opposition undermines the two key teachings of *High*, namely that (i) providing financing assistance to a company, even with knowledge of that company's fraud (which is not present here), does not alone indicate direction of a RICO scheme; and (ii) a party's mere "influence" over a RICO enterprise is not enough to show direction of that enterprise. *See* Mot. 15-17; *High,* 2012 WL 3025922, at *8-9. That ACME (like countless other investors) allegedly provided "business acumen" and "held [an] active role[]" on Avia's board," Opp. 51 n.19, does not undermine these teachings, nor does that allegation plausibly support any inference that ACME played a role in directing the alleged bots scheme. Plaintiffs fall woefully short of pleading the direction requirement as to ACME.

### 3. Plaintiffs Fail To Plead That ACME Engaged In A Pattern Of Racketeering Activity

ACME's Motion explains that the FAC fails to allege a single predicate act of racketeering against ACME, much less the "pattern of racketeering activity" required by § 1962(c). Mot. 17-20. Specifically, Plaintiffs' allegations of wire fraud by ACME fail because the FAC does not plausibly allege ACME's specific intent to defraud, and because the alleged quote in the

---

nefarious about the fact that ACME "may," through Nada's and Fayette's participation on the Avia board, possess documents that Avia could seek to claim as privileged. Opp. 50. Plaintiffs do not even attempt to explain how ACME's possible possession of such documents plausibly supports its "direction" of the Robot Player Enterprise.

DEFENDANT ACME'S REPLY
3:23-cv-05971-EMC

KL3 3700222.10

BusinessWire article involves only non-actionable opinion. Moreover, the FAC fails to plead illegal gambling by ACME under 18 U.S.C. § 1955(a), because Plaintiffs do not adequately allege that ACME knew its investment in Avia constituted "participation in gambling." *United States v. O'Brien*, 131 F.3d 1428, 1430 (10th Cir. 1997).

Plaintiffs offer threadbare and unconvincing responses to these arguments. They stake their pattern argument on the proposition that ACME, as a "knowing participant" in a scheme to defraud, can be held vicariously liable for alleged acts of mail fraud by the other Defendants, even if ACME's own alleged predicate acts are not actionable. *See* Opp. 53 (quoting *United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002)). But that argument presumes Plaintiffs have plausibly pled that ACME knew about, and participated in, Avia's alleged bots scheme. Plaintiffs have not, for all the reasons explained above and in ACME's Motion. *See, e.g.*, Mot. 19-20.

Moreover, Plaintiffs fail to plead ACME's specific intent to defraud Plaintiffs (or any Avia user) through its own alleged acts of wire fraud or those of the other Defendants. The Attachment to the Opposition clarifies that Plaintiffs allege only three acts of wire fraud by ACME, each of which are consistent with standard investment activity: (i) Nada's opinion comment to BusinessWire; (ii) ACME's six-word statement about Avia on the portfolio page of its website; and (iii) ACME's wire transfers to Avia in connection with its 2021 investments. Dkt. 111-1 at 1. As to the first statement, Plaintiffs did not offer *any* response to the Motion's observation that Nada's opinion statement is not actionable as fraud. *See* Mot. 18-19. Plaintiffs therefore have conceded this point. *Tovar*, 2021 WL 6126931, at *2. As for the rest, Plaintiffs' cursory arguments with respect to specific intent misstate caselaw and fail to meaningfully respond to ACME's Motion.

For one thing, the Opposition's contention (at 55) that ACME's specific fraudulent intent can be inferred from the "very existence" of the alleged bots scheme is simply wrong. For all the reasons explained above, Plaintiffs have not plausibly pled that ACME even knew about the alleged bots scheme. Plaintiffs essentially argue that any time a company is alleged to have engaged in conduct with only a "deceitful purpose," one can assume that its partners and investors shared the same fraudulent intent. That makes no sense, and is unsupported by any precedent. Plaintiffs'

- 11 -

KL3 3700222.10

citation to *Chrysler-Dodge-Jeep* is inapposite because all the defendants in that case allegedly played a role in designing and implementing the faulty emissions devices. 295 F. Supp. 3d at 978, 981. Here, there is no allegation that ACME designed or implemented Avia's supposed bots, which are alleged to have existed years before ACME first invested in Avia. The FAC's allegations against ACME all rest on legitimate business conduct, and Plaintiffs offer no "specific factual allegations that enable [the court] to rule out the innocent explanation in favor of plaintiff's fraudulent scheme hypothesis." *Tan v. Quick Box, LLC*, No. 20-cv-01082, 2020 WL 7226440, at *23 (S.D. Cal. Dec. 8, 2020).

