KEKER, VAN NEST & PETERS LLP
STEVEN K. TAYLOR - # 204668
staylor@keker.com
MICHELLE YBARRA - #260697
mybarra@keker.com
W. HAMILTON JORDAN - # 295004
wjordan@keker.com
MAILE YEATS-ROWE - # 321513
myeatsrowe@keker.com
JACQUELINE CONCILLA - # 335733
jconcilla@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
AVIAGAMES INC.

KWUN BHANSALI LAZARUS LLP
ASIM M. BHANSALI - # 194925
abhansali@kblfirm.com
KATE E. LAZARUS - # 268242
klazarus@kblfirm.com
555 Montgomery Street, Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350

Attorneys for Defendants
VICKIE YANJUAN CHEN and PING
WANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ANDREW PANDOLFI and MANDI
SHAWCROFT, individually and on behalf of
all others similarly situated,

Plaintiffs,

v.

AVIAGAMES INC.; VICKIE YANJUAN
CHEN; PING WANG; ACME, LLC;
GALAXY DIGITAL CAPITAL
MANAGEMENT, L.P.; and OTHER
UNNAMED CO-CONSPIRATORS,

Defendants.

Case No. 3:23-cv-05971-EMC

**REPLY IN SUPPORT OF DEFENDANT
AVIAGAMES INC. AND INDIVIDUAL
DEFENDANTS VICKIE CHEN AND
PING WANG'S MOTION TO DISMISS**

Date:
Time:
Dept:        Courtroom 5 – 17th Floor
Judge:      Hon. Edward M. Chen

Date Filed: November 17, 2023
Trial Date:  None set

REPLY IN SUPPORT OF DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN
AND PING WANG'S MOTION TO DISMISS
Case No. 3:23-cv-05971-EMC

2698909

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

    A.    Plaintiffs' improper references to the *Skillz* litigation should be disregarded. .............................................................................................................2

    B.    Claims alleging losses related to illegal gambling are barred by California public policy.............................................................................................................3

    C.    Plaintiffs have failed to state a claim under the UCL and CLRA............................5

        1.    Plaintiffs do not allege an inadequate remedy at law. ................................5

        2.    Plaintiffs do not allege reliance.................................................................7

        3.    The CLRA does not apply to transactions involving virtual currencies, software, and gambling. ............................................................9

    D.    The Court should dismiss Plaintiffs' one remaining RICO count. ........................12

CONCLUSION...................................................................................................................15

REPLY IN SUPPORT OF DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG'S MOTION TO DISMISS
Case No. 3:23-cv-05971-EMC

2698909

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Apple Processor Litig.*,
2023 WL 5950622 (9th Cir. Sept. 13, 2023) ...............................................................................6

*Baxter v. Palmigiano*,
425 U.S. 308 (1976)......................................................................................................................2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................................4

*Berke v. Whole Foods Mkt., Inc.*,
2020 WL 5802370 (C.D. Cal. Sept. 18, 2020) .............................................................................8

*Beyer v. Symantec Corp.*,
333 F. Supp. 3d 966 (N.D. Cal. 2018) ..........................................................................................9

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008)....................................................................................................................15

*Brill v. Postle*,
2020 WL 2936688 (E.D. Cal. June 3, 2020) .........................................................................5, 15

*BSA Framing, Inc. v. Applied Underwriters, Inc.*,
2018 WL 11462083 (C.D. Cal. Feb. 27, 2018)...........................................................................13

*Chaset v. Fleer/Skybox Int'l, LP*,
300 F.3d 1083 (9th Cir. 2002) ....................................................................................................15

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) ....................................................................................8, 13

*Coffee v. Google, LLC*,
2022 WL 94986 (N.D. Cal. Jan. 10, 2022)..................................................................................10

*Cruz v. FX DirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013)........................................................................................................13

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) ......................................................................................10

*Doe v. Roblox Corp.*,
602 F. Supp. 3d 1243 (N.D. Cal. 2022) ......................................................................................11

*In re Ethereummax Inv.*,
2022 WL 20804358 (C.D. Cal. Dec. 6, 2022) ............................................................................15

ii

2698909

*Hall v. Sea World Ent., Inc.*,
   2015 WL 9659911 (S.D. Cal. Dec. 23, 2015)................................................................8, 9

*Julian v. TTE Tech., Inc.*,
   2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) ....................................................................6

*Kane v. Chobani, Inc.*,
   2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ...................................................................8

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
   940 F.2d 397 (9th Cir. 1991) ............................................................................................14

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) ............................................................................................14

*In re MacBook Keyboard Litig.*,
   2020 WL 6047253 (N.D. Cal. Oct. 13, 2020).....................................................................6

*Mai v. Supercell Oy*,
   648 F. Supp. 3d 1130 (N.D. Cal. 2023) .......................................................................10, 11

*McCoy v. Nestle USA, Inc*,
   173 F. Supp. 3d 954 (N.D. Cal. 2016) ................................................................................9

*Mostowfi v. i2 Telecom Int'l, Inc.*,
   269 F. App'x 621 (9th Cir. 2008) .....................................................................................14

*Ochoa v. Zeroo Gravity Games LLC*,
   2023 WL 4291650 (C.D. Cal. May 24, 2023) ..........................................................4, 5, 11

*Oestreicher v. Alienware Corp.*,
   322 F. App'x 489 (9th Cir. 2009) .......................................................................................9

*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018 (N.D. Cal. 2014) .............................................................................8, 9

*Prepaid Teleconnect, Inc. v. City of Murrieta*,
   2016 WL 1622609 (C.D. Cal. Apr. 21, 2016) .....................................................................3

