Todd Logan (SBN 305912)
EDELSON PC
150 California St, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300
Fax: 415.373.9435
tlogan@edelson.com

Matthew S. Tripolitsiotis (*pro hac vice*)
BURNS CHAREST LLP
757 Third Ave, 20th Floor
New York, NY 10017
Tel: 469.895.5269
mtripolitsiotis@burnscharest.com

Spencer Cox (*pro hac vice*)
BURNS CHAREST LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, D.C. 20016
Tel.: 202.577.3977
Fax: 469.444.5002
scox@burnscharest.com

*(Additional counsel on signature page.)*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW PANDOLFI and MANDI SHAWCROFT, individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>AVIAGAMES, INC.; VICKIE YANJUAN CHEN; PING WANG; ACME, LLC; GALAXY DIGITAL CAPITAL MANAGEMENT, L.P.; and OTHER UNNAMED CO-CONSPIRATORS;<br><br>Defendants. | Case No. 3:23-cv-05971-EMC<br><br>CLASS ACTION<br><br>**PLAINTIFFS' SECOND SUPPLEMENTAL OPPOSITION TO AVIA'S MOTION TO COMPEL ARBITRATION**<br><br>Date: March 28, 2024<br>Time: 1:30 p.m.<br>Dept: Courtroom 5 – 17th Floor<br>Judge: Honorable Edward M. Chen<br><br>Date filed: November 17, 2023<br>Trial Date: None Set |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

STATEMENT OF ISSUES TO BE DECIDED ........ v

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Unconscionability is assessed at the time of contract and on the face of the agreement. ........ 2

A. The California Civil Code requires, and the great weight of case law supports, assessing unconscionability at the time of agreement. ........ 2

B. The only potential exceptions to the "at the time" of contract rule are inapplicable here. ........ 5

II. The Court should assess unconscionability from the perspective of similarly situated players. ........ 8

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal. 4th 83 (2000) .................................................................................................................. 3

*Beynon v. Garden Grove Med. Grp.*,
   161 Cal. Rptr. 146 (Ct. App. 1980) ............................................................................................ 8

*Chavarria v. Ralphs Grocery Co.*,
   733 F.3d 916 (9th Cir. 2013) ...................................................................................................... 7

*Chow v. Levi Strauss & Co.*,
   49 Cal. App. 3d 315 (1975) ........................................................................................................ 2

*Comb v. PayPal, Inc.*,
   218 F. Supp. 2d 1165 (N.D. Cal. 2002) ...................................................................................... 8

*Dietrich v. Boeing Co.*,
   14 F.4th 1089 (9th Cir. 2021) ..................................................................................................... 3

*Elite Logistics Corp. v. Hanjin Shipping Co.*,
   589 F. App'x 817 (9th Cir. 2014) ............................................................................................... 9

*Heckman v. Live Nation Ent., Inc.*,
   686 F. Supp. 3d 939 (C.D. Cal. 2023) ........................................................................................ 8

*In re Marriage of Zucker*, 75 Cal. App. 5th 1025 (2022) ................................................................. 6

*Jackson v. S.A.W. Ent. Ltd.*,
   629 F. Supp. 2d 1018 (N.D. Cal. 2009) ...................................................................................... 3

*Lyle v. Superior Ct.*,
   175 Cal. Rptr. 918 (Ct. App. 1981) .......................................................................................... 10

*MacClelland v. Cellco P'ship*,
   609 F. Supp. 3d 1024 (N.D. Cal. 2022) .............................................................................. 1, 2, 3

*Mass Arbitration*,
   74 Stan. L. Rev. 1283 (2022) ...................................................................................................... 9

*Nagrampa v. MailCoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006) .................................................................................................... 8

*Najarro v. Superior Ct.*,
   70 Cal. App. 5th 871 (2021) ....................................................................................................... 4

*Online, Inc. v. Superior Ct.*,
   108 Cal. Rptr. 2d 699 (Ct. App. 2001) ....................................................................................... 8

*OTO, L.L.C. v. Kho*,
   8 Cal. 5th 111 (2019) ................................................................................................................ 10

*Penilla v. Westmont Corp.*,
  3 Cal. App. 5th 205 (2016) .................................................................................................. 10

