KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - # 158708
epeters@keker.com
STEVEN K. TAYLOR - # 204668
staylor@keker.com
W. HAMILTON JORDAN - # 295004
wjordan@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
VICTOR CHIU - # 305404
vchiu@keker.com

633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant
AVIAGAMES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW PANDOLFI and MANDI SHAWCROFT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AVIAGAMES INC.,<br><br>Defendant. | Case No. 3:23-cv-05971-EMC<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT BY DEFENDANT AVIAGAMES INC.**<br><br>Date: December 10, 2026<br>Time: 1:30 p.m.<br>Dept: Courtroom 5 – 17th Floor<br>Judge: Hon. Edward M. Chen<br><br>Date Filed: November 17, 2023<br>Trial Date: None set |



6439404

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....... 1

II. ARGUMENT ....... 2

A. Plaintiffs Cannot Seek Restitution Because Their CLRA Damages Claim Provides an Adequate Remedy at Law. ....... 2

1. A hypothetical future change in law does not render CLRA damages inadequate. ....... 3

2. Plaintiffs' "full refund" theory does not establish that damages are inadequate. ....... 3

3. Potential challenges in calculating damages do not make them inadequate. ....... 7

4. The adequacy of Plaintiffs' legal remedies can and should be resolved on the pleadings. ....... 7

B. The Second Amended Complaint Does Not Remedy Shawcroft's Standing Defects. ....... 9

1. Shawcroft fails to allege an actual and imminent future injury. ....... 9

2. Shawcroft has not plausibly alleged a redressable future harm. ....... 10

C. Plaintiffs' New Theory of Liability Under 1770(a)(3) Should Be Dismissed. ....... 11

III. CONCLUSION ....... 12

# TABLE OF AUTHORITIES


Page(s)

**Federal Cases**

*Baton v. Ledger SAS*, 2025 WL 416360 (N.D. Cal. Feb. 6, 2025) ....8

*Biotab Nutraceuticals, Inc. v. Beamonstar, LLC*, 2011 WL 6176219 (C.D. Cal. Dec. 9, 2011) ....12

*Brown v. Food for Life Baking Co., Inc.*, 658 F. Supp. 3d 732 (N.D. Cal. 2023) ....9

*Caldwell v. Nordic Nats., Inc.*, No. 23-cv-02818-EMC, Dkt. 1 (June 7, 2023) ....10

*Caldwell v. Nordic Naturals, Inc.*, 709 F. Supp. 3d 889 (N.D. Cal. 2024) ....1, 9, 10

*Chebul v. Tuft & Needle*, 2024 WL 5257021 (C.D. Cal. Oct. 9, 2024) ....5

*Chowning v. Kohl's Dep't Stores, Inc.*, 735 F. App'x 924 (9th Cir. 2018), *amended on denial of reh'g*, 733 F. App'x 404 (9th Cir. 2018 ....4

*Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897 (N.D. Cal. 2021) ....9, 10

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ....1, 9, 10, 11

*Duvall v. Haier US Appliance Sols., Inc.*, 836 F. Supp. 3d 1012 (N.D. Cal. 2026) ....5, 6

*Gradney v. Polar Beverages*, 797 F. Supp. 3d 1016 (N.D. Cal. 2025) ....7

*Grausz v. Koger Co.*, 2021 WL 5534706 (S.D. Cal. Jan. 22, 2021) ....11

*Guzman v. Polaris Industries Inc.*, 49 F.4th 1308 (9th Cir. 2022) ....2, 7, 8

*Johnson v. Trumpet Behavioral Health*, 2022 WL 74163 (N.D. Cal Jan. 7, 2022) ....8

*Julian v. TTE Technology, Inc.*, 2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) ....7

*In re JUUL Labs, Inc.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022) ....6

*Key v. Qualcomm Inc.*,
129 F.4th 1129 (9th Cir. 2025) .... *passim*

*Krantz v. Old Copper Co., Inc.*,
794 F. Supp. 3d 724 (C.D. Cal. 2025) ....12

*Krueger v. Wyeth, Inc.*,
396 F. Supp. 3d 931 (S.D. Cal. 2019)....6

*Loomis v. Slendertone Distribution, Inc.*,
420 F. Supp. 3d 1046 (S.D. Cal. 2019)....11