Plaintiffs' related argument that ACME's fraudulent intent can be inferred from its "deceitful concealment" of bots, *see* Opp. 55 (quoting *Eclectic Props.*, 751 F.3d at 1000), is likewise unsupported by law or fact. Plaintiffs' reliance on *Eclectic Properties* for this argument is especially confounding: there, the Ninth Circuit held that the plaintiffs *failed* to allege deceitful concealment of facts in connection with an alleged real estate investment scheme. *See* 751 F.3d at 1000. Specifically, the court explained that the defendants' failure to disclose that real estate tenants had not been rated by credit agencies was not deceitful, where there was "no allegation that Plaintiffs requested properties with credit-rated tenants, or even requested information about" tenants' credit rating. *Id.* Plaintiffs' concealment theory here is even more speculative. The Opposition claims that ACME concealed Avia's bots by failing to disclose them in its six-word website statement. Opp. 55. But even assuming ACME knew about bots (it did not), ACME's generic statement on a section of its corporate portfolio website—which, in all likelihood, no Avia gamer ever saw—cannot plausibly constitute deceitful concealment. Plaintiffs therefore fail to adequately plead ACME's specific intent to defraud any Avia gamer.

That leaves only the illegal gambling predicate against ACME. For the reasons explained in the Motion, that predicate alone cannot constitute the required "pattern" of two or more racketeering acts. Mot. 21. Moreover, the Opposition offers nothing of substance in response to ACME's argument that the FAC does not plead (as it must) that ACME knew at the time of its investment that Avia's games were a form of gambling, rather than skills-based competitions

- 12 -

KL3 3700222.10

(which are not gambling). *See* Mot. 20-22. The best Plaintiffs can do is label ACME's knowledge of gambling a "factual dispute." Opp. 58. But Rules 8(a) and 9(b) require that Plaintiffs plead particularized facts plausibly suggesting such knowledge in order to plead their illegal gambling predicate. Plaintiffs have not done so, particularly in light of their allegations that Avia hid the true nature of its games from outside auditors, lawyers, and banks. FAC ¶ 61; Dkt. 1 ¶¶ 54-55.

### 4. Plaintiffs Fail To Plead Proximate Cause

Given that Plaintiffs cannot plead any of the required § 1962(c) elements as to ACME, the Court need not consider whether Plaintiffs have pled the proximate causation requirement required by 18 U.S.C. § 1964(c). But if the Court does reach this issue, there is simply no plausible basis articulated in the FAC for inferring that Plaintiffs' purported monetary loss from playing Avia bots was directly caused by ACME's alleged misrepresentations to consumers.

*First*, the Motion explained that Plaintiffs do not plead that they (or any other class member) viewed any fraudulent communication by ACME, much less that those communications caused them to play Avia's games. Mot. 22-23. Plaintiffs respond that this does not matter, because proximate causation under RICO does not require first-person reliance as long as there is a direct connection between the scheme's wrongful conduct and Plaintiffs' injury. Opp. 59-60. Plaintiffs cite *Bridge v. Phoenix Bond & Indemnity Co.* for this point, but ignore that the Supreme Court also cautioned in that case that "none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations." 553 U.S. 639, 658 (2008). There is no allegation in the FAC that any named or class Plaintiff viewed ACME's website statement or Nada's article quote (which, in any event, is an opinion not actionable as fraud), or that any consumer was influenced by those statements to play Avia's games. Nor would such an allegation be plausible.[8]

*Second*, the Opposition attempts to hand wave away ACME's argument that the FAC's overbroad class definition—which includes "[a]ll persons who have lost money playing any Avia

---

[8] Plaintiffs nitpick ACME's parenthetical quotation of *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451 (2006) in the Motion. Opp. 60. But neither of Plaintiffs' preferred excerpts from *Anza* (which say nothing about *who* must engage in the "violation" or "injurious conduct" that causes a plaintiff's injury) undermine ACME's reliance on that case.

KL3 3700222.10

game" for any reason, FAC ¶ 90—fails to cabin class members to those who were directly injured by the alleged enterprise conduct. Mot. 23. Plaintiffs claim this issue "is an argument better suited for class certification," Opp. 61, but Plaintiffs must allege that their injuries (and those of the class members), have a "sufficiently direct relationship" to the alleged wrongful conduct. *Bridge*, 553 U.S. at 657. That is not the case here, where Plaintiffs' class definition would encompass (for example) Avia gamers who only lost money to other human players.