*Reeves v. Niantic, Inc.*,
   2022 WL 1769119 (N.D. Cal. May 31, 2022)...............................................................10, 11

*Doe ex rel. Rudy-Glanzer v. Ganzer*,
   232 F.3d 1258 (9th Cir. 2000) ......................................................................................2, 10

*Schmuck v. United States*,
   489 U.S. 705 (1989).........................................................................................................15

*Sharma v. Volkswagen AG*,
   524 F. Supp. 3d 891 (N.D. Cal. 2021) ................................................................................7

iii

2698909

*Sloan v. Gen. Motors LLC*,
    287 F. Supp. 3d 840 (N.D. Cal. 2018) ...................................................................................9

*Sud v. Costco Wholesale Corp.*,
    229 F. Supp. 3d 1075 (N.D. Cal. 2017) ................................................................................9

*Tabler v. Panera LLC*,
    2019 WL 5579529 (N.D. Cal. Oct. 29, 2019) .......................................................................8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod.*
    *Liab. Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011) .........................................................................12, 13

*United States v. Brugnara*,
    856 F.3d 1198 (9th Cir. 2017) .............................................................................................15

*Williams v. Apple, Inc.*,
    449 F. Supp. 3d 892 (N.D. Cal. 2020) ..................................................................................7

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ...............................................................................................9

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113 (N.D. Cal. 2018) ..............................................................................12

**State Cases**

*Engalla v. Permanente Med. Grp., Inc.*,
    15 Cal. 4th 951 (1997) ...........................................................................................................7

*People ex rel. Green v. Grewal*,
    61 Cal. 4th 544 (2015) ...........................................................................................................4

*Kelly v. First Astri Corp.*,
    72 Cal. App. 4th 462 (1999) .......................................................................................... *passim*

*Strickland v. Bicycle Casino, Inc.*,
    2012 WL 3756980 (Cal. Ct. App. Aug. 30, 2012) .............................................................4, 5

*In re Tobacco II*,
    46 Cal. 4th 298 (2009) ...................................................................................................7, 8, 9

**Federal Statutes**

18 U.S.C. § 1961 ................................................................................................................. *passim*

**State Statutes**

Cal. Bus. & Prof. Code § 17539.1 ...........................................................................................3, 4

iv

2698909

Cal. Bus. & Prof. Code § 17539.3 ............................................................................................4

Cal. Civ. Code § 1761 ............................................................................................................10

**Rules**

Fed. R. Civ. P. 9 ....................................................................................................................14

v

2698909

## INTRODUCTION

Plaintiffs' Opposition confirms that this Court can and should dismiss all of Plaintiffs' claims with prejudice. In over 75 pages, the Opposition—like the FAC—apparently seeks to hide its fundamental deficiencies with volume. Indeed, both are replete with improper attorney argument and references to irrelevant material from the unrelated *Skillz* patent ligation—none of which should be considered by the Court in evaluating the sufficiency of Plaintiffs' claims. Stripped of that invective, Plaintiffs' Opposition wholly fails to rebut the deficiencies identified in Defendants' Motion to Dismiss.

***First***, California law is clear that Plaintiffs may not use the courts to recover what they characterize as gambling losses. Despite numerous allegations confirming that their theory depends on their losses having arisen from gambling, *see, e.g.*, FAC ¶ 1, Plaintiffs weakly attempt to recast their claims as alleging something else. That attempt fails. The gravamen of the FAC is that Avia's alleged use of bots transforms its games of skill into games of chance that amount to illegal gambling, and Plaintiffs cannot evade California's longstanding public policy against entangling the courts in such disputes by superficially reframing that fundamental allegation.

***Second***, Plaintiffs' UCL and CLRA claims are defective because they fail to plead an inadequate remedy at law under *Sonner*. Plaintiffs' assertion to the contrary is belied by their failure to cite a single factual allegation in the FAC in support, and Plaintiffs ignore longstanding caselaw in an attempt to minimize *Sonner's* reach. Regardless, Plaintiffs' inability to allege that they ever saw—much less relied on—any alleged misrepresentation is independently fatal to their UCL and CLRA claims. Nor do Plaintiffs succeed in saving their CLRA claim, which is improperly based on software and virtual currencies.

***Finally***, Plaintiffs confirm that their RICO claim as to the Avia Executives and Investors cannot proceed, as Plaintiffs fail to properly allege the existence of a RICO enterprise or a predicate act of racketeering. For all of these reasons and as explained further below, the FAC should be dismissed.

REPLY IN SUPPORT OF DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN
AND PING WANG'S MOTION TO DISMISS
Case No. 3:23-cv-05971-EMC

2698909

## ARGUMENT

**A.      Plaintiffs' improper references to the *Skillz* litigation should be disregarded.**

Perhaps cognizant of the FAC's infirmities, Plaintiffs' Opposition reiterates improper, misleading, and selective references to the unrelated *Skillz* patent litigation, particularly Ms. Chen's temporary invocation of her Fifth Amendment rights. As Plaintiffs are well aware, Ms. Chen's exercise of her Constitutional rights is irrelevant to the Court's determination here and should be disregarded. In any event, Ms. Chen later withdrew the invocation; sat for a second full-length deposition with "no restrictions on the subject matter" during which she answered all questions posed; and the court accordingly ordered that all references to her prior invocation be excluded at the *Skillz* trial. *Skillz* Dkt. 603 at 3.