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
  20 Cal. 4th 1135 (1999) ....................................................................................................... 10

*Phillips Petrol. Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................................................... 9

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) ............................................................................................... 3

*Ramirez v. Charter Commc'ns*,
  510 P.3d 404 (Cal. 2022) ....................................................................................................... 5

*Ramirez v. Charter Commc'ns, Inc.*,
  75 Cal. App. 5th 365 (2022) .................................................................................................. 5

*Sanchez v. Valencia Holding Co.*, LLC,
  61 Cal. 4th 899 (2015) ........................................................................................................... 4

*Sonic-Calabasas A, Inc. v. Moreno*,
  57 Cal. 4th 1109 (2013) ......................................................................................................... 3

*Subcontracting Concepts (CT), LLC v. De Melo*,
  34 Cal. App. 5th 201 (2019) .................................................................................................. 4

*Wherry v. Award*, *Inc.*,
  192 Cal. App. 4th 1242 (2011) .............................................................................................. 3

**Statutes**

Cal. Civ. Code § 1670.5 ............................................................................................................... 4

Cal. Civ. Code § 1670.5(a) ............................................................................................... 1, 2, 5, 6

Cal. Civ. Code § 1670.5(b) .......................................................................................................... 4

Cal. Fam. Code § 1612(a)(7) ....................................................................................................... 6

Cal. Fam. Code § 1615(a)(2) ....................................................................................................... 6

**STATEMENT OF ISSUES TO BE DECIDED**

Pursuant to Local Rule 7-4(a)(3), this supplemental opposition addresses the following issues raised in the Court's May 21, 2024 Order Deferring Ruling on Avia Defendants' Motion to Compel Arbitration (Dkt. 113) at 16:

1. "Is unconscionability assessed at the time the agreement containing the delegation clause/bellwether provision was made or, instead, at the time the agreement containing the delegation clause/bellwether provision is sought to be enforced? In other words, should the provision be assessed only as applied to the plaintiffs before the court or should it be assessed on its face."

2. "Relatedly, is unconscionability of the delegation clause/bellwether provision assessed from the perspective of Plaintiffs specifically or that of a reasonable player (*i.e.*, not just Plaintiffs but also those similarly situated)?"

**INTRODUCTION**

In its May 21, 2024 Order (Dkt. 113), the Court posed two questions regarding the arbitration provision's unconscionability: (1) whether such determination is made at the time of contract formation or at the time of enforcement; and (2) whether such determination is made with reference to players generally or solely with reference to the Plaintiffs. As detailed below, both prior authority and practicality require assessing the contract's unconscionability as of the time of formation and with reference to similarly situated users. But either way—at the time of execution or the time of enforcement—Avia's arbitration provision is unconscionable.

*First*, California's Civil Code requires that courts assess unconscionability by determining whether the contract was "unconscionable at the time it was made." Cal. Civ. Code § 1670.5(a). This Court applied that statutory command correctly in *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1041–42 (N.D. Cal. 2022) (Chen, J.), when it held that Courts should look beyond the parties to decide unconscionability.

*Second*, the Court should assess whether the arbitration provision is unconscionable from the perspective of similarly situated players. The widespread harm caused by Avia's arbitration provision is hardly speculative: As of the date of filing, more than 4,200 of Avia's users have retained counsel for claims like the ones here. It is possible that applying the provision at issue would result in all of their claims being batched together and determined in small tranches. Moreover, it is simply not possible to know how many more potential claimants have been dissuaded from contacting counsel at all on the expectation that they would be joining at the back of an already long line or that their interests were protected by the putative class. The chilling effect that delay causes is well-recognized, *MacClelland*, 609 F. Supp. 3d at 1041–42, and, by definition, includes all similarly situated in the evaluation.