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....10

*Marek v. Molson Coors Beverage Co.*,
580 F. Supp. 3d 848 (N.D. Cal. 2022) ....9

*Matic. Kenney v. Fruit of the Earth, Inc.*,
No. 23-55583, 2024 WL 4578981 (9th Cir. Oct. 25, 2024) ....10

*Matic v. United States Nutrition, Inc.*,
2019 WL 3084335 (C.D. Cal. March 27, 2019) ....9

*Milan v. Clif Bar & Co.*,
489 F. Supp. 3d 1004 (N.D. Cal. 2020) ....9

*Murphy v. Olly Public Benefit Corp.*,
651 F. Supp. 3d 1111 (N.D. Cal. 2023) ....5, 7

*Nacarino v. Chobani, LLC*,
2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ....7

*Nacarino v. Chobani, LLC*,
668 F. Supp. 3d 881 (N.D. Cal. 2022) ....8, 12

*O'Shea v. Littleton*,
414 U.S. 488 (1974)....7

*Parino v. Bidrack, Inc.*,
838 F. Supp. 2d 900 (N.D. Cal. 2011) ....12

*Paschoal v. Campbell Soup Co.*,
2022 Wl 4280645 (N.D. Cal. Sept. 15, 2022)....9

*Phan v. Sargento Foods, Inc.*,
2021 WL 2224260 (N.D. Cal. June 2, 2021) ....7

*Prescott v. Nestle USA, Inc.*,
2020 WL 3035798 (N.D. Cal. June 4, 2020) ....................11

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ....................4, 5

*Romero v. Flowers Bakeries, LLC*,
2015 WL 2125004 (N.D. Cal. May 6, 2015) ....................12

*Russell v. Kohl's Dep't Stores, Inc.*,
2015 WL 12781206 (C.D. Cal. Oct. 6, 2015) ....................6

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .................... *passim*

*Starratt v. Fermented Scis., Inc.*,
2023 WL 359500 (N.D. Cal. Jan. 23, 2023) ....................9

*Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*,
673 F. Supp. 3d 1083(N.D. Cal. 2023) ....................9

*Vizcarra v. Unilever United States*,
2020 WL 4016810 (N.D. Cal. 2020) ....................9

*Wright v. Old Gringo, Inc.*,
2025 WL 1912362 (9th Cir. July 11, 2025) ....................3

*Yeomans v. World Financial Group Insurance Agency*,
2022 WL 844152 (N.D. Cal. Mar. 22, 2022) ....................8

**State Cases**

*Nagel v. Twin Labs., Inc.*,
109 Cal. App. 4th 39 (2003) ....................12

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015) ....................5

**Federal Statutes**

Cartwright Act ....................8

**State Statutes**

Cal. Civ. Code § 1770(a)(3) ....................2, 11

Cal. Civ. Code § 1780(a) ....................2

**Rules**

Fed. R. Civ. P. 12 ....................7

## I. INTRODUCTION[1]

Plaintiffs' Opposition fails to answer the arguments Avia raises in its moving papers, compelling dismissal of its claims for equitable relief under the UCL and CLRA.

First, Plaintiffs fail to plead that they lack an adequate legal remedy for their alleged injuries, and nothing in the Opposition provides otherwise. Their lead argument is that restitution may be a superior remedy for them because, they hope, the Court will award them full refunds for their purchases with Avia, whereas CLRA damages are calculated by subtracting the value of the product obtained from the consideration paid by the consumer. This argument misreads the law of remedies. Plaintiffs ignore case after case stating that in California, both damages and restitution must account for the value of any goods or services that the plaintiff received. Plaintiffs fail to establish that restitution could provide them any greater recovery than actual damages under the CLRA. Plaintiffs also anticipate that they may have challenges proving actual damages and assert this as a basis for why CLRA damages are an inadequate legal remedy. This argument ignores *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), and *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1142 (9th Cir. 2025), the Ninth Circuit's most recent *Sonner* follow-on case, which holds that a failure of proof as to legal damages does not render the remedy inadequate. At bottom, Plaintiffs fail to show how they have pleaded that they lack an adequate remedy at law.