*Third*, ACME's Motion argues that the enterprise's alleged efforts to mislead Avia consumers are too attenuated from Plaintiffs' actual monetary losses, because it is the purported deployment of bots, not a gamer's initial decision to play Avia's games, that causes the gamer's injury. Mot. 23. Plaintiffs protest that ACME cannot "silo the two parts of the scheme (bots and lies about bots)." Opp. 60-61. But Plaintiffs have alleged that the supposed Robot Player Enterprise was "formed for the purpose of tricking consumers into believing that they are playing against real players." FAC ¶ 101; *see also id*. ¶ 98 ("Avia and the RICO Defendants have been fraudulently misleading and deceiving consumers as to the true nature of Avia's games."); Opp. 45. Thus, the crux of Plaintiffs RICO theory, as alleged in the FAC, is that RICO Defendants joined together to mislead consumers, not to implement bots. And there is certainly no allegation in the FAC that ACME designed Avia's bots or controlled Avia's matching algorithm.

*Fourth*, even if Defendants' alleged RICO conduct included the actual operation of the alleged bots, the Motion explains that any purported losses resulting from those bots would be too speculative to satisfy the proximate causation requirement. *See* Mot. 23-24; *Holmes v. Sec. Inv. Prot. Corp.,* 503 U.S. 258, 269-70 (1992) (considering, among other things, how "difficult" it will be "to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors"). Rather than respond to ACME's list of reasons explaining why calculating individual damages will be difficult (if not impossible) in this case, Plaintiffs assure the Court that the damages endeavor "will not be complicated" and chide ACME for engaging in "lawyer speculation." Opp. 61. But it is Plaintiffs' obligation to particularly plead every element of their RICO claim, including causation. They have not done so here.

DEFENDANT ACME'S REPLY
3:23-cv-05971-EMC

KL3 3700222.10

**B.** **Plaintiffs' RICO Conspiracy Claim Fails Because They Do Not Plausibly Allege That ACME Knew About And Agreed To Participate In A RICO Scheme**

Plaintiffs' allegation that ACME and the other Defendants conspired to violate § 1962(c), in violation of § 1962(d), fails for largely the same reasons discussed above. As Plaintiffs acknowledge in their Opposition, "[i]n the § 1962(d) context, knowledge of the scheme and agreement . . . is everything." Opp. 64. Thus, while a plaintiff can theoretically plead a conspiracy claim independent of a substantive § 1962(c) claim, they still must allege that the defendant was "aware of the essential nature and scope of the enterprise and intended to participate in it." *Howard v. Am. Online, Inc.,* 208 F.3d 741, 751 (9th Cir. 2000) (quoting *Baumer v. Pachl,* 8 F.3d 1341, 1346 (9th Cir. 1993)); *see also United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004) (RICO conspiracy requires plausible allegations that defendant "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise.").

The FAC does not plausibly allege ACME's knowing agreement to participate in a RICO scheme. As explained at length above and in ACME's Motion, Plaintiffs plead no facts plausibly supporting an inference that ACME knew about the "nature and scope" of an alleged scheme involving Avia's supposed bots. Nor does the FAC allege any facts plausibly suggesting an agreement by ACME—implicit or otherwise—to participate in the purported Robot Player Enterprise. At bottom, Plaintiffs offer nothing more than their preferred version of facts that are consistent with—and most plausibly explained by—ACME's routine, good faith investment conduct. Rules 8(a) and 9(b) require "[s]omething more." *Century*, 729 F.3d at 1108.

## III. CONCLUSION

Plaintiffs' RICO claim against ACME (Count III) fails as a matter of law. Moreover, Plaintiffs have already amended their complaint once, and there is nothing in the FAC or the Opposition indicating that they can plead additional facts to elevate their claim against ACME from "possible" to "plausible." *Shaw,* 220 F. Supp. 3d at 1057. The claim against ACME should be dismissed in full, with prejudice.

KL3 3700222.10

Dated: May 23, 2024

*/s/ Jennifer S. Windom*

**KRAMER LEVIN NAFTALIS
  & FRANKEL LLP**

Jennifer S. Windom (*pro hac vice*)
Ralph C. Mayrell (*pro hac vice*)
2000 K Street NW, 4th Floor
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: jwindom@kramerlevin.com
Email: rmayrell@kramerlevin.com

Kristopher Kastens (CA SBN 254797)
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
Email: kkastens@kramerlevin.com

*Counsel for Defendant ACME, LLC*

- 16 -

DEFENDANT ACME'S REPLY
3:23-cv-05971-EMC