Ms. Chen's temporary invocation of her Fifth Amendment rights is even less relevant here. No inference may be drawn against Ms. Chen (either here or in *Skillz*). *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *Doe ex rel. Rudy-Glanzer v. Ganzer*, 232 F.3d 1258, 1264–65 (9th Cir. 2000) (a negative inference may be drawn from invocation of the Fifth Amendment right only where the invoking party refuses to testify in response to probative evidence offered against them). Nor does Plaintiffs' excuse that they only had access to one deposition transcript justify the attempted prejudice they seek to inject into this case, as Ms. Chen's revocation of her Fifth Amendment rights is well-documented on the public docket. *Skillz* Dkt. 603 at 2.

Similarly, Plaintiffs' Opposition (like the FAC) misconstrues documents from the *Skillz* litigation in an apparent attempt to create an estoppel issue based on a discovery order regarding attorney-client privilege. *See* Opp. at 18–19. Not only is this argument based on an erroneous reading of the Court's order and the underlying law, but it also exceeds the bounds of judicial notice. As explained further in Avia's opposition to Plaintiffs' request for judicial notice, the Court should disregard these and all other allegations regarding unproved statements and pleadings from the *Skillz* case.

REPLY IN SUPPORT OF DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN
AND PING WANG'S MOTION TO DISMISS
Case No. 3:23-cv-05971-EMC

2698909

**B.    Claims alleging losses related to illegal gambling are barred by California public policy.**

Plaintiffs do not dispute that California has a "strong, long-standing public policy . . . against judicial resolution of civil claims arising out of lawful or unlawful gambling contracts or transactions." *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462, 471 (1999). Nor do they contest that their claims, at least in part, implicate this policy. Instead, Plaintiffs advance four cursory arguments to circumvent that policy. None is persuasive.

*First*, Plaintiffs argue that two categories of representations underlying their fraud claim avoid the prohibition on recovering gambling losses: (1) representations that Avia's games involve "real players in real time," and (2) Avia's statements that it "has no interest" in the outcome of the game. Opp. 19. That argument lacks merit because both categories are part and parcel of Plaintiffs' fundamental theory of the case: that Avia's alleged use of bots transforms its games into illegal gambling. The FAC alleges, for example, that "[w]hen there are not real players" in Avia's games, "Avia has a financial interest in the outcome of game" because Avia is acting as "the 'house'" in the "operator of a gambling scheme." FAC ¶ 71. Thus, the first category of representations (regarding "real players in real time") and the second category of representations (regarding Avia's "interest" in the games) overlap entirely with Plaintiffs' central theory that Avia's games constitute gambling. The FAC repeatedly makes this clear. *See e.g.*, *id.* ¶ 77 ("the deployment of bots makes Avia's games chance-based rather than skill-based" thus constituting an "illegal gambling scheme"). Plaintiffs' attempt to evade California's bar on using the courts to resolve gambling disputes fails; Plaintiffs cannot avoid dismissal by belatedly recasting their gambling allegations as independent theories of fraud.

*Second*, Plaintiffs contend that, separate from claims attacking (incorrectly) Avia's games as illegal gambling, they also bring claims for "unfair competition" based on California's regulations of sweepstakes and contests under Business & Professions Code § 17539.1. Opp. at 27. But California's public policy likewise bars recovery premised on violation of that statute, because courts treat such claims as alleging illegal gambling. *See, e.g.*, *Prepaid Teleconnect, Inc. v. City of Murrieta*, 2016 WL 1622609, at *4 (C.D. Cal. Apr. 21, 2016) (explaining that, among

3

2698909

other things, Section 17439.1 "makes it illegal for a business to offer any games that simulate gambling"); *People ex rel. Green v. Grewal*, 61 Cal. 4th 544, 567 n.4 (2015). Nor can Plaintiffs evade California's bar on actions to recover gambling losses merely by pointing to allegations that do not include the term "gambling." On this point, *Strickland v. Bicycle Casino, Inc.*, is instructive. 2012 WL 3756980, at *3 (Cal. Ct. App. Aug. 30, 2012). There, the plaintiff argued that his claims regarding a poker tournament were not barred by public policy because they were independent of the alleged gambling, instead arising from the defendant's breach of contract and advertising fraud. *Id.* The court rejected that argument, explaining that, at bottom, "the complaint seeks damages based on the theory that plaintiffs would have won more money" had the defendant operated the game fairly, thus amounting to "an action for gambling losses." *Id.* The same logic applies here.

Moreover, Plaintiffs' argument fails for the additional reason that Plaintiffs have not pleaded sufficient *facts* to state a claim under Section 17539.1. The FAC merely recites the statutory language, FAC ¶¶ 145–46, and it is well-settled that Plaintiffs must do more than cut and paste the statutory language to state a claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). And as Plaintiffs themselves recognize, to be attacked as an unfair "contest," Avia's games must be "determined by skill or any combination of chance and skill[.]" Cal. Bus. & Prof. Code § 17539.3(e). But Plaintiffs do not make this allegation, instead alleging that Avia's purported use of bots removes any element of skill from its games. *See, e.g.*, FAC ¶ 1.