For these reasons, as further detailed below, and those in Plaintiffs' Opposition to Avia's Motion to Compel (Dkt. 74) and Plaintiffs' Supplemental Opposition to Avia's Motion to Compel (Dkt. 99), Plaintiffs respectfully request that the Court deny Avia's Motion to Compel Arbitration.[1]

**ARGUMENT**

**I.   Unconscionability is assessed at the time of contract and on the face of the agreement.**

**A.   The California Civil Code requires, and the great weight of case law supports, assessing unconscionability at the time of agreement.**

California Civil Code § 1670.5(a) governs how a contract is assessed for unconscionability and addresses this issue directly with clear language: When a court assesses unconscionability, it looks to whether the contract was "unconscionable **at the time it was made**." Cal. Civ. Code § 1670.5(a) (emphasis added). Indeed, it is "blackletter law that whether a contract is fair or works unconscionable hardship is determined with reference to the time when the contract was made and cannot be resolved by hindsight by considering circumstances of which the contracting parties were unaware." *Yeng Sue Chow v. Levi Strauss & Co.*, 49 Cal. App. 3d 315, 325 (1975).

The Court applied this principle correctly in *MacClelland* to deny a motion to compel arbitration. In that case, the Court accurately noted the rule that "[i]n assessing unconscionability, the Court must examine the validity of a contractual provision as of the time of the contract is made." *MacClelland*, 609 F. Supp. 3d at 1041. And it explained that this analysis "is a prospective analysis which does not require proof that a particular plaintiff has already been adversely affected." *Id*. The Court rejected the defendants' argument that it should assess whether a mass-arbitration provision was unconscionable by looking only at the number of plaintiffs in that lawsuit. *Id.* at 1041–42. Instead, it "consider[ed] the chilling effect on non-parties who may yet seek to vindicate their rights." *Id.* at 1041. The Court found that "[r]equiring the consumers who retain counsel willing to represent them in cases such as this to wait months, more likely years before they can even submit a demand for arbitration [was] 'unreasonably favorable' to [the

---

[1] In responding to the discrete questions posed by the Court, Plaintiffs do not intend to waive their other objections to the arbitration clause and expressly preserve those arguments. *See* Dkt. 74, 99.

2
Plaintiffs' Second Supplemental Opposition to Avia's Motion to Compel Arbitration
Case No. 3:23-cv-05971-EMC

defendants]." *Id.* at 1042 (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017)). The court held that the mass-arbitration provision was unconscionable, reasoning that it conflicted with a basic principle of our legal system—"justice delayed is justice denied." *Id.* (quoting *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021)).

The Court's decision in *MacClelland* is in good company. When assessing unconscionability, courts routinely look beyond the agreements' impact on the litigating parties themselves to the impact on those who might wish the vindicate their rights. For example, in the employment discrimination context, courts do not consider the economic circumstances of a particular plaintiff in assessing how a cost-shifting provision affects that plaintiff's exercise of their rights. Rather, courts rightly consider the provision from the perspective of all employees and look to whether the provision "poses a significant risk that employees will have to bear large costs to vindicate their statutory right against workplace discrimination, and therefore chills the exercise of that right." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 110 (2000); *see also Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1164 (2013) ("Because a predispute arbitration agreement is an agreement to settle future disputes by arbitration, the proper inquiry is what dispute resolution mechanism the parties reasonably expected the employee to be able to afford.").

Another common example occurs in assessing clauses purporting to limit the statute of limitations for a claim. When deciding whether a contractual agreement to shorten the statute of limitations is unconscionable, courts do not look at when the plaintiff's claim accrued; they compare the limitations period provided by statute and the one provided in the arbitration agreement. *See Jackson v. S.A.W. Ent. Ltd.*, 629 F. Supp. 2d 1018, 1028–29 & n.6 (N.D. Cal. 2009) (Chen, J.). The arbitration agreement in *Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242 (2011), for example, required claimants to file a claim in arbitration within 180 days of receiving notice of their right to sue, cutting short the one-year statute of limitations normally applicable. *Id.* at 1249. The defendants argued that the provision was not unconscionable because the plaintiffs had filed their complaint within the shortened limitations window. *Id.* But, the court found this to be

"irrelevant" because the law was meant to benefit "the entire public, not just these plaintiffs." *Id.* The court held that "a mandatory arbitration provision required as part of an employment relationship cannot waive the statutory rights," even if these particular plaintiffs had managed to avoid such a pitfall as missing the shortened deadline. *Id.*