Next, Plaintiff Shawcroft fails to show that she has standing to pursue injunctive relief. She relies heavily on *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), without addressing the fact that in *Caldwell v. Nordic Naturals, Inc.*, 709 F. Supp. 3d 889, 911 (N.D. Cal. 2024), this Court read *Davidson* narrowly and confined it to its "unique" facts. *Caldwell* holds that a plaintiff lacks standing to pursue injunctive relief where the plaintiff has actual knowledge of the (alleged) falsity of an advertising statement. That is the case here, where Shawcroft alleges that she wants to avoid playing games against "bots" and where she alleges that there are "bots" on the platform.

---

[1] Unless otherwise noted, internal quotation marks, non-substantive alterations, and citations have been omitted, and all emphases have been added.

Finally, Plaintiffs fail to explain how they can proceed on their CLRA claim under Section 1770(a)(3). The proposed amendment exceeds the scope of amendment authorized by the Court, fails to comply with the statutory pre-notice requirement, and, in any event, Plaintiffs fail to plead facts that could sustain a trademark-like liability theory in this false-advertising case.

Because Plaintiffs have had multiple chances to amend their complaint, the Court should dismiss the challenged claims without leave to amend.

## II. ARGUMENT

### A. Plaintiffs Cannot Seek Restitution Because Their CLRA Damages Claim Provides an Adequate Remedy at Law.

The Court's prior dismissal order ruled that *Sonner* "preclude[d]" Plaintiffs' request for restitution because the prior complaint failed to allege how Plaintiffs' CLRA damages claim was not an adequate remedy at law for Plaintiffs' alleged injuries. Dkt. 183 at 25–27. Given an opportunity to amend, the SAC alleges that CLRA damages "may" be inadequate because: (1) the law could change, rendering such damages unavailable; (2) damages might result in a different recovery than restitution; and (3) damages might be more difficult to prove than restitution. SAC ¶¶ 94–95.

The Court should reject these theories because they rely on two false premises: that damages cannot be "adequate" unless they are both coextensive with restitution and at least as easy to prove as restitution. Plaintiffs claim to have spent money on Avia's mobile games because of alleged misrepresentations about those games. The question is whether the legal remedy can compensate Plaintiffs for that alleged injury. *Sonner*, 971 F.3d at 844; *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1312–13 (9th Cir. 2022); *Key*, 129 F.4th at 1142. Subject to proof, the CLRA provides actual (and potentially punitive) damages for such an injury. Cal. Civ. Code § 1780(a). This makes CLRA damages adequate as a legal remedy. Plaintiffs cannot plead an equitable claim by speculating that restitution could ultimately be more beneficial for them.

**1. A hypothetical future change in law does not render CLRA damages inadequate.**

The SAC alleges CLRA damages "may" be inadequate because "a subsequent change in law" could endanger Plaintiffs' CLRA damages claim. SAC ¶ 94. But the Opposition makes no effort to defend this allegation—which is entirely and improperly speculative—and so Plaintiffs have forfeited any ability to rely on this allegation to defeat Avia's motion to dismiss. Moreover, as the Ninth Circuit has held, a "failure to prove" a legal remedy "does not make that remedy inadequate." *Key*, 129 F.4th at 1142.

**2. Plaintiffs' "full refund" theory does not establish that damages are inadequate.**

Plaintiffs next allege that restitution may be "more complete," theorizing that restitution would return every dollar Plaintiffs paid to Avia, whereas CLRA damages would provide "the difference between what Plaintiffs paid and the actual value of what they received." SAC ¶¶ 95; Opp. at 4–6. This allegation fails because it misapplies *Sonner* and misstates the law.

To start, that Plaintiffs ***might*** recover more under the UCL rather than the CLRA does not make their damages claim under the CLRA an inadequate remedy. *Wright v. Old Gringo, Inc.* is directly on point. 2025 WL 1912362, at *2 (9th Cir. July 11, 2025). Applying *Sonner*, the Ninth Circuit affirmed the trial court's decision denying the plaintiff's "equitable claims because she had an adequate remedy at law." *Id.* "That [Plaintiff's] fraud claims only permitted 'out-of-pocket' damages, rather than 'benefit-of-the-bargain' damages, does not mean that her legal remedy was inadequate." *Id.* In other words, the potential availability of a higher monetary recovery in equity does not render a damages claim inadequate. *Id.* Thus, even if the UCL and CLRA supplied "distinct remedies" as Plaintiffs claim, Opp. at 4, that would still not entitle them to assert an equitable claim when there is already an adequate remedy at law.