***Third***, Plaintiffs complain that they should be exempt from California's public policy because they were "unwitting victims" of the alleged gambling. Opp. at 2, 19–20. The only authority on point holds otherwise. As explained in Defendants' Motion, public policy bars recovery of gambling losses *regardless* of whether plaintiffs were "unwitting" gamblers. *See* Mot. at 9 (citing *Ochoa v. Zeroo Gravity Games LLC*, 2023 WL 4291650, at *4 (C.D. Cal. May 24, 2023) and *Kelly*, 72 Cal. App. 4th at 490). Plaintiffs attempt to muddy the waters by arguing that, in *Ochoa*, the Court barred "only" those claims based on violations of California's gambling laws. Opp. at 22. That misses the point. The Court in *Ochoa* held that claims based on gambling losses—even when such losses were incurred by "***unknowing participants*** in illegal gambling"—

4

2698909

are barred by public policy. 2023 WL 4291650, at *4 (emphasis added); *see also id.* (rejecting plaintiffs' argument that California's public policy "does not prohibit a party that has ***unwittingly fallen victim to an illegal gambling enterprise*** masquerading as an innocent and legal game") (internal quotation omitted) (emphasis added). Contrary to Plaintiffs' representations, Opp. at 22, *Ochoa* does not limit the public policy to claims expressly premised on gambling. That issue was not before the court: the plaintiffs in *Ochoa* moved to dismiss only those claims premised on gambling, and the court granted plaintiffs' motion as to each of those claims. 2023 WL 4291650, at *4. In sum, there is no exception in California's public policy for unwitting gamblers.

***Finally***, Plaintiffs argue that the UCL and RICO statutes permit their claims, notwithstanding California's public policy. *See* Opp. at 22–23. This argument too lacks merit. *Kelly* bars Plaintiffs from recovering gambling losses absent "a statute permitting the use of the process of the courts in California to resolve [Plaintiffs'] gambling loss claims." 72 Cal. App. 4th at 489. Thus, to be exempt from California's policy, the statute must expressly authorize the recovery of gambling losses. No such statutory authority exists in the UCL or RICO. *Brill v. Postle,* 2020 WL 2936688, at *3 (E.D. Cal. June 3, 2020) ("the California state legislature still has not created a statutory right to permit individuals to recover their gambling losses"). Plaintiffs point to no authority to the contrary, nor are Defendants aware of any such authority. And courts consistently bar claims attempting to recover gambling losses under the UCL and RICO. *See, e.g.*, *Ochoa v*, 2023 WL 4291650, at *4 (UCL claim); *Strickland*, 2012 WL 3756980, at *3 (same); *Brill*, 2020 WL 2936688, at *9 (RICO claim); *see also id.* (collecting cases); Mot. at 21 n.14.

**C.      Plaintiffs have failed to state a claim under the UCL and CLRA.**

Plaintiffs' UCL and CLRA claims should be dismissed in their entirety because Plaintiffs have not pled an inadequate remedy at law as required by *Sonner* and have not pled reliance. Each deficiency is independently fatal to all three prongs of Plaintiffs' UCL claim and the entirety of Plaintiffs' CLRA claim. Finally, Plaintiffs' CLRA claim fails because the purchase of in-game cash is not cognizable under the CLRA.

**1.      Plaintiffs do not allege an inadequate remedy at law.**

Plaintiffs do not address—and thus effectively concede—that the FAC fails to plead an

5

2698909

inadequate remedy at law as to their claim for restitution. Plaintiffs instead assert two cursory arguments, neither of which is persuasive.

*First*, Plaintiffs assert that Defendants "ignore" their request for injunctive relief. Opp. at 33. Not only does this assertion lack further explanation or argument, it is incorrect. Defendants' Motion seeks dismissal of Plaintiffs' requests for equitable relief, *see* Mot. at 11–12, which includes Plaintiffs' request for an injunction. Regardless, Plaintiffs' attempt to recast their UCL and CLRA claims as focused on injunctive relief should be rejected. The FAC includes only ***one*** sentence mentioning Plaintiffs' request for an injunction. FAC ¶ 156. This bare allegation— which again merely recites the legal standard—falls far short of pleading the facts necessary to establish an inadequate remedy at law under *Sonner. See* Mot. at 12; *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) ("Plaintiffs are required to allege that they lack an adequate remedy at law in order to seek injunctive relief."). Plaintiffs also fail to plausibly allege that they "would like to purchase [Avia's] product in the future," as required to seek an injunction based on false advertising. *Julian v. TTE Tech., Inc.*, 2020 WL 6743912, at *8 (N.D. Cal. Nov. 17, 2020) (Chen, J.) ("Plaintiffs have failed to allege a claim for injunctive relief because they have not expressed an intent to purchase [d]efendant's [product] again in the future.").

*Second*, Plaintiffs contend that there is "uncertainty" about whether *Sonner* applies at the pleading stage, and that Plaintiffs should be entitled to "plead and argue" in the "alternative." Opp. at 33–34. This Court expressly rejected these arguments in *Julian*, 2020 WL 6743912, at *4. There, the Court held that *Sonner* applies "even at the 12(b)(6) phase," and that "it is not an unfair burden to require [p]laintiffs to explain why legal remedies are inadequate in their pleading," particularly where, as here, Plaintiffs' theories as to monetary damages and restitution "are not really different." *Id.* Courts throughout this District and the Ninth Circuit agree. *See id.* (collecting cases); *In re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) (affirming dismissal of claims under *Sonner*). Moreover, Plaintiffs' contention that they should be allowed to plead in the alternative misses the point. "The issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief

6

2698909

states a claim if the pleading does not demonstrate the inadequacy of a legal remedy. On that point, *Sonner* holds that it does not." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021).

### 2. Plaintiffs do not allege reliance.

Similarly, the Opposition confirms that Plaintiffs cannot satisfy the reliance and causation elements of their UCL and CLRA claims. As explained in Defendants' Motion, the FAC is devoid of any allegation that Plaintiffs saw even a single alleged misrepresentation. *See* Mot. at 12–14. Plaintiffs' Opposition fails to refute this fundamental fact.