A third common example occurs with agreements purporting to waive rights under the Private Attorney Generals Act ("PAGA"). *Cf. Najarro v. Superior Ct.*, 70 Cal. App. 5th 871, 882–83 (2021), *as modified* (Oct. 22, 2021) (finding an arbitration agreement requiring signatories to waive their ability to bring a PAGA claim was unconscionable because "[i]t [wa]s irrelevant that petitioners have not brought a PAGA action"); *Subcontracting Concepts (CT), LLC v. De Melo*, 34 Cal. App. 5th 201, 212 (2019) (arbitration agreement's unenforceable PAGA waiver increased the unconscionability because determining unconscionability "does not involve comparing the terms of the arbitration clause with the nonarbitration claims [the plaintiff] is pursuing"). The common thread in each example is that unconscionability does not depend on whether a particular plaintiff implicates an agreement's terms, but whether the agreement was unconscionable when made in light of all likely plaintiffs.

Defendants' reliance on *Sanchez v. Valencia Holding Co.*, LLC, 61 Cal. 4th 899 (2015), is misplaced. *See* Dkt. 104 at 4. In that case, the California Supreme Court noted that "[a]n evaluation of unconscionability is highly dependent on context." *Id.* at 911. Defendants quote this language to argue that the court meant particularized, plaintiff-specific evidence. Dkt. 104 at 4. Defendants are wrong. The "context" the California Supreme Court referred to does not depend on evidence specific to the plaintiff. The court explained in the next sentence that determining context "often requires inquiry into the 'commercial setting, purpose, and effect' of the contract or contract provision." *Id.* (quoting Cal. Civ. Code § 1670.5(b)). And in doing so, "courts are required to determine the unconscionability of the contract 'at the time it was made.'" *Id.* at 920 (quoting Cal. Civ. Code § 1670.5). Thus, *Sanchez* does not deviate from the time-of-formation rule.

### B. The only potential exceptions to the "at the time" of contract rule are inapplicable here.

In its Order, the Court called attention to two potential exceptions to the "time of formation" rule for evaluating unconscionability. Neither exception applies here.

*First*, *Ramirez v. Charter Commc'ns, Inc.*, 75 Cal. App. 5th 365 (2022), noted a narrow exception to the rule that exists when assessing the "unconscionability [of] limitations **on discovery** as applied to a particular plaintiff" at the time of enforcement. *Id.* at 385 (emphasis added). *Ramirez* is currently pending before the California Supreme Court,[2] but as far as Plaintiffs are aware, it has never recognized this exception. Its failure to recognize the exception is not surprising considering the Civil Code's command that courts determine whether a contract is "unconscionable at the time it was made." Cal. Civ. Code § 1670.5(a).

However, even if an arbitration agreement's limit on discovery is a valid exception to the rule that courts assess unconscionability at the time of enforcement, *Ramirez* does not support extending that exception here. In fact, in *Ramirez*, the court repeatedly recognized that in all other situations, the rule is to assess based on the time of contract formation.[3] Moreover, the *Ramirez* court found a discovery issue exception where a clause may have been conscionable at the time of agreement but became unconscionable when applied. *Ramirez*, 75 Cal. App. 5th at 385–86 (crediting discovery needs that later became known to find agreement unconscionable). But it did not countenance the opposite—*i.e.*, allowing an unconscionable-when-made agreement to become "conscionable" at the time of enforcement. In other words, if anything, *Ramirez* can be read to support a finding of unconscionability based on *either* the time of formation *or* the time of enforcement.

---

[2] *See Ramirez v. Charter Commc'ns*, 510 P.3d 404 (Cal. 2022).

[3] *See Ramirez*, 75 Cal. App. 5th at 372 (explaining that if "a court finds a clause within a contract to have been unconscionable at the time it was made, the Court may refuse to enforce the contract"); *id.* at 374 (invoking rule that "a judicial determination of unconscionability focuses on whether the contract or any of its provisions were 'unconscionable at the time it was made'" to analyze restrictions on statutes of limitations); *id.* at 375 ("How Ramirez chose to enforce her claims does not affect the unconscionability analysis, which generally looks to an agreement 'at the time it was made.'"); *id.* at 384 ("the unconscionability analysis evaluates whether the agreement is bilateral 'at the time it was made' rather than as applied to specific plaintiff").