In any event, Plaintiffs are not entitled to recover a full refund on a UCL claim. Plaintiffs' CLRA damages claim and UCL restitution claim both offer the same remedy: the alleged price premium in this case. Plaintiffs agree that damages under the CLRA are based on the difference between the "actual value" of what the plaintiff received and what she paid. Opp. at 4.

Restitution under the UCL is no different; it is "the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) (quoting *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 174 (2000)). When "calculating restitution under the UCL . . . the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Id.* at 989. *Pulaski* repeats four times that a California restitution calculation must consider the "value of the property at the time of its improper acquisition." *Id.* at 988 (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 698-99 (2006)); *see generally id.* at 988–990 (discussing restitution calculation). And the ultimate damages model that *Pulaski* reviewed included an objective measurement of the value of the challenged product. *Id.* at 989. Thus, Plaintiffs are not entitled to pursue a full-refund theory in restitution.

None of Plaintiffs' arguments or authorities allow them to dodge this rule. Plaintiffs highlight the SAC's subjective allegations that Plaintiffs personally "would not have paid to play Avia's games at all" had they known of Avia's alleged misrepresentations. SAC ¶¶ 62, 86, 106; Opp. at 5. These allegations about subjective expectations raise obvious problems in a proposed class action. But setting that concern aside, whether *these* Plaintiffs say they would have played Avia's games absent the alleged misrepresentations has no bearing on "what a reasonable consumer would have paid at the time of purchase" without the alleged misrepresentations. *Pulaski*, 802 F.3d at 989. Accordingly, Plaintiffs' allegations cannot support a claim to full refunds in restitution.

In fact, Plaintiffs' reliance on subjective allegations highlights the co-extensive nature of CLRA damages and UCL restitution. If Plaintiffs ultimately prove that Avia's games were worthless to a reasonable consumer, the price-premium calculation would yield the same result as a full refund. *Chowning v. Kohl's Dep't Stores, Inc.*, 735 F. App'x 924, 925 (9th Cir. 2018), *amended on denial of reh'g*, 733 F. App'x 404 (9th Cir. 2018) ("If the product is truly valueless, then the 'price paid minus the value actually received equals the price paid.'" (*quoting In re Tobacco Cases II*, 240 Cal. App. 4th 779, 796 (2015))). But if Avia's games retained some value

to a reasonable consumer despite the alleged misrepresentation—as the SAC's "discounted rate" allegation expressly contemplates, ¶ 95—then restitution should account for that value, just as CLRA damages do.

None of Plaintiffs' authorities require a different result. Their primary case, *Murphy v. Olly Public Benefit Corp.*, 651 F. Supp. 3d 1111 (N.D. Cal. 2023), accepted the plaintiffs' theory that legal remedies were less "certain" than restitution because damages supposedly required "additional showings," such as "loss of 'market value' or notice." *Id.* at 1129 (quoting the plaintiffs' complaint). *Murphy* says nothing about whether a potentially higher recovery in restitution renders a damages claim inadequate. Moreover, *Murphy*'s reasoning contravenes Ninth Circuit law in two respects. First, it does not survive the Ninth Circuit's subsequent decision in *Key*, which held that the plaintiff's inability to prove a legal claim does not render the legal remedy inadequate. 129 F.4th at 1142. Second, *Murphy* assumed—without reasoning or authority, and without examining *Pulaski*—that a plaintiff can obtain a full refund as restitution without accounting for the value received. *See* 651 F. Supp 3d at 1129. But *Pulaski* requires restitution to account for what a reasonable consumer would have paid with accurate information. 802 F.3d at 989. Similarly, *Chebul v. Tuft & Needle*, 2024 WL 5257021 (C.D. Cal. Oct. 9, 2024) predates *Key* and accepted the same mistaken premise as *Murphy*—that restitution could provide a full refund without proof that the plaintiff received no value—without addressing the contrary principles articulated in *Pulaski*. *Id.* at *3–4.