***First***, Plaintiffs' baldly assert—without any citation to the FAC—that they have pleaded "detailed allegations" regarding "the misrepresentations that Mr. Pandolfi and Ms. Shawcroft— like all Avia users—saw." Opp. at 28. That is simply not correct. The FAC contains no allegation that either named plaintiff saw or relied on a misrepresentation. This deficiency dooms Plaintiffs' UCL and CLRA claims. *See* Mot. at 12–14.

***Second***, Plaintiffs contend that reliance is "infer[red]" whenever a misrepresentation is "material." Opp. at 30. Not so. The threshold issue is Plaintiffs' failure to plead that they saw *any* alleged misrepresentation, regardless of its materiality.[1] As explained in Defendants' Motion, "this Court has consistently held that plaintiffs in misrepresentation cases **must allege that they actually read the challenged representations**." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 913 (N.D. Cal. 2020) (emphasis added) (quotation omitted). On this, Plaintiffs cannot point to a single allegation.

***Third***, Plaintiffs assert that allegations of reliance are not necessary here under *In re Tobacco II*, because the alleged misrepresentations appeared in a long-standing advertising campaign. Opp. at 28, 31 (citing *In re Tobacco II*, 46 Cal. 4th 298 (2009)). This argument also fails. To begin, Plaintiffs have not alleged any facts establishing the type of widespread, decades-

---

[1] Plaintiffs' authority on this point is inapposite. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 978 (1997)) is a medical malpractice case in which the Court analyzes the materiality of a contractual provision; it says nothing about whether plaintiffs can proceed under the UCL or CLRA without alleging that they ever saw an alleged misrepresentation.

REPLY IN SUPPORT OF DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN
AND PING WANG'S MOTION TO DISMISS
Case No. 3:23-cv-05971-EMC

2698909

long advertising campaign at issue in *In re Tobacco II*. Instead, Plaintiffs cite a grab-bag of representations purportedly made in FAQ pages, FAC ¶¶ 38, 157, in response to user reviews, *id.* ¶ 47, and on an "About Us" webpage, *id.* ¶¶ 61–67. Courts consistently reject attempts to rely on *In re Tobacco II* based on analogous allegations. *See, e.g.*, *Tabler v. Panera LLC*, 2019 WL 5579529, at *13 (N.D. Cal. Oct. 29, 2019) (plaintiff cannot rely on *In re Tobaccoo II* where "[p]laintiff makes no assertion that [d]efendant's alleged misrepresentations were made pursuant to a long-term advertising campaign, much less that [p]laintiff has been exposed to numerous advertisements over a period of decades") (internal citation and quotation omitted); *Hall v. Sea World Ent., Inc.*, 2015 WL 9659911, at *4 (S.D. Cal. Dec. 23, 2015) (similar).

Moreover, even if Plaintiffs had pleaded a decades-long pervasive advertising campaign (they did not), the law is clear that "*In re Tobacco II* does not stand for the proposition that a consumer ***who was never exposed*** to an alleged false or misleading advertising or promotional campaign may bring a claim for relief." *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *9 (N.D. Cal. Sept. 19, 2013) (emphasis added). Instead, "*In re Tobacco II* stands for the narrower, and more straightforward proposition that, ***where a plaintiff has been exposed to numerous advertisements over a period of decades***, the plaintiff is not required to plead with an unrealistic degree of specificity the particular advertisements and statements that she relied upon." *Id.* (emphasis added). Thus, *In re Tobacco II* concerns plaintiffs who allegedly saw numerous advertisements; it does not create a loophole for plaintiffs that never saw even one representation. *See, e.g.*, *id.*; *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1050 (N.D. Cal. 2014) ("to state the obvious, a plaintiff must allege that she actually saw or heard the defendant's advertising campaign" in order to rely on *In re Tobacco II*); *Berke v. Whole Foods Mkt., Inc.*, 2020 WL 5802370, at *11–12 (C.D. Cal. Sept. 18, 2020) ("*Tobacco II* does not stand for the proposition that a consumer who was never exposed to an alleged false or misleading advertising or promotional campaign is entitled to restitution") (quoting *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 632 (2010)).

Plaintiffs' citation to a footnote from *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 946 (N.D. Cal. 2018) (Chen, J.) cannot save

8

2698909

them. That footnote merely reaffirms that, under *In re Tobacco II*, in a case where "***a plaintiff alleges exposure*** to a long-term advertising campaign," the plaintiff "is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." *Id.* (emphasis added). That is not this case.

***Finally***, Plaintiffs attempt to circumvent the reliance requirement by recasting their allegations as "fraudulent omissions." This argument also fails. "California courts have generally rejected a broad obligation to disclose[.]" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). In *Wilson*, the Ninth Circuit held that, for an omission to be actionable under California consumer law, the omission must concern consumer safety. *See id.* at 1143. The Ninth Circuit has since reaffirmed this limitation. *See, e.g.*, *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009). And courts have frequently extended *Wilson* beyond the realm of product manufacturers.[2] Here, the FAC contains no allegation that Avia's alleged omissions concerned consumer safety. Nor have Plaintiffs plausibly alleged a duty to disclose based on Avia's affirmative representations, which Plaintiffs do not allege to have seen.[3] *See, e.g.*, *Opperman*, 84 F. Supp. 3d at 984–85 (defendants had no duty to disclose based on affirmative misrepresentations "[b]ecause [p]laintiffs failed to plead that they saw, heard, or relied on such misrepresentations"). Plaintiffs' fraudulent omission theory thus fails.[4]

### 3. The CLRA does not apply to transactions involving virtual currencies, software, and gambling.

In the FAC, Plaintiffs allege that they "engaged in transactions with Avia within the

---

[2] *See, e.g.*, *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1087 (N.D. Cal. 2017), *aff'd*, 731 F. App'x 719 (9th Cir. 2018) (chocolate distributor did not have duty to disclose because alleged omissions did not concern consumer safety); *Hall*, 2015 WL 9659911, at *7 (same for theme-park operator); *McCoy v. Nestle USA, Inc*, 173 F. Supp. 3d 954, 967 (N.D. Cal. 2016), *aff'd sub nom*. *McCoy v. Nestle USA, Inc.*, 730 F. App'x 462 (9th Cir. 2018) (same for chocolate producer).