1    *Second*, *In re Marriage of Zucker* is also inapposite because the court's holding there was
2    based on a statutory quirk of California law specific to premarital agreements that does not exist
3    for contracts generally. 75 Cal. App. 5th 1025, 1039-43 (2022), *as modified on denial of reh'g*
4    (Apr. 1, 2022), *review denied* (July 13, 2022). Specifically, the court relied on Cal. Fam. Code
5    § 1612(a)(7) to declare "that a premarital spousal support agreement is unenforceable as against
6    public policy solely because it is unconscionable at the time of enforcement." *Id.* at 1042. In so
7    holding, the court noted that it would have ruled differently if it relied entirely on the Cal. Fam.
8    Code § 1615(a)(2) that, like Cal. Civ. Code § 1670.5(a), prohibited the enforcement of premarital
9    agreements if "[t]he agreement was unconscionable when it was executed, and, before execution
10   of the agreement." *Id.* at 1033, 1039.

11   Aside from California statutory and case law, assessing the unconscionability of bellwether
12   provisions in arbitration agreements at the time of enforcement creates practical pitfalls. The
13   number of clients that Plaintiffs' counsel represents continues to grow and, as such, there is a risk
14   of inconsistent rulings. At the time the complaint was filed, Plaintiffs' counsel represented two
15   individuals pursuing class claims. Tripolitsiotis Decl. ¶ 3.[4] Assessing at the time the suit was filed
16   would mean the clause was not triggered. Last month, that number had increased to 35 clients,
17   triggering the bellwether clause, and, as of the date of this filing, Plaintiffs' counsel represents 51
18   clients, meaning there would now be at least three tranches of arbitrations. *Id*. ¶ 4. That is to say
19   nothing of the other attorneys pursing claims based on the same wrongdoing who represent more
20   than 4,100 clients. Kind Decl. ¶ 3. And there is no way to predict the final number of claimants
21   that will engage each firm or the number of claimants who—unbeknownst to Plaintiffs here or the
22   Court—have or will initiate additional cases or claims. Analyzing unconscionability at any time
23   other than when made would risk the Court ruling differently at each of these three checkpoints.
24   The clause cannot be enforceable against Mr. Pandolfi or Ms. Shawcroft simply because they were

---

[4] "Tripolitsiotis Decl." refers to the May 31, 2024 Second Declaration of Matthew S. Tripolitsiotis in Opposition to the Avia Defendants' Motion to Compel Arbitration. "Kind Decl." refers to the May 30, 2024 Supplemental Declaration of Michael Kind.

first, but unconscionable for the 100th or 1,000th claimant who signed up later. Unlike limitations on discovery, assessing a bellwether arbitration provision at the time of enforcement raises more questions than answers.[5]

Even if the Court considers the facts as they stand today, as opposed to at the time of contract, the arbitration provision will result in unconscionable delay. At best, 30 of Plaintiffs' counsel's clients will have to wait until the first 20 are resolved. And then 10 of those will have to wait for numbers 21-40. But there are also Kind Law's 4,132 clients to consider. The mass-arbitration provision applies "if twenty-five (25) or more similar claims are asserted against Aviagames or against you by the same or coordinated counsel or are otherwise coordinated." Dkt. 113 at 14. There is a risk that Plaintiffs' counsel and Kind Law have already "otherwise coordinated," given that Plaintiffs have worked with Kind Law to file declarations in this matter and conferred multiple times regarding the prosecution of these matters. Tripolitsiotis Decl. ¶ 7. Should the AAA find that Plaintiffs' counsel and Kind Law have "otherwise coordinated," the delay in Plaintiffs' ability to vindicate their rights will grow astronomically while they wait for more than 209 tranches of 20 to resolve.[6]

---

[5] For example, how many tranches of 20 is too many? And when is the time of enforcement? Is it when the Plaintiffs filed their complaint? Or is there a separate determination made at the time each potential claimant initiates a case or claim? Is it when Defendants filed their motion to compel arbitration? What happens to new Plaintiffs who join or file new cases? If the provision is ruled unconscionable for Claimant No. 1000, does that ruling merit reconsideration of unconscionability as to earlier claimants? Is the agreement unenforceable as to Kind Law's clients but enforceable against the clients of other firms? All of these questions flow from attempting to evaluate the provision at the time of enforcement instead of contract formation.