*In re Tobacco Cases II*, 240 Cal. App. 4th 779 (2015) likewise does not support Plaintiffs' "full refund" theory. After observing that price paid minus value received is not invariably the exclusive restitution methodology under the UCL, the court emphasized that a plaintiff still bears the burden of proving an alternative measure that is supported by substantial evidence and appropriate under the circumstances. *Id.* at 792. *Tobacco II* expressly rejected the prospect of a full refund where a product retains value, holding that a full refund may be available only when plaintiffs prove the product had no value at all—at which point the ordinary price-minus-value calculation itself equals the full purchase price. *Id.* at 801–02; *see also Duvall v. Haier US Appliance Sols., Inc.,* 836 F. Supp. 3d 1012, 1026 (N.D. Cal. 2026) (characterizing *Tobacco II* as



6439404

holding that "when the 'circumstances' show plaintiff 'obtain[s] value from [the product] apart from the deceptive advertising,' a 'full refund theory does not provide a basis for restitution'"). Similarly, *Russell v. Kohl's Dep't Stores, Inc.*, 2015 WL 12781206 (C.D. Cal. Oct. 6, 2015) emphasized "the unremarkable proposition" that no matter how restitution is measured, it "requires the plaintiff to account both for what she gave up and any benefits she received." *Id.* at *4.

*Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931 (S.D. Cal. 2019), a pre-*Sonner* case, also does not aid Plaintiffs. There, the court rejected the plaintiffs' CLRA damages at summary judgment because the plaintiff lacked market-value evidence, while allowing her UCL claim to proceed. *Id.* at 949–56. But under the Ninth Circuit's later decision in *Key*, a plaintiff's failure to prove a damages claim does not make her legal remedies inadequate, and a parallel UCL claim targeting the same injury must be dismissed under *Sonner*. *See Duvall*, 836 F. Supp. 3d at 1027 (criticizing *Krueger* as "unpersuasive," rejecting the plaintiff's full-refund theory of inadequacy, and dismissing equitable claims because the plaintiff "cannot show his available damages remedy is inadequate"). *Krueger*'s ruling is further flawed because it relied on California's policy goal of using restitution to "deny the fraudulent party any benefits" to allow the UCL claim to proceed.[2] 396 F. Supp. 3d at 951. Under *Sonner*, a state's policy does not determine whether a remedy is inadequate. 971 F.3d at 843–44 ("At bottom, that a State may authorize its courts to give equitable relief unhampered by the restriction that an adequate remedy at law be unavailable cannot remove that fetter from the federal courts.")

*In re JUUL Labs, Inc.*, 609 F. Supp. 3d 942 (N.D. Cal. 2022) is further afield. There, the court at class certification permitted a full-refund model for youth purchasers of JUUL vape products based on the theory that "because it was illegal or inherently unfair to market at sell" the product to minors, specifically, "youth purchasers received no value from it at all." But the SAC here alleges no comparable and plausible theory about the fundamental legality of Avia's transactions with Plaintiffs, who are adults.

[2] The other rationale is to "restore the defrauded party to the position he would have had absent the fraud." 396 F. Supp. 3d at 951 (citation omitted). *Krueger* notes that that "measure of restitution is identical to a measure of actual damages." *Id.* at 950.

* * *

In sum, Plaintiffs fail to allege an inadequate remedy at law simply because they believe they may recover more money under the UCL. Moreover, the remedy of restitution under the UCL does not allow Plaintiffs to pursue their "full-refund" theory, either.

**3. Potential challenges in calculating damages do not make them inadequate.**

Plaintiffs' final theory of inadequacy is that restitution may be "more readily calculable" and damages "less certain" because it "may be difficult to measure the actual value" of Avia's games. SAC ¶¶ 93, 95. The Opposition expands this into an argument that damages carry "additional showings" not required for restitution. Opp. at 6. But *Key* forecloses the argument that a legal remedy is inadequate merely because it may be more difficult to prove. *Murphy*—Plaintiffs' primary authority on this issue—predates *Key* and cannot be reconciled with it. *Supra* at 4–5.

**4. The adequacy of Plaintiffs' legal remedies can and should be resolved on the pleadings.**

The Court should reject Plaintiffs' invitation to "defer the adequacy question until the record is developed." Opp. at 8. Where the complaint seeks an adequate legal remedy, courts resolve equitable jurisdiction on the pleadings. *E.g.*, *Gradney v. Polar Beverages*, 797 F. Supp. 3d 1016, 1026–29 (N.D. Cal. 2025) (dismissing "retrospective equitable relief in the form of restitution" under *Sonner* because the plaintiffs failed to establish that legal remedies were inadequate at the Rule 12 stage); *Nacarino v. Chobani, LLC*, 2021 WL 3487117, at *12–13 (N.D. Cal. Aug. 9, 2021) (same); *Phan v. Sargento Foods, Inc.*, 2021 WL 2224260, at *6 (N.D. Cal. June 2, 2021) (rejecting argument that it was "premature . . . to decide the adequacy of a legal remedy [under *Sonner*] on a motion to dismiss"); *Julian v. TTE Technology, Inc.*, 2020 WL 6743912, at *4–5 (N.D. Cal. Nov. 17, 2020) (same); *see generally O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (complaint failed to plead the "basic requisites" of equitable relief, including "the inadequacy of remedies at law").