[3] Additionally, the FAC contains no allegation that the omissions concern "physical defects" that are "central" to the games' function. *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 979 (N.D. Cal. 2018) (Chen, J.).

[4] *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 864–65 (N.D. Cal. 2018) (Chen, J.), which Plaintiffs rely on, Opp. at 26–27, involved vehicle defects that caused sudden shutdowns and engine fires. Thus, the alleged misrepresentations concerned safety, rendering *Sloan* inapposite here.

REPLY IN SUPPORT OF DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG'S MOTION TO DISMISS
Case No. 3:23-cv-05971-EMC

2698909

meaning of Cal. Civ. Code § 1761(e) when they paid money for **in-game cash to enter games**." FAC ¶ 153 (emphasis added). As numerous courts have held, this virtual currency falls outside the scope of the CLRA. *See* Mot. at 14–16 (citing *Mai v. Supercell Oy,* 648 F. Supp. 3d 1130 (N.D. Cal. 2023); *Coffee v. Google, LLC*, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022); *Reeves v. Niantic, Inc.*, 2022 WL 1769119, at *2 (N.D. Cal. May 31, 2022); *Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *18–19 (N.D. Cal. Oct. 5, 2010); and *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1070 (N.D. Cal. 2012)). Plaintiffs ignore much of this clear caselaw, instead arguing in a haphazard fashion that their claim is "distinguishable" because, in Avia's games, "someone is supposed to win real money deposited into their real-world account." Opp. at 38–39. This argument misses the point. The relevant "transaction" here for purposes of the CLRA is not the "money" that Plaintiffs were "supposed to win" playing Avia's games. Instead, according to Plaintiffs' own allegations, the relevant transaction is the money spent purchasing Avia's in-game cash. FAC ¶ 153.That in-game cash is not a "good" or "service" under the CLRA.[5]

In *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020), the court rejected a similar attempt to evade the CLRA's bar on virtual currencies by reframing the underlying "transaction." In *Doe*, the plaintiff brought a CLRA claim based on purchases of a virtual currency in a video game. *See id.* The plaintiff argued that the virtual currency was cognizable under the CLRA because it could be used to purchase in-game content such as supplies for the game participants. *See id.* The court rejected that argument, explaining, "the transactions at issue in this case involve purchases of virtual currency," not the purchase of "virtual supplies" and other "digital content" available within the game. *Id.* And virtual currency is not a "good" under the CLRA, the court explained, because it exists "digital[ly]" and "as indicia of credit extended" to the players in the virtual games. *Id.* The same logic applies here. Plaintiffs purchase in-game cash as credits or tickets that can be used to play Avia's games. Plaintiffs cannot shoehorn that transaction into a CLRA claim by recasting their allegations as

---

[5] Plaintiffs attempt to distinguish these cases based on the "benefit" plaintiffs received for their bargain. *See* Opp. at 3, 37–38. This attempt fails. Like the plaintiffs in *Mai*, *Coffee*, and *Reeves*, Plaintiffs received the benefit (the in-game cash) of their bargain.

REPLY IN SUPPORT OF DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG'S MOTION TO DISMISS
Case No. 3:23-cv-05971-EMC

2698909

concerning the "real money" that Plaintiffs were "supposed to win." Opp. at 38.

Furthermore, even if Plaintiffs *did* base their CLRA claim on the game itself—rather than the purchase of the in-game cash—Plaintiffs' CLRA claim would still fail. As explained in Plaintiffs' Motion, the provision of games and gambling fall outside the scope of the CLRA. *See* Mot. at 15–16 (citing *Brill*, 2020 WL 2936688, at *5 and *Mai*, 648 F. Supp. 3d at 1136). Plaintiffs do not even attempt to address this caselaw on this issue.

Plaintiffs next argue that this Court should follow the court's decision in *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1260 (N.D. Cal. 2022). *Roblox*—which was decided prior to the courts' decisions in *Reeves* and *Mai*—does not compel a different result. In *Roblox*, the defendant operated a "metaverse, in which users generate a three-dimensional virtual world," which the court found to be "an online entertainment service" within the meaning of the CLRA. *See id.*[6] Here, by contrast, Plaintiffs allege that Defendants provide virtual games that amount to gambling, which is squarely precluded from the CLRA.

Finally, Plaintiffs' CLRA claim is barred for still another reason: the CLRA does not cover the provision of software. *See* Mot. at 15–16. Plaintiffs contest that software can constitute a "service" under the CLRA when there is "a lengthy, ongoing relationship between the plaintiffs and the software provider." Opp. at 39 (citing *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018)). But the FAC is completely devoid of any allegations indicating that there was such a relationship between Plaintiffs and Avia. The FAC contains no allegations, for example, about how long Plaintiffs played Avia's games or the extent of their purported "relationship" with Avia as a "software provider." At best, the FAC indicates that **one** Plaintiff (Mr. Pandolfi) had **one** interaction with Avia when, on a single occasion, Mr. Pandolfi "reached out to customer support." FAC ¶ 10.