[6] Avia cannot rehabilitate its unconscionable mass-arbitration provision by touting the AAA Mass Arbitration Supplementary Rules that it claims "Avia's Terms of Service ('Terms') incorporate by reference." Dkt. 104 at 1. The Terms do not incorporate the AAA Mass Arbitration Supplementary Rules; the Terms incorporate the AAA Supplementary Rules for Multiple Case Filings. *See* Dkt. 113 at 14. It would be highly procedurally unconscionable to bind Plaintiffs to unreferenced arbitration rules that only became effective five months after filing their lawsuit. *See* Dkt. 105-1 (showing that the Mass Arbitration Supplementary Rules became effective April 1, 2024—almost five months after Plaintiffs filed their lawsuit in November 2023); Dkt. 113 at 10 (noting that procedural unconscionability "involves 'the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party.'" (quoting *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013))). In any event, the Terms spell out the mass-arbitration provision and are unaffected by amendments to AAA rules. Nor can Avia waive its unconscionable

**II.      The Court should assess unconscionability from the perspective of similarly situated players.**

The only practical way to evaluate the provision is from the perspective of all Avia users. As an initial matter, the widespread harm to Avia's users from the provision is not speculative. Much of what Avia calls a "*hypothetical* delay in determining the arbitrability of Plaintiffs' claims based on their counsel's *potential* clients or the size of the putative class" has already been realized. *See* Dkt. 104 at 4 (emphasis in original). Nearly 4,200 players with similar claims have *already* retained lawyers to prosecute their claims. *See* Tripolitsiotis Decl. ¶ 4; Kind Decl ¶ 3. And as noted above, there is a risk that the AAA will determine that Plaintiffs' counsel and Kind Law have already "otherwise coordinated," which could subject Plaintiffs here to batching with the Kind Law clients and protract the arbitration process.

The chilling effect that delay causes is well-recognized and, by definition, includes all similarly situated in the evaluation. Where large numbers of customers seek to assert claims, Avia's mass-arbitration provision, if enforceable, would discourage, if not "effectively preclud[e]," many aggrieved consumers "from asserting any claims against [Avia]" in the first place by pushing off any hope of recovery for years or decades. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1288 (9th Cir. 2006) (en banc); *see Beynon v. Garden Grove Med. Grp.*, 161 Cal. Rptr. 146, 150 (Ct. App. 1980) (declining to enforce an adhesive contract term that could "render arbitration an expensive and protracted proceeding"). That result is impermissible under California law. *See Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002) (holding an arbitration agreement unconscionable where its features aimed at "shield[ing]" the drafting party "from liability instead of providing a neutral forum in which to arbitrate disputes"); *cf. Am. Online, Inc. v. Superior Ct.*, 108 Cal. Rptr. 2d 699, 708 (Ct. App. 2001) (noting that "California courts will refuse" to enforce a contractual forum-selection clause that "would substantially diminish" a party's substantive rights).

---

mass-arbitration provision now that Plaintiffs have challenged it in court to stay in compliance with the law. *Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939, 955 n.11 (C.D. Cal. 2023).

8
Plaintiffs' Second Supplemental Opposition to Avia's Motion to Compel Arbitration
Case No. 3:23-cv-05971-EMC

The fact that coordinated representation is the trigger for the bellwether provision and its corresponding delays underscores the risk that the provision will deter consumers from asserting their rights or deter attorneys from being willing to take on their cases. Where, as here, a lawsuit targets practices that have inflicted widespread but, at times, relatively small financial injuries, it is often economically impractical for attorneys to offer representation unless they can take on enough individual claims to benefit from economies of scale so that the total expected recovery outweighs the litigation costs. *Cf. Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 809 (1985) (recognizing economics behind "pool[ing] claims which would be uneconomical to litigate individually"); J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283, 1307 (2022) (explaining that "[t]he types of claims that tend to arise from [adhesion] contracts," including consumer-fraud claims, "are those that tend to gain viability from aggregation"). Imposing delay on groups of 20 or more claimants disincentivizes both consumers and attorneys.