The procedural posture of *Key* and *Guzman* does not limit their holdings to summary

judgment. In each case, the Ninth Circuit focused on what remedies the law ***can*** provide—regardless of whether the plaintiff could prove an entitlement to those remedies—and held that dismissal was appropriate. *See Guzman*, 49 F.4th at 1312 (holding that the plaintiff "had an adequate remedy at law through his CLRA claim for damages, even though he could no longer pursue it, and that the district court was therefore required to dismiss his equitable UCL claim"); *Key*, 129 F.4th at 1142 (observing that damages under the Cartwright Act are "hardly an inadequate remedy" and holding accordingly that "the district court could not exercise its equitable powers" over the plaintiffs' equitable UCL claim). This is consistent with this Court's above-cited orders on motions to dismiss, as well as its prior dismissal order in this case (Dkt. 183).

Plaintiffs' authorities do not justify deferring the adequacy inquiry. *Nacarino II*, *Yeomans*, and *Johnson* all predate *Key*, and each case rested on a then-perceived uncertainty about whether a plaintiff's failure to prove a legal claim could render that legal remedy inadequate. *Nacarino II* observed that it was "not clear" whether inadequacy required a "structural impediment" to legal relief, or whether it could arise from "a failure of factual proof on the legal claim." *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 896 (N.D. Cal. 2022) ("*Nacarino II*"). *Yeomans v. World Financial Group Insurance Agency* adopted *Nacarino II*'s reasoning and permitted restitution as an alternative to the plaintiff's Labor Code remedies, while reserving the adequacy issue for later. 2022 WL 844152, at *7–8 (N.D. Cal. Mar. 22, 2022). *Johnson v. Trumpet Behavioral Health* similarly deferred the adequacy inquiry because the court considered it "too early" to determine whether plaintiffs' legal remedies would "ultimately" prove adequate. 2022 WL 74163, at *3 (N.D. Cal Jan. 7, 2022). Similarly, *Baton v. Ledger SAS*—decided without the benefit of *Key*—assumed that *Sonner* "does not apply" once the plaintiffs' pleaded damages claims have been dismissed. 2025 WL 416360, at *12 (N.D. Cal. Feb. 6, 2025) (allowing UCL claim to proceed because CLRA damages claim had been dismissed with prejudice).

*Key* has provided the binding guidance that those decisions lacked: a plaintiff's "failure to prove" their legal claim "does not make that remedy inadequate." 129 F.4th at 1142. Because

adequacy does not depend on whether Plaintiffs will prevail here, no amount of discovery can convert an adequate CLRA damages remedy into an inadequate one.

Having been granted another opportunity to plead the inadequacy of legal remedies, Plaintiffs still fail to identify any limitation on CLRA damages. They identify only contingencies that might make damages less advantageous or harder to prove. The Court should dismiss Plaintiffs' requests for restitution under the UCL and CLRA without further leave to amend.

### B. The Second Amended Complaint Does Not Remedy Shawcroft's Standing Defects.

The Opposition fails to explain how Shawcroft (the sole Plaintiff who claims to have standing to seek injunctive relief) faces an actual, imminent threat of a concrete and particularized injury *or* that an injunction would redress her supposed injury.

#### 1. Shawcroft fails to allege an actual and imminent future injury.

Plaintiff Shawcroft's injury analysis relies almost exclusively on *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). Opp. at 9–10. Shawcroft's reading of *Davidson* is inconsistent with this Court's application of *Davidson* in *Caldwell*, 709 F. Supp. 3d at 911, where this Court observed that *Davidson* had "unique" facts and read *Davidson* narrowly.