*In re Yahoo!*, which Plaintiffs rely on, provides a helpful point of contrast. In that case, the court acknowledged that "software generally is not a service for purposes of the CLRA." 313 F.

---

[6] Plaintiffs also urge the Court to follow *Ochoa*. But that case relied exclusively on *Roblox* on this point, and expressly acknowledged that *Roblox* is against the weight of the authority in this Circuit. *See Ochoa*, 2023 WL 4291650, at *13.

REPLY IN SUPPORT OF DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG'S MOTION TO DISMISS
Case No. 3:23-cv-05971-EMC

2698909

Supp. 3d at 1141. The court concluded, however, that Yahoo's email service fell within the scope of the CLRA because it was "continually . . . update[d]" by the defendant and was used by consumers for numerous daily activities—ranging from "private email communication to bank and stock trading to photo storage." *Id.* at 1142. Furthermore, the court explained, Yahoo "continually upkeeps and updates the system," and refers to itself as a "shopping service[]" and "search service[]" throughout its Terms of Service. *Id.* None of the allegations before the court in *In re Yahoo!* are present in this case. To the contrary, Plaintiffs allege that Avia offers one thing: virtual games that the Plaintiffs used for an unknown period of time. Indeed, Plaintiffs cite to only one paragraph from the FAC on this issue, which merely lists Avia's games. Opp. at 40 (citing FAC ¶ 31). That allegation falls far short of pleading the long-standing service relationship that was before the court in *In re Yahoo!*. Thus, *In re Yahoo!* does not disturb the well-settled precedent holding that Avia's games do not qualify as a "good" or "service" under the CLRA.

### D.    The Court should dismiss Plaintiffs' one remaining RICO count.

As with the UCL and CLRA claims, Plaintiffs' Opposition confirms that the FAC fails to meet the requirements for pleading a RICO claim. Indeed, the Opposition makes plain Plaintiffs' effort to leverage the single allegation that Ms. Chen and Ms. Wang "shar[ed] an online article" into a RICO conspiracy claim. This effort fails for the three independent reasons.

***First***, the FAC's alleged associated-in-fact "enterprise" is not sufficiently distinct from Avia's primary purpose of providing online games, dooming Plaintiffs' RICO claim. An associated-in-fact enterprise cannot turn on an allegation that "the Defendants are associated in a manner directly related to their own primary business activities," which is exactly what Plaintiffs allege here. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202 (C.D. Cal. 2011).

The Opposition does not distinguish the cases cited by Avia or point to any other purpose for the alleged enterprise beyond growing Avia's customer base and profits from their games, which is generally the purpose of any for-profit business. *See* Opp. at 45–46 ("the motivation behind that scheme was simple—to increase the attractiveness of Avia's games to users, and thus Defendants' ultimate profits"). Indeed, Plaintiffs style Ms. Chen's and Ms. Wang's role in the

12

2698909

enterprise as "providing executive and management skills," Opp. at 48, which is in no way separate from carrying out Avia's business. And even allegations that Defendants attempted to effectuate the business's purpose through fraudulent means do not convert their activity into a RICO enterprise. *See Toyota*, 826 F. Supp. 2d at 1202–03 (enterprise was not sufficiently distinct where the complaint alleged "no more than that Defendants' primary business activity—the design, manufacture, and sale or lease of Toyota vehicles—was conducted fraudulently").

Plaintiffs next rely heavily on *In re Chrysler*, 295 F. Supp. 3d at 980. But that case differed from this one in two important ways. The alleged enterprise in *Chrysler* comprised at least six **separate** companies, each of which allegedly conspired to evade certain car emissions standards. *Id.* at 941-43. As such, the only purpose of the associated-in-fact enterprise in *Chrysler* was the fraudulent scheme itself. Here, the alleged enterprise comprises only two executives and two investors in a single company, whose purpose is either to manage or invest in the company.[7] Thus, Plaintiffs have not pled an associated-in-fact enterprise separate from Avia, as they must. Moreover, in *Chrysler*, the Court found the associated-in-fact enterprise allegations sufficient, in part because "Plaintiffs' allegations plausibly support that **each Defendant** participated in developing or implementing" the emission control devices at issue in the case. *Id.* at 981 (emphasis added). By contrast, Plaintiffs make no such specific allegation against *any* of the RICO Defendants here. Rather, Plaintiffs seek to conflate allegations regarding Avia—which is not a RICO defendant—with allegations against the RICO Defendants and argue that these allegations show that the enterprise "engaged in a collaborative scheme to defraud." Opp. at 46. But none of those allegations (even if accepted as true) describe conduct of any RICO Defendant. *See*, *e.g.*, *id.* (citing FAC ¶¶ 49, 54, 56, 58). Indeed, the Opposition's paragraphs detailing the supposed wrongdoing by the "enterprise" cite only to allegations that unnamed persons at Avia

---

[7] While Plaintiffs allege that "Avia and the RICO Defendants operated as an association-in-fact enterprise," FAC ¶ 101, Plaintiffs do not name Avia itself as a RICO Defendant. Presumably Plaintiffs seek to avoid the cases holding that a company and its employees cannot form a RICO enterprise. *See*, *e.g.*, *BSA Framing, Inc. v. Applied Underwriters, Inc.*, 2018 WL 11462083, at *8 (C.D. Cal. Feb. 27, 2018); *Cruz v. FX DirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013). However, naming Avia's management and shareholders as the sole RICO Defendants does not substantively distinguish these cases given the purpose of the "enterprise" is the business of the company.