What's more, Avia's Terms force only consumers—not Avia—to give up this right. Only consumers must find different lawyers to avoid being thrown into the batching process; Avia remains free to retain the same lawyer of its choice in every proceeding. Thus, the burdens such a condition would impose are faced only by consumers. That type of one-sidedness is unconscionable. *Elite Logistics Corp. v. Hanjin Shipping Co.*, 589 F. App'x 817, 819 (9th Cir. 2014) ("Mutuality is the 'paramount' consideration when assessing substantive unconscionability.").

Consider that Avia's contract prevents more than 20 consumers from being represented by the same law firm less they face delay. So, the 4,182 additional consumers who initially chose Plaintiffs' counsel or Kind Law in the case would need to find 209 separate firms to represent them if the clause is triggered or, in the alternative, accept significant delay in prosecuting their cases if they choose to engage experienced counsel familiar with the facts of the case. That would require consumers to not just find their second-choice counsel, but their 209th choice—assuming enough qualified firms can even be found. Avia, by contrast, faces no similar condition. It remains free to select what it deems is the best firm to represent it in all of its arbitrations. That is "overly harsh

9
Plaintiffs' Second Supplemental Opposition to Avia's Motion to Compel Arbitration
Case No. 3:23-cv-05971-EMC

[and] one-sided," *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019), and therefore unconscionable. *See Penilla v. Westmont Corp.*, 3 Cal. App. 5th 205, 218 (2016) (holding that a contract is unconscionable where it would "significantly deter, if not effectively preclude" assertion of claims).

This interference with civil litigants' "important right to counsel of [their] choice" heightens the mass-arbitration provision's substantive unconscionability. *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999); *see Lyle v. Superior Ct.*, 175 Cal. Rptr. 918, 925 (Ct. App. 1981) (noting a civil litigant's interest in "avoiding inconvenience and duplicative expense" by retaining counsel "already thoroughly familiar with the case"). And a consumer, put to the choice of either seeking prompt recovery through an attorney who is incapable of providing cost-effective representation or engaging an attorney who can vindicate a claim efficiently but who may be barred from doing so for years, may well choose not to pursue the claim at all.

**CONCLUSION**

There is no reason to deviate from the Court's holding in *MacClelland* and find that unconscionability is determined when applied. Rather, the authority supports determining unconscionability at the time of contract as it could be applied. And, here, as applied it is also unconscionable. For this and the foregoing reasons, Plaintiffs respectfully request that the Court deny the Defendants' motion to compel arbitration.

Dated: May 31, 2024        Respectfully submitted,

/s/ *Matthew S. Tripolitsiotis*
Matthew S. Tripolitsiotis (*pro hac vice*)
BURNS CHAREST LLP
757 Third Ave, 20th Floor
New York, NY 10017
Tel: 469.895.5269
mtripolitsiotis@burnscharest.com

Spencer Cox (*pro hac vice*)
BURNS CHAREST LLP

| | |
|---|---|
| 1 | 4725 Wisconsin Avenue, NW, Suite 200 |
| | Washington, DC 20016 |
| 2 | Tel: 202.577.3977 |
| | scox@burnscharest.com |
| 3 | |
| | Amanda K. Klevorn (*pro hac vice*) |
| 4 | BURNS CHAREST LLP |
| | 365 Canal Street, Suite 1170 |
| 5 | New Orleans, LA 70130 |
| | Tel: 504.799.2847 |
| 6 | aklevorn@burnscharest.com |
| 7 | |
| | Todd Logan (SBN 305912) |
| 8 | EDELSON PC |
| | 150 California St, 18th Floor |
| 9 | San Francisco, CA 94111 |
| | Tel: 415.212.9300 |
| 10 | Fax: 415.373.9435 |
| 11 | tlogan@edelson.com |
| 12 | *Counsel for Plaintiffs and the Proposed Class* |

# CERFICATE OF SERVICE

I hereby certify that on May 31, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

*/s/ Matthew S. Tripolitsiotis*
Matthew S. Tripolitsiotis