In *Caldwell*, the Court noted a "split of authority in district courts in this circuit applying *Davidson*" and that "[s]ome courts find that standing is present only when the true nature of the product can be learned only through purchase of the product (e.g., attempting to flush a wipe like in Davidson)," whereas others read *Davidson* to confer standing in broader factual scenarios.[3] 709 F. Supp. 3d at 909. *Caldwell* relied upon Judge Freeman's order in *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 907 (N.D. Cal. 2021), as well as *Matic v. United States Nutrition, Inc.*, 2019 WL 3084335, at *7 (C.D. Cal. March 27, 2019), both of which dismissed claims for injunctive relief, to adopt the narrower reading of *Davidson*. The Court explained that there was standing in

[3] Shawcroft seeks support in *Takahashi-Mendoza v. Coop. Regions of Organic Producer Pools*, 673 F. Supp. 3d 1083(N.D. Cal. 2023), *Brown v. Food for Life Baking Co., Inc.*, 658 F. Supp. 3d 732 (N.D. Cal. 2023), *Starratt v. Fermented Scis., Inc.*, 2023 WL 359500, at *2 (N.D. Cal. Jan. 23, 2023), *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848 (N.D. Cal. 2022), *Paschoal v. Campbell Soup Co.*, 2022 Wl 4280645, at *5 (N.D. Cal. Sept. 15, 2022), and *Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004 (N.D. Cal. 2020). These cases take the same approach to standing as *Vizcarra v. Unilever United States*, 2020 WL 4016810, *17 (N.D. Cal. 2020), which was the approach that *Caldwell* rejected when it ruled that *Matic* and *Cimoli* were better reasoned.

*Davidson* because the plaintiff there "would have no way of determining whether the representation 'flushable' remained false—absent purchasing the product and trying to flush it again." *Caldwell*, 709 F. Supp. 3d at 909. The Ninth Circuit subsequently confirmed the reasoning of *Caldwell*, *Cimoli*, and *Matic*. *Kenney v. Fruit of the Earth, Inc.*, No. 23-55583, 2024 WL 4578981, at *1 (9th Cir. Oct. 25, 2024) (unpub.) ("Because she could only test the validity of the label by purchasing the wipes, we held that *Davidson* had plausibly pleaded Article III standing to sue for injunctive relief.").

*Caldwell*'s approach dictates the outcome here. The *Caldwell* plaintiff had alleged that she "would purchase the Product in the future," that she "lack[ed] personal knowledge as to Defendant's specific business practices relating to the Product, and that that "uncertainty, coupled with her desire to purchase the Product, is an ongoing injury that can and would be rectified by an injunction." *Caldwell v. Nordic Nats., Inc.*, No. 23-cv-02818-EMC, Dkt. 1 (June 7, 2023). This Court nevertheless dismissed her claim for injunctive relief because, by the time she filed suit, the plaintiff could ascertain the nature of the product at issue. *See* 709 F. Supp. 3d at 911. Here, Plaintiff Shawcroft believes that "Avia's computers populate and/or control the games with computer 'bots' that can impact or control the outcome of the games." SAC ¶ 1. She even alleges that in December 2023 (after this case was filed) "Avia disclosed . . . that it both controlled the outcomes of games and sat on the other side of the table by pitting users against 'historical playthroughs.'" *Id.* ¶ 46. Taking Shawcroft's allegations as true, she is not in the same position as the *Davidson* plaintiff, who could not assess the veracity of the manufacturer's continued representations without making a purchase. Rather, her position is more like the *Caldwell* plaintiff's because Shawcroft fails to explain how making a purchase is necessary for her to assess the nature of Avia's product.

**2. Shawcroft has not plausibly alleged a redressable future harm.**

Shawcroft also fails to show that the injunction she seeks would redress her purported injury. This is an independent basis for dismissing her claim for injunctive relief. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).