REPLY IN SUPPORT OF DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG'S MOTION TO DISMISS
Case No. 3:23-cv-05971-EMC

2698909

engaged in wrongdoing—and Avia is not a RICO Defendant. *See* Opp. at 46–47. Thus, unlike in *Chrysler*, there are no specific allegations regarding the participation of the RICO Defendants in the alleged enterprise.

Plaintiffs also rely on *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005), but that case involved an alleged enterprise of more than just a company's employees and investors. There, the RICO enterprise comprised DuPont, the law firms employed by DuPont, and expert witnesses retained by the law firms. *Id.* Indeed, the Ninth Circuit held that "[t]o be sure, if the 'enterprise' consisted only of DuPont and its employees, the pleading would fail for lack of distinctiveness." *Id.* Here, the allegation is that the enterprise consists only of Avia's managers and certain investors—a pleading that is not sufficient under the standard described in the very case Plaintiffs cite.

***Second***, Plaintiffs do not meet Rule 9's heightened pleading standard which prohibits claims based on "general statements about actions committed by the defendants" that fail to "specify *who* committed the violation, and *when* and *where* it occurred." *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008); *see also Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) ("The Ninth Circuit has repeatedly insisted that [Rule 9] be followed in RICO actions alleging the predicate act of mail fraud."). Yet general statements are all that Plaintiffs identify. As Plaintiffs' own chart attached to their Opposition shows, there are ***no*** specific allegations of predicate acts alleged against ***any*** of the RICO defendants. Almost all of the allegations are directed to (1) Avia itself, which is not a RICO Defendant; (2) unnamed "Avia employees"; or (3) "[u]nnamed co-conspirators inside Avia." Allegations regarding unidentified persons who are not alleged to be part of the enterprise are of no help to Plaintiffs in meeting the Rule 9 pleading standard.

In fact, the only allegations specific to any identified person concern: (1) sharing or commenting on an article on the Internet; (2) "[t]outing" or "[d]escribing" Avia on a website; or (3) investing in Avia. Opp. at Attachment A. This is not wire fraud. "The gravamen" of wire or mail fraud "is the scheme to defraud, and any 'mailing that is incident ***to an essential part of the scheme*** satisfies the mailing element.'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647

14

2698909

(2008) (emphasis added). The Supreme Court in *Schmuck v. United States* held that the mailing has to be "a step in [the] plot" and that mail fraud only applies to "those *limited instances* in which the use of the mails *is a part of the execution of the fraud*, leaving all other cases to be dealt with by appropriate state law." 489 U.S. 705, 710–711 (1989) (emphasis added).[8] Plaintiffs do not explain how posting an article on LinkedIn or describing Avia online could possibly constitute an "essential part of the scheme." If promoting a company on LinkedIn that is later accused of wrongdoing can constitute violation of the RICO statute, there is a very slippery slope ahead indeed. Plaintiffs' attempt to lump together generalized allegations against unnamed individuals with generic messaging by the RICO Defendants cannot support a RICO claim.

*Third*, Plaintiffs have not alleged a cognizable RICO injury because Plaintiffs received exactly what they paid for: a chance to play games on the Avia platform. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002); *see also In re Ethereummax Inv.*, 2022 WL 20804358, at *12 (C.D. Cal. Dec. 6, 2022) ("a 'mere expectancy interest' is insufficient to confer RICO standing"). Plaintiffs argue that they did not get what they paid for because there were "bots" playing the games rather than other players, which Plaintiffs claim amount to gambling. But this is no different than the allegations in *Brill*, 2020 WL 2936688, at *9, where the plaintiffs alleged that a poker player was cheating and that this caused them harm. The court there held that there was no cognizable RICO injury because gambling losses do not constitute "concrete financial loss" under RICO. *Id.* That holding fully applies to Plaintiffs' allegation that they were cheated by bots in a game they believed did not contain bots.

**CONCLUSION**

For the reasons described above, the Court should dismiss Counts 1, 2, and 3 with prejudice.

---

[8] *Bridge* and *Schmuck* both address mail fraud, but "mail fraud and wire fraud are essentially identical." *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir. 2017). Plaintiffs appear to agree. *See* Opp. at 52 (citing *Bridge* and *Schmuck* in wire fraud argument).

15

REPLY IN SUPPORT OF DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN AND PING WANG'S MOTION TO DISMISS
Case No. 3:23-cv-05971-EMC

2698909

Dated:  May 23, 2024                              KEKER, VAN NEST & PETERS LLP


                                         By:    /s/ Steven K. Taylor
                                                STEVEN K. TAYLOR
                                                MICHELLE YBARRA
                                                W. HAMILTON JORDAN
                                                MAILE YEATS-ROWE
                                                JACQUELINE CONCILLA


                                                Attorneys for Defendant
                                                AVIAGAMES INC.

Dated:  May 23, 2024                              KWUN BHANSALI LAZARUS LLP


                                         By:    /s/ Kate E. Lazarus
                                                ASIM M. BHANSALI
                                                KATE E. LAZARUS


                                                Attorneys for Defendants
                                                VICKIE YANJUAN CHEN and PING
                                                WANG

16

REPLY IN SUPPORT OF DEFENDANT AVIAGAMES INC. AND INDIVIDUAL DEFENDANTS VICKIE CHEN
AND PING WANG'S MOTION TO DISMISS
Case No. 3:23-cv-05971-EMC

2698909