Shawcroft argues that an "injunction against Avia's deceptive representations would

redress" her claimed inability to rely on Avia's advertising. Opp. at 12. This argument is inconsistent with the SAC, which "seeks injunctive relief so that [Shawcroft] and other members of the Class who would like to play fair skill games against human players may do so on Avia's platform without the possibility of Avia using bots to rig the games." SAC ¶¶ 91, 110. An injunction that mandates how Avia manages its platform would impermissibly exceed the scope of the CLRA claim. Courts reject such overbroad requests for injunctive relief for lack of standing. *E.g.*, *Grausz v. Koger Co.*, 2021 WL 5534706, at *7 (S.D. Cal. Jan. 22, 2021) (no standing to pursue injunctive relief in CLRA case because "the [c]ourt is unable to compel Defendant to make the reformulated product [p]laintiff does desire to purchase in the future"); *see also Prescott v. Nestle USA, Inc.*, 2020 WL 3035798, at *6 (N.D. Cal. June 4, 2020) (no standing for injunctive relief for CLRA claim asserting "white morsels" did not contain real white chocolate when the requested injunction would mandate a product with white chocolate because the court "lacks authority to compel [the defendant] to make any particular product by way of an injunction"); *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1077 (S.D. Cal. 2019) (similar).

The Opposition again relies virtually exclusively on *Davidson*, claiming that that case has "materially identical facts" to this one. But under the *Caldwell*/*Matic*/*Cimoli* line of cases, Shawcroft's facts are distinguishable from *Davidson*, as Avia explains above. And under those cases, *Davidson*'s redressability holding would not apply to Shawcroft, because—given her allegations in the complaint—she does not need to make a subsequent purchase to assess the nature of Avia's product.

**C. Plaintiffs' New Theory of Liability Under 1770(a)(3) Should Be Dismissed.**

Finally, all of Plaintiffs' excuses for belatedly pleading a violation under Section 1770(a)(3) lack merit.

First, Plaintiffs claim that their addition of a (a)(3) theory does not assert a new claim and, to the extent it does, the application of (a)(3) here is "obvious." If the application of the (a)(3) subsection is "obvious," Plaintiffs offer no explanation for their three-year delay in asserting the theory. Nor could they. The (a)(3) language—about "[m]isrepresenting the affiliation,

connection, or association with, or certification by, another"—is trademark language. Claims based on this subdivision of the statute focus on source-confusion theories. *E.g.*, *Parino v. Bidrack, Inc.*, 838 F. Supp. 2d 900, 905–906 (N.D. Cal. 2011) (analyzing CLRA claim based on defendant's claimed affiliation with the New York Times); *Biotab Nutraceuticals, Inc. v. Beamonstar, LLC*, 2011 WL 6176219, at *4 (C.D. Cal. Dec. 9, 2011) (liability under (a)(3) based on using plaintiff's registered trademark). Plaintiffs have no claim that sounds in trademark. They argue that "imaginary real players" could qualify as "another" within the meaning of the statute. But they offer no authority to support that argument, as *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 52 (2003) has nothing to do with the construction of the (a)(3) subsection.

Second, Plaintiffs assert that the Court's prior dismissal order permits this amendment. But that order limited the scope of amendment to "add[ing] factual allegations to support a claim for injunctive relief or restitution – for the CLRA claim and/or the § 17200 claim against Avia." Dkt. No. 183 at 37. Adding a new legal theory is beyond the scope of "factual allegations." Plaintiffs' reliance on *Nacarino II* is misplaced. In that case, this Court authorized an amendment that could include a different theory of liability under the UCL. 668 F. Supp. 3d at 901–02 (citing *Elgindy v. AGA Serv. Co.*, 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021)). No such leave was granted in this case.

Third, Plaintiffs' effort to avoid the CLRA's pre-suit notice provision is unsupported by authority. Judge Freeman's order in *Romero v. Flowers Bakeries, LLC*, 2015 WL 2125004, at *8 (N.D. Cal. May 6, 2015), makes clear that a defendant should not have to "figure out what provisions of the CLRA are applicable." Plaintiffs fail to cite any case that allows a plaintiff to litigate a subsection of the CLRA that is absent from a pre-suit notice. And their effort to distinguish *Krantz v. Old Copper Co., Inc.*, 794 F. Supp. 3d 724, 742–44 (C.D. Cal. 2025), fails. The statute applies regardless of whether the non-noticed claim is brought "early in the case" or three years after filing.

## III. CONCLUSION

The challenged claims should be dismissed without leave to amend.

Dated: November 10, 2026

KEKER, VAN NEST & PETERS LLP

By: */s/ Travis Silva*

ELLIOT R. PETERS
STEVEN K. TAYLOR
TRAVIS SILVA
VICTOR CHIU
W. HAMILTON JORDAN
JACQUELINE CONCILLA
JILON LI

Attorneys for Defendant
AVIAGAMES